UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT                                              CIVIL ACTION
SYSTEM, ET. AL.

VERSUS                                                                13-373-SDD-EWD

CITCO GROUP LIMITED, ET. AL.

## RULING

Before the Court is Defendant Citco Technology Management, Inc.'s ("CTM") *Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Meet the Pleading Requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and Failure to State a Claim for Relief.*[1] The Motion is opposed.[2]

**I.    FACTUAL BACKGROUND**

Plaintiffs, three Louisiana pension funds, Firefighters' Retirement System, Municipal Employees Retirement System of Louisiana, and New Orleans Firefighters' Pension & Relief Fund. Plaintiffs filed suit against 23 defendants in State court[3], asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims. The matter was removed pursuant to 28 U.S.C. §1452(a), and jurisdiction is maintained in this Court pursuant 28 U.S.C. 1334(b)[4].

---

[1] Rec. Doc. 68.
[2] Rec. Docs. 108 and 109.
[3] *Firefighters' Retirement System, et al.* v. *Citco Group Limited, et al.,* Docket No. 619601, 19th Judicial District Court, Parish of East Baton Rouge, Louisiana.
[4] "[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This Action is related to a bankruptcy case under title 11 pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

The Plaintiffs' claims arise from a $100 million investment loss.  In April of 2008, the Plaintiff pension funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund (hereafter "Leveraged") for $100 million. After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares. Ultimately, the shares went unredeemed and the Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.

Defendant Citco Technology Management, Inc. ("CTM"), one of twelve Citco[5] entities named as a Defendant, is a Florida corporation with its principal place of business in Fort Lauderdale and offices in Charlotte, North Carolina, and Jersey City, New Jersey.[6] CTM argues that it has utterly no contact with Louisiana and, thus, the Court cannot constitutionally exercise personal jurisdiction over CTM.[7]

---

Court"). Specifically, on June 29, 2012, Fletcher International Ltd. ("FIL" or the "Debtor") filed a voluntary petition under 11. U.S.C. §§ 101 *et seq.*  SDNY Bankruptcy Court Case No. 12-12796. In this case, the 5th Circuit has noted that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal." (Rec. 222).

[5] The Citco entities, collectively referred to as the "Citco Defendants", named and defined in the original Petition include Citco Technology Management, Citco Group Limited, Citco Fund Services (Cayman Islands), Limited, Citco Fund Services (Suisse) S.A., Citco Banking Corporation N.V., Citco N.V., Citco Fund Services (Europe) BV, Citco (Canada), Citco USA, Citco Bank Nederland, N.V. Dublin Branch, Citco Global Custody N.V., and Citco Fund Services (Bermuda) Limited. Rec. Doc. 1-3, ¶¶ 2-3.

[6] Rec. Doc. 68-2.

[7] The President and Director of CTM attest that CTM does not maintain, and never has maintained, an office in Louisiana; has never registered to do business in Louisiana; has no registered agent for the service of process in Louisiana; does not have, and has never had, any employees in Louisiana; does not own, lease or rent—and has never owned, leased or rented—property in Louisiana; has never had a mailing address or phone number in Louisiana; has never had a bank account in Louisiana; does not market or advertise its services to Louisiana residents and has never marketed or advertised its services to any residents of Louisiana; and has never generated any revenue in Louisiana. Rec. Doc. 68-2.

## II.     LAW AND ANALYSIS - Legal Standard for Personal Jurisdiction

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[8] The plaintiffs bear the burden of making a *prima facie* showing that the Court has jurisdiction over defendant.[9] "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists."[10]  However, in assessing whether the plaintiff has presented a *prima facie* case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'"[11]  The Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[12]

Although subject matter jurisdiction in this case is not based upon diversity of citizenship,[13] the analysis of whether the Court can constitutionally assert personal jurisdiction over a non-resident defendant is the same. "A federal court . . . may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment."[14]  It is well-established that Louisiana's long arm statute is coextensive with

---

[8] *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)(citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).
[9] *Doddy* v. *Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996); *Percle* v. *SFGL Foods, Inc.*, 356 F. Supp. 2d 629, 633 (M.D. La. 2004).
[10] *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).
[11] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed.Appx. 628, 631 (5th Cir. 2015)(quoting *Panda Brandy Wine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).
[12] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)(quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).
[13] *See supra* note 2.
[14] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

the limits of constitutional due process.[15] Thus, the inquiry is whether the exercise of personal jurisdiction comports with federal constitutional due process guarantees.[16]

"[T]he Fourteenth Amendment Due Process clause requires satisfaction of a two prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'"[17] Sufficient minimum contacts will give rise to either general, "all-purpose" jurisdiction or specific, "case-linked" jurisdiction.[18]

