UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

CIVIL ACTION

VERSUS

NO. 13-373-SDD-EWD

CITGO GROUP LIMITED, ET AL

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 6, 2016.

*[signature]*

**ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

CIVIL ACTION

VERSUS

NO. 13-373-SDD-EWD

CITGO GROUP LIMITED, ET AL

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Transfer[1] filed by certain defendants: Grant Thornton International, Ltd.; Citgo Group Limited; Citgo Banking Corporation, N.V.; Citgo Technology Management, Inc.; Citgo (Canada) Inc.; Citgo Fund Services (Bermuda) Ltd.; Citgo Bank Nederland, N.V., Dublin Branch; Alphonse Fletcher, Jr.; Fletcher Asset Management, Inc.; Denis Kiely; Peter M. Zayfert; Duhallow Financial Services, LLC; and Skadden, Arps, Slate, Meagher & Flom LLP (collectively, "Movants").  Plaintiffs, Firefighters' Retirement System, Municipal Employees' Retirement System of Louisiana, and New Orleans Firefighters' Pension & Relief Fund (collectively "Plaintiffs" or the "Louisiana Funds") oppose the Motion to Transfer.[2]  Movants have filed a Reply.[3]  For the reasons set forth herein, it is the recommendation[4] of this Court that the Motion to Transfer be DENIED.

### I. Background

Plaintiffs filed suit in Louisiana state court against 23 defendants, asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort

---

[1] R. Doc. 117.

[2] R. Doc. 142.

[3] R. Doc. 162.

[4] On June 21, 2016, the district court referred this Motion to the undersigned for a report and recommendation.  R. Doc. 288.

1

claims.[5] The matter was removed pursuant to 28 U.S.C. § 1452(a), and jurisdiction is maintained in this Court pursuant to 28 U.S.C. § 1334(b).[6]

Plaintiffs' claims arise from a $100 million investment loss. In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund ("Leveraged") for $100 million.[7] Plaintiffs allege that they acquired the Series N shares based on misrepresentations of the Fletcher Defendants, Citgo Defendants, and Investment Advisor Defendants.[8] After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[9] Ultimately, the shares went unredeemed and the Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[10]

Leveraged was a feeder fund which Plaintiffs allege was formed primarily to invest in Fletcher Income Arbitrage, Ltd. ("Arbitrage").[11] In subsequent briefing, Movants have explained that Arbitrage was an intermediate-level fund in the master/feeder structure of the Fletcher-run

---

[5] R. Doc. 1-3. Plaintiffs' Petition for Damages was filed on March 1, 2008. Therein, Plaintiffs named the following defendants: (1) Citgo Group Limited; (2) Citgo Fund Services (Cayman Islands), Limited; (3) Citgo Fund Services (Suisse) S.A.; (4) Citgo Banking Corporation, N.V.; (5) Citgo N.V.; (6) Citgo Fund Services (Europe) BV; (7) Citgo (Canada), Inc.; (8) Citgo Technology Management, Inc.; (9) Citgo USA; (10) Citgo Bank Nederland, N.V., Dublin Branch; (11) Citgo Global Custody N.V.; (12) Citgo Fund Services (Bermuda) Limited (collectively, the "Citgo Defendants"); (13) Fletcher Asset Management, Inc.; (14) Alphonse "Buddy" Fletcher, Jr.; (15) Denis Kiely; (16) Duhallow Financial Services, LLC; (17) Lisa Alexander; (18) Peter M. Zayfert (collectively, the "Fletcher Defendants"); (19) Consulting Services Group, LLC; (20) Joe Meals (collectively, the "Investment Advisor Defendants"); (21) Grant Thornton International, Ltd. ("Grant Thornton"); and (22) Non-Series N Shareholders. R. Doc. 1-3. On May 8, 2013, Plaintiffs filed a Second Amendment to the Petition for Damages adding the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP as a defendant. R. Doc. 1-3.

[6] "[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In this case, the Fifth Circuit has noted that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal." R. Doc. 222.

