# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT                                   CIVIL ACTION
SYSTEM, ET. AL.


VERSUS                                                     13-373-SDD-EWD


CITCO GROUP LIMITED, ET. AL.
                              __RULING__

    Before the Court is Defendant Grant Thornton International Ltd.'s ("GTIL") *Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim for Relief.*[1] The Motion is opposed.[2]  For the reasons set forth below, the Court finds that the *Motion to Dismiss for Lack of Jurisdiction* should be granted.

## I.    FACTUAL BACKGROUND

    Plaintiffs, three Louisiana pension funds, Firefighters' Retirement System, Municipal Employees Retirement System of Louisiana, and New Orleans Firefighters' Pension & Relief Fund filed suit against 23 defendants in State court.[3]  Plaintiffs asserted claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims. The matter was removed pursuant to 28

---

[1] Rec. Doc. 59.
[2] Rec. Doc. 81.
[3] *Firefighters' Retirement System, et al.* v. *Citco Group Limited, et al.,* Docket No. 619601, 19th Judicial District Court, Parish of East Baton Rouge, Louisiana.
34875

U.S.C. §1452(a), and jurisdiction is maintained in this Court pursuant to 28 U.S.C. 1334(b).[4]

The Plaintiffs' claims arise from a $100 million investment loss.  In April of 2008, the Plaintiff pension funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund (hereafter "Leveraged") for $100 million. After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N Shares. Ultimately, the Shares went unredeemed, and the Plaintiffs determined that the investment was illiquid; thus, the N Shares, for which there was no market, were valueless.

Defendant, Grant Thornton International Ltd. ("GTIL"), is a non-practicing, international umbrella entity organized as a private company limited by a guarantee incorporated in England and Wales and headquartered in London, England.[5]  GTIL argues that it has utterly no contacts with Louisiana or the United States; therefore, the Court cannot constitutionally exercise personal jurisdiction over GTIL.[6]

---

[4] "[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This Action is related to a bankruptcy case under Title 11 pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  Specifically, on June 29, 2012, Fletcher International Ltd. ("FIL" or the "Debtor") filed a voluntary petition under 11. U.S.C. §§ 101 *et seq.*  SDNY Bankruptcy Court Case No. 12-12796. In this case, the 5th Circuit has noted that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal." (Rec. Doc. 222).

[5] Rec. Doc. 59-2 and Rec. Doc. 112-1.

[6] The Head of Finance-Treasurer for GTIL attests that GTIL does not maintain and never has maintained an office, place of business, postal address or telephone listing in Louisiana; is not and never has been licensed, and never has applied for a license, to conduct business in Louisiana; has no registered agent for service of process in Louisiana; does not employ persons living or working in Louisiana; does not and never has paid taxes, kept a bank account, or rented or owned any property in Louisiana; has never conducted any business in Louisiana or with any companies domiciled in Louisiana, other than a passive website that must be accessed by a visitor; GTIL does not market or advertise to persons or entities in Louisiana; has never had contact with the plaintiffs or anyone else in Louisiana in connection with the documents or transactions specified in the Petition and Amended Petitions; has never sent or received any documents to or from the plaintiffs or anyone else in Louisiana in connection with the transactions specified in the Petition and Amended Petitions.  Rec. Doc. 59-2.

34875

## II.     LAW AND ANALYSIS - Legal Standard for Personal Jurisdiction

This matter was removed pursuant to 28 U.S.C. §§ 1332(a), 1334(b), 1367, 1441, 1446 and 1452(a).[7] GTIL consented to removal.[8]  The removing defendants further allege that the Plaintiffs filed a proof of claim in Bankruptcy Case.  This Court, affirmed by the Fifth Circuit, has concluded that his case is properly in federal district court on "related to" jurisdiction under § 1334(b).[9]  The removing defendants further allege that the Plaintiffs filed a proof of claim in the Bankruptcy Case. This Court, affirmed by the Fifth Circuit, has concluded that this case is properly in federal district court on "related to" jurisdiction under § 1334(b).[10] This is law of the case.

