# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT                                    CIVIL ACTION
SYSTEM, ET. AL.


VERSUS                                                      13-373-SDD-EWD


CITCO GROUP LIMITED, ET. AL.

## <u>RULING</u>

Before the Court are the following Motions:

1. Citco Technology Management, Inc.'s ("CTM") *Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Meet the Pleading Requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and Failure to State a Claim for Relief*;[1]

2. Citco (Canada), Inc.'s ("Citco Canada") and  Citco Fund Services (Bermuda) Limited ("Citco Bermuda") *Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Meet the Pleading Requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and Failure to State a Claim for Relief*;[2]

3. Citco Bank Nederland N.V. Dublin Branch ("CBN Dublin"), Citco Banking Corporation, N.V. ("Citco Banking"), Citco Global Custody N.V. ("Citco Global Custody"), and Citco Group Ltd.'s *Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Meet the Pleading Requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and Failure to State a Claim for Relief*;[3] and

---

[1] Rec. Doc. 68.
[2] Rec. Doc. 107.
[3] Rec. Doc. 156.

4.  Citco Fund Services (Europe) BV's ("Citco Europe") *Motion to Dismiss for Lack of Personal Jurisdiction, Failure to Meet the Pleading Requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and Failure to State a Claim for Relief.*[4]

The Motions are opposed[5] and replies[6] were submitted. For the reasons which follow, the Motions will be granted in part and denied in part.

## I.    FACTUAL and  PROCEDURAL BACKGROUND

Plaintiffs are three Louisiana pension funds, Firefighters' Retirement System, Municipal Employees Retirement System of Louisiana, and New Orleans Firefighters' Pension & Relief Fund. Plaintiffs filed suit against 23 defendants in State court[7], asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims. The matter was removed pursuant to 28 U.S.C. §1452(a), and jurisdiction is maintained in this Court pursuant 28 U.S.C. 1334(b)[8].

The Plaintiffs' claims arise from a $100 million investment loss.  In April of 2008, the Plaintiff pension funds purchased 100,000 Series N Shares in FIA Leveraged Fund (hereafter "Leveraged") for $100 million. After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.

---

[4] Rec. Doc. 185.
[5] Rec. Docs. 108, 109, 137, 138, 166, 167, 191, and 192.
[6] Rec. Docs. 155, 180, 181, and 256.
[7] *Firefighters' Retirement System, et al.* v. *Citco Group Limited, et al.,* Docket No. 619601, 19th Judicial District Court, Parish of East Baton Rouge, Louisiana.
[8] "[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This Action is related to a bankruptcy case under title 11 pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  Specifically, on June 29, 2012, Fletcher International Ltd. ("FIL" or the "Debtor") filed a voluntary petition under 11. U.S.C. §§ 101 *et seq.*  SDNY Bankruptcy Court Case No. 12-12796. In this case, the 5th Circuit has noted that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal." (Rec. Doc. 222).

Ultimately, the shares went unredeemed and the Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.

Defendant, Citco Technology Management, Inc. ("CTM"), one of twelve Citco[9] entities named as a Defendant, is a Florida corporation with its principal place of business in Fort Lauderdale and offices in Charlotte, North Carolina, and Jersey City, New Jersey.[10] CTM argues that it has utterly no contact with Louisiana and, thus, the Court cannot constitutionally exercise personal jurisdiction over CTM.[11]  By *Ruling*[12] entered on June 21, 2016, this Court granted the Defendant CTM's *FRCP 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.*[13] On June 24, 2016, the Court vacated[14] its personal jurisdiction *Ruling* as to CTM "[i]n light of the Fifth Circuit's Ruling[15] that, at the time of removal, jurisdiction was proper under 28 U.S.C. 1334(b) because the suit involved matters "related to" a Chapter 11 bankruptcy proceeding." The Court ordered the Parties to brief "the applicable legal standard for the Court's exercise of *in personam* jurisdiction

---

[9] The Citco entities, collectively referred to as the "Citco Defendants", named and defined in the original Petition include Citco Technology Management, Inc., Citco Group Limited, Citco Fund Services (Cayman Islands), Limited, Citco Fund Services (Suisse) S.A., Citco Banking Corporation N.V., Citco N.V., Citco Fund Services (Europe) BV, Citco (Canada) Inc., Citco USA, Citco Bank Nederland, N.V. Dublin Branch, Citco Global Custody N.V., and Citco Fund Services (Bermuda) Limited. Rec. Doc. 1-3.
[10] Rec. Doc. 68-2.
[11] The President and Director of CTM attest that CTM does not maintain, and never has maintained, an office in Louisiana; has never registered to do business in Louisiana; has no registered agent for the service of process in Louisiana; does not have, and has never had, any employees in Louisiana; does not own, lease or rent—and has never owned, leased or rented—property in Louisiana; has never had a mailing address or phone number in Louisiana; has never had a bank account in Louisiana; does not market or advertise its services to Louisiana residents and has never marketed or advertised its services to any residents of Louisiana; and has never generated any revenue in Louisiana. Rec. Doc. 68-2.
[12] Rec. Doc. 287.
[13] Rec. Doc. 68.
[14] Rec. Doc. 290.
[15] Rec. Doc. 222.

considering nationwide service of process authority pursuant to Bankruptcy Rule 7004(d)."[16] The Parties submitted briefs[17] which the Court has considered.

## II.    LAW AND ANALYSIS OF RULE 12(B)(2) MOTIONS

Defendants, Citco Technology Management, Inc., Peter M. Zayfert, Grant Thornton International Ltd, and Skadden, Arps, Slate, Meagher & Flom LLP (the "removing defendants") removed this matter pursuant to 28 U.S.C. §§ 1332(a), 1334(b), 1367, 1441, 1446 and 1452(a).[18] In their *Notice of Removal*, the removing defendants stated as "Grounds for Removal", that:

> Removal is proper under 28 U.S.C. §1452(a), which provides that "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district has jurisdiction of such claim or cause of action under section 1334 of this title." Title 28 U.S.C. Section 1334(b), in turn, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." As set forth below, this Action is related to a bankruptcy case under title 11 pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Specifically, on June 29, 2012, Fletcher International Ltd. ("FIL" or the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11. U.S.C. §§ 101 *et seq.* The Debtor's case is being administered in the Bankruptcy Court under Chapter 11 Case No. 12-12796 (REG) (the "Bankruptcy Case").

The removing defendants further allege that the Plaintiffs filed a proof of claim in the Bankruptcy Case. This Court, affirmed by the Fifth Circuit, has concluded that this case is properly in federal district court on "related to" jurisdiction under § 1334(b).[19] This is law of the case. "Because the Court has 'related to' bankruptcy jurisdiction pursuant to

---

[16] Rec. Doc. 290.
[17] Rec. Doc. 297 Defendants' Joint Memorandum and Rec. Doc. 298 Plaintiffs' Memorandum.
[18] Rec. Doc. 1.
[19] Rec. Doc. 222.

§ 1334(b), the entire body of the Federal Rules of Bankruptcy Procedure…applies to this action." [20]

Movants argue that the claims in this action are non-core state law claims and that assertion of personal jurisdiction over them in such removed non-core proceedings based on a nationwide service of process under bankruptcy rules is a violation of the due process clause of the Fifth Amendment.[21] Citing *Daimler* and *Walden*,[22] Defendants argue that, notwithstanding nationwide service of process, constitutional due process must nonetheless be scrutinized under the purposeful minimum contacts analysis. The Court agrees that a federal nationwide service of process authority does not suspend or displace the constitutional guarantees of due process. However, as conceded by the Defendants, the Fifth Circuit has upheld the constitutionality of exercising personal jurisdiction over an out of state defendant based on nationwide service of process and minimum contacts with the United States.[23]

In *Busch v. Buchman, Buchman & O'Brien, Law Firm*,[24] the court considered personal jurisdiction based on nationwide service of process provisions in the 1934

---

[20] *Lentz v. Trinchard*, 730 F.Supp.2d 567, 577 n. 33 (E.D. La. 2010) (citing *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997) ("We have determined that this case is properly in federal district court on 'related to' jurisdiction under § 1334(b). The entire body of Bankruptcy Rules, therefore, applies to this action."); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1236-38 (3rd Cir. 1994) (analyzing history and current language of bankruptcy rules and finding that "the Bankruptcy Rules govern non-core, "related to" proceedings before a district court…."); *Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1243-44 (7th Cir. 1990).

