UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FIREFIGHTERS' RETIREMENT SYSTEM, ET. AL. | CIVIL ACTION |
| VERSUS | 13-373-SDD-EWD |
| CITCO GROUP LIMITED, ET. AL. | |

**RULING**

Before the Court are Motions filed by Defendant Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"). CFS Cayman moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction and pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for Failure to State a Claim for Relief. (Rec. Doc. 163). The Motions are opposed (Rec. Docs. 171 and 172). For the following reasons, the 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction shall be DENIED, and the 12(b)(6) Motion to Dismiss for failure to State a Claim will be GRANTED in part and DENIED in part.

**I.    BACKGROUND AND HISTORY**

The Court has previously reviewed the factual background and procedural history of this case. For discussion of same, see record documents 323, 324, and 325.

1

35186

**II.   LAW AND ANALYSIS**

    **A.   Rule 12(b)(2) Personal Jurisdiction**

        1.  General Jurisdiction

Under the law in this Circuit, the personal jurisdiction inquiry is collapsed into a question of a defendant's contacts with the United States.[1] The Court hereby adopts by reference the analysis and reasoning set forth in its previous *Rulings*.[2]

CFS Cayman is a business entity organized and existing under the laws of the Cayman Islands, with offices in Grand Cayman, Cayman Island.[3] The Fifth Circuit has very recently observed that it would be an "exceptional case" for the court to exercise general personal jurisdiction over a corporation that is incorporated, and has its principal place of business, in a foreign country.[4] The Fifth Circuit interprets *Daimler* to make it "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[5] In *Monkton*, the Fifth Circuit held that a Cayman Islands bank that made phone calls to Texas customers, sent wire transfers to Texas banks, and advertised in Texas via its website was not "essentially at home" in Texas.[6]

The *Complaint* herein fails to plead sufficient facts which would support this Court's exercise of general personal jurisdiction over CFS Cayman. The *Complaint* does not

---

[1] *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255 (5th Cir. 1998)*; Bellaire General Hospital v. BlueCross BlueShield of Michigan*, 97 F.3d 822 (5th Cir. 1996).
[2] Rec. Docs. 323, 324 and 325.
[3] Rec. Doc. 1-3; Rec. Doc. 163-1.
[4] *Patterson v. Aker Solutions Inc.,* 826 F.3d 231, 235 (5th Cir. 2016).
[5] *Monkton Ins. Servs., Ltd. v. Ritter,* 768 F.3d 429, 432 (5th Cir. 2014)*.*
[6] *Id.* at 431–32; S*ee also, Norman* v. *H & E Equip. Servs., Inc.*, No. 3:14–CV–367, 2015 WL 1281989, at *4–5 (M.D. La. Mar. 20, 2015) (finding that the DuPont corporation, which owned and operated three manufacturing plants in Louisiana, did not have sufficient contacts with Louisiana to give rise to general jurisdiction).

2

35186

allege activity so "'continuous and systematic' by CFS Cayman as to render it essentially 'at home' in the United States"[7]

### 2. Specific Jurisdiction

The court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum."[8]  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[9]  "[T]o exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum",[10] in other words, when the nonresident defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[11] The Fifth Circuit employs a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum [United States] i.e., whether it purposely directed its activities toward the forum [United States] or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[12] If the plaintiff can establish the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would be unfair or unreasonable.[13]

---

[7] *Daimler AG v. Bauman*, 134 S.Ct. at 761 (2014).
[8] *Luvn' care*, 438 F.2d 465, 469 (quoting *Helicopteros Nacionales*, 466 U.S. at 414, (1984)).
[9] *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014)(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).
[10] *Id.*
[11] *Percle v. SFGL Foods, Inc.*, 356 F. Supp. 2d 629, 634.
[12] *Monkton*, 768 F.3d at 433(quoting *Seiferth* at 271).
[13] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)(citations omitted).

