# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**FIREFIGHTERS' RETIREMENT**
**SYSTEM, ET AL.**                                   **CIVIL ACTION NO.**

**VERSUS**                                          **13-373-SDD-EWD**

**CITCO GROUP LIMITED, ET AL.**

## RULING AND ORDER ON MOTION TO COMPEL

Before the court is a Motion to Compel Supplemental Interrogatory Responses (the "Motion to Compel")[1] filed by defendants, Citco Banking Corporation N.V., The Citco Group Limited, Citco Fund Services (Cayman Islands) Limited, and Citco Technology Management, Inc. (collectively, "Citco"). Plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (FRS, MERS, and NOFF are collectively referred to herein as "Plaintiffs") have filed an opposition to the Motion to Compel,[2] and Citco has filed a Reply.[3] The parties discussed the Motion to Compel during the June 27, 2017 in court status conference. This Ruling and Order is intended to memorialize the oral rulings made during the status conference. For the reasons set forth during the June 27, 2017 conference, as well as those set forth herein, Citco's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

---

[1] R. Doc. 387.

[2] R. Doc. 399.

[3] R. Doc. 404.

## I.    Background

Citco has moved to compel Plaintiffs to provide supplemental discovery responses to various interrogatories.[4]  Citco asserts that Plaintiffs' responses were untimely, are in some instances non-responsive, and improperly refer to external documents.[5]  Citco further argues that despite its requests, Plaintiffs have failed to identify specific members of their Boards of Directors, employees, and/or investment committees that made the decision to invest in Leveraged and/or monitored that investment.  Finally, Citco argues that Plaintiffs have failed to submit a sworn verification in conjunction with their interrogatory responses in contravention of the federal rules.

In opposition to the Motion to Compel, Plaintiffs generally assert that the information necessary to respond more comprehensively to Citco's discovery requests is contained in Citco's own document production, which was produced after Plaintiffs issued their responses to the interrogatories.  Plaintiffs further argue that Citco has propounded contention interrogatories that are more properly responded to at or near the end of the discovery period.  Plaintiffs explain that their references to the Trustee's Report and Disclosure Statement, *In re Fletcher Intl., Ltd.*, No. 12-12796, United States Bankruptcy Court, Southern District of New York and the Amended and

---

[4] R. Doc. 387.

[5] Citco's briefing does not focus on the references to external documents.  During the May 11, 2017 status conference, Citco raised this issue and the court ultimately required the parties to continue to confer.  Per the May 11, 2017 Report and Order:

> With regard to referencing external documents (including the Trustee's Report), the undersigned noted that, depending on the wording of the particular interrogatory, referencing external documents could be problematic under prevailing precedent.  The court urged Plaintiffs to reevaluate responses that reference external documents and instructed counsel to continue to confer on this issue. The undersigned DENIED without prejudice Citco Defendants' oral request to be permitted to file a Motion to Compel with regard to the issues of Plaintiffs' interrogatory responses that reference external documents to permit the parties to continue to confer.

R. Doc. 386.  Despite the May 11, 2017 denial, the issue of reference to external documents was discussed with the parties during the June 27, 2017 conference and briefed by the parties, therefore, the undersigned ruled regarding that issue.

Revised Status Report of the Trustee, *In re Soundview Elite, Ltd., et al.*, No. 13-13098, United States Bankruptcy Court, Southern District of New York (collectively, the "Trustees' Reports") are meant to: (1) establish the amount of funds Citco received between April 1, 2008 and June 20, 2008; and (2) explain the various relationships between the Citco entities.

## II.    Law and Analysis

### A.  Interrogatories at Issue

Citco asserts that Plaintiffs have failed to provide substantive answers to various interrogatories, which have been propounded by the various Citco defendants to the three Plaintiffs (FRS, MERS, and NOFF).  Citco's Motion to Compel includes the text of interrogatories issued by a particular Citco defendant to a particular Plaintiff.  Identical interrogatories were issued by other Citco defendants to FRS, MERS, and NOFF and Plaintiffs have provided substantively similar responses thereto.  This Ruling and Order applies equally to each identical interrogatory propounded to each Plaintiff.  The following interrogatories, and the responses thereto, are included in Citco's Motion to Compel:

> Interrogatory No. 1 of CFS Cayman to FRS: State whether You contend that CFS Cayman prepared and delivered to FRS in Louisiana the offering memorandum for the Series N shares of Leveraged, as alleged in paragraph 9 of the Petition, and, if so, state the basis for such contention.[6]
>
> Interrogatory No. 2 of CFS Cayman to FRS: State whether You contend that CFS Cayman negotiated the investment structure for FRS's investment in Leveraged, as alleged in paragraphs 19 and 21 of the Petition, and, if so, state the basis for such contention.[7]
>
> Interrogatory No. 10 of CFS Cayman to FRS: State whether You contend that CFS Cayman failed to take "industry-standard steps"

---

[6] This same interrogatory 1 was propounded to MERS, and MERS issued an identical response.  R. Doc. 387-2, pp. 39-45.  The same interrogatory was propounded to NOFF, and NOFF issued an identical response.  R. Doc. 387-2, pp. 74-79.