1. General Jurisdiction

When a nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, "are so 'continuous and systematic' as to render [it] essentially at home in the forum State"[19] the Court may exercise general personal jurisdiction over the defendant.[20] The Supreme Court considered the requirements for establishing general jurisdiction in *Daimler AG v. Bauman*.[21] The Court instructs that the proper consideration when determining general jurisdiction is "'whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'"[22] The Fifth Circuit has observed that "[i]t is incredibly difficult

---

[15] *Jackson v. Tanfoglio Giuseppe, SRL,* 615 F.3d 579, 584 (5th Cir. 2010)(*citing Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)).
[16] *Id.*
[17] *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)(citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).
[18] *Goodyear Dunlop Tires Operations, S.A. v Brown*, 131 S.Ct. 2846, 2851 (2011).
[19] *Daimler AG v. Bauman,* 134 S.Ct. 746 (2014)(quoting *Goodyear*, 131 S.Ct. 2846, 2851 (2011))(alteration original).
[20] *Id.* at 761; *Jackson* v. *Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).
[21] *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014).
[22] *Id.* at 761(quoting *Goodyear*, 131 S.Ct. 2846, 2851 (2011))(alteration original).

to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[23]

In this case, the President and Director of CTM attests that CTM does not maintain, and never has maintained, an office in Louisiana; has never registered to do business in Louisiana; has no registered agent for the service of process in Louisiana; does not have, and has never had, any employees in Louisiana; does not own, lease or rent—and has never owned, leased or rented—property in Louisiana; has never had a mailing address or phone number in Louisiana; has never had a bank account in Louisiana; does not market or advertise its services to Louisiana residents and has never marketed or advertised its services to any residents of Louisiana; and has never generated any revenue in Louisiana.[24] The Plaintiffs do not traverse this attestation with any evidence, and the allegations of the *Petition*[25] do not plead sufficient facts which would support this Court's exercise of general personal jurisdiction over CTM. Plaintiffs' argument that jurisdiction over CTM is proper pursuant to a single business enterprise theory is addressed below.

### 2. Specific Jurisdiction

Even when the defendant lacks "continuous and systematic contacts" to support general jurisdiction, the court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[26] Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[27] "[T]o exercise

---

[23] *Monkton Ins. Servs., Ltd., v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).
[24] Rec. Doc. 68-2.
[25] Rec. Doc. 1-3.
[26] *Luvn' care*, 438 F.2d at 469 (quoting *Helicopteros Nacionales*, 466 U.S. at 414, (1984)).
[27] *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014)(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

32993

jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."[28] The Fifth Circuit employs a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[29] If the plaintiff can establish the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable.[30]

Plaintiffs argue that a single communication by a non-resident defendant directed at the forum is sufficient to establish personal jurisdiction "[w]hen the actual content of the communications with a forum gives rise to intentional causes of action [because] this alone constitutes purposeful availment."[31] The cases relied upon by Plaintiffs stand for the proposition that affirmative misrepresentations and omissions specifically directed to persons in the forum state may support an assertion of specific jurisdiction. Plaintiffs' argument is unavailing because Plaintiffs do not plead any direct or purposeful communication by CTM.

Plaintiffs further argue that the exercise of jurisdiction over CTM is proper because a fraud was directed at the Plaintiffs in Louisiana.[32] Again the Plaintiffs' argument is unavailing because the Plaintiffs do not allege that CTM perpetrated a fraud upon the

---

[28] *Id.*
[29] *Monkton*, 768 F.3d at 433(quoting Seiferth at 271).
[30] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)(citations omitted).
[31] Rec. Doc. 108(citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)).
[32] Rec. Doc 108(citing *Able Fund v. KPMG Accountants NV*, 247 Fed. Appx. 504, 506, (5th Cir. 2007)).

Plaintiff pension funds. Plaintiffs argue that the "Citco Defendants controlled all of the management shares of Leveraged".[33] In fact, the offering Memorandum,[34] reveals that the management shares are controlled by Millennium (Cayman Islands) Foundation and the "Administrator" of Leveraged is Citco Funds Services (Cayman Island) Limited. The allegations of the *Petition* do not set forth any facts which suggest the perpetration of a fraud in the forum by CTM or any level of control exercised by CTM over the fraud.

Plaintiffs argue that deriving revenues from the forum is a "persuasive factor" which may support the exercise of personal jurisdiction.[35] The *Petition* sets forth no allegations that CTM derived revenue from the forum. Plaintiffs' brief claims a misappropriation of funds by the "Citco Defendants", of which Plaintiffs assert that CTM had personal knowledge.[36] However, none of these assertions are alleged in the *Petition*. Statements advanced as facts in briefs themselves, like an attorney's opening or closing argument in trial, are not evidence.[37] It is disingenuous, at best, to argue or posit "facts" in briefs to the Court, where those asserted "facts" are not alleged in the *Petition*.