[7] R. Doc. 1-3, ¶ 34.

[8] R. Doc. 1-3, ¶¶ 34-36.

[9] R. Doc. 1-3, ¶ 41.

[10] *See*, R. Doc. 1-3, ¶¶ 34-45 & 18.

[11] R. Doc. 1-3, ¶ 13.

funds.[12] Movants explain that assets of Arbitrage were invested in another intermediate-level fund, Fletcher International, Inc. ("International") which in turn invested its assets in the ultimate master fund, Fletcher International Ltd. (the "Debtor").[13]  On June 29, 2012, Fletcher International Ltd. filed a voluntary petition under 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Case") in the Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").[14]

Each of the Louisiana Funds filed a proof of claim on January 18, 2013 in the Bankruptcy Case.[15]  The Plaintiffs' proofs of claim each had the same attachment, which explained the factual and legal basis for their claims against the Debtor.  Therein, Plaintiffs explained their $100 million investment in the Leveraged Series N shares, which was then invested in Arbitrage and Debtor.  Plaintiffs alleged that the Debtor is the master fund in a group of affiliated private investment funds that include Leveraged and Arbitrage as part of the master-feeder fund structure of the Fletcher Funds.  Therefore, unable to redeem their shares from Leveraged, the Plaintiffs claimed that Debtor, as the alter ego of Leveraged, was liable for breach of contract between Leveraged and the Plaintiffs as well as conspiring and aiding and abetting Leveraged's fraud on the Plaintiffs.

On March 24, 2014, the trustee in the Bankruptcy Case filed a Second Amended Plan of Liquidation (the "Plan") in the Bankruptcy Case.[16]  On March 28, 2014, a confirmation order confirming the Plan was signed by the New York Bankruptcy Court (the "Confirmation Order").[17]

---

[12] Movants' Memorandum in Opposition to Motion to Remand. R. Doc. 113, p. 12.

[13] R. Doc. 113, p. 4.

[14] *In re Fletcher Int'l, Ltd.*, No. 12-12796 (Bankr. S.D.N.Y.).  Plaintiffs did not name Leveraged, Arbitrage, International, or Debtor as defendants in this case.

[15] R. Doc. 113-6 (Claim 18-1, Firefighters' Retirement System); R. Doc. 114 (Claim 19-1, Municipal Employees' Retirement System of Louisiana); R. Doc. 114-1 (Claim 20-1, New Orleans Firefighters' Pension & Relief Fund).

[16] R. Doc. 200-1, pp. 55-96.

[17] R. Doc. 200-1

3

In the Plan, Plaintiffs were referred to as the "Louisiana Pension Funds" and their claims against the Debtor were allowed in the amount of $3,000,000.00.[18] Per Section 10.6 of the Plan:

> Notwithstanding anything to the contrary in the Confirmation Order or this Plan…the waiver of claims, releases and injunctions provided for herein shall not operate to waive, release, enjoin or in any way determine or limit any claims, including any claims as to quantum or measure of damages, of…the Louisiana Pension Funds against any person or entity other than against the Debtor, the Estate, and the Trustee.[19]

As further explained in the New York Bankruptcy Court's Confirmation Order, "the Plan Release and the Plan Injunction do not waive, release, enjoin or in any way determine or limit any claims, including any claims as to quantum or measure of damages, of third parties, including the Louisiana Pension Funds…against any person or entity (other than the Debtor, the Estate, and the Trustee), including, without limitation, with respect to their investments in Leveraged and Arbitrage."[20] Per the Confirmation Order, the Louisiana Pension Funds remained "free to assert any and all claims and defenses they may have, including without limitation, claims reserved in Article 10 of the Plan" in *inter alia* "any proceedings against any person or entity (other than the Debtor, the Estate, and the Trustee) in any federal, state, or foreign court or any other appropriate forum."[21]

Although Movants moved to transfer the instant case to the New York Bankruptcy Court on August 14, 2013,[22] a ruling on the Motion to Transfer was delayed due to an appeal to the

---

[18] R. Doc. 200-1, p. 75. Allowance in this amount was contingent on Louisiana Pension Funds' vote to accept the Plan. A Voting Certification was filed before the confirmation hearing. The Bankruptcy Court's Confirmation Order reflects that the Plaintiffs voted to accept the Plan. R. Doc. 200-1, p. 8.