Defendants argue that the claims in this action are non-core state law claims, and that assertion of personal jurisdiction over defendants in such removed non-core proceedings based on a nationwide service of process bankruptcy rule is a violation of the Due Process Clause of the Fifth Amendment.[11] Defendants further argue that, notwithstanding nationwide service of process, constitutional due process must nonetheless be scrutinized under the purposeful minimum contacts analysis. The Court agrees that a federal nationwide service of process authority does not suspend or displace the constitutional guarantees of due process. However, as conceded by the Defendants, the Fifth Circuit has upheld the constitutionality of nationwide service of process.[12]  The question presented is whether GTIL has purposeful and meaningful

---

[7] Rec. Doc. 1.

[8] *Id.*

[9] Rec. Doc. 222.

[10] *Id.*

[11] Rec. Doc. 297.

[12] *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994*); Bellaire General Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 826 (5th Cir. 1996).

34875

contacts with the United States, for under a federal statutory scheme that authorizes nationwide service of process, the forum is the United States, not the particular State where the action is filed.

## A. General Jurisdiction

As noted, GTIL is a corporation formed under the laws of England and Wales and has its principal place of business in London, England.[13]   Although GTIL was served pursuant to Louisiana's Long Arm Statute, the Bankruptcy Rules provide for nationwide service of process. Bankruptcy Rule 7004(b) provides for service of process by virtually the same manner and means as service on a non-Louisiana resident under Louisiana's Long Arm Statute.[14]

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient purposeful minimum contacts with the forum such that requiring the defendant to defend its interests in the forum does not "offend 'traditional notions of fair play and substantial justice."[15] The Supreme Court instructs that "[t]he proper question is whether the defendant's conduct connects him to the forum in a meaningful way."[16]

In this case, where a federal statute authorizes nationwide service of process, the relevant sovereign or forum is not the particular State where the action is filed, but rather

---

[13] Rec. Doc. 29-2 and Rec. Doc. 112-1.
[14] LA R.S. 13:3204 requires that "a certified copy of a contradictory motion, rule to show cause, or other pleading filed by the plaintiff. . . shall be sent to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier. "  *Compare* Federal Rules of Bankruptcy Procedure, Rule 7004(b) which requires service by first class mail.
[15] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).
[16] *Walden v. Fiore,* 134 S. Ct. 115, 1125 (2014).
34875

the forum to which the minimum contacts analysis is applied, which is the United States.[17]

Thus, the relevant inquiry is whether movant, GTIL "has sufficient contacts with the United

States to support the fairness of the exercise of jurisdiction over [it] by a United States

court."[18]

GTIL resides in and has its principal place of business in London, England[19] and

is a guarantee incorporated under the laws of England and Wales.[20]  The United States

Supreme Court in *Daimler AG v. Bauman* examined whether a foreign entity that is not

incorporated under the laws of, nor has its principal place of business in, a forum state is

subject to the general jurisdiction of that forum.[21]  In examining its prior holdings, the

Supreme Court stated, "*Goodyear* did not hold that a corporation may be subject to

general jurisdiction *only* in a forum where it is incorporated or has its principal place of

business; it is simply typed those places paradigm all-purpose forums."[22]  The Court

rejected Plaintiffs' reading of *Goodyear*, which would "approve the exercise of general

jurisdiction in every State in which a corporation 'engages in substantial, continuous, and

systematic course of business.'"[23]  Under *Daimler*, the relevant inquiry "is not whether a

---

[17] *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255 (5th Cir. 1994*)*; *Lentz v. Trinchard,* 730 F.Supp.2d 567, 578 (E.D.La. 2010); "When a suit is in federal court on 'related to' bankruptcy jurisdiction. . . the sovereign exercising authority is the United States, not the particular state where it was originally filed." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2011 WL 3516292, *3 (S.D. Tex. Aug. 11, 2011).
[18] *In re Federal Fountain, Inc.*, 165 F.3d 600, 602 (8th Cir.1999), citing*, Fitzsimmons v. Barton,* 589 F.2d 330, 333 (7th Cir.1979).
[19] Rec. Doc. 1 states that GTIL is an Illinois corporation and was served in accordance with their appointed agent for service of process in Chicago, Illinois.  GTIL has appeared and is a Defendant in the present case.  GTIL contests jurisdiction and has presented evidence that it is a corporation formed under the laws of England and Wales.  The allegation that GTIL's registered agent for service of process was properly served, however, is uncontested.  Likewise, GTIL's attestation that it is not, in fact, an Illinois corporation but is, rather, a foreign corporation is uncontested.
[20] Rec. Doc. 59-2 and 112-1.
[21] *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014).
[22] *Id.* at 760.
[23] *Id.* at 761.
34875

foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."[24]