[21] Rec. Doc. 297.

[22] *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014); *Walden v. Fiore*, 134 S.Ct. 1115 (2014).

[23] Although the Fifth Circuit has not specifically addressed personal jurisdiction in conjunction with Bankruptcy Rule 7004, the Court has upheld the exercise of personal jurisdiction in the context of nationwide service of process under other federal statutes. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994*)(*1934 Securities Exchange Act*); Bellaire General Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 826 (5th Cir. 1996)(ERISA).

[24] 11 F.3d 1255 (5th Cir. 1994).

Securities Exchange Act.[25]  There, plaintiff alleged that defendant, a dissolved New York law firm ("Buchman"), misrepresented information and failed to disclose material information included in a tax opinion and confidential offering memorandum drafted by the firm.  Buchman filed a motion to dismiss, arguing that it did not have minimum contacts with Texas and, therefore, the court could not exercise personal jurisdiction.  The *Busch* court disagreed, explaining that 15 U.S.C. §78aa "gives the district court the authority to serve defendants nationwide"[26] and that "'due process requires only that a defendant in a federal suit have minimum contacts with the United States.'"[27]  The Fifth Circuit stated that "while the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test."[28] "[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States."[29]  The court concluded that because the relevant sovereign was the United States, "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States."[30] Accordingly, under *Busch*, where the relevant sovereign is the United States, the "forum" with which the defendant must have minimum contacts to satisfy due process is expanded to be the United States (rather than a particular state).

---

[25] 15 U.S.C. § 78aa.
[26] 11 F.3d 1255 at 1257.
[27] *Id.* (quoting *Federal Trade Commission v. Jim Walters Corp.*, 651 F.2d 251, 256 (5th Cir. 1981).
[28] *Id.* at 1258.
[29] *Id.*
[30] *Id.*

In *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,*[31] the Fifth Circuit had occasion to revisit its "national contacts" analysis of *Busch*. There, the court considered the ERISA provision which provides for nationwide service of process.[32] Defendant, a corporation operating exclusively within the state of Michigan, argued that it did not have sufficient contacts with the state of Texas to be subject to personal jurisdiction in the Southern District of Texas. The Fifth Circuit found that the district court properly exercised personal jurisdiction over the defendant in Texas, explaining that it "placed no limitation on our conclusion in *Busch* regarding personal jurisdiction in cases involving federal statutes providing for nationwide service of process" and therefore the case before it fell "squarely within our *Busch* holding."[33] While the *Bellaire* court "dutifully appl[ied] *Busch*,"[34] it expressed "misgivings" stating, "[w]e view personal jurisdiction and service of process as conceptually distinct issues. We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions."[35]

Notwithstanding the philosophical questions recognized by the Fifth Circuit, *Busch* and *Bellaire* remain binding authority on this Court. Under the law in this Circuit, the personal jurisdiction inquiry is collapsed into a question of a defendant's contacts with the United States. Thus far, the Fifth Circuit does not require any additional "fairness or

---

[31] 97 F.3d 822 (5th Cir. 1996).

[32] 28 U.S.C. § 1132(e)(2).

[33] 97 F.3d 822, 825-826.

[34] The *Bellaire* court noted *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121, n. 8 (5th Cir. 1992) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court."). 97 F.3d 826 n. 3.

[35] *Id.* at 825.

reasonableness" test as a matter of constitutional due process.[36] The question, thus, presented is whether movants had purposeful and meaningful contacts with the United States.

### A. Personal Jurisdiction Analysis as to CTM[37]

CTM is a Florida corporation with its principal place of business in Fort Lauderdale and offices in Charlotte, North Carolina, and Jersey City, New Jersey.[38] Although, CTM was served pursuant to Louisiana's Long Arm Statute, the Bankruptcy Rules provide for nationwide service of process. Bankruptcy Rule 7004(b) provides for service of process by virtually the same manner and means as service on a non-Louisiana resident under Louisiana's Long Arm Statute.[39]

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient purposeful minimum contacts with the forum such that requiring the defendant to defend its interests in the forum does not "offend traditional notions of fair play and substantial justice." [40] The

---

[36] Other Circuits undertake additional Fifth Amendment due process analysis to determine if the exercise of personal jurisdiction would be "fair and reasonable". *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997). The Eleventh Circuit has concluded that "the Due Process Clause of the Fifth Amendment provides an independent constitutional limitation on the court's exercise of personal jurisdiction over a domestic defendant served pursuant to a federal statute's nationwide service of process provision." *Id.* at 93 According to the Eleventh Circuit, "'minimum contacts' with the United States do not...automatically satisfy the due process requirements of the Fifth Amendment . . . . [t]here may be] circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Id.* at 947.

[37] Rec. Doc. 68.

[38] Rec. Doc. 68-2.

[39] LA R.S. 13:3204 requires that "a certified copy of a contradictory motion, rule to show cause, or other pleading filed by the plaintiff. . . shall be sent to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier. " *Compare* Federal Rules of Bankruptcy Procedure, Rule 7004(b) which requires service by first class mail.

[40] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

Supreme Court instructs that "[t]he proper question is whether the defendant's conduct connects him to the forum in a meaningful way."[41]

In this case, where a federal statute authorizes nationwide service of process, the relevant sovereign or forum is not the particular State where the action is filed but, rather, the forum to which the minimum contacts analysis is applied, which is the United States. Thus, the relevant inquiry is whether CTM "has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court."[42] CTM resides in and, undisputedly, has minimum contacts in the United States. The Citco Defendants concede that "if nationwide jurisdiction applies" CTM "is subject to jurisdiction in the U.S."[43]  As CTM is a resident of the United States and, therefore, necessarily has minimum contacts in the United States, the Court finds that the due process concerns of the Fifth Amendment are satisfied.

Even if this Court were to evaluate whether the exercise of jurisdiction over CTM was so burdensome as to constitute "constitutionally significant inconvenience",[44] the outcome would be the same.   CTM fails to present a 'compelling case' that litigating this action in this District would place them at a 'severe disadvantage'.[45] CTM has presented no evidence that their ability to defend this lawsuit will be compromised significantly if they are required to litigate in Louisiana.

---

[41] *Walden v. Fiore,* 134 S. Ct. at 1118.
[42] *Fitzsimmons v. Barton*, 589 F.2d 330, 332 (7th Cir. 1979).
[43] Rec. Doc. 297.
[44] *Republic of Panama,* 119 F.3d at 948.
[45] *Burger King*, 471 U.S. 462. (1985).

Accordingly, CTM's FRCP 12(b)(2) *Motion to Dismiss for Lack of Personal Jurisdiction*[46] is DENIED.

## B.  Personal Jurisdiction Analysis as to Citco Canada and Citco Bermuda[47]

Plaintiffs bear the burden of making a *prima facie* showing that the Court has jurisdiction over the defendant.[48] Plaintiffs must make factual allegations to support the exercise of jurisdiction; conclusory assertions are insufficient.[49]

### 1.  General Jurisdiction

Citco-Bermuda and Citco-Canada are two of twelve separate Citco entities named as Defendants.[50] Citco-Bermuda is a Bermuda corporation with its principal place of business in Hamilton, Bermuda.[51]   Citco-Canada is a Canadian corporation with its principal place of business in Toronto.[52]  Record affidavits[53] submitted by Citco Bermuda and Citco Canada do not address the entities contact with the United States, which is the forum of inquiry.[54] Rather, the affidavits offered by Citco Bermuda and Citco Canada attest to the absence of contact with the State of Louisiana.[55]

---

[46] Rec. Doc. 68.