3

35186

CFS Cayman admits that "[p]rior to its resignation in March 2010, [it] was the administrator of FIA Leveraged Fund ("Leveraged"), the fund in which Plaintiffs invested, pursuant to an administrative services agreement with Leveraged."[14] Arguably, the services that CFS Cayman provided for the Leveraged and Arbitrage funds does not constitute contact with the United States. However, the *Complaint* alleges that the Leveraged Offering Memorandum represents that the Administrator (i.e. CFS Cayman) will:

> perform administrative, registrar and transfer agency services to the Fund, maintain company records for the Fund, maintain the accounting and financial records of the Fund and perform other accounting and clerical services necessary in connection with the administration of the Fund, and assist in computing the Net Asset Value of the Fund's Shares.[15]

The *Complaint* further alleges that, as Administrator, CFS Cayman:

> will make available to each prospective investor or its authorized representative the opportunity to ask questions of, and receive answers from, the Administrator concerning the terms and conditions of this offering, including subscriptions, redemptions or net asset value, and to obtain any additional information, to the extent that the Administrator possesses such information or can acquire it . . . .[16]

The offering documents, which are fundamentally an offer to sell the securities at issue, were directed to Plaintiffs, U.S. pension funds. In this regard, CFS Cayman purposely directed its activities toward the forum [United States] and the Plaintiffs' cause of action arises out of CFS Cayman's forum-related contacts, i.e. the offering documents.[17] The Court finds that the allegations regarding the offering documents establish a nexus between the Plaintiffs' claims and CFS Cayman giving rise to specific

---

[14] Rec. Docs. 163-1 and 1-3 ¶¶ 12, 58.
[15] Rec. Doc. 1-3, ¶ 27.
[16] Rec. Doc. 1-3, ¶ 20.
[17] *Monkton*, 768 F.3d at 433.

personal jurisdiction. CFS Cayman's 12(b)(2) *Motion to Dismiss for Lack of Jurisdiction* (Rec. Doc. 163) is DENIED.

The Plaintiffs' *Motion to Continue the Hearing Date* on CFS Cayman's Rule 12(b)(2) motion (Rec. Doc. 171) is DENIED as moot.

### B. Rule 12(b)(6) Failure to State a Claim

1. <u>Seller Liability</u>

CFS Cayman argues that Plaintiffs fail to state a claim of seller liability under La. R.S. 51:712(A)(2) "because the Petition alleges only that CFS Cayman was the Administrator of Leveraged, with administrative duties as described . . . . There is no allegation that CFS Cayman sold or offered to sell shares in Leveraged to Plaintiffs."[18] Beyond the fact that CFS Cayman is identified as the administrator in the offering documents, there are no allegations that CFS Cayman was in privity with the Plaintiffs in the sale of the securities. However, Plaintiffs allege that CFS Cayman was a "substantial factor" in the sale of the securities to Plaintiffs.[19] CFS Cayman contends that, as a matter of law, there is no liability for being a "substantial factor" under the Louisiana Securities Act ("LSA").

As previously determined by this Court,[20] as a matter of federal securities laws, there is no cause of action for being a substantial factor in the sale of securities.[21] However, the Louisiana Supreme Court has not addressed the issue of whether liability under La. R.S. 51:712A extends to one who is shown to be a substantial factor in bringing

---

[18] Rec. Doc. 163-1.
[19] Rec. Doc. 1-3, ¶ 107.
[20] Rec. Doc. 325.
[21] The Supreme Court expressly rejected the argument that "being merely a 'substantial factor' in causing the sale of unregistered securities" could result in seller liability under federal securities laws. *Pinter v. Dahl*, 108 S.Ct. 2063, 2082, 486 U.S. 622, 654 (1988).

5

about the sale of securities. Furthermore, Section 12(1) of the Securities Exchange Act of 1934 ("the 1934 Act") expressly provides for seller liability "to the person purchasing such security from him." However, the language "purchasing such security from him" is not contained in La. R.S. 51:712(A)(2). Finally, at least one Louisiana appellate court[22] applied a "substantial factor" analysis and concluded on summary judgment that there was no evidence to support a finding that the accountant defendants were a "substantial factor" in the sale of securities.  For these reasons, and considering the allegations that the offering documents refer to CFS Cayman, the Court is unable to conclude that there is no plausible basis, as a matter of law, for substantial factor seller liability under Louisiana's blue sky laws. The Court finds the case of *Babst v. Morgan Keegan & Co.*[23], relied upon by CFS Cayman distinguishable. In that case, decided before *Pinter v Dahl*, the Court reasoned that a party who provided the financing for the "maintenance of cattle" which were a component asset of the sale of securities in a cattle feeding operation, were not a substantial factor in inducing the sale of securities. This case is distinguishable in the fact that CFS Cayman, unlike the financier in *Babst*, is identified in the offering documents as the Administrator of Leveraged and designated to provide valuations of the subject securities. CFS Cayman's *Motion to Dismiss* (Rec. Doc.163) the Plaintiffs' seller liability claims is DENIED.