[7] This same interrogatory 2 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 46 & 80.

in performing any services to Leveraged, as alleged in paragraph 74 of the Petition and, if so, (i) identify the "industry-standard steps" that You contend CFS Cayman did not take and (ii) state the basis for Your contention that such steps are "industry-standard."[8]

Interrogatory No. 13 of CFS Cayman to FRS: State whether You contend that CFS Cayman provided "substantial assistance" and/or was a "substantial factor" in the sale of the Series N shares to FRS, as alleged in paragraph 114 of the Petition and, if so, state the basis for such contention.[9]

Interrogatory No. 14 of CFS Cayman to FRS: State whether You contend that CFS Cayman directly or indirectly controlled a person liable under La. R.S. 51:714(A) or occupied a similar status or performed a similar function as such a person, as alleged in paragraphs 120 to 124 of the Petition and, if so, identify (i) each person that CFS Cayman directly or indirectly controlled who You contend is liable under La. R.S. 51:714(A) or who occupied a similar status or performed a similar function as CFS Cayman; and (b) state the basis for Your contention that CFS Cayman directly or indirectly controlled such person(s) or that such person(s) occupied a similar status or performed a similar function as CFS Cayman.[10]

Interrogatory No. 15 of CFS Cayman to MERS: Identify every person or entity who participated in Your decision to invest in the Series N shares of Leveraged, including but not limited to investment advisors, investment brokers, consultants, promoters, placement agents, sales agents, investment firms, committee members, members of boards of directors, employees, agents, partners, or representatives, and as to each provide a brief description of their position and role in the decision.[11]

Interrogatory No. 16 of Citco Group to FRS: Identify all persons or entities that were involved in any way in the monitoring or retention of Your investments in the Series N shares of Leveraged, including but not limited to investment advisors, investment brokers, consultants, promoters, placement agents, sales agents, investment firms, committee members, members of boards of directors,

---

[8] This same interrogatory 10 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 57 & 91-92.

[9] This same interrogatory 13 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 62 & 97.

[10] This same interrogatory 14 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 63-64 & 98-99.

[11] This same interrogatory 15 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 65 & 100.

employees, agents, partners, or representatives, and as to each provide a brief description of their position and role during the time You held Your investments in the Series N shares of Leveraged.[12]

Interrogatory No. 17 of CFS Cayman to FRS: In regard to Your allegations in Count II of the Petition (Third Party Beneficiary Claims), identify each provision of the Administration Agreement that was breached and state the basis for Your allegation that each such provision was breached.[13]

Interrogatory No. 17 of CTM to FRS: Identify each item of damages that You claim, and for each such item provide an explanation of how You computed each item of damages, including any mathematical formula or model used.[14]

### B. Timeliness of Responses

As an initial matter, Citco asserts that Plaintiffs' responses to the interrogatories were late and therefore Plaintiffs' objections thereto should be waived. For all but one of the interrogatories at issue in the Motion to Compel, Plaintiffs have objected, asserting that the interrogatories ask FRS, MERS, and/or NOFF to provide facts that are "currently known solely by [Citco] or other defendants" and which are the subject of pending discovery requests[15] or require Plaintiffs to provide knowledge for persons who are not their employees or representatives.[16] Despite these objections, Plaintiffs have also provided responses to the interrogatories (the sufficiency of which is also questioned by Citco as discussed below).

---

[12] This same interrogatory 16 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 177 & 214.

[13] This same interrogatory 17 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 67-68 & 102-103.

[14] This same interrogatory 17 was propounded on MERS and NOFF, and MERS and NOFF issued identical responses. R. Doc. 387-2, pp. 398 & 435.

[15] *See*, Plaintiffs' Responses to Interrogatories 1 (from CFS Cayman to FRS), 2 (from CFS Cayman to FRS), 10 (from CFS Cayman to FRS), 13 (from CFS Cayman to FRS), 14 (from CFS Cayman to FRS), and 17 (CFS Cayman to FRS).

[16] *See*, Plaintiffs' Responses to Interrogatories 15 (CFS Cayman to MERS), 16 (Citco Group to FRS).

Citco explains that it propounded its first set of interrogatories on Plaintiffs on January 9, 2017 and thereafter provided an extension through February 22, 2017. Citco asserts that Plaintiffs did not provide responses by the February 22, 2017 date and instead served responses and objections on March 3, 10, and 13, 2017.

"[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989); *See, Shaw Group Inc. v. Zurich American Ins. Co.*, 2014 WL 1891543, at *1, n.1 (M.D. La. May 12, 2014) (same); *Godsey v. United States*, 133 F.R.D. 111, 113 (S.D. Miss. Dec. 13, 1990) ("[T]here is authority within this circuit that does recognize the general rule that discovery objections are waived if a party fails to object timely to interrogatories, production requests, or other discovery efforts.") (citations omitted). "Where parties have failed to respond timely to written discovery requests, this court has required those parties to answer interrogatories and produce documents without objections." *Shaw Group, Inc.*, 2014 WL 1891543, at *1, n.1 (noting that the court had previously ordered the defendant to submit complete responses, without objections, to plaintiff's discovery requests to which defendant had not responded, within seven days); *See*, *Matherne v. Schramm*, 2013 WL 5961096 (M.D. La. Nov. 7, 2013) (ordering plaintiffs to submit complete responses, without objections, to defendants' discovery requests to which plaintiffs had not responded); *Johnson v. City of Baton Rouge*, 2011 WL 709186, at *1 (M.D. La. Nov. 7, 2013) (ordering defendants to respond to plaintiff's discovery requests and provide all responsive documents, without objection, within ten days).