Plaintiffs allege that the "Citco Defendants"[38] are a single business entity because the parent holding company, Citco Group, "owns, controls and dominates each subsidiary [including CTM] to such an extent that each subsidiary, in reality, functions as a mere

---

[33] Rec. Doc. 137 citing ¶ 27 of *Petition*.
[34] Rec. Doc. 109-2.
[35] Rec. Doc. 108(citing *Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372 (S.D.N.Y., 2010)).
[36] In their brief (Rec. Doc. 108, pp. 1-2, 5, 8, plaintiffs contend that the "Citco Defendants misappropriated $30,000,000 of the funds that the Louisiana Funds contributed to Leveraged." (Rec. Doc. 108, pp. 1-2) and that "the Citco Defendants were the financial beneficiary of the fraud to the tune of $30 million" (Rec. Doc. 108, p. 5) and that "Citco Technology has personal knowledge of the fact that the Citco Defendants were the direct financial beneficiary of more than $30,000,000 of funds contributed by the Louisiana Funds as a result of the fraud that was perpetrated against the Louisiana Funds by the Citco Defendants." (Rec. Doc. 108, p. 8, #2).
[37] *Tucker v. SAS Institute, Inc.,* 462 F.Supp.2d 715, 723 (N.D.Tex., 2006).
[38] *See supra* note 3.

32993

division or branch of [Citco Group]."[39] As noted above, Plaintiffs do not allege any contacts by CTM with Louisiana as evidence that the exercise of personal jurisdiction over CTM is warranted. Rather, Plaintiffs contend that contacts by other Citco entities, which are commonly held by Citco Group, the alleged parent company of CTM and the other Citco Defendants, subject CTM to personal jurisdiction in this District.

"[P]ersonal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated."[40] Related, but separately incorporated corporate entities enjoy a presumption of independence which may be rebutted by "clear evidence" of interdependence or joint control beyond "the mere existence of a corporate relationship".[41] The Plaintiff must come forward with evidence of control by Citco Group over the internal business operations and affairs of CTM such that CTM can be regarded as Citco Group's agent or alter ego, and hence "fuse the two together for jurisdictional purposes."[42] The Fifth Circuit directs that:

> "[i]n determining whether a plaintiff asserting personal jurisdiction has overcome the presumption of corporate separateness, [the Court] considers the following non-exhaustive factors: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities."[43]

The Plaintiffs' *Petition* is devoid of any factual allegations which, when taken as true, provide clear evidence that rebuts the presumption of CTM's independence of the

---

[39] Rec. Doc. 1-3, ¶ 38, *See also* allegations at ¶¶ 2, 69.
[40] *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 346 (5th Cir. 2004)(citing *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335 (1925)). *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983); and *Access Telecom, Inc. v. MCI Telecomm., Corp.,* 197 F.3d 694, 717 (5th Cir.1999).
[41] *Id(*citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir.1999)).
[42] *Id.* at 346 (internal citations omitted).
[43] *Id.*

Citco Group and the other Citco Defendants. The *Petition* contains only conclusory allegations of interdependence and control, such as:

- "Citco Group is an integrated financial services holding company that operates through numerous subsidiaries, including [CTM]". [44]

- "Citco Group serves as a vehicle by which its operating subsidiaries procure business".[45]

- "Citco Group has no independent revenues of its own; it acts through its 'offices and locations' [including CTM]".[46]

- "Despite the separate corporate identities that Citco Defendants used to contract with Leverage, Citco Group both markets and operates itself as a single financial services provider-an industry leader with extensive experience in the field, a "reputation for independence," and in its own words, a company that functions as a reliable fiduciary to safeguard the interests of investors."[47]

- "Citco Group's individual corporations are all controlled by Citco Group, which appoints division directors to monitor the daily operations of each division, including, relevant here, the fund services division."[48]

These allegations, which are taken as true, are not clear evidence of interdependence or joint control and, thus, fail to rebut the legal presumption that CTM is separate, distinct, and independent from other subsidiaries of the Citco Group.

---

[44] Rec. Doc. 1-3, ¶2A.
[45] Rec. Doc. 1-3, ¶4.
[46] Rec. Doc. 1-3, ¶3.
[47] Rec. Doc. 1-3, ¶68.
[48] Rec. Doc. 1-3, ¶69.

32993

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Citco Technology Management, Inc.'s FRCP 12(b)(2) *Motion to Dismiss for Lack of Personal Jurisdiction.*[49] Citco Technology Management, Inc.'s *Motions to Dismiss for Failure to Meet the Pleading Requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and Failure to State a Claim for Relief* are DENIED as moot.

*Judgement* shall be entered accordingly.

Signed in Baton Rouge, Louisiana on June 22, 2016.

_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[49] Rec. Doc. 68.

32993