[19] R. Doc. 200-1, p. 87.

[20] R. Doc. 200-1, p. 16.

[21] R. Doc. 200-1, p. 17.

[22] R. Doc. 117. Briefing on the Motion to Transfer was complete on October 1, 2013. R. Doc. 162.

4

United States Court of Appeal for the Fifth Circuit related to jurisdictional issues.[23]  That appeal was concluded on August 31, 2015 – *after* entry of the New York Bankruptcy Court's Confirmation Order on March 28, 2014.[24]  The current procedural posture of the Bankruptcy Case is now significantly different than when the Motion to Transfer was filed and does not, in this Court's opinion, support transfer at this juncture.

## II. Law and Analysis

### A. Legal Standard

Movants seek transfer of this suit to the New York Bankruptcy Court pursuant to 28 U.S.C. § 1412.  Plaintiffs oppose the Motion to Transfer, and contend that in actions "related to"[25] title 11 cases, 28 U.S.C. § 1404(a) controls the analysis of whether transfer is proper.[26]

---

[23] Prior to the filing of Defendants' Motion to Transfer, Plaintiffs moved to remand this suit to Louisiana state district court. R. Doc. 60.  This Court recommended remand on June 18, 2014, and that recommendation was adopted by the district court on July 18, 2014.  *See*, R. Docs. 204 & 210.  Certain defendants took an immediate appeal. R. Doc. 211.  On August 31, 2015, the United States Court of Appeal for the Fifth Circuit reversed the district court judgment and remanded to the district court for further proceedings. R. Doc. 222.

[24] R. Doc. 222.

[25] This Court previously found subject matter jurisdiction existed at the time of removal pursuant to 28 U.S.C. § 1334(b) based on its finding that this suit was "related to" the Bankruptcy Case. R. Doc. 204.  As this Court explained, "[g]iven the alleged alter ego relationship between [Debtor], the Fletcher funds and defendants, and the fact that the plaintiffs seek both in this case and from [Debtor] the return of their investment in the Series N Shares, it is evident that the outcome of this case could conceivably affect the estate being administered in bankruptcy…This conceivable effect is sufficient to establish related-to jurisdiction under § 1334(b)."  Although the Fifth Circuit ultimately found that this Court could not permissively abstain from exercising jurisdiction, it confirmed that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal." R. Doc. 222.

[26] "Some courts have interpreted section 1412 to apply only to core proceedings." *Marquette Transp. Co. v. Trinity Marine Products, Inc.*, 2006 WL 2349461, at *3 (E.D. La. Aug. 11, 2006).  The Fifth Circuit has not yet determined whether § 1412 applies only to core proceedings, and district courts considering the issue are split.  *See*, *Woodlands Development LLC v. Regions Bank*, 2013 WL 3233472, at *4 (E.D. La. June 24, 2013) ("'While it is uncontroverted that 28 U.S.C. § 1412 applies to the main bankruptcy case and core adversary proceedings, there is a split in authority regarding whether a motion to transfer an action that is 'related to' a bankruptcy action in another forum [ ] should be analyzed under section 1404(a) rather than section 1412.'") (quoting *Wash. State Bank v. Turnage*, 2011 WL 1561440, at *3 (W.D. La. April 25, 2011)).  Because this Court finds that Movants have failed to show that a transfer to the New York Bankruptcy Court is either in the interests of justice or more convenient for the parties, transfer is improper under either 1412 or 1404 and it is not necessary to make a determination of whether section 1412 applies only to core proceedings.