According to the recently outlined test for general personal jurisdiction in *Daimler*, the Court must determine whether GTIL's contacts with the United States are so "'continuous and systematic' as to render" GTIL "essentially at home in the United States."[25]   As stated previously, GTIL is a guarantee incorporated under the laws of England and Wales and has its principal place of business in London, England.[26]  Per the declaration provided by the Head of Finance-Treasurer of GTIL, the Grant Thornton network "consists of member firms that are separate legal entities, each organized under the laws of its own jurisdiction."[27]  GTIL is a "separate legal entity from each of the Grant Thornton member firm, and is not licensed to provide accounting or auditing services in any jurisdiction."[28]  In the present case, the only apparent contacts that GTIL has with the forum-the United States-is a registered agent for the service of process in Chicago, Illinois.[29]

The Supreme Court in *Perkins v. Benguet Consol. Mining Company found* that a foreign corporation was subject to general personal jurisdiction in the United States despite being incorporated under the laws of a foreign state.[30]  The *Perkins* Court stated that the foreign corporation "held directors' meetings, business correspondence, banking,

---

[24] *Id.* at 760.
[25] *Daimler*, 134 S.Ct. at 761.
[26] Rec. Doc. 59-2 and 112-1.
[27] Rec. Doc. 59-2.
[28] *Id.*
[29] Rec. Doc. 1-3.
[30] *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952).
34875

stock transfers, payment of salaries, purchasing of machinery."[31]   In the present case, Plaintiffs do not plead that GTIL conducted any activities commensurate with the foreign corporation in *Perkins*.  Like GTIL, the defendant in *Perkins* had registered agents for the service of process in the relevant forum state; however, the *Perkins* Court held that it was having a registered agent for service of process in concert with the continuous business activities in the forum state that made the foreign corporation subject to the general jurisdiction of the forum state.

Following *Daimler* and *Perkins*, the Fifth Circuit earlier this year in *Patterson v. Aker Solutions Incorporated* held that a United States District Court did not have general personal jurisdiction over a foreign corporation.  In *Patterson*, the Fifth Circuit refused to find general personal jurisdiction over a Norwegian corporation, Aker Subsea, that entered eleven secondment agreements with a business based in the United States.[32]  The *Patterson* court reasoned that it would be an "exceptional case" to exercise general personal jurisdiction over a corporation that is incorporated, and has its principal place of business, in a foreign country.[33]

> Using *Perkins* as the benchmark of the "exceptional case" where it is appropriate to exercise general jurisdiction over a corporation outside of its principal place of business or place of incorporation, we hold that Aker Subsea's contacts fall well short of effectively operating its business within the United States.  At most, Aker Subsea sent eleven of its employees to the United States when it entered into the secondment agreements with its affiliate.  These contacts are insufficient to make Aker Subsea essentially at home in the United States.[34]

---

[31] *Id.* at 445.
[32] *Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 235 (5th Cir. 2016).
[33] *Id.* at 234.
[34] *Id.* at 235.

34875

In light of this controlling jurisprudence from the Supreme Court and the Fifth Circuit, the Court must determine whether GTIL's contacts with the United States are so "'continuous and systematic' as to render [it] essentially at home"[35] in the United States, and whether GTIL's actions merit an "exceptional case"[36] where it is appropriate for the court to exercise general personal jurisdiction.  Given that GTIL is not incorporated under the laws of any state in the United States, nor does it have its principal place of business in the United States, the mere fact that GTIL has a registered agent for the service of process alone, absent any other contact with the United States, does not make GTIL's contacts with the United States so "'continuous and systematic' as to render [it] essentially at home"[37]  in the United States. GTIL's single act of having a registered agent for the service of process is not tantamount to the running of a business in the United States, like the defendant in *Perkins*.[38]   Moreover, GTIL's single act is not analogous to the actions of the foreign corporation in *Patterson* which entered eleven different employment contracts with a business based in the United States, which the Fifth Circuit still found was insufficient to merit the "exceptional case" where it is appropriate for the court to exercise general personal jurisdiction.[39]  Given that GTIL's one act, having a registered agent for the service of process, does not rise to the level of "'continuous and systematic' as to render [it] essentially at home"[40]  in the United States, because it is not tantamount to running its business operations in the United States, the Court declines to find in the