[47] Rec. Doc. 107.

[48] *Percle* v. *SFGL Foods, Inc.*, 356 F. Supp. 2d 629, 633-634 (M.D. La. 2004); *Doddy* v. *Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996).

[49] *Panda Brandywine Corp.* v. *Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

[50] The Citco entities, collectively referred to as the "Citco Defendants", named and defined in the original *Petition* include Citco Technology Management; Citco Group Limited; Citco Fund Services (Cayman Islands), Limited; Citco Fund Services (Suisse) S.A.; Citco Banking Corporation N.V.; Citco N.V.; Citco Fund Services (Europe) BV; Citco (Canada); Citco USA; Citco Bank Nederland, N.V. Dublin Branch; Citco Global Custody N.V.; and Citco Fund Services (Bermuda) Limited. Rec. Doc. 1-3.

[51] Rec. Doc. 1-3, ¶2(L) and 107-2.

[52] Rec. Doc. 1-3, ¶2(G) and 107-3.

[53] Rec. Docs. 107-2 and 107-3.

[54] The Court hereby adopts by reference the analysis and reasoning set forth in its previous Ruling, Rec. Doc. No. 323 pp. 4-5.

[55] Rec. Doc. 107-2 and 107-3.

The Fifth Circuit has very recently observed that it would be an "exceptional case" for the court to exercise general personal jurisdiction over a corporation that is incorporated, and has its principal place of business, in a foreign country.[56] The Fifth Circuit interprets *Daimler* to make it "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[57] In *Monkton*, the Fifth Circuit held that a Cayman Islands bank that made phone calls to Texas customers, sent wire transfers to Texas banks, and advertised in Texas via its website, was not "essentially at home" in Texas.[58]

The Complaint fails to plead sufficient facts which would support this Court's exercise of general personal jurisdiction over Citco Bermuda or Citco Canada. The Complaint does not allege activity so "'continuous and systematic' by Citco Bermuda or Citco Canada as to render [them] essentially 'at home' in the United States"[59]

### 2. Specific Jurisdiction

The court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[60]  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[61]  "[T]o exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial

---

[56] *Patterson v. Aker Solutions Inc., 826 F.3d 231, 235 (5th Cir. 2016).*

[57] *Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014)* at 432.

[58] *Id.* at 431–32; S*ee also, Norman* v. *H & E Equip. Servs., Inc.*, No. 3:14–CV–367, 2015 WL 1281989, at *4–5 (M.D. La. Mar. 20, 2015) (finding that the DuPont corporation, which owned and operated three manufacturing plants in Louisiana, did not have sufficient contacts with Louisiana to give rise to general jurisdiction).

[59] *Daimler*, 134 S.Ct. at 761.

[60] *Luvn' care*, 438 F.2d at 469 (quoting *Helicopteros Nacionales*, 466 U.S. at 415, (1984)).

[61] *Walden*, 134 S.Ct. 1115, 1121 (2014)(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

connection with the forum",[62] in other words, when the nonresident defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[63] The Fifth Circuit employs a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum [United States] i.e., whether it purposely directed its activities toward the forum [United States] or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[64] If the plaintiff can establish the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable.[65]

Plaintiffs argue that the affidavits submitted in support of Citco Bermuda and Citco Canada's motion to dismiss "conveniently omit any discussion of . . . the role [they] played in providing services for the Administrator relating to the operations of Leveraged."[66] This mischaracterizes the record. In fact, the affidavits[67] offered in support of the 12(b)(2) Motion attest that neither Citco Bermuda nor Citco Canada provide, or ever provided, any administrative, management, or accounting services to Leveraged[68] or Arbitrage[69] (hereinafter collectively the "Funds"). Nor, according to the affidavits, did either entity

---

[62] *Id.*
[63] *Percle*, 356 F. Supp. 2d at 634(quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).
[64] *Monkton*, 768 F.3d at 433(quoting Seiferth at 271).
[65] *Seiferth,* 472 F.3d 266, 271.
[66] Rec. Doc. 137, p. 1.
[67] Rec. Docs. 107-2 and 107-3.
[68] FIA Leveraged Fund, the Fund which is the subject of the investment losses central to this case. Rec. Doc. 1-3, ¶ 10.
[69] Fletcher Income Arbitrage Fund, Ltd. The alleged "master fund". Rec. Doc. 1-3, ¶ 10.

prepare or disseminate net asset value statements or the offering memorandum referenced in the Complaint.[70]

Plaintiffs argue that the "Citco Defendants [which include Citco Bermuda and Citco Canada] were the beneficiary of a $30,000,000 payment from the offering proceeds".[71] The Complaint sets forth no specific factual allegations that Citco Bermuda or Citco Canada derived revenue from the forum (United States). Plaintiffs' brief also claims a misappropriation of funds by the "Citco Defendants", of which Plaintiffs assert that Citco Bermuda or Citco Canada had personal knowledge.[72]  Again, there are no allegations in the Complaint of misappropriation[73] and no allegations that that movants had knowledge of any alleged misappropriation.

Allegations of forum related conduct attributable to the "Citco Defendants" collectively are insufficient to carry the Plaintiffs' burden of making a *prima facie* showing of specific jurisdiction.[74] "Plaintiffs cannot simply 'lump' all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant" for purposes of establishing jurisdiction over non-resident defendants.[75]

---

[70] Rec. Docs. 107-2, 107-3.

[71] Rec. Doc. 137, p. 6. It is noted that the Plaintiffs filed a virtually identical opposition to the instant Motions as their opposition to Defendant Citco Technology Management's Motion. Rec. Doc. 108.

[72] In their brief, Plaintiffs contend that the "Citco Defendants misappropriated $30,000,000 of the funds that the Louisiana Funds contributed to Leveraged." (Rec. Doc. 137, p. 2) and that "the Citco Defendants were the financial beneficiary of the fraud to the tune of $30 million" (Rec. Doc. 137, pp. 5-6) and that "Citco Technology has personal knowledge of the fact that the Citco Defendants were the direct financial beneficiary of more than $30,000,000 of funds contributed by the Louisiana Funds as a result of the fraud that was perpetrated against the Louisiana Funds by the Citco Defendants." (Rec. Doc. 137, p. 8, #2).

[73] See discussion at page 23, infra.

[74] *Percle* v. *SFGL Foods, Inc.*, 356 F. Supp. 2d 629, 633-634 (M.D. La. 2004); *Doddy* v. *Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996).

[75] *Lippe* v. *Bairnco Corp.*, 225 B.R. 846, 860 (S.D.N.Y. 1998) (see *Southland Secs Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

3. <u>Single Business Enterprise Theory</u>

Plaintiffs essentially argue that the Citco entities, including Citco Bermuda and Citco Canada are a single business entity[76] and, thus, if any Citco entity purposefully availed itself to the forum then personal jurisdiction lies as to all the Citco entities. Alleging that Citco Group controlled the operations and affairs of Citco Bermuda and Citco Canada, Plaintiffs contend that Citco Bermuda and Citco Canada are fused with Citco Group for jurisdictional purposes.[77]  "As a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated."[78] Related, but separately incorporated corporate entities enjoy a presumption of independence which may be rebutted only by "clear evidence" of interdependence or joint control beyond "the mere existence of a corporate relationship".[79]

The Plaintiffs' Complaint is devoid of factual allegations which provide clear evidence that rebuts the presumption of Citco-Bermuda and Citco-Canada are independent of the Citco Group and the other Citco Defendants.

Accordingly, Citco-Bermuda and Citco-Canada's 12(b)(2) *Motion to Dismiss for Lack of Jurisdiction*[80]  is GRANTED.