---

[22] *Solow v. Heard McElroy & Vestal, LLP*, 7 So. 3d 1269 (La. App. 2nd Cir. 2009).
[23] Civ. A. 86-5614, 1987 WL 15322, at *1 (E.D. La. 1987).

2. Control Person Liability

CFS Cayman urges dismissal of Plaintiffs' control person liability claims for failure to state a claim.[24] CFS Cayman argues that the allegations of the *Complaint* are conclusory and insufficient to state a claim for control liability.[25]

The *Complaint* alleges that the offering documents represent that "Citco Fund Services (Cayman Islands) Limited (the "Administrator") will make available to each prospective investor or its authorized representative the opportunity to ask questions of, and receive answers from, the Administrator concerning the terms and conditions of this offering."[26] Hence, CFS Cayman was designated to provide information to *"prospective investors"* about "this offering." This allegation, taken as true, states a plausible claim under Section 714(B) of the state's Blue Sky laws that CFS Cayman participated in a "material way in the sale". Accordingly, CFS Cayman's *Motion to Dismiss* the Plaintiffs' control person liability claim is DENIED.

3. La. R.S. 51:712(D)

As did other Citco Defendants, CFS Cayman urges dismissal of Plaintiff' 'claims under La. R.S. 51: 712(D)[27] on the grounds that, as a matter of law, there is no private right of action under § 712(D).

---

[24] La. R.S. 51:714(B) provides:
"Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive, officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist. There is contribution as in the case of contract among several persons so liable."

[25] Rec. Doc. 163-1.

[26] Rec. Doc. 1-3.

[27] La. R.S. 51:712D provides:
It shall be unlawful for any person in connection with the offer, sale, or purchase of any security, directly or indirectly:

7

35186

This Court has previously held that "[a]lthough the Louisiana Supreme Court has not addressed the issue, the court is persuaded by the analysis of its brethren in the Eastern District and the Louisiana Second Circuit Court of Appeal.  Louisiana Blue Sky laws make no provision for civil liability based on a violation of La. R.S. 51:712(D). Rather, civil liability is based on the fraudulent sale of securities under La. R.S. 51:714(A)."[28]  CFS Cayman's *Motion to Dismiss* Plaintiffs' claims brought under Section 712(D) is GRANTED.

   4. Third-Party Beneficiary Claim

CFS Cayman contends that Cayman Island substantive law applies and that, as a matter of Cayman Island law, Plaintiffs' third-party beneficiary claims must be dismissed on two grounds. "First, the administrative services agreement is governed by Cayman Islands law, and Cayman Islands courts do not recognize a cause of action on behalf of purported third-party beneficiaries who are not named parties to a contract. And second, even if such a cause of action existed, it would have to be brought as a derivative claim on behalf of Leveraged, and not as a direct claim by Plaintiffs."[29]

While Plaintiffs dispute that the substantive law of the Cayman Islands applies, they do not dispute that the laws of the Cayman Islands do not recognize a cause of action by third-party beneficiaries who are not named parties to a contract.  The Court declines to reach the choice-of-law issue at this stage of the proceedings. As noted in jurisprudence from this District:

---

(1) To employ any device, scheme, or artifice to defraud.
(2) To engage in any transaction, act, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller.
[28] Rec. Doc. 325.
[29] Rec. Doc. 163-1.

8

35186

> Some choice of law issues may not require a full factual record and may be amenable to a resolution on motion to dismiss. In this case however, the Court will defer its choice-of-law decisions until the parties present a factual record sufficient to permit this Court to undertake Louisiana's choice of law analysis.[30]

Because the Court finds that a more robust factual record is necessary to perform an accurate analysis of Louisiana's choice-of-law statutes, the Court declines to address the choice-of-law issue at this time. Accordingly, CFS Cayman's *Motion to Dismiss* Plaintiffs' third-party beneficiary claim is DENIED.