Here, Plaintiffs do not contest Citco's assertion that an extension through February 22, 2017 was agreed upon, nor do they contest that their responses were provided after the February 22, 2017 date. Instead, Plaintiffs' position regarding the timeliness of its responses is based on the

large number of documents Plaintiffs had to review prior to responding and the brief time period between their deadline to respond and their actual response date.[17] Plaintiffs assert that "[o]ut of the blue, Citco informed that the interrogatories had not been timely responded to despite the ongoing communications between"[18] the parties' counsel and that it was necessary to obtain Citco's document production before responding to the interrogatories.

Citco contends that Plaintiffs provided responses to the interrogatories 9, 16, and 19 days after February 22, 2017. Plaintiffs have provided no explanation for their failure to seek an additional extension of time to respond past February 22, 2017. Under such circumstances, the general rule that Plaintiffs' objections to the interrogatories are waived should apply. However, Plaintiffs' objections do not relate to the relevancy of the requests, nor do they assert that responding to same would be unduly burdensome. Instead, Plaintiffs' objections are, for the most part, related to their position that supplemental responses to these interrogatories cannot be made until after additional discovery has taken place.[19] Such supplementation is required under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(e)(1)(A) ("A party who has…responded to an interrogatory…must supplement or correct its…response: (A) in a timely manner if the party learns that in some material respect the…response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made know to the other parties during the discovery process or in writing…."). Plaintiffs' "objection" is more akin to an assertion that Plaintiffs have attempted to respond to the various interrogatories based on the information

---

[17] R. Doc. 399, p. 15 ("Given the circumstances described above, the very little time between the due date of the discovery requests and the Funds' responses, the lack of any evidence of prejudice to Citco, and the fact that the information responsive to the discovery requests was, as shown above more available to Citco then [sic] to the Funds, then the Court should deny the waiver of claim of the Citco Defendants.").

[18] R. Doc. 399, p. 14.

[19] *See*, Plaintiffs' objections to Interrogatories 1, 2, 10, 13, 14, and 17 from CFS Cayman to FRS.

available to them, and that Plaintiffs' responses may be supplemented following additional discovery. While the general rule is that objections not timely raised are waived, the issue here is whether Plaintiffs should be required to provide supplemental responses without the opportunity to conduct additional discovery. The court cannot compel Plaintiffs to respond with information they do not have and, as discussed below, deferring such supplemental responses is within the discretion of the court. Under such circumstances, Plaintiffs' objection is simply not the sort that is waived by failure to timely respond to the discovery requests.

With respect to Plaintiffs' objections based on their position that the interrogatories seek information regarding the knowledge of persons who are not Plaintiffs' employees or representatives, such objection, to the extent it is even applicable based on the wording of the interrogatories, is waived under the general rule.[20] The interrogatories at issue ask Plaintiffs to: (1) identify persons or entities who participated in the decision to invest in the Series N shares and provide a brief description of their position and role in the decision; and (2) identify persons or entities involved in monitoring or retention of the Series N investments and provide a brief description of their position and role. These interrogatories only ask Plaintiffs to identify the individuals and entities who participated in the decision to invest or the monitoring of that investment, they do not ask Plaintiffs to set forth the "knowledge" of such individuals or entities. Accordingly, Plaintiffs' objection based on its assertion that the requests seek information regarding the knowledge of individuals or entities who are not their employees or representatives does not appear to be responsive to the interrogatories in the first instance. Further, unlike Plaintiffs' "objections" based on the universe of knowledge currently available to it, there is no

_____

[20] *See*, Plaintiffs' objections to Interrogatory No. 15 of CFS Cayman to MERS and Interrogatory No. 16 of Citco Group to FRS.

reason why Plaintiffs should not be able specifically identify at this juncture the persons and entities (and their positions and roles) involved in the investment decision or which monitored the investment. To the extent Plaintiffs' objection to these interrogatories would otherwise be relevant, such objection is waived based on the timeliness of Plaintiffs' responses.

### C. Responsiveness of Plaintiffs' Interrogatory Responses

#### i. Identification of Individuals Involved in Investment Decision and/or Monitoring (Interrogatory 15 from CFS Cayman to MERS and Interrogatory 16 from Citco Group to FRS)

Two of the interrogatories at issue in the Motion to Compel seek the identities of persons and entities involved in the decision to invest in the Series N shares or which monitored that investment:

> Interrogatory No. 15 of CFS Cayman to MERS: Identify every person or entity who participated in Your decision to invest in the Series N shares of Leveraged, including but not limited to investment advisors, investment brokers, consultants, promoters, placement agents, sales agents, investment firms, committee members, members of boards of directors, employees, agents, partners, or representatives, and as to each provide a brief description of their position and role in the decision.

> Interrogatory No. 16 of Citco Group to FRS: Identify all persons or entities that were involved in any way in the monitoring or retention of Your investments in the Series N shares of Leveraged, including but not limited to investment advisors, investment brokers, consultants, promoters, placement agents, sales agents, investment firms, committee members, members of boards of directors, employees, agents, partners, or representatives, and as to each provide a brief description of their position and role during the time You held Your investments in the Series N shares of Leveraged.