5

Pursuant to 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Because section 1412 does not include the threshold requirement that the transferee court be one in which the case "might have been brought"[27] and because the statute is written in the disjunctive, the requirements for transfer under section 1412 appear to be less burdensome on the party seeking transfer. *See*, *In re Adkins Supply, Inc.*, 2015 WL 1498856, at *6 (Bankr. N.D. Tex. March 27, 2015) ("In considering the text of the two statutes, the two considerations – the convenience of the parties (and witnesses) and the interest of justice – are stated in the conjunctive under § 1404 but in the disjunctive under § 1412. This implies that § 1412 might be a more generous to the moving party.").

Nevertheless, "courts essentially apply the same factors in analyzing transfers under §§ 1404(a) and 1412." *Campbell v. Williams*, 2015 WL 3657627, at *2 (S.D. Tex. June 12, 2015). "Furthermore…choosing one transfer provision over the other generally has no effect in the ultimate transfer decision." *Id*. *See also*, *South Louisiana Ethanol, LLC v. Southern Scrap Material Co., LLC*, 2011 WL 5196540, at *4 (M.D. La. Sept. 26, 2011) ("District courts in the Fifth Circuit have found that when an action could have been brought in the district or division

---

[27] In response to Plaintiffs' assertion that Movants fail to address the threshold issue of whether the New York Bankruptcy Court is a venue in which this action might have been brought, Movants argue that "whether New York courts may lack personal jurisdiction over many of the defendants is entirely irrelevant to the analysis [of transfer under 1412]. Even if it were, Plaintiffs would be no worse off after a transfer because the courts in Louisiana also lack personal jurisdiction over many of the defendants." R. Doc. 162, p. 8. Setting aside the fact that Movants' position assumes the outcome of future rulings on motions currently pending before this Court, because the Court finds that transfer of this suit would be improper based on a consideration of the interests of justice and convenience of the parties, the Court does not consider whether the proposed transferee court is one in which this action "might have been brought."

where the bankruptcy court is located, Sections 1404(a) and 1412 largely include the same criteria for transfer of cases, and therefore apply Section 1404(a).") (collecting cases); *Bayou Steel Corp. v. Boltex Manufacturing Co., LP*, 2003 WL 21276338, at *1 (E.D. La. June 2, 2003) (noting that the analysis is "essentially the same" under either provision when "[t]he threshold step under section 1404 (*i.e.*, determining that the transferee forum is one in which the action could have been commenced originally)" has been met.).

Section 1412 permits the transfer of an adversary proceeding under title 11 to a district court in another district if such transfer is (1) in the interest of justice; or (2) for the convenience of the parties. "Although satisfaction of either principle is sufficient to support a transfer, 'the decision of whether to transfer venue is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness.'" *In re Adkins Supply, Inc.*, 2015 WL 1498856, at *5 (Bankr. N.D. Tex. March 27, 2015) (quoting *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002)). "The movant bears the burden of showing, by a preponderance of the evidence, that the transfer is warranted." *Id*. In examining the "interests of justice" factors in the context of a bankruptcy, courts typically consider: "(a) [e]fficiency and economics of estate administration; (b) [p]resumption in favor of the 'home court'; (c) [j]udical economy and efficiency; (d) [f]airness and the ability to receive a fair trial; (e) [t]he state's interest in having local controversies decided within its borders; and (f) [p]laintiff's original choice of forum." *Id*. (collecting cases). In analyzing what is convenient for the parties, courts may examine: "(a) location and proximity of the parties; (b) ease of access to necessary proof; (c) convenience of witnesses, including their location and proximity; (d) location of the assets, including books and records; (e) availability of subpoena power for the unwilling witnesses; and (f) expenses related to obtaining witnesses." *Id*. (collecting cases).