---

[35] *Daimler*, 134 S.Ct. at 761.
[36] *Patterson*, 826 F.3d at 235.
[37] *Daimler*, 134 S.Ct. at 761.
[38] *Patterson*, 826 F.3d at 235.
[39] *Patterson*, 826 F.3d at 235.
[40] *Daimler*, 134 S.Ct. at 761.
34875

present case that GTIL's contact with the United States is an "exceptional case" where it is appropriate for the court to exercise general personal jurisdiction.[41]

### B. Specific Jurisdiction

Even when the defendant lacks "continuous and systematic contacts" to support general jurisdiction, the court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[42]  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[43]  "[T]o exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."[44]  The Fifth Circuit employs a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[45] If the plaintiff can establish the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable.[46]

Plaintiffs argue that GTIL's preparation of the Leveraged Audit Reports and purposefully directing them towards the forum, the United States, subject GTIL to the specific jurisdiction of this Court.[47]  The cases relied upon by Plaintiffs stand for the

---

[41] *Patterson*, 826 F.3d at 235.
[42] *Luv n' care*, 438 F.2d 465, 469 (quoting *Helicopteros Nacionales*, 466 U.S. 408, 414, (1984)).
[43] *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014)(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).
[44] *Id.*
[45] *Monkton*, 768 F.3d 429 at 433(quoting *Seiferth* at 271).
[46] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citations omitted).
[47] Rec. Doc. 82 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).
34875

proposition that affirmative misrepresentations and omissions specifically directed to persons in the forum may support an assertion of specific jurisdiction.  Plaintiffs' argument is unavailing because Plaintiffs do not plead any direct or purposeful communication by GTIL directed at the United States in the present cause of action.

Plaintiffs further argue that the exercise of jurisdiction over GTIL is proper because fraud was directed at the Plaintiffs located in the United States.[48]  Plaintiffs argue that "Grant Thornton prepared the Leveraged Audit Reports for Leveraged, which Leveraged Audit Reports were sent directly to Louisiana residents."[49]  In fact, the Declaration of GTIL's Head of Finance-Treasurer[50]  reveals that GTIL did not provide accounting or auditing services to Leverage, Arbitrage, or any of the "Fletcher Funds", nor did GTIL "participate or play any role in any specific services that GT-Cayman may have provided to Leverage, Arbitrage, or the Fletcher Funds."[51]  Furthermore, the Supplemental Declaration reveals that GTIL has never prepared or disseminated audited financial statements or audit reports regarding the Fletcher Funds or any other person or entity, and that it was Grant Thornton Cayman ("GT-Cayman") that prepared the audit report in the present case.[52]  The allegations of the *Petition* do not adequately plead facts to suggest that perpetration of a fraud in the forum of the United States was committed by GTIL or that any level of control was exercised by GTIL over the alleged fraud.

Plaintiffs allege that GTIL "desires to wash its hands of the conduct of its self-appointed boogieman known as 'Grant Thornton Cayman' without accurately informing