---

[76] Plaintiffs allege that "the Citco Group does not earn any revenue independent of the revenues generated by its subsidiaries, and it serves as the vehicle by which its operating subsidiaries procure business. . . from within the United States and around the world." (Rec. Doc. 1-3, ¶65)  Citco Group's individual corporations, including Citco Bermuda and Citco Canada are all allegedly "controlled by Citco Group" (Rec. Doc 1-3, ¶ 69) and that the Citco Defendants "operate as a single financial services provider". (Rec. Doc. 1-3, ¶68).
[77] Rec. Doc. 137.
[78] *Freudensprung* v. *Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir. 2004).
[79] *Id. (*citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir.1999)).
[80] Rec. Doc. 156.

### C.  Personal Jurisdiction Analysis as to CBN Dublin[81]

Movant, CBN Dublin is located in Dublin, Ireland. It is a branch office of Citco Bank Nederland N.V, a Netherlands corporation with its principal place of business in Amsterdam, The Netherlands.[82]   Plaintiffs allege that Defendant CBN Dublin "provided custodial services to Leveraged [and] Arbitrage".[83] CBN Dublin admits that it "provides banking, brokerage, custodian and trustee services for certain funds-of-funds and hedge funds" but it denies that "provided such services  [Leveraged] or [Arbitrage],  and [attests that] it has never provided banking, brokerage, or custodian and trustee services to [Plaintiffs]".[84]

The Court lacks general personal jurisdiction over CBN Dublin for the same reasons assigned herein as to Citco Bermuda and Citco Canada. The Complaint does not allege 'continuous and systematic' activity by CBN Dublin so as to render it essentially 'at home' in the United States'.[85]  The facts, as pled, do not present an "exceptional case" for the court to exercise general personal jurisdiction over CBN Dublin whose incorporation and principal place of business is in a foreign country.[86]

The Court lacks specific personal jurisdiction over CBN Dublin. The unchallenged attestation of Michael Leers[87] establishes that CBN Dublin has never provided banking, brokerage, or custodian and trustee services Leveraged, Arbitrage or the Plaintiffs.  There

---

[81] Rec. Doc. 156.
[82] Rec. Doc. 156-4, Rec. Doc. 1-3, ¶ 2(J).
[83] *Id.*
[84] Rec. Doc. 156-4, ¶ 4.
[85] *Daimler*, 134 S.Ct. at 761.
[86] *Patterson,* 826 F.3d 231, 235 (5th Cir. 2016).
[87] Rec. Doc. 156-4.

are no particularized factual allegations of suit-related conduct by CBN Dublin in the forum[88] hence no specific personal jurisdiction.

For the reasons set forth as to Citco Bermuda and Citco Canada, the Court rejects the Plaintiffs single business enterprise theory for purposes of asserting personal jurisdiction. The Plaintiffs' Complaint fails to plead facts which provide clear evidence that rebuts the presumption that CBN Dublin is independent of the Citco Group and the other Citco Defendants.

Citco Bank Nederland N.V. Dublin's ("CBN Dublin") *Motion to Dismiss for Lack of Personal Jurisdiction*[89] is GRANTED.

### D.  Personal Jurisdiction Analysis as to Citco Global Custody[90]

Citco Global Custody is a Netherlands corporation with its principal place of business in Amsterdam, The Netherlands.[91] Plaintiffs plead "on information and belief that Citco Global Custody, provided custodial services to Leveraged and Arbitrage. Michael Leers, attests that "Global Custody only acts in a nominal capacity to hold the securities of clients of Citco Bank.  It has never provided such services  to Leveraged or Arbitrage, and it has never provided trustee, custodian, or any other services to the Plaintiffs. . . . and has [n]ever had any contact with, or provided any information to, Plaintiffs."[92]  This attestation is unchallenged.

---

[88] *Id.*
[89] Rec. Doc. 156.
[90] Rec. Doc. 156.
[91] Rec. Docs. 1-3, ¶2K; 156-4.
[92] Rec. Doc. 156-4.

The analysis applied by the Court as Citco Bermuda, Citco Canada, and CBN Dublin applies to Citco Global Custody. Citco Global Custody N.V.'s 12(b)(2) *Motion to Dismiss for Lack of Personal Jurisdiction*[93] is GRANTED.

### E.  Personal Jurisdiction Analysis as to Citco Banking[94]

Citco Banking is organized under the laws of The Netherlands with its principal place of business in Willemstad, Curacao.[95] Citco Banking admits that it provided banking, brokerage and custodial services to Leveraged and banking services to Arbitrage.[96]  Citco Banking's "services included effecting transactions relating to the purchase and sale of securities in the name of and for the account of [Leveraged and Arbitrage] or any nominee for the account of [Leveraged and Arbitrage]."[97] Citco Banking, however, denies that any of its services were provided in Louisiana. Citco Banking's contacts with Louisiana is not the relevant inquiry. Rather, the personal jurisdiction inquiry turns on Citco Banking's contacts with the United States.

The Leveraged and Arbitrage funds are both incorporated under the laws of the Cayman Islands.[98] Arguably, the services that Citco Banking provided for the Leveraged and Arbitrage funds does not constitute contact with the United States. However, the Plaintiffs' Complaint alleges that the offering documents represented:

> Citco Banking Corporation N.V. will act as the Fund's custodian.
> Citco Banking Corporation N.V. will act as the escrow bank of the Fund.  It is an affiliate of the Citco Group, Ltd.
> The Escrow Bank serves as the Fund's  banker for purposes of receiving subscription funds, disbursing redemption payments and processing  cash transactions not directly related to the Fund's  portfolio.[99]

---

[93] Rec. Doc. 156.
[94] Rec. Doc. 156.
[95] Rec. Docs. 1-3, ¶2D, 156-2.
[96] Rec. Doc. 156-2.
[97] *Id.*
[98] Rec. Doc. 1-3, ¶10.
[99] Rec. Doc. 1-3, ¶27.

The offering documents are fundamentally an offer to sell. The offer was directed at the Plaintiffs in the United States. The Complaint alleges that the offering documents represent to the plaintiffs/offerees that Citco Banking is an affiliate of Citco Group, Ltd. and that Citco Banking will be performing certain administrative tasks.  In this regard, Citco Banking purposely directed its activities toward the forum [United States] and the Plaintiffs' cause of action arises out of Citco Banking's forum-related contacts, i.e. the offering documents.[100] The Court finds that the allegations regarding the offering documents establish a nexus between the Plaintiffs' claims and Citco Banking giving rise to specific personal jurisdiction. Citco Banking's 12(b)(2) *Motion to Dismiss for Lack of Jurisdiction*[101] is DENIED.

The Plaintiffs' *Motion to Continue Submission Date to Allow Jurisdictional Discovery to Citco Banking*[102] is DENIED as moot.

### F.  Personal Jurisdiction Analysis as to Citco Group Ltd.[103]

Citco Group is a Cayman Islands corporation with its principal place of business in Grand Cayman, Cayman Islands.[104] Plaintiffs allege that Citco Group is "an integrated financial services holding company that operates through numerous subsidiaries around the world", including each of the other Citco entities named as Defendants in this action.[105] Plaintiffs allege that Citco Group "does not earn any revenue independent of the revenue generated by its subsidiaries, and it serves as the vehicle by which its operating

---

[100] *Monkton*, 768 F.3d at 433 (quoting *Seiferth*, 472 F.3d 266, 271).
[101] Rec. Doc. 156.
[102] Rec. Doc. 164.
[103] Rec. Doc. 156.
[104] Rec. Docs. 1-3, ¶ 2A, 156-3.
[105] Rec. Doc. 1-3, ¶ 2A.

subsidiaries procure business from, and conduct extensive fund management services for, funds operated from within the United States and around the world"[106] and that "Citco Group's individual corporations are all controlled by Citco Group, which appoints division directors to monitor the daily operations of each division, including . . . the fund services division."[107]  Citco Group largely concedes these points. Nicholas Braham, Citco Group's Secretary, attests that "Citco Group is a holding company, not an operating company. While certain of its subsidiaries provide administration, banking, custodian, and other services to hedge funds and funds-of-funds, Citco Group does not provide such services itself."[108]

For the same reasons assigned to the jurisdiction challenges by Citco Bermuda, Citco Canada, CBN Dublin, and Citco Global Services, this Court lacks general and specific jurisdiction over Citco Group. However, the argument that Citco Group is the alter ego or is fused with other Citco entities over whom this Court has personal jurisdiction is persuasive. Citco Group's alleged control of other Citco entities over whom this Court has personal jurisdiction is relevant to establishing jurisdiction.[109]

Although institutional independence of related corporate entities is presumed, the presumption may be rebutted by 'clear evidence,' of more than the mere existence of a corporate relationship.[110]

---

[106] Rec. Doc. 1-3, ¶ 65.
[107] Rec. Doc. 1-3, ¶ 69.
[108] Rec. Doc. 156-3.
[109] *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 2006 WL 708470, at *4 (S.D.N.Y., 2006).
[110] *Gines* v. *D.R. Horton, Inc.*, 867 F. Supp. 2d 824, 831 (M.D. La. 2012).