5. Unjust Enrichment

The Court GRANTS Movant's 12(b)(6) *Motion to Dismiss* Plaintiffs' unjust enrichment claims. Based on the Court's *Rulings* herein, other remedies at law are available to Plaintiffs. Hence, Plaintiffs cannot meet the elements of a claim for unjust enrichment.

6. Negligent Misrepresentation

CFS Cayman contends that negligent misrepresentation is confined to circumstances in which a contract or fiduciary relationship exists and that "[p]laintiffs have not alleged that CFS Cayman owed them a fiduciary duty. Nor have they plausibly alleged that CFS Cayman owed them a contractual duty."[31] CFS Cayman further argues that the Plaintiffs' claims are for loss "reflective" of injury to the fund itself and [u]nder Cayman Islands law, individual investors may not bring claims for reflective loss."[32]

---

[30] *Southern Audio Services, Inc. v. Carbon Audio, LLC*. 141 F.Supp.3d 653, 662 n.4 (M.D. La. 2015)(*citing* La. C.C. Art. 3537; 3542).
[31] Rec. Doc. 163-1, citing, *Granger v. Christus Health Cent. La.*, 2012-1892 (La. 6/28/13), 2013 WL 3287128, *21; *Daye v. General Motors Corp.*, 97–1653 (La. 9/9/98), 720 So.2d 654, 659.
[32] Rec. Doc. 163-1.

9

35186

As previously noted the Court declines to address choice-of-law questions because the Court finds that a greater factual development is necessary to make a proper application of Louisiana's choice of law statutes.[33] For the reasons set forth above, the Court declines to apply Cayman Islands law at the motion to dismiss stage.

The *Complaint* alleges that CFS Cayman was the designated Administrator of Leveraged and that, as such, CFS Cayman was to provide "prospective investors" with information about the offering and, thereafter, CFS Cayman would perform various functions including "computing the Net Asset Value of the Fund's Shares".[34] The Court finds that these allegations, taken as true, state a plausible claim, under Louisiana law, for negligent misrepresentation. Accordingly, CFS Cayman's *Motion to Dismiss* the Plaintiffs' negligent misrepresentation claims is DENIED.

### 7. LUTPA

Plaintiffs concede that "they may not state an action under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, *et seq.,* if a cause of action has been stated under the Louisiana Securities Law."[35]  Accordingly, having found that the Plaintiffs state claims under Louisiana's securities laws, the Court GRANTS CFS Cayman's *Motion to Dismiss* the LUTPA claims.

### 8. Holder Claims

CFS Cayman advances the same arguments made by other Citco Defendants in support of dismissal of the Plaintiffs' holder claims.[36] For the same reasons, the Court DENIES CFS Cayman's *Motion to Dismiss* the holder claims.

---

[33] *Southern Audio Services, Inc.,* 141 F.Supp.3d at 653.
[34] Rec. Doc. 1-3.
[35] Rec. Doc. 109.
[36] Rec. Doc. 325.

35186

### III. CONCLUSION

Citco Fund Services (Cayman Islands) Limited's 12(b)(2) *Motion to Dismiss for Lack of Personal Jurisdiction* (Rec. Doc. 163) is DENIED;

Citco Fund Services (Cayman Islands) Limited's 12(b)(6) *Motion to Dismiss for Failure to State a Claim for Relief* (Rec. Doc. 163) is DENIED in part and GRANTED in part, in the following respects:

The Motion to Dismiss Seller Liability is DENIED;

The Motion to Dismiss Control Person Liability is DENIED;

The Motion to Dismiss claims under La. R.S. 51:712(D) is GRANTED;

The Motion to Dismiss the Third-Party Beneficiary Claim is DENIED;

The Motion to Dismiss the Unjust Enrichment claim is GRANTED;

The Motion to Dismiss the Negligent Misrepresentation claim is DENIED;

The Motion to Dismiss to LUTPA claims is GRANTED; and

The Motion to Dismiss the Holder claims is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 30, 2016</u>.

                        */s/ Shelly D. Dick*
                        **JUDGE SHELLY D. DICK**
                        **UNITED STATES DISTRICT COURT**
                        **MIDDLE DISTRICT OF LOUISIANA**

35186