In response to Interrogatory 15, MERS states that "the persons attending the February 14, 2008 and March 12, 2008 board meetings participated in the decision to invest in the Series N Shares of Leveraged. The names of the persons attending said meeting are contained in the transcription of said meeting being produced as FRS006924-FRS007050. In addition, MERS

further identifies CSG, Joe Meals, and the members of the MERS Board as of April 1, 2008 in response to Interrogatory No. 15." In opposition to the Motion to Compel, Plaintiffs further explain that Robert Rust was the executive director of MERS and that Mr. Rust stated prior to his termination that "Denis Keily never made a presentation to the MERS board like he did to the FRS Board and that Mr. Rust recommended approval after consulting with [CSC], a registered investment advisor with the SEC and the MERS investment advisor, and CSG employee Joe Meals…." Plaintiffs further assert that Mr. Rust "discussed the investment with Steven Stockhill of FRS and Richard Hampton of NOFF" and that "MERS is not aware of another person other than CSG, Joe Meals, and Robert Rust that evaluated the investments and made a recommendation to make the investment."[21]

In response to Interrogatory 16, FRS asserts that "that the persons attending the February 14, 2008 and March 12, 2008 board meetings participated in the decision to invest in the Series N Shares of Leveraged. The names of the persons attending said meeting are contained in the transcription of said meeting being produced as FRS006924-FRS007050. In addition, Plaintiff further identifies CSG, Joe Meals, and the members of the Board as of April 1, 2008 in response to Interrogatory No. 16."

As discussed above, to the extent Plaintiffs' objections to these interrogatories are even responsive to the requests, such objections have been waived. Moreover, Plaintiffs have not provided full responses to either interrogatory. Although Plaintiffs argued during the June 27, 2017 hearing that their current responses were sufficient, neither response sets forth a list of individuals or entities who participated in the decision to invest, or who monitored that investment. Although it appears that Plaintiffs have provided some information as to FRS, they have not

---

[21] R. Doc. 399, p. 12.

provided similar information with respect to MERS or NOFF.[22]  During the conference, Citco's Motion to Compel supplemental responses to Interrogatories 15 and 16 was GRANTED.  Plaintiffs are ORDERED to provide supplemental responses to Interrogatory 15 setting forth the identities every person or entity who participated in the particular Plaintiff's decision to invest in the Series N shares of Leveraged, including a brief description of their position and role in the decision. Plaintiffs are FURTHER ORDERED to provide supplemental responses to Interrogatory 16 setting forth the persons or entities that were involved in any way in the monitoring or retention of the particular Plaintiff's investments in the Series N shares of Leveraged, including a brief description of their position and role during the time the particular Plaintiff held its investments in the Series N shares of Leveraged.

### ii.  Reference to the Trustees' Reports (Interrogatories 1, 2, 10, and 13 from CFS Cayman to FRS)

Plaintiffs' responses to Interrogatories 1, 2, 10, and 13 from CFS Cayman to FRS each make reference to the Trustees' Reports.  Plaintiffs assert that reference to the Trustees' Reports was used to establish the amount of funds Citco received between April 1, 2008 and June 20, 2008 and to explain the various relationships between the Citco entities.  Plaintiffs argue that Fed. R. Civ. P. 33(d) allows a party to specifically incorporate and reference information contained in business records, and that the Trustees' Reports should be considered business records.

Fed. R. Civ. P. 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing…."  The undersigned has previously held

---

[22] Citco asserts that "[o]n April 19 [2017], Plaintiffs identified several individuals affiliated with FRS who participated in certain February and March 2008 meetings but did not provide *any* information regarding NOFF or MERS, let alone the list of board members and investment committee members for each Plaintiff that that Citco requested."  R. Doc. 387-1, p. 9.  Citco further states that on May 9, 2017, Plaintiffs provided a partial list of board members, but did not provide the requested list of employees.  R. Doc. 387-1, p. 10.  With respect to FRS, Citco's "motion is limited" to FRS's failure to provide a brief description of the individuals' position and role.  R. Doc. 387-1, p. 21, n. 10.

that interrogatory responses that referred generally to a deposition transcript do not meet this standard. *Tadlock v. Artic Cat Sales, Inc.*, 2017 WL 1032516 (M.D. La. March 16, 2017). Courts interpreting Rule 33 have found that "it is 'technically improper and unresponsive for an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories.'" *Kleppinger v. Texas Dep't of Transportation*, 2013 WL 12138545, at *2 (S.D. Tex. Jan. 3, 2013) (citing *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 35 (D.D.C. Oct. 18, 2007) (citing 7 J. Moore, Moore's Federal Practice § 33.103 (2d ed. 2006)). *See also*, *Heerden v. Board of Supervisors of Louisiana State University*, 2011 WL 293758, at * 3 (M.D. La. Jan. 27, 2011) (noting that while it is permissible to refer to other specifically identified discovery answers, referring to "all policies and rules 'identified by plaintiff herein' and 'produced by defendant in this litigation'" was overly vague and that plaintiff was at least required to specifically identify the precise discovery response containing the information); *In re Bertucci Contracting Co., LLC*, 2013 WL 5935154, at * 5 (E.D. La. Nov. 5, 2013) ("claimants cannot merely point to other vast repositories of documents, deposition transcripts, state-court pleadings, etc. and inform defendants to search the documents for the information that they want.").