Similarly, in deciding a motion to transfer under section 1404(a), district courts consider the private and public interest factors articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). "Private factors relate to the convenience of the litigants and include (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and (5) the possibility of delay and prejudice if transfer is granted. The public interest factors include (1) the administrative difficulties resulting from court congestion; (2) the relationship to the litigation of the community from which jurors will be drawn; (3) the local interest in having localized controversies decided at home; (4) and choice of law issues." *Rumore v. Wamstad*, 2001 WL 1426680, at *3 (E.D. La. Nov. 13, 2001) (citing *Gulf Oil*). "Unless the balance of factors strongly favors the movant, the district court will not disturb a plaintiff's choice of forum." *Id*. "It is well-settled that the movant bears the burden of showing why a transfer of venue under § 1404(a) is warranted." *Becnel v. Smile Community Action Agency, Inc.*, 207 F.Supp.2d 520, 522 (M.D. La. 2001).

### B.  Interest of Justice

Movants assert that "[t]ransfer to New York would promote significant coordination benefits and assist in the administration of the bankruptcy estate…"[28] and argue that "[i]n evaluating the interests of justice, 'several courts have found the most important factor is whether transfer would promote the economic and efficient administration of the bankruptcy estate.'"[29] Movants assert that because the New York Bankruptcy Court had a "head start in familiarizing

---

[28] R. Doc. 162, p. 2.

[29] R. Doc. 162, p. 9.

8

itself with the relevant entities, investment, and transactions," judicial economy, fairness, and timeliness favor transfer in the interest of justice.[30]

With regard to the "interest of justice factor," Movants are correct that courts have pointed out the "paramount interest in economically and efficiently administering the estate in bankruptcy." *Marquette Transp. Co. v. Trinity Marine Products, Inc.*, 2006 WL 2349461, at *5 (E.D. La. Aug. 11, 2006) (citing *Matter of Commonwealth Oil Refining, Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979) ("[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate.")). This Court also notes that "[p]resumptively, civil adversary proceedings should be venued with the underlying bankruptcy case." *Rumore v. Wamstad*, 2001 WL 1426680, at *4 (E.D. La. Nov. 13, 2001). *See also*, *Woodlands Development LLC v. Regions Bank*, 2013 WL 3233472, at *4 (E.D. La. June 24, 2013) ("In considering the interest of justice, this Court recognizes the strong presumption that proceedings related to a bankruptcy case should be transferred to the district where the bankruptcy proceedings are pending.").

Here, however, such "paramount interest" in administration of the bankruptcy estate is moot based on the procedural posture of the Bankruptcy Case. On March 28, 2014, the Bankruptcy Court entered its Confirmation Order on the Plan. Upon confirmation of the Plan, the bankruptcy estate ceased to exist.[31] *See*, *In re Enron Corp. Securities*, 535 F.3d 325, 335 (5th Cir. 2008). *See*

---

[30] R. Doc. 162, p. 10. Defendants additionally argue that "transfer avoids the risk of inconsistent results with respect to various issues, including, for example, Plaintiffs' redemption rights, Plaintiffs' potential damages, and the liability, or lack thereof, of any of the Defendants, all of which may be at issue in both proceedings." R. Doc. 162, p. 10. In light of Plaintiffs' vote to accept the Plan in the Bankruptcy Case, this Court finds Movants arguments regarding the risk of inconsistent results moot.

[31] Because the bankruptcy estate ceased to exist upon confirmation of the Plan, there is not active litigation of Plaintiffs' claims in the New York Bankruptcy Court to which the instant suit can be transferred. Accordingly, although the Court's analysis of transfer under either 1404 or 1412 would usually involve consideration of each of the factors set forth in Section II.A., *supra*, the Court's analysis here is shifted in light of the Movants' primary argument

*also*, *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. No longer is expansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize."); *In re OCA, Inc.*, 551 F.3d 359, n. 10 (5th Cir. 2008) (explaining the broad reach of "related to" jurisdiction to "'avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate'" but noting that "[t]his standard applies as long as the bankruptcy case continues; after confirmation of a reorganization plan, a stricter post-confirmation standard applies."). As outlined above, at the time Movants filed this Motion to Transfer, the Bankruptcy Case was in a different procedural posture and may have better supported Movants' transfer argument. However, in light of the New York Bankruptcy Court's Confirmation Order, there is no need to transfer this matter to ensure the efficient administration of the estate or preserve judicial resources. Accordingly, this Court finds that the interests of justice would *not* be served by transferring this action to the New York Bankruptcy Court.