---

[48] *Id.*
[49] *Id.*
[50] Rec. Doc. 59-2.
[51] *Id.*
[52] *Id.*
34875

the Court of Grant Thornton's relationship with member firms in assuring proper auditing procedures."[53]  However, both the Declaration and the Supplemental Declaration, offered by the Head of Finance-Treasurer of GTIL, clearly outline the relationship between GTIL and Grant Thornton Cayman.[54]  "GTIL does not own, in part or in whole, any interest in the Cayman Islands member firm ("GT-Cayman") that performed the audit work at issue in this case."[55]  GTIL and GT-Cayman have separate headquarters, GTIL in London, England, and GT-Cayman in Grand Cayman, Cayman Islands.[56]  GTIL and GT-Cayman do not have any officers or directors in common, GTIL and GT-Cayman maintain separate accounting systems, GTIL does not finance the operations of GT-Cayman, GTIL did not cause the incorporation of GT-Cayman, GTIL does not pay any salaries or other expenses incurred by GT-Cayman, nor do GTIL and GT-Cayman own any common property.[57]  While "GTIL has implemented certain policies and procedures, developed an audit planning tool, and periodically conducts reviews of its member firms to aid its members in providing consistent quality of service, GTIL does not exercise complete authority over the general policies and day-to-day operations of GT-Cayman."[58]   The Supplemental Declaration makes clear that GTIL member firms, like GT-Cayman, "do not relinquish control over the work they perform for their clients to the GTIL organization", and "GT-Cayman is responsible for accepting and choosing its own engagements, clients and partners, and GT-Cayman exercises its own independent professional judgment

---

[53] Rec. Doc. 82.
[54] Rec. Doc. 59-2 and Rec. Doc. 112-1.
[55] Rec. Doc. 112-1.
[56] *Id.*
[57] *Id.*
[58] *Id.*
34875

when performing audit work on behalf of its clients."[59]   Furthermore, the offering Memorandum and the Leveraged Audit Reports include the name Grant Thornton with a Grand Cayman, Cayman Islands address.[60]

Plaintiffs rely on the decision *In re Parmalat Securities Litigation* in support of their argument that the relationship between GTIL and GT-Cayman is a "highly complex factual relationship involving various degrees of control."[61]   Plaintiffs' reliance on *In re Parmalat*, however, is misguided.   *In re Parmalat* examined the relationship between Grant Thornton International ("GTI"), an Illinois based US corporation, and Grant Thornton Italy ('GT-Italy") a foreign subsidiary of GTI.[62]   GTI and GTIL, the organization that Plaintiffs sued in the present case, are separate legal entities formed under different laws- GTI under the incorporation laws of Illinois, and GTIL under the laws of England and Wales.   As Defendants note in their *Memorandum in Support of Motion to Dismiss*, GTI was a prior umbrella entity that is not the same legal entity as GTIL in the present case.[63] Furthermore, unlike the plaintiff's in *In re Parmalat*, who specifically pleaded actions on the part of GTI in overseeing the auditing actions on the part of GT-Italy, Plaintiffs in the present case do not plead that GTIL took any action in preparing the audit reports in question.   Because the legal entities in *In re Parmalat* and the present case are distinct, and the Plaintiffs herein do not plead any actions on the part of GTIL in overseeing or directing the audit prepared by GT-Cayman in the present case, the Court finds that *In re Parmalat* is not persuasive.

---

[59] *Id.*
[60] Rec. Doc. 59-6.
[61] *In re Parmalat Securities Litigation*, 598 F.Supp.2d 569 (S.D.N.Y. 2009).
[62] *Id.*
[63] Rec. Doc. 129.
34875

The Southern District of New York in *Ho v. Duoyuan Global Water, Inc.* granted GTIL's 12(b) motion in a nearly factually identical case.[64]  Like the Plaintiffs in the present case, the plaintiffs in *Ho* "alleged that the Grant Thornton name signifies that GTIL was the party to whom the statement is attributable and thus, ultimately liable."[65] Plaintiffs in the present case argue that the mere use of Grant Thornton on the relevant reports implicates GTIL for the actions of GT-Cayman, the entity that actually prepared the audit reports in question.[66]   The relevant communication in *Ho* was prepared by GT-Hong Kong and "had 'Hong Kong' written several lines below the signature in smaller font on the audit documents, referred to the place of signing, not the name of the company that signed the audits."[67]   The relevant communication in the present case included the address of Grant Thornton in the Caymans and also included the place of signing as George Town, Grand Cayman.[68] Like the plaintiffs in *Ho*, Plaintiffs herein "have not pled sufficient facts for the claim that the signature by Grant Thornton is attributable to GTIL."[69] Here, Plaintiffs merely argue:

> it is disingenuous and unethical for Grant Thornton to market its international and worldwide expertise on one hand in seeking business, use the name "Grant Thornton" as a representative of the entire company that is the fourth largest firm in the world, then when a problem comes up with the Securities and Exchange Commission such as the case of the Leveraged Audit Reports, attempt to argue that it is the problem of "the boys located in the Caymans."[70]

---

[64] *Ho v. Duoyuan Global Water, Inc*, 887 F.Supp.2d 547, 577 (S.D.N.Y. 2012).
[65] *Id.* at 576.
[66] Rec. Doc. 82.
[67] *Ho.* at 576.
[68] Rec. Doc. 59-6.
[69] *Ho*, 887 F.Supp.2d at 576.
[70] Rec. Doc. 82.

34875

Citing the Supreme Court decision in *Janus Capital Group*, the court noted: "the fact that the two parties share a similar name is not indicative that both may be held liable for the alleged misstatements, even if GTIL and GT-HK share close business relationships."[71] Like the plaintiffs in *Ho*, Plaintiffs in the present case "have not pled facts that support the claim that GTIL made the misstatements in the filings by showing that GTIL had ultimate authority over the GT-Hong Kong."[72]   Given the strong factual similarities between *Ho* and the present case, the Court finds that the same analysis and reasoning in *Ho* applies to the facts of this case.

Plaintiffs also argue that the preparation and direction of the Leveraged Audit Reports towards the forum the United States by GTIL subjects GTIL to the specific jurisdiction of this Court.[73]   However, the both the Declaration and the Supplemental Declaration, offered by the Head of Finance-Treasurer of GTIL, clearly demonstrate that GTIL did not direct the actions of GT-Cayman in preparing the audits in question.[74] Plaintiffs do not traverse these statements made by the Head of Finance-Treasurer of GTIL but simply state that "it is disingenuous and unethical" for GTIL to not be liable for the actions of the audit of GT-Cayman.[75]   Furthermore, GTIL does "not plead sufficient facts for the claim that the signature by Grant Thornton is attributable to GTIL."[76]   Because Plaintiffs did not plead that GTIL oversaw or directed the Audit Reports by GT-Cayman that were directed at the United States, the Court cannot find that GTIL purposely directed

---

[71] *Ho*, 887 F.Supp.2d at 577. *See Janus Capital Group Inc.*, 564 U.S. 135, 147 (2011).
[72] *Id.*
[73] Rec. Doc. 82 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)).
[74] Rec. Doc. 59-2 and Rec. Doc. 112-1.
[75] Rec. Doc. 82.
[76] *Ho*, 887 F.Supp.2d 547 at 577.
34875

its activities toward the United States.  Moreover, Plaintiffs cause of action did not arise from GTIL's forum-related contacts because Plaintiffs do not plead sufficient facts to support the assertion that GTIL is responsible for the actions of GT-Cayman. Accordingly, Plaintiffs' cause of action cannot arise out of GTIL's related contact with the United States because GTIL had no contact with the United States in this cause of action.  The Court finds it lacks specific personal jurisdiction over GTIL.

## III.   CONCLUSION

For the above stated reasons, Defendant GTIL's *Motion to Dismiss for Lack of Personal Jurisdiction*[77] is GRANTED.  Defendant GTIL's *Motion to Dismiss for Failure to State a Claim for Relief*[78] is DISMISSED as Moot.

Plaintiffs fail to allege, with reasonable particularity, facts which would suggest the possible existence of minimum requisite contacts necessary to support the assertion of personal jurisdiction over GTIL.  Where, as here, the Plaintiffs fail to make a "preliminary showing of jurisdiction" a request for jurisdictional discovery is properly denied."[79]  The Court finds that jurisdictional discovery as to GTIL would serve no useful purpose. Accordingly, the Plaintiff's *Motion to Continue Submission Date to Allow Jurisdictional Discovery* to GTIL is DENIED.[80]

Signed in Baton Rouge, Louisiana the 15th day of September, 2016.

_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[77] Rec. Doc. 59.
[78] Rec. Doc. 59.
[79] *Fielding v. Huber Burda Media, Inc.*, 415 F.3d 419, 429 (5th. Cir. 2005).
[80] Rec. Doc. 71.
34875