The Plaintiffs bear the burden, by preponderance, of demonstrating that the court may exercise jurisdiction over each Defendant. Prior to discovery, "allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[111] The Court has found that it has personal jurisdiction over Citco Banking. The offering documents represent that Citco Banking "is an affiliate of Citco Group."[112] Furthermore, the Plaintiffs' Complaint alleges that the only source of revenue to Citco Group is through the operations of its subsidiaries. This allegation is substantiated by the affidavit of Nicholas Braham, which declares that Citco Group "is a holding company, not an operating company."[113] Without operations, the logical conclusion, and indeed the premise of holding company/subsidiary structures, is that Citco Group's revenues are derived from the operations of its subsidiaries. "[R]evenue derived from the forum can be a persuasive factor in establishing the minimum contacts required for the exercise of general jurisdiction."[114]

Citco Fund Services (Cayman Islands) is undisputedly the Administrator of Leveraged.[115] Citco Fund Services (Cayman Islands) was remunerated for its administration, revenues which, according to the allegations, translated into revenues for Citco Group. Plaintiffs allege that "[t]he Citco Group represents that its operating subsidiaries combined to constitute a 'global fund administrator' and that its operating

---

[111] *A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76 (2nd Cir. 1993).
[112] Rec. Docs. 1-3, ¶ 27; 109-2.
[113] Rec. Doc. 156-3.
[114] *Luv n' Care*, 438 F.3d 465 (5th Cir. 2006); *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 2006 WL 708470, at *5 (S.D.N.Y., 2006).
[115] Rec. Doc. 109-2.

subsidiaries' ability to administer funds in offices throughout the world renders the combined enterprise able to provide a 'consistent service platform'."[116] Plaintiffs allege that Citco Group subsidiaries share and transfer employees among the subsidiaries and that Citco Group's [subsidiary] corporations are all controlled by Citco Group, which appoints division directors to monitor the daily operations of each division, including, relevant here, the fund services division."[117]

In sum, Citco Group was held out to the Plaintiffs as an "affiliate" in the offering documents. At least 2 Citco subsidiaries derived revenue from the sale of Leveraged shares to the Plaintiffs, which in turn comprised revenue to the holding company, Citco Group. These facts together with allegations of control and integration between and among Citco operating subsidiaries, which are construed in a light most favorable to the Plaintiff, are sufficient to "fuse" Citco Group Limited with Citco Banking and Citco Fund Services (Cayman Islands) for jurisdictional purposes. Accordingly, Citco Group Limited's 12(b)(2) *Motion to Dismiss for Lack of Jurisdiction*[118] is DENIED.

The Plaintiff's *Motion to Continue Submission Date to Allow Jurisdictional Discovery to Citco Group Ltd.*[119] is DENIED as moot.

### G. Personal Jurisdiction Analysis as to Citco Europe[120]

Citco Europe is a Netherlands limited liability company with its principal place of business in Amsterdam, The Netherlands.[121] In the entire 62-page, 312 paragraph

---

[116] Rec. Doc. 1-3, ¶ 60.
[117] Rec. Doc. 1-3, ¶ 61, 69.
[118] Rec. Doc. 156.
[119] Rec. Doc. 164.
[120] Rec. Doc. 185.
[121] Rec. Doc. 1-3, ¶2F, 185-2.

Complaint, two paragraphs refer specifically to Citco Europe.[122] The only other allegations attributable to Citco Europe are the allegations made collectively against the "Citco Defendants".

The Court also lacks general jurisdiction over Citco Europe. There are no particularized allegations of continuous and systematic contact by Citco Europe with the United States. The Court lacks specific jurisdiction. The uncontested affidavit of Jan Oyens[123] attests that:

a. [Citco Europe] has never had any contact with, or provided any information to, the Plaintiffs in this case;
b. has never provided any services of any kind to FIA Leveraged Fund ("Leveraged") or to Fletcher Income Arbitrage Fund, Ltd. ("Arbitrage") and has never been party to any contract or agreement with Leveraged or Arbitrage;
c. has never performed administration services for any fund affiliated with Alphonse Fletcher, Jr. or managed by Fletcher Asset Management, Inc.;
d. never had any role in preparing or distributing any offering memorandum for Leveraged or Arbitrage or in preparing or distributing any Net Asset Valuation statements for Leveraged or Arbitrage;
e. has never owned any shares in Leveraged or Arbitrage;
f. has never redeemed any shares or received payment of any kind from Leveraged or Arbitrage;
g. has never received any fees or compensation of any kind from Leveraged, Arbitrage, or any of the companies or individuals referred to in the Petition as the "Fletcher Defendants";
h. has never received any benefit, directly or indirectly, from the proceeds of the offering of the Series N shares in Leveraged;
i. has never owned any shares in Richcourt Holding Inc. or in any Richcourt fund, and has never redeemed any such shares;
j. was never the manager of Richcourt Holding Inc. or of any Richcourt fund; and
k. and never received any payment in connection with the sale of Richcourt Holding Inc.

---

[122] Rec. Doc. 1-3, ¶ 2(F) alleges that CITCO Europe is "a limited liability company formed under the laws of the Netherlands and is a wholly owned subsidiary of Citco Group," and that "[i]ts principal place of business is in Amsterdam, The Netherlands." ¶3 alleges that Citco Group, has no independent revenues of its own and "acts through it 'offices and locations,'"including CITCO Europe.

[123] Rec. Doc. 185-2.

Plaintiffs acknowledge that they bear the burden of establishing jurisdiction with *prima facie* evidence. Plaintiffs advance the untenable position that they "have established a *prima facie* case to support personal jurisdiction over Citco Europe "based on what the affidavit chose not to contest".[124] Citco Europe, by the affidavit of Managing Director, Jan Oyens, contested every allegation that would arguably support the assertion of general or specific jurisdiction.

Plaintiffs ask the Court to find jurisdiction against Citco Europe based on collective allegations against all "Citco Defendants" set forth at paragraphs 38, 50-55. Plaintiffs argue that the Citco Defendants (collectively) "misappropriated $30,000,000 of the funds that the Louisiana Funds contributed to Leveraged" and that Citco Europe "financial[ly] benefit[ed] from the fraud."[125] Plaintiffs assert that this amounts to fraud "purposely directed" at the forum and, thus, gives rise to personal jurisdiction. Plaintiffs' argument is disingenuous. Argument is not *prima facie* proof. Plaintiffs' Complaint does not allege a "misappropriation of funds", nor does the Complaint allege fraud by Citco Europe, an allegation which, if made, is required to be made with particularity.[126]

Plaintiffs' argument that Citco Europe "financial[ly] benefit[ed] from the fraud perpetrated against the Louisiana Funds"[127] is likewise not alleged in the Complaint. Plaintiffs allege in paragraph 38 of their Complaint that:

> Citco Defendants . . . owns, controls, and dominates each subsidiary to such an extent that each such subsidiary, in reality, functions as a mere division or branch of the respective parent. . . . Citco Defendants. . . . along with their respective subsidiaries, each operate as one single unified worldwide business unit or single business enterprise, all operating under the [Citco Defendants] respective brand, international trademark or

---

[124] Rec. Doc. 191.
[125] *Id.*
[126] FRCP 9(b).
[127] Id. Rec. Doc. 1-3.