Plaintiffs' interrogatory responses that refer to the Trustees' Reports do not comply with Rule 33. During the June 27, 2017 conference, the undersigned noted that Plaintiffs' responses to Interrogatories 1, 2, 10, and 13 from CFS Cayman to FRS suffered from the fundamental problem that the responses made blanket references to voluminous documents. Plaintiffs' counsel agreed to supplement the responses to these interrogatories. Accordingly, the court ORDERED Plaintiffs to supplement their responses to Interrogatories 1, 2, 10, and 13 from CFS Cayman to FRS to

provide specific references (*i.e.*, by page and line number and/or by specific quotation) to the portions of these reports Plaintiffs assert are responsive to Citco's interrogatory requests.[23]

### iii. Third Party Beneficiary (Interrogatory 17 from CFS Cayman to FRS)

Interrogatory 17 from CFS Cayman to FRS requests:

> <u>Interrogatory No. 17 of CFS Cayman to FRS</u>: In regard to Your allegations in Count II of the Petition (Third Party Beneficiary Claims), identify each provision of the Administration Agreement that was breached and state the basis for Your allegation that each such provision was breached.

With respect to Interrogatory 17 (from CFS Cayman to FRS), FRS's response provides, *inter alia*, that "[t]he breaches of the agreement are set forth in detail in the previous answers and include the role it played in the offering in not ensuring that adequate disclosure were made of the material financial benefits being received by Citco from the Offering, as well as the failure to advice [sic] the Louisiana Funds, after the closing, that the proceeds of the offering were not being used for the stated purpose in the Offering Memorandum." FRS further asserts in response to Interrogatory 17 (from CFS Cayman to FRS) that FRS will provide an additional response following production of the agreements. FRS's response to Interrogatory 17 (from CFS Cayman to FRS), as currently written, does not "separately and fully" respond to the interrogatory as required by Fed. R. Civ. P. 33(b)(3).

During the hearing, counsel for Citco confirmed that the Administration Agreement had been produced, and pointed out that Plaintiffs' only remaining third party beneficiary claim is that asserted against CFS Cayman. In response, Plaintiffs' counsel asserted that Plaintiffs had provided a list of alleged omissions in response to another of Citco's interrogatory requests, and that

---

[23] These four interrogatories are also contention interrogatories. Plaintiffs are ordered to supplement their responses to these four interrogatories now to provide specific references to the Trustees' Reports. As discussed below, additional supplemental responses to these interrogatories has been deferred to the end of fact discovery.

Plaintiffs' response listing such omissions should also constitute Plaintiffs' response to Interrogatory 17 regarding the third party beneficiary claim. Following review of the particular interrogatory response cited by Plaintiffs, the court instructed Plaintiffs that such response did not specifically respond to Interrogatory 17 because it failed to set forth the provisions of the Administration Agreement allegedly breached. Further, to the extent Plaintiffs' response setting forth a list of alleged omissions is also responsive to Interrogatory 17, Plaintiffs must specifically so state. Accordingly, the court GRANTED Citco's Motion to Compel a supplemental response to Interrogatory 17 from CFS Cayman to FRS. The court ORDERED Plaintiffs to submit a supplemental response to Interrogatory 17 from CFS Cayman to FRS setting out the provisions of the Administration Agreement Plaintiffs alleged were breached and the specific basis for that allegation.

### iv. Damages (Interrogatory 17 from CTM to FRS)

Interrogatory 17 from CTM to FRS requests:

> Interrogatory No. 17 of CTM to FRS: Identify each item of damages that You claim, and for each such item provide an explanation of how You computed each item of damages, including any mathematical formula or model used.

In response to Interrogatory 17 (CTM to FRS), Plaintiffs "contend that they are entitle [sic] to a recovery of $100 million plus judicial interest from April 1, 2008. This represents the return of their initial investment. As of the date of these responses, no expert has been retained to makes [sic] this calculation. This response will be updated once that expert is retained." During the conference, Counsel for Citco confirmed that Citco wants each Plaintiff to respond individually to this interrogatory and delineate its individual damage claim. Counsel for Plaintiffs confirmed that Plaintiffs could delineate responses to this Interrogatory 17 by particular Plaintiff. Accordingly, Citco's Motion to Compel supplemental responses to Interrogatory 17 (seeking an identification

of damages claimed) is DENIED AS MOOT.  In keeping with the agreement reached during the June 27, 2017 conference, Plaintiffs are ORDERED to supplement their responses to Interrogatory 17 regarding damages to delineate each Plaintiff's individual damage claim.

### v. Contention Interrogatories (Interrogatories 1, 2, 10, 13, & 14 from CFS Cayman to FRS)

#### a. Certain Interrogatories are Properly Considered Contention Interrogatories

Citco objects to the characterization of any of the interrogatories as "contention interrogatories."  Instead, Citco argues that the interrogatories only seek to obtain the information known to Plaintiffs at the time they filed their Verified Petition.[24]  In contrast, Plaintiffs characterize all but four interrogatories as contention interrogatories for which responses would be premature.[25]

Fed. R. Civ. P. 33(a)(2) provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."  *See also*, *United States v. State*, 2015 WL 9165910, at * 4 (M.D. La. Dec. 16, 2015) ("An interrogatory may reasonably ask for the material or principal facts which support a contention.  Rule 33 contemplates that a responding party may not object merely because a contention interrogatory requires the application of opinion to fact.").  As explained by one court, a contention interrogatory is "an interrogatory that asks a

---

[24] R. Doc. 404, p. 4 ("Unlike the contention interrogatories at issue in the out-of-circuit cases that Plaintiffs rely upon, which sought disclosure of 'all facts' supporting essential elements of a party's case, Citco has merely asked for the facts that Plaintiffs relied upon in drafting their Verified Petition.").