### C. Convenience of the Parties

Although Movants assert that this matter should be transferred to the New York Bankruptcy Court under 28 U.S.C. § 1412 and that such transfer can be made solely in the interest of justice and without a consideration of the convenience of the parties,[32] they also assert that "transfer to New York would in fact be more convenient for the obvious reason that Plaintiffs already commenced litigation there to recover for the same alleged wrong at issue here and because

---

in support of transfer – that Plaintiffs are already litigating these issues in the Bankruptcy Case – and the procedural posture of that case.

[32] R. Doc. 162, p. 8.

10

many of the Defendants in this action are located in New York."[33]  Movants point out that "[a]ccording to Plaintiffs, five of the six Fletcher Defendants are based in the Southern (or, as to one, Eastern) District of New York, where the Debtor's bankruptcy is pending"[34] and argue that discovery involving these New York-based defendants "will be more conveniently obtained in the Southern District of New York."[35]  In response, Plaintiffs point out that 17 of the defendants are not New York residents,[36] and that Movants have failed to meet their burden of establishing that the New York Bankruptcy Court is "clearly more convenient than the Middle District of Louisiana."[37]

The thrust of Movants' argument is their assertion that transfer the New York Bankruptcy Court would be more convenient because "Plaintiffs already commenced litigation there to recover for the same alleged wrong."[38]  This Court finds again that the procedural posture of the Bankruptcy Case is significant.  The Court understands Movants' position to be that because Plaintiffs already commenced litigation in the New York Bankruptcy Court, it would be convenient for Plaintiffs to litigate there.  However, because Plaintiffs voted to accept the Plan in the Bankruptcy Case and their claims against the Debtor were allowed in the amount of $3,000,000.00,[39] there is no additional litigation of Plaintiffs' claims to be conducted in the New York Bankruptcy Court.  Under the terms of the Plan and Confirmation Order, Plaintiffs retained

---

[33] R. Doc. 117-1, p. 5.

[34] R. Doc. 117-1, p. 7.

[35] R. Doc. 117-1, p. 8.

[36] *See*, R. Doc. 142, pp. 8 & 23.

[37] R. Doc. 142, pp. 12 & 25.  Plaintiffs argue that transfer to the New York Bankruptcy Court would impermissibly shift the burden from one party to another and that such shifting does not justify transfer. R. Doc. 142, pp. 25-26.

[38] R. Doc. 117-1, p. 5.

[39] R. Doc. 200-1, p. 75.

the right to proceed against other parties in other venues to attempt additional recovery.[40] Therefore, the Court likewise finds that analysis of the convenience of the parties disfavors transfer to the New York Bankruptcy Court.

### III.     Recommendation

For the reasons set forth herein, it is the recommendation of this Court that the Motion to Transfer[41] be **DENIED**.

Signed in Baton Rouge, Louisiana, on July 6, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[40] In asserting their claims against defendants in this suit, Plaintiffs have requested a jury trial. "A bankruptcy court within the Fifth Circuit has no constitutional or statutory authority to conduct a jury trial without the parties' consent…." *NRG New Roads Holdings LLC v. Horton*, 2015 WL 6167817, at *6 (M.D. La. Oct. 21, 2015) (citing 28 U.S.C. § 157(e); *In re Clay*, 35 F.3d 190 (5th Cir. 1994)). Although the request for jury trial is not dispositive of the Motion to Transfer, in light of the procedural posture of the Bankruptcy Case, this Court finds Plaintiffs' request for jury trial also weighs in favor of denying the Motion to Transfer.

[41] R. Doc. 117.