> tradename and logo. . . . The parent entity of the [Citco Defendants] controls the manner in which its subsidiaries are perceived by the public and therefore intentionally creates the impression in the minds of third parties that each acts as one unified, global entity that is a single unit."

It is undisputed that Citco Group, Ltd. is the parent holding company of some, and possibly all, of the Citco entities named as Defendants.[128] However, there are no factual allegations which support or lend any credence whatsoever to the suggestion that Citco Europe financially benefitted from the operations of another subsidiary. The mere allegation that the various Citco entities are commonly held by a parent holding company is not *prima facie* evidence that all Citco subsidiaries comprise a "single business entity", which is essentially what the Plaintiffs contend without invoking the actual terms. The theory advanced is that the various Citco subsidiaries "are the *same entity,* [thus] the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis."[129] Under Louisiana law, the single business enterprise theory is subject to an 18 part test.[130] Plaintiffs' allegations are woefully short of *prima facie* proof which would justify treating the various Citco

---

[128] Rec. Doc. 156-3.

[129] *Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640, 653 (5th Cir. 2002); *See also, Lakota Girl Scout Council,* 519 F.2d at 637 (explaining that "if the corporation is [the individual defendant's] alter ego, its contacts are his and due process is satisfied").

[130] *Green v. Champion Ins. Co.,* 577 So.2d 249 (La. App. 1st Cir. 2013). The eighteen factors include whether one corporation has sufficient ownership interest in another to give it actual working control, whether common directors or officers exist, whether a unified administrative control apparatus is present, and whether the business functions of the companies are similar or supplementary, whether the directors of one corporation act independently in the interest of that corporation or instead in the interest of another corporation, whether one corporation finances or pays the salaries and expenses of another corporation, and whether one corporation is inadequately capitalized or receives no business other than that given to it by another corporation, whether a corporation uses the property of another corporation as its own, complies with corporate formalities, or keeps common employees or offices with another corporation, and whether there are financial transactions between the companies. See*, Bona Fide Demolition and Recovery, LLC v. Crosby Const. Co. of Louisiana, Inc.,* 690 F.Supp.2d 435, 444 (E.D. La., 2010).

subsidiaries as a single business enterprise.  Accordingly, Citco Europe's 12(b)(2) *Motion to Dismiss for Lack of Jurisdiction*[131] is GRANTED.

### H.  Plaintiffs' Request for Jurisdictional Discovery

Plaintiffs fail to allege, with reasonable particularity, facts which suggest the possible existence of minimum requisite contacts necessary to support the assertion of personal jurisdiction over Citco Bermuda, Citco Canada, CBN Dublin, Citco Global Custody and Citco Europe. Where, as here, the Plaintiffs fail to make "a preliminary showing of jurisdiction" a request for jurisdictional discovery is properly denied.[132]   The Court finds that jurisdictional discovery as to Citco Bermuda, Citco Canada, CBN Dublin, Citco Global Custody and Citco Europe would serve no useful purpose. Accordingly, The Plaintiff's Motions to Continue Submission Dates to Allow Jurisdictional Discovery as to these defendants (Rec. Docs. 133, 164 and 186) are DENIED.

### III.   LAW AND ANALYSIS OF RULE 12(B)(6) MOTIONS

Having denied the Rule 12(b)(2) Motions to Dismiss by Defendants, CTM, Citco Banking, Citco Group Ltd, the Court proceeds to analyze and decide the Rule 12(b)(6) Motion urged by these movants.

### A. Motion to Dismiss for Failure to Comply with FRCP 8(a) Pleading Requirements

CTM, Citco Banking, and Citco Group ("Movants") urge dismissal on the grounds that the complaint "lump[s] all the defendants together and fail[s] to distinguish their

---

[131] Rec. Doc. 185.
[132] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong."[133]

Rule 8(a) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim showing that the plaintiff is entitled to relief. A complaint must set forth a short and plain statement of the facts upon which the claim is based that is sufficient to give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Defendants cite to a Southern District of Florida case[134] which dismissed claims against a Citco defendant because the complaint failed to sufficiently differentiate between the parent holding company and its subsidiaries. In that case, the Citco subsidiaries argued that the "lumping" together of the 3 Citco defendants, by making allegations against the "Citco Defendants" collectively, failed to provide the individual corporate defendants fair notice of the claims against them.

Plaintiffs cite *Anwar* a Southern District of New York[135] securities case which made allegations against numerous Citco entities, collectively referred to in the complaint as "Citco Defendants".  In that case, the Court rejected "the Citco Defendants argue[ment] that grouping all of the Citco Defendants together as "Citco" . . . . without articulating what alleged acts are attributable to each defendant constitutes impermissible "lumping," amounting to a failure to comply with Rule 8(a), and requiring dismissal."[136] The Court finds the *Anwar*[137] case analogous to this case. The plaintiffs herein clearly define the

---

[133] Rec. Doc. 68-1 citing, *Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. 2004), Citco Banking and Citco Group adopt the arguments of CTM (Rec. Doc. 156).
[134] *Court Appointed Receiver of Lancer Offshore Inc. v Citco Group Ltd.*, 2008 WL 926512 (S.D. Fla. 2008).
[135] *Anwar v Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D. N.Y. 2010).
[136] *Id.* at 422.
[137] *Id.*

"Citco Defendants",[138] plaintiffs allege that the Citco Defendants are commonly controlled,[139] that their operations are "integrated"[140] and "combined to constitute a 'global fund administrator'."[141] Plaintiffs allege that Citco Defendants were 'the Administrators of Leveraged and Arbitrage."[142] The Court finds that the complaint herein satisfies the liberal requirements of Rule 8(a). Plaintiffs make distinct allegations as to the role or position of Citco Banking and Citco Group, and although plaintiffs make numerous allegations against the Citco Defendants collectively, as set forth above, they assert a factual basis for doing so. Movant's Rule 12(b)(6) Motions to Dismiss on the grounds of failure to comply with Rule 8(a) pleading requirements are DENIED.[143]

### B.  Motion to Dismiss for Failure to State a Claim

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.""'[144]   The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[145]   "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state

---

[138] Rec. Doc. 1-3, ¶3.

[139] Rec. Doc. 1-3, ¶68.

[140] Rec. Doc. 1-3, ¶59.

[141] Rec. Doc. 1-3, ¶60.

[142] Rec. Doc. 1-3, ¶¶11, 18. It is not lost on the Court that this allegation conflicts with the allegations in paragraphs 9 and 20, *inter alia*, of the complaint wherein plaintiffs quote the Offering Memorandum which specifies that "Citco Fund Services (Cayman Islands) Limited" is the Administrator. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 550 U.S. 544, 556 (U.S.2007).

[143] For the same reasons the Court will deny the me-too motions of Citco Fund Services (Bermuda) Ltd., Citco (Canada) Inc.(Rec. Doc. 107), Citco Bank Nederland, N.V. Dublin Branch, Citco Banking Corporation, N.V., Citco Global Custody N.V., Citco Group Limited (Rec. Doc. 156), and Citco Fund Services (Europe) B.V. (Rec. Doc. 185).

[144] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[145] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

a claim to relief that is plausible on its face.'"[146]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[147]  "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[148]

### 1.   Seller Liability under Louisiana Securities Act (Count One)

Count One of the Plaintiff's complaint alleges violations of the Louisiana Securities Act, ("LSA").[149] The LSA provides, in pertinent part:

> It shall be unlawful for any person: . . . (2) To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact. . . .[150]

Movants argues that plaintiffs make no plausible allegations that movants were sellers of the securities at issue. As to the movants the Complaint does not specifically allege privity in the sale of securities to Plaintiffs. Plaintiffs argue that movants are liable as sellers under state Blue Sky laws "based on [their] extensive relationship with the Citco

---

[146] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 St. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).
[147] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted)(hereinafter *Twombly*).
[148] *Thompson v. City of Waco, Texas,* 764 F.3d 500, 502-503 (5th Cir. 2014).
[149] La. R.S. 51:701 et. seq.
[150] La. R.S. 51:712A(2).