[25] Plaintiffs assert that the interrogatories seeking the identities of those involved in the investment decision and/or monitoring (Interrogatories numbers 15 (from CFS Cayman to MERS) and 16 (from Citco Group to FRS)), Interrogatory 17 from CFS Cayman to FRS (requesting Plaintiffs identify each provision of the Administration Agreement that was breached), and Interrogatory 17 from CTM to FRS (requesting Plaintiff identify each item of damage and the computation for same) are not contention interrogatories.  R. Doc. 399, p. 3.

party to state what it contends, state whether it makes a specified contention, state all the facts

upon which it bases a contention, take a position and explain or defend the position concerning

how the law applies to facts, or state the legal or theoretical basis for a contention." *InternetAd*

*Systems, LLC v. ESPN, Inc.*, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004). *See also*, *Strauss*

*v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D.N.Y. May 25, 2007) (explaining that contention

interrogatories "'may ask another party to indicate what it contends, to state all the facts on which

it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how

the law applies to the facts.'") (quoting *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448,

450 (D.Conn. July 22, 1996)). Here, as set forth by the undersigned at the June 27, 2017

conference, the following interrogatories are properly considered to be contention interrogatories:

> Interrogatory No. 1 of CFS Cayman to FRS: State whether You
> contend that CFS Cayman prepared and delivered to FRS in
> Louisiana the offering memorandum for the Series N shares of
> Leveraged, as alleged in paragraph 9 of the Petition, and, if so, state
> the basis for such contention.

> Interrogatory No. 2 of CFS Cayman to FRS: State whether You
> contend that CFS Cayman negotiated the investment structure for
> FRS's investment in Leveraged, as alleged in paragraphs 19 and 21
> of the Petition, and, if so, state the basis for such contention

> Interrogatory No. 10 of CFS Cayman to FRS: State whether You
> contend that CFS Cayman failed to take "industry-standard steps"
> in performing any services to Leveraged, as alleged in paragraph 74
> of the Petition and, if so, (i) identify the "industry-standard steps"
> that You contend CFS Cayman did not take and (ii) state the basis
> for Your contention that such steps are "industry-standard."

> Interrogatory No. 13 of CFS Cayman to FRS: State whether You
> contend that CFS Cayman provided "substantial assistance" and/or
> was a "substantial factor" in the sale of the Series N shares to FRS,
> as alleged in paragraph 114 of the Petition and, if so, state the basis
> for such contention.

> Interrogatory No. 14 of CFS Cayman to FRS: State whether You
> contend that CFS Cayman directly or indirectly controlled a person
> liable under La. R.S. 51:714(A) or occupied a similar status or

performed a similar function as such a person, as alleged in paragraphs 120 to 124 of the Petition and, if so, identify (i) each person that CFS Cayman directly or indirectly controlled who You contend is liable under La. R.S. 51:714(A) or who occupied a similar status or performed a similar function as CFS Cayman; and (b) state the basis for Your contention that CFS Cayman directly or indirectly controlled such person(s) or that such person(s) occupied a similar status or performed a similar function as CFS Cayman.

### b. It is Within the Court's Discretion to Defer Supplemental Responses to the Contention Interrogatories

It is within the court's discretion to determine the appropriate time for responding to a contention interrogatory. *In re Katrina Canal Breaches*, 2007 WL 1852184, at * 3 (E.D. La. June 27, 2007) ("As to contention interrogatories of this sort, Rule 33(c) provides that 'the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time.' This Rule is purely permissive. The court may-but is certainly not required to-delay a response."); *InternetAd Systems, LLC v. ESPN, Inc.*, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004) ("Although it is not necessarily objectionable and may even be advisable, the language of Rule 33(c) and the Advisory Committee note support the conclusion that it is within a court's discretion to decide when an otherwise-proper interrogatory must be answered.").

Some courts considering this issue have required a party to answer contention interrogatories tracking the language of their complaint early in the discovery process. *See*, *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 235 (E.D.N.Y. May 25, 2007) ("Requiring plaintiffs in this case to answer subparts (ii) and (iii) at this early stage in discovery would not be futile or burdensome because the interrogatories track the allegations in the complaint, upon which plaintiffs presumably have sufficient facts to plead. In any event, plaintiffs are under an ongoing obligation to supplement their discovery responses. *See* Fed. R. Civ. P. 26(e). Although Credit Lyonnais has not yet produced any documents to plaintiffs and only one deposition has occurred,

the plaintiffs are ordered to disclose the facts and documents that support the allegations in their complaint, as requested in Interrogatory 4, by June 25, 2007."); *Pouncil v. Branch Law Firm*, 277 F.R.D. 642, 650 (D. Kan. Dec. 13, 2011) ("Here, the Court finds no persuasive reason for Defendants to defer their answers to Interrogatory Nos. 26–28. Defendants should answer these interrogatories as fully as they can, keeping in mind their continuing obligation to supplement their discovery responses as additional or different information becomes available. Although Defendants have not yet deposed Plaintiff's expert witness, Plaintiff has already provided Defendants with her expert's report."). Others "tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery is almost complete." *In re eBay Seller Antitrust Litigation*, 2008 WL 5212170, at * 1 (N.D. Cal. Dec. 11, 2008). *See also*, *InternetAd Systems, LLC v. ESPN, Inc.*, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004) ("Many courts exercise [their] discretion…and conclude that contention interrogatories need not be answered until later in the discovery process."). As explained by one court,

> [M]ost courts agree that "[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period." Premature contention interrogatories are discouraged for several reasons. First, there is "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." In addition, "a lawyer's unwillingness to commit to a position without an adequately developed record will likely lead to vague, ambiguous responses," which are effectively useless. Moreover, in cases where the parties anticipate the production of "an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery.