Defendants and operations of Leveraged."[151] Plaintiffs maintain that movants were a substantial factor in the sale of the securities at issue and therefore each has liability as a seller under state law.

Defendants argue that, as a matter of law, there is no state Blue Sky law liability for being a "substantial factor" in the sale of securities. As a matter of federal securities laws this is true. In *Pinter v Dahl* the Supreme Court expressly rejected the argument that "being merely a 'substantial factor' in causing the sale of unregistered securities" could result in seller liability under federal securities laws.[152] Defendants argue that Louisiana's securities laws are modeled after the federal law and that because Louisiana courts sometimes look to federal jurisprudence in interpreting comparable Louisiana securities statutes, *Pinter v Dahl* controls.

The Louisiana Supreme Court has not addressed the issue of whether liability under La. R.S. 51:712A extends to one who is shown to be a substantial factor in bringing about the sale of securities. Furthermore, Section 12(1) of the Securities Exchange Act of 1934 ("the 1934 Act") expressly provides for seller liability "to the person purchasing such security from him." However, the language "purchasing such security from him" is not contained in La. R.S. 51:712(A)(2). Finally, at least one Louisiana appellate court,[153] applied a "substantial factor" analysis and concluded on summary judgment that there was no evidence to support a finding that the accountant defendants were a "substantial factor" in the sale of securities. For these reasons, the Court is unable to conclude that

---

[151] Rec. Docs. 109, 167, 192.
[152] *Pinter v. Dahl*, 108 S.Ct. 2063, 2082, 486 U.S. 622, 654 (1988). The Court rejected the Fifth Circuit's view that a seller of securities includes one "whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place." *Pharo v. Smith,* 621 F.2d 656, 667 (5th Cir.).
[153] *Solow v. Heard McElroy & Vestal, LLP* 7 So. 3d 1269 (La. App 2nd Cir. 2009).

there is no plausible basis, as a matter of law, for substantial factor seller liability under Louisiana's blue sky laws. Movant's Motions to Dismiss the plaintiff's "Seller" claims are DENIED.

      2.  <u>Civil Liability under La.R.S. 51:712(D)</u>

The Citco Defendants argue that La. R.S. 51:712D does not create a private cause of action. La. R.S. 51:712D provides:

> It shall be unlawful for any person in connection with the offer, sale, or purchase of any security, directly or indirectly:
>
> (1) To employ any device, scheme, or artifice to defraud.
> (2) To engage in any transaction, act, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller.

Movants cite authority for their argument that there is no private cause of action under Section 712D.[154] Although the Louisiana Supreme Court has not addressed the issue, the court is persuaded by the analysis of its brethren in the Eastern District and the Louisiana Second Circuit Court of Appeal.  Louisiana Blue Sky laws make no provision for civil liability based on a violation of La. R.S. 51:712(D). Rather, civil liability is based on the fraudulent sale of securities under La. R.S. 51:714(A). The Citco Defendants Motions to Dismiss Plaintiff's claims brought under Section 712(D) are GRANTED.

---

[154] *Hiern v. Sarpy*, 1995 WL 640528, at *15 (E.D.La., 1995)(" there is no private cause of action for violations of § 712.D"); *Tranchina v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 1996 WL 312026, at *5 (E.D.La., 1996); *Solow v. Heard McElroy & Vestal, L.L.P.*, 7 So.3d 1269, 1282, (La.App. 2d. Cir.,2009)("La. R.S. 51:714, which provides for civil liability arising from the sale of securities, makes no provision for liability based on a violation of La. R.S. 51:712(D). Rather, civil liability is based on the fraudulent sale of securities under La. R.S. 51:714(A).").

3.  <u>Control Person Liability</u>

Plaintiffs plead that the Citco Defendants, including the movants, have "control"

person liability under La. R.S. 51:714(B), which states:

> B. Every person who directly or indirectly controls a person liable under
> Subsection A of this Section, every general partner, executive, officer, or
> director of such person liable under Subsection A of this Section, every
> person occupying a similar status or performing similar functions, and every
> dealer or salesman who participates in any material way in the sale is liable
> jointly and severally with and to the same extent as the person liable under
> Subsection A of this Section unless the person whose liability arises under
> this Subsection sustains the burden of proof that he did not know and in the
> exercise of reasonable care could not have known of the existence of the
> facts by reason of which liability is alleged to exist. There is contribution as
> in the case of contract among several persons so liable.
> Subsection A of La. R.S 51:714 provides for civil liability for any person who
> violates La. R.S. 51:712(A). The term "control" is defined as "the
> possession, direct or indirect, of the power to direct or cause the direction
> of the management and policies of a person, whether through the ownership
> of voting securities, by contract, or otherwise." La. R.S. 51:702(4).

Movant's urge dismissal of Plaintiffs "control" person liability claims arguing that

there are no plausible allegations that movants controlled the sale of shares in Leveraged.

The Court finds that this inquiry is a fact intensive one and is thus improper for disposition

at the pleading stage. The Complaint contains allegations that "The Citco Defendants. . .

. delivered to Plaintiffs in Louisiana the offering memorandum for the Series N shares of

Leverage".[155] The Complaint further alleges the "offering documents represented the

terms negotiated by . . .  Citco Defendants"[156] and that the Citco Defendants "play[ed] a

critical role in providing information necessary for Plaintiffs to make the investment."[157]

The allegations, when taken as true, state a plausible claim under Section 714(B) of the

---

[155] Rec. Doc. 1-3, ¶ 9.
[156] *Id.* ¶ 21.
[157] *Id.* ¶ 47.

state's Blue Sky laws. Accordingly, the movants Motions to Dismiss the plaintiffs "control" person claims are DENIED.

4. <u>Third Party Beneficiary Claims (Count 2)</u>

Plaintiff argues that the Citco Defendants breached the contractual duties owed to Plaintiffs as a third party beneficiary of the Administration Contract.[158]  Movants argue that Plaintiff cannot sustain a valid third party beneficiary claim against them.

CTM argues that Plaintiff cannot sustain a third party beneficiary claim against it because there is no allegation that CTM was a party to the contract between Leverage and the Plaintiffs.[159]  The Court finds instructive on the issue of third party beneficiaries the holding from the Southern District of New York in *Anwar*.[160]  In *Anwar*, plaintiffs' based their third party beneficiary claim on a contract that made "no explicit indication that performance should be rendered to the Plaintiffs."[161]  The court in *Anwar* held that defendant's motion to dismiss the plaintiff's third party breach of contract claim was proper because "any benefit conferred [to the plaintiff] is merely incidental,"[162] and that the [agreement] is *clearly* evidence [of] an intent to permit enforcement by the third party[.]"[163] Here, like *Anwar,* the Plaintiff has not alleged that CTM was a party to a contract where Plaintiffs would receive a benefit.  Moreover, there is no indication that CTM was a party to any contract between Leverage and Plaintiffs.  Accordingly, CTM's motion to dismiss Plaintiff's third-party benefit claim is granted.

---

[158] Rec. Doc. 1-3, p. 35-36.
[159] Rec. Doc. 68-1.
[160] 728 F.Supp.2d at 462 (S.D.N.Y. 2010).
[161] *Id.* at 431.
[162] *Id.*
[163] *Id.* quoting (*Consolidated Edison Inc. v. Northeast Utilities*, 426 F.3d 524, 528 (2nd Cir. 2005).