*Sigman v. CSX Corp.*, 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016) (internal citations omitted) (denying motion to compel responses to contention interrogatories without prejudice where discovery was not nearing its end and no expert reports had yet been exchanged).

Although Citco argues that the interrogatories are meant to elicit the universe of Plaintiffs' knowledge at the time the Verified Petition was filed, the interrogatories are not so limited by their own terms and instead broadly seek the bases for Plaintiffs' contentions. As noted above, while some courts have required a party to respond to early contention interrogatories and later supplement those responses, others "look with considerable skepticism at sets of contention interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading." *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 338 (N.D. Cal. Oct. 28, 1985). The *In re Convergent* court explained its position as follows:

> [A] party who wants early answers to contention interrogatories must hand-craft a limited set of questions. In addition, such a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56. A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered. Rather, the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure. The Court will be especially vigilant in its evaluation of proffered justifications when a complaint is not facially infirm and when defendants appear to have control over or adequate access to much of the evidence relevant to their alleged misconduct.

*Id.* As pointed out by Plaintiffs, this court has previously held that certain of Plaintiffs' allegations were sufficient to state a claim against Citco.[26] Further, Plaintiffs have provided some responses to the interrogatories. Given Plaintiffs' assertion that they cannot further answer these interrogatories without reviewing Citco's document production, and in light of the fact that the

---

[26] *See*, R. Doc. 325 (granting in part and denying in part Motions to Dismiss Pursuant to Rule 12(b)(6)); R. Doc. 327 (granting in part and denying in part CFS Cayman's Motion to Dismiss Pursuant to Rule 12(b)(6)).

contention interrogatories are not expressly limited to Plaintiffs' contentions at the time the Petition was filed, Citco's Motion to Compel supplemental responses to Interrogatories 1, 2, 10, 13, and 14 from CFS Cayman to FRS was DENIED. While Plaintiffs are ORDERED to supplement their responses to Interrogatories 1, 2, 10, and 13 from CFS Cayman to FRS as discussed above to address references to the Trustees' Reports, Plaintiffs shall provide final supplemental responses to Interrogatories 1, 2, 10, 13, and 14 from CFS Cayman to FRS on or before December 15, 2017.[27]

### D. Verification of Interrogatory Responses

Citco objects to the Verifications provided by the executive directors/deputy directors of FRS, MERS, and NOFF.[28] Those Verifications are substantively identical and provide:

> To the best of my knowledge, I hereby certify that the information contained herein is truthful and accurate and represents a complete and accurate statement of any facts of which I, or employees of Firefighters' Retirement System, have personal knowledge. Many of the responses to the interrogatories contain factual information gathered by my legal counsel in the course of their representation of Firefighters' Retirement System, of which I have no personal knowledge. I believe their investigation to be complete and their disclosure of the facts to be complete, and I have no reason to believe the facts they gathered from third parties in response to the interrogatories are not complete and accurate.

Citco asserts that "[n]one of Plaintiffs' interrogatory responses are properly verified under oath or otherwise made under penalty of perjury by a representative of FRS, MERS, or NOFF."[29] Citco asserts that "[n]ot only are Plaintiffs' certifications unsworn, they purport only to verify facts

---

[27] Per the court's current scheduling order, the deadline for completing all discovery except experts is December 15, 2017. During the June 27, 2017 conference, counsel for Citco expressed concern that deferring Plaintiffs' supplemental responses to the contention interrogatories would result in the need to revisit expert discovery deadlines. The point is well taken, and modification of the scheduling order will be considered if necessary. There is no trial date currently set in this matter.

[28] R. Doc. 387-4.

[29] R. Doc. 387-1, p. 28.

within the "personal knowledge" of the corporate representatives and expressly disclaim knowledge of the balance of the responses."[30]

Fed. R. Civ. P. 33(b)(3) requires that a party respond to each interrogatory "under oath." The purpose of requiring sworn responses is to bind the entity to its answers. *See*, *Tadlock v. Artic Cat Sales, Inc.*, 2017 WL 1032516, at * 5 (M.D. La. March 16, 2017) ("According to the court in [*Stiward v. United States*, 2007 WL 2417382, at *3 (E.D. La. Aug. 24, 2007)], 'Fed. R. Civ. P. 33 requires that '[e]ach interrogatory be answered separately and fully in writing under oath,' so that the responding party is bound by its answer and the answer can be introduced into evidence.'"). *See also*, *Shire Laboratories, Inc. v. Barr Laboratories, Inc.*, 236 F.R.D. 225, 227 (S.D.N.Y. June 23, 2006) ("The main point of the signature is to bind the party."). "If the interrogatory responses are not signed by the party but only the party's attorney, the responses are unsworn, unverified, and amount only to statements of counsel. Such interrogatory responses are not admissible evidence at trial." *Jordan v. ENSCO Offshore Co.*, 2016 WL 3049565, at * 8 (E.D. La. May 22, 2016). *See also*, *Laborde v. SGS North America, Inc.*, 2012 WL 5304534, at *2 (M.D. La. Oct. 25, 2012) ("courts in the Fifth Circuit have determined that a Rule 33(b) verification is required of the corporate entities, signed under oath by an authorized representative of the corporate entity and not by its counsel."); *Entergy Louisiana, Inc. v. National Union Fire Ins. Co.*, 1999 WL 239511, at *2 (E.D. La. April 21, 1999) ("Defendants must provide the Rule 33(b) verification of interrogatory answers, signed under oath by authorized representatives of each defendant…."). Further, Fed. R. Civ. P. 33(b)(1)(B) requires that where an party is a private corporation, association, or other entity, interrogatories must be answered "by any officer or agent, who must furnish the information available to the party." An authorized representative of the entity is