32

Citgo Banking and Citgo Group also argue that Plaintiff cannot sustain a valid third party beneficiary claim.[164]  Applying the reasoning of *Anwar* to the present case, Plaintiffs must have plead that the above listed Defendants were party to a contract where there is "clear evidence of an intent to permit enforcement by the third party;"[165] a contract where "any benefit conferred [to the plaintiff] is merely incidental" is not sufficient to withstand a motion to dismiss.  Plaintiffs fail to plead that Citgo Banking and Citgo Group provided services to Leveraged with the intent to grant Plaintiffs the right to enforce the contract. Conclusory statements that the Citgo Defendants generally understood that Plaintiffs would be relying on the services rendered to Leveraged is not clear evidence of Plaintiffs status as a third party beneficiary.  Accordingly, movants Motions to Dismiss Plaintiffs' third-party beneficiary claims are GRANTED.

### 5.  Unjust Enrichment (Count 3)

The Court GRANTS Movants 12(b)(6) Motion to Dismiss plaintiffs unjust enrichment claims. Based on the Court's rulings herein, other remedies at law are available to plaintiffs. Hence, plaintiffs cannot meet the elements of a claim for unjust enrichment.[166]

### 6.  Negligent Misrepresentation (Count 11)

Movants urge the Court to dismiss plaintiffs' claims of negligent misrepresentation arguing that Louisiana law extends liability for negligent misrepresentation only to cases

---

[164] Rec. Docs. 156-1 and 185-1.

[165] 728 F.Supp.2d at 431 quoting (*Consolidated Edison*, 426 F.3d at 528).

[166] "The remedy of unjust enrichment is, and has always been, subsidiary in nature; it "shall not be available if the law provides another remedy." *Carriere v. Bank of Louisiana,* 95–3058, p. 17 (La.12/13/96), 702 So.2d 648, 671 (on rehearing). The existence of a "remedy" which precludes application of unjust enrichment does not imply the ability to actually recoup the impoverishment by bringing an action against another person. It merely connotes the ability to bring the action or seek the remedy. *Central Facilities Operating Co., L.L.C. v. Cinemark U.S.A., Inc.*, 2012 WL 1121217, at *3 (M.D.La., 2012).

in which a contract or fiduciary relationship exists.[167] The Complaint alleges numerous representations by the Citco Defendants,[168] based on which the plaintiffs invested.[169] These allegations, taken as true, state a plausible claim for negligent misrepresentation. Accordingly, the Movant's Motions to Dismiss the plaintiffs' claims for negligent misrepresentation are DENIED.

### 7.  Unfair Trade Practices (Count 12)

Plaintiffs conceded that "they may not state an action under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, *et seq.,* if a cause of action has been stated under the Louisiana Securities Law."[170]   Accordingly, having found that the Plaintiffs' state claims under Louisiana's securities laws, the Court GRANTS Movants Defendants Motions to Dismiss the LUTPA claims.

### 8.  Holder Claims (Count 13)

Plaintiffs claim that material misrepresentations and omissions by the Citco Defendants caused them to hold their shares, which they would have otherwise redeemed had they known the truth, i.e. "holder claim".  Movant's urge dismissal of the holder claims on the grounds that "Louisiana has never recognized a cause of action for a 'holder' claim". Movants further argue that the United States Supreme Court has ruled

---

[167] *Daye v. General Motors Corp.,* 720 So.2d 654, 659 (La.,1998) ("[O]ur jurisprudence has also limited negligent misrepresentation tort theory to cases wherein contract or fiduciary relationship exists.") *citing, Barrie v. V.P, Exterminators, Inc.,* 625 So.2d 1007, 1011 (La. 1993); *Ernestine v. Baker,* 515 So.2d 826, 827-28 (La.App. 5th Cir.1987); *Dousson v. South Central Bell,* 429 So.2d 466, 468 (La.App. 4th Cir.1983), *writ denied,* 437 So.2d 1135 (La.1983); *Beal v. Lomas and Nettleton Co.,* 410 So.2d 318, 321 (La.App. 4th Cir.1982); *Josephs v. Austin,* 420 So.2d 1181, 1185 (La.App. 5th Cir.1982), *writ denied,* 427 So.2d 870 (La.1983).
[168] Rec. Doc. 1-3,¶ 33.
[169] *Id.* ¶ 34.
[170] Rec. Doc. 109.

that "holder" claims are not viable under the federal securities laws[171] and since "Louisiana courts generally follow the federal courts in interpreting the securities laws. . . [t]his Court, therefore, should not presume the existence of such a cause of action in Louisiana."[172]

Again, there is an absence of Louisiana jurisprudence on the subject. The Court is unpersuaded that the *Blue Chip Stamps* case stands for the bright line rule that "holder" claims are not viable under the federal securities laws.[173] The plaintiffs in the *Blue Chip Stamps* case, unlike the plaintiffs herein, were not purchasers of a security. Thus the Court is unable to conclude that there is no plausible basis, as a matter of law, for a holder claim under Louisiana law. Accordingly, movant's Motions to Dismiss the holder claims, are DENIED.

## IV.    CONCLUSION

Defendant Citco Technology Management, Inc.'s *Motion to Dismiss for Lack of Personal Jurisdiction* (Rec. Doc. 68) is DENIED;

Plaintiffs *Motions to Continue Submission Date to Allow Jurisdictional Discovery* (Rec. Doc.97) is DENIED as moot;

Defendants Citco (Canada), Inc. and Citco Fund Services (Bermuda) Limited's *Motion to Dismiss for Lack of Personal Jurisdiction* (Rec. Doc. 107) is hereby GRANTED and Citco (Canada), Inc. and Citco Fund Services (Bermuda) Limited are hereby dismissed with prejudice;

---

[171] *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723,752–55 (1975).
[172] Rec. Doc. 68-1.
[173] *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 752–55 (1975).

Plaintiffs' *Motions to Continue Submission Date to Allow Jurisdictional Discovery* (Rec. Doc. 133) is DENIED;

The *Motion to Dismiss for Lack of Personal Jurisdiction* (Rec. Doc. 156) is GRANTED as to Defendants Citco Bank Nederland N.V. Dublin Branch and Citco Global Custody N.V. and DENIED as to Defendants Citco Banking Corporation, N.V. and Citco Group Ltd. Defendants Citco Bank Nederland N.V. Dublin Branch and Citco Global Custody N.V. are hereby dismissed with prejudice;

Plaintiffs' *Motions to Continue Submission Date to Allow Jurisdictional Discovery* (Rec. Doc. 164) is DENIED as to Citco Bank Nederland N.V. Dublin Branch and Citco Global Custody N.V. and DENIED as moot as to Citco Banking Corporation, N.V. and Citco Group Ltd.;

Defendant, Citco Fund Services (Europe) BV's *Motion to Dismiss for Lack of Personal Jurisdiction* (Rec. Doc. 185) is GRANTED and Citco Fund Services (Europe) BV is hereby dismissed with prejudice;

Plaintiffs' *Motions to Continue Submission Date to Allow Jurisdictional Discovery* (Rec. Doc. 186) as to Citco Fund Services (Europe) BV is DENIED;

Defendant Citco Technology Management, Inc.'s *Motions to Dismiss Pursuant to Rule 12(b)(6)* (Rec. Doc. 68) are GRANTED as to the Plaintiffs' Count One claims brought under La. R.S. 51:712D, Count Two claims of Unjust Enrichment, and Count Three claim of Unfair Trade Practices and DENIED in all other respects;

Defendants Citco Banking Corporation, N.V. and Citco Group Ltd.'s *Motions to Dismiss Pursuant to Rule 12(b)(6)* (Rec. Doc. 156) are GRANTED as to the Plaintiffs' Count One claims brought under La. R.S. 51:712D, Count Two claims of Unjust

Enrichment, and Count Three claim of Unfair Trade Practices and DENIED in all other respects; and

Plaintiffs' Count One claims under La. R.S. 51:712D, Count Two claims of Unjust Enrichment, and Count Three claims of Unfair Trade Practices are hereby dismissed with prejudice.

Signed in Baton Rouge, Louisiana on <u>September 30, 2016</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**