---

[30] R. Doc. 387-1, p. 29.

required to "furnish the information available to it," such that the representative's personal knowledge is not required. *See*, *AT&T Corp. v. Park I-10 Motors*, 2014 WL 12659767, at *2 (W.D. Tex. April 28, 2014) ("An agent's verification is not inappropriate simply because it is based on corporate records rather than personal knowledge.") (citing *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1482 (D.D.C. Aug. 25, 1995)). *See also*, *Chapman & Cole v. Itel Container Intern. B.V.*, 116 F.R.D. 550, 558 (S.D. Tex. July 22, 1987) (("the agent signing the answers to interrogatories on behalf of the corporation cannot limit his answers to only information within his personal knowledge.").

Here, although the Verifications were signed by representatives of the Plaintiffs, nowhere in the Verifications do these representatives state that their responses are made under oath. This court requires such answers to be made under oath. *See*, *Savoy v. Davis*, 2016 WL 589696, at *2 (M.D. La. Feb. 11, 2016) ("the Responses were not signed by the person making the answers, nor are the answers made under oath. For these reasons, the Responses are not in compliance with the requirements of Federal Rule of Civil Procedure 33."). During the conference, Counsel for Citco further argued that the Verifications as currently drafted only serve to bind the entities to that which the signatory has personal knowledge. The language of the Verification is not limited, as Citco contends, to the representatives' personal knowledge. Accordingly, Citco's Motion to Compel a supplemental Verification is GRANTED IN PART. Plaintiffs are ORDERED to resubmit the Verifications signed under oath. To the extent issues related to the wording of the Verification remain, such issues may be raised at the parties' next in court status conference.

### III. Conclusion

For the reasons set forth herein, as well as those discussed during the June 27, 2017 status conference, the Motion to Compel Supplemental Interrogatory Responses (the "Motion to

Compel")[31] filed by defendants, Citco Banking Corporation N.V., The Citco Group Limited, Citco Fund Services (Cayman Islands) Limited, and Citco Technology Management, Inc. (collectively, "Citco") is **GRANTED IN PART AND DENIED IN PART**.

Citco's Motion to Compel supplemental responses to Interrogatory 15 from CFS Cayman to MERS and Interrogatory 16 from Citco Group to FRS is **GRANTED**. Plaintiffs are **ORDERED** to provide supplemental responses to Interrogatory 15 setting forth the identities every person or entity who participated in the particular Plaintiff's decision to invest in the Series N shares of Leveraged, including a brief description of their position and role in the decision within twenty-one (21) days of this Ruling and Order. Plaintiffs are **FURTHER ORDERED** to provide supplemental responses to Interrogatory 16 setting forth the persons or entities that were involved in any way in the monitoring or retention of the particular Plaintiff's investments in the Series N shares of Leveraged, including a brief description of their position and role during the time the particular Plaintiff held its investments in the Series N shares of Leveraged within twenty-one (21) days of this Ruling and Order.

Citco's Motion to Compel a supplemental response to Interrogatory 17 from CFS Cayman to FRS is **GRANTED**. Plaintiffs are **ORDERED** to submit a supplemental response to Interrogatory 17 from CFS Cayman to FRS setting out the provisions of the Administration Agreement Plaintiffs alleged were breached and the specific basis for that allegation within twenty-one (21) days of this Ruling and Order.

Citco's Motion to Compel a supplemental response to Interrogatory 17 from CTM to FRS is **DENIED AS MOOT**. In keeping with the agreement reached during the June 27, 2017 conference, Plaintiffs are **ORDERED** to supplement their responses to Interrogatory 17 regarding

---

[31] R. Doc. 387.

damages to delineate each Plaintiff's individual response within twenty-one (21) days of this Ruling and Order.

To the extent not otherwise ordered herein, Citco's Motion to Compel supplemental responses to Interrogatories 1, 2, 10, 13, and 14 from CFS Cayman to FRS is **DENIED IN PART**. Plaintiffs are **ORDERED** to supplement their responses to Interrogatories 1, 2, 10, and 13 from CFS Cayman to FRS as discussed above to address references to the Trustees' Reports within twenty-one (21) days of this Ruling and Order.  In all other respects, Plaintiffs shall provide final supplemental responses to Interrogatories 1, 2, 10, 13, and 14 from CFS Cayman to FRS on or before December 15, 2017.

Citco's Motion to Compel a supplemental Verification is **GRANTED IN PART**. Plaintiffs are **ORDERED** to resubmit the Verifications signed under oath within twenty-one (21) days of this Ruling and Order.  To the extent issues related to the wording of the Verification remain, such issues may be raised at the parties' next in court status conference.

Signed in Baton Rouge, Louisiana, on June 29, 2017.


_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**