**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

VERSUS

CITCO GROUP LIMITED, ET AL.

CIVIL ACTION

13-373-SDD-EWD

**RULING AND ORDER ON MOTION TO COMPEL**

Before the court is The Louisiana Funds' Renewal of Motion to Compel on Documents in the Control of the Citco Group, Ltd. (the "Renewed Motion to Compel").[1] The Renewed Motion to Compel reasserts a previous Motion to Compel filed by plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs").[2] Defendants, Citco Technology Management, Inc. ("CTM"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and The Citco Group Limited ("Citco Group") (collectively, the "Citco Defendants") have filed an Opposition.[3] On December 12, 2017, the parties participated in a status conference in this matter and the Renewed Motion to Compel was discussed. For the reasons set forth herein, Plaintiffs' Renewed Motion to Compel is **DENIED**.

**I.  Background**

On March 1, 2013, Plaintiffs filed suit against 23 defendants, including the Citco Defendants, asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade

---

[1] R. Doc. 484. Plaintiffs were subsequently granted leave to file their Memorandum in Support of the Renewed Motion to Compel under seal. *See*, R. Docs. 489 & 490.

[2] R. Doc. 454.

[3] R. Doc. 500.

1

Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims.[4] Plaintiffs' claims arise from a $100 million investment loss. In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund ("Leveraged") for $100 million.[5] After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[6] Ultimately, the shares went unredeemed and the Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[7]

Plaintiffs previously filed a Motion to Compel[8] (the "Initial Motion to Compel") seeking an order compelling Citco Group to respond to multiple interrogatories and requests for production based upon the knowledge of entities controlled by Citco Group and/or possession of documents by entities controlled by the Citco Group. Plaintiffs' Initial Motion to Compel also asserted that Plaintiffs had issued particular interrogatories to the Citco Group for the purpose of obtaining information regarding Citco Group's procedures for responding to discovery requests and gathering documents, but that Citco Group had refused to respond to those interrogatories.[9] In

---

[4] R. Doc. 1-3.

[5] R. Doc. 1-3, ¶ 34.

[6] R. Doc. 1-3, ¶ 41.

[7] R. Doc. 1-3, ¶¶ 34-45 & 18. Leveraged was a feeder fund which Plaintiffs allege was formed primarily to invest in a master fund, Fletcher Income Arbitrage, Ltd. R. Doc. 1-3, ¶ 10.

[8] R. Doc. 454.

[9] Plaintiffs stated that "[t]o the extent the Louisiana Funds are saddled with the obligation to know which areas to tell Citco Group to search, Citco Group should have been obligated to respond" to certain interrogatories "so that it could have a better understanding of the scope of the search." R. Doc. 454-2, p. 9. Plaintiffs pointed to Interrogatories 1-5 issued by FRS to Citco Group. R. Doc. 454-4. Per Interrogatory No. 1, Plaintiffs asked Citco Group to identify "all Persons employed or compensated by Defendant or Citco that have been, will be, or may be designated as the corporate representative(s)…to testify as to the scope and completeness of the search for the documents requested…." In Interrogatory No. 2, Plaintiffs similarly asked Citco Group to identify the corporate representative(s) "to testify to the location of the documents requested…." Interrogatory No. 3 asks Citco Group to identify all persons with whom defendants "communicated…in attempting to determine the existence of the documents requested…." Interrogatory No. 4 asks Citco Group to identify all persons with whom defendants "communicated…in attempting to determine the location of the documents requested…." Finally, Interrogatory No. 5 asks Citco Group to identify all persons with

opposition to the Initial Motion to Compel, the Citco Defendants did not challenge Plaintiffs' position that an entity must produce documents within its "possession, custody, or control," or that such custody or control extends to documents within the party's control, even if owned by a nonparty; instead, the Citco Defendants argued that granting Plaintiffs' motion would ignore the substantial discovery efforts already made in this case and would be incompatible with the proportionality requirement of the federal rules.[10]

The Initial Motion to Compel was discussed during an October 24, 2017 status conference with the parties, and the court found that Plaintiffs' concerns regarding how information was gathered by the Citco Group to respond to discovery should be addressed via a deposition pursuant to Fed. R. Civ. P. 30(b)(6).[11] Accordingly, the court denied the Initial Motion to Compel (without prejudice to re-urging following the corporate deposition) and ordered the parties to proceed with the 30(b)(6) deposition of Citco Group to "address the method by which Citco responded to interrogatories and requests for production, identified appropriate custodians, gathered both hard copy documents and electronically stored information, and whether documents were produced as kept in the ordinary course of business."[12]

Plaintiffs took the 30(b)(6) deposition of Citco Group via Mr. John Diver, Associate Group General Counsel, on November 8, 2017.[13] The Notice setting the deposition set forth 38 topic areas.[14] Topic areas included names of persons responsible for searching for responsive

---

who defendant "communicated…to determine that all documents requested in the Document Production Requests have in fact been produced."

[10] R. Doc. 458, p. 2.

[11] R. Doc. 469, p. 4.

[12] R. Doc. 469, p. 4.

[13] A copy of the entire deposition transcript is attached to Plaintiffs' Renewed Motion to Compel. R. Doc. 484-4.

[14] R. Doc. 484-3.

3

documents, how searches were made and the location of electronic files and servers, methods used to locate documents other than electronic searches, and the identity of any person with whom Citco Group communicated with "in attempting to determine that all documents requested in the Document Production Requests have in fact been produced."[15] The notice also included topic areas which asked if there were any documents in Citco Group's possession or control responsive to particular requests for production.[16] During the deposition, Plaintiffs asked a number of questions regarding Mr. Diver's attempts to confirm the accuracy of certain interrogatory responses. Counsel for Citco Group consistently objected to these questions as outside the topics set in the Deposition Notice, and contended that Mr. Diver had "done nothing to confirm the accuracy or inaccuracy of any interrogatory asked of any defendant."[17]

With regard to the gathering of documents, Mr. Diver testified that

> Paul Weiss, Andrew and various other people at Paul Weiss, had overall responsibility for collecting and for searching all of the various documents. They worked with myself and Nick Braham, who is the General Counsel of Citco, to identify a representative of each of the defending companies, with the exception of CFS Suisse which no longer exists.[18] Those people who are identified undertook a search of the archives, the hard copy files and also a search of shared drives for any soft copy documents in relation to Fletcher or any of the Fletcher funds. In addition to that, the members of the Citco IT security team…Ricardo Marrero, Cory Lewis and another gentleman called Audrey Fyodorov conducted a search against the 56 search terms that were identified against the 21 custodians that were named.[19]

---

[15] R. Doc. 484-3, topic 17.

[16] R. Doc. 484-3, topics 18-28.

[17] *See*, R. Doc. 484-4, p. 29:4-6.

[18] For Citco Group, Mr. Diver and Group General Counsel, Nicholas Braham, met. R. Doc. 484-4, pp. 19:24-20:1. For Citco Technology, Diver met with Ben Jansen. R. Doc. 484-4, p. 20:5. For CFS, Diver met with Weikert Weber, and for Citco Bank, Diver met with Ronald Irausquin. R. Doc. 484-4, p. 20:8 & 11. Mr. Diver further testified that the representative of each defendant company helped identify custodians. Custodian laptops were also searched. R. Doc. 484-4, p. 71:21-24.

[19] R. Doc. 484-4, pp. 58:19-59:12.

Mr. Diver testified that "[f]or the companies that had shared drives, the search was performed by the local representative of that defendant company, in the location of that defendant company."[20] With respect to Citco Banking, Mr. Diver stated that "[a]ny files within the shared drive that were either Fletcher-related or had a name of the Fletcher Fund" were searched and "also just a general search of the term 'Fletcher'" was performed.[21] Hard copy archives were also searched.[22] Regarding CFS, "a gentleman called Weikert Weber at CFS Cayman searched the archives of CFS Cayman for any and all hard copy files related to Fletcher or the Fletcher Funds….In addition, Weikert performed a search of the offices to ensure there were no other hard copy files that weren't in the archives….And then Weikert performed a search of the shared drives, on the same basis."[23]

Per their Renewed Motion to Compel, Plaintiffs assert that they previously propounded interrogatories to the Citco Defendants in order to identify persons with knowledge of "key issues" in order to determine appropriate custodians.[24] Plaintiffs contend that defendants' responses to these interrogatories "were incomplete and inaccurate" and thus resulted in "a flawed list of

---

[20] R. Doc. 484-4, p. 79:12-15. Citco Group does not have a shared drive. Mr. Diver stated that for Citco Group, "e-mails of the specific custodians were searched and also the individuals themselves that are named as custodians that worked for the Citco Group; to the extent that they had any hard copy files, they were also produced." R. Doc. 484-4, p. 80:14-18.

[21] R. Doc. 484-4, p. 89:8-10.

[22] R. Doc. 484-4, p. 93:19-21 (explaining that Ronald Irausquin identified Jonathan Luckmann, Aracelis Martinez, and Heidi Friedemer who "searched the hard copy archives, which are actually files stored in a bank vault at Citco Bank's premises in Curacao.").

[23] R. Doc. 484-4, pp. 95:23-94:10.

[24] In addition in interrogatories 1-5 set forth above, Plaintiffs assert that on February 10, 2017, they propounded what they now term as "Custodian Interrogatories" "which asked the Citco Group to identify persons that had knowledge of key issues…that are each part of the claims made by the Louisiana Funds…." R. Doc. 490, p. 2. These interrogatories generally seek identification of persons with knowledge regarding specific issues. Citco responded to these interrogatories on March 21, 2017 and for certain responses identified Ermanno Unternaehrer, Gabriele Magris, Christopher Smeets and/or Nicholas Braham. For other requests, Citco objected or stated it was unaware of any person with knowledge. R. Docs. 484-10 – 484-12.

5

custodians" and a "flawed electronic search for documents."[25] However, Plaintiffs do not assert that a specific custodian (or even search term) should be added. Instead, Plaintiffs contend that Mr. Diver confirmed during his deposition that "one email can be sent to everyone in the Citco organization and ask them limited questions about their personal knowledge of the issues in this lawsuit"[26] and assert that "[t]he group of Citco entities and persons employed by them that have personal knowledge of the Key Issues can be readily and economically identified through one questionnaire to all employees of Citco through a direct email."[27] In addition to emailing this questionnaire, Plaintiffs contend that Citco Group should be required to "respond completely and accurately to the Custodian Interrogatories to determine whether the custodian list on which the electronic searches were based were in fact complete, comprehensive, and accurate."[28] Plaintiffs also assert that the court should order a search of the "individual business and personal computers of persons having personal knowledge"[29] as well as a "search of local networks" and hard copy documents of Citco Trust and CTC,[30] Millennium Foundation, Richcourt, Global Hawk,[31] "and all subsidiaries controlled by Citco Group, Ltd. in which a positive response is received from their

---

[25] R. Doc. 490, p. 4.

[26] R. Doc. 490, p. 7, n. 8.

[27] R. Doc. 490, p. 17.

[28] R. Doc. 490, p. 15.

[29] Mr. Diver testified that "Citco policy is that you are not allowed to use personal e-mails – e-mail addresses to do any work-related activities. So [personal emails] would not have been searched." R. Doc. 484-4, p. 75:9-12. Mr. Diver also testified that any laptops of custodians were searched. R. Doc. 484-4, p. 71:21-24.

[30] Mr. Diver testified that no records were gathered from Citco Trading, CTC Corporation, Millennium, or Global Hawk because these weren't defendant companies. R. Doc. 484-4, pp. 86-87.

[31] Mr. Diver confirmed during the deposition that Citco searched "Richcourt documents that remained" in Citco's possession after "Fletcher made the purchase in June of 2008." R. Doc. 484-4, p. 98:9-12. However, Mr. Diver testified that "[t]he servers that the Richcourt e-mails are on, went as part of the acquisition" and therefore were not in Citco's control and that Citco does not have a back up of the Richcourt server emails. R. Doc. 484-4, pp 98-99.

6

employee [in response to the proposed email questionnaire]" as well as "all company networks of companies which employ attorneys listed on the privilege log of Citco."[32]

In opposition to the Renewed Motion to Compel, the Citco Defendants reiterate that Defendants "collected documents from the three general sources litigants ordinarily…collect from: (a) hard copy files of each Citco Defendant entity; (b) the shared drive files of each Citco Defendant entity; and (c) email files of the 21 agreed-upon custodians using 56 agreed-upon search terms."[33] The Citco Defendants assert that they "are prepared to review their interrogatory responses and supplement where appropriate, and are also (as they have been) prepared to discuss with Plaintiffs additional document custodians (if Plaintiffs identify any)…."[34] The Citco Defendants contend that none of the topics set forth in the corporate deposition notice "involved the Citco Defendants' identification of Custodians" and that "Mr. Diver…was not prepared to testify on Citco Group's interrogatory responses since Plaintiffs failed to designate those responses as a topic."[35] The Citco Defendants assert Plaintiffs' requests for searches of shared drives[36] and hard copy documents have been effectively already done, and that any additional searches based on an e-mail questionnaire to all employees would be disproportional to the needs of this case.

## II. Law and Analysis

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense

---

[32] R. Doc. 490, p. 16.

[33] R. Doc. 500, p. 3.

[34] R. Doc. 500, p. 11.

[35] R. Doc. 500, pp. 10-11.

[36] The Citco Defendants reiterate that for Citco Banking and CFS Cayman (which apparently have shared drive files to centrally save client files), searches of Fletcher-related folders on the shared drives were performed. R. Doc. 500, p. 6. The Citco Defendants state that Citco Banking did not have any Fletcher-related folders, but that Citco is currently running the term "Fletcher" across the entire shared drive to ensure nothing was missed. R. Doc. 500, p. 6.

7

and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). A determination of relevancy is tied to applicable substantive law and then weighed against the six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality. The court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"For a motion to compel, '[t]he moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.'" *Mirror Worlds Technologies, LLC v. Apple Inc.*, Case No. 6:13-cv-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016) (quoting *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2-08-cv-158, 2010 WL 547478, at *2 (E.D. Tex. Feb. 10, 2010)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Mirror Worlds Technologies, LLC*, 2016 WL 4265758 at *1. *See also*, *Wymore v. Nail*, No. 5:14-cv-3493, 2016 WL 1452437, at *1 (W.D. La. April 13, 2016) ("Once a party moving to compel discovery establishes that the

materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections.") (citing *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); *Rivero v. Sunbeam Products, Inc.*, Civil No. 08-591, 2010 WL 11451127, at *4 (W.D. Tex. Jan. 12, 2010) ("Plaintiffs, who bear the burden of proof in support of their motion to compel....").

The Federal Rules of Civil Procedure explicitly direct parties to discuss "issues about disclosure, discovery, or preservation of electronically stored information…" early in the litigation process when making their discovery plan. FRCP 26(f)(3)(C). *See also*, Advisory Committee Notes to the 2006 Amendments ("Rule 26(f) is amended to direct the parties to discuss discovery of electronically stored information during their discovery-planning conference" and noting that the parties "may identify the various sources of such information within a party's control that should be searched for electronically stored information."). A responding party is generally entitled to select the custodians most likely to possess responsive information. *See*, *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank*, N.A., 15 CV 0293, 2017 WL 2305398, at * 2 (S.D.N.Y. May 18, 2017) ("Absent agreement among the parties, then, the responding party is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals."). "Unless that choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or…designating custodians." *Id.* Further, "'a party seeking to compel another party to search the files of additional custodians bears the burden of establishing the relevance of the documents it seeks from those custodians.'" *Id.* (quoting *Lightsquared Inc. v. Deere & Co.*, No. 13 Civ. 8157, 2015 WL 8675377, at *5 (S.D.N.Y. Dec. 10, 2015)). *See also*, *Enslin v. Coca-Cola Company*, 14-6476,

2016 WL 7042206, at * 3 (E.D. Pa. June 8, 2016) ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel a party to undertake additional efforts to search for paper documents. In either case, the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information, and in either case, the burden appropriately lies with the requesting party to show that the responding party's search was inadequate.") (citing *Scott C. v. Bethlehem Area Sch. Dist.*, No. 00-642, 2002 WL 32349817, at *1 (E.D. Pa. July 23, 2002) (refusing to compel a party to conduct a further search for documents because the requesting party "ha[d] not pointed to any evidence" that the responding party had failed to conduct a reasonable search) & The Sedona Conference, The Sedona Principles 43 (2007) ("The requesting party has the burden on a motion to compel to show that the responding party's steps to…produce relevant electronically stored information were inadequate.")); *Ford Motor Co. v. Edgewood Properties, Inc.*, Civil Action No. 06-1278, 257 F.R.D. 418, 427 (D.N.J. May 19, 2009) ("'[a]bsen[t] agreement, a [responding] party has the presumption, under Sedona Principle 6, that it is in the best position to choose an appropriate method of searching and culling data.'") (citing The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E–Discovery).[37]

Based on the parties' correspondence, the parties agreed upon 56 search terms and the following 21 document custodians: (1) Albert van Nijen, (2) Angus Dacker, (3) Aracelis Martinez, (4) Chris Smeets, (5) Ermanno Unternaechrer, (6) Gabriel Magris, (7) Larry Luckmann, (8) Miklos Ujhelyi, (9) Ronald Irausqin, (10) Shaun Gale, (11) Trent Grant, (12) Wiekert Weber, (13) Katie

---

[37] Courts in this Circuit have explained that the "Sedona Principles and the related Sedona commentaries are the leading authorities on electronic document retrieval and production." *Matrix Partners VIII, LLP v. Natural Resource Recover, Inc.*, Civil Action No. 08-547, 2009 WL 10677430, at *5 n. 3 (E.D. Tex. June 5, 2009); *Kleppinger v. Texas Dept. of Transportation*, 2013 WL 12137773, at * 3 (S.D. Tex. Jan. 24, 2013) ("Rule 26 provides very little guidance on discovery of ESI, and courts have used the ESI discovery principles published by the Sedona Conference as a guide in resolving ESI discovery disputes.").

Bernard, (14) Yves Bloch, (15) Demetria Moss, (16) Nina Michelsen, (17) Jan Oyens, (18) William Keunen, (19) Gilbert Grosjean, (20) Enrico Laddaga, (21) Denis Muys.[38] Plaintiffs still have not explained why the custodians and search terms used were unreasonable. Moreover, although the Citco Defendants have been willing to add additional search terms during the course of this litigation, and note in opposition to the Renewed Motion to Compel that they are "prepared to discuss with Plaintiffs additional document custodians (if Plaintiffs identify any),"[39] Plaintiffs failed to identify proposed additional custodians in either their Renewed Motion to Compel or during the December 12, 2017 status conference.

Instead, Plaintiffs seek permission from this court to email everyone in every Citco entity to ask whether anyone employed by any Citco entity has knowledge relevant to this litigation, and thereafter require the Citco Defendants to conduct additional electronic and hard copy searches for documents. That is simply unreasonable, and in essence is a request for the Citco Defendants to "go back to square one" of their document production efforts despite the parties' agreement regarding custodians and search terms, the Citco Defendants apparent willingness to consider additional custodians and search terms, and Plaintiffs failure to identify or explain the necessity of any additional custodians or search terms. Further, such a large scale search raises proportionality concerns and, especially in light of the parties' previous agreements and efforts, would be unduly burdensome.[40] *See*, Fed. R. Civ. P. 26(b)(2)(C) (The court must limit the frequency or extent of

---

[38] R. Doc. 497-1.

[39] R. Doc. 497-1, p. 11.

[40] In opposition to the Initial Motion to Compel, the Citco Defendants attached the affidavit of Mr. Diver, wherein he states that searching across all affiliated Citco entities would mean searching the files of 235 affiliates and subsidiaries and would involve searching 170 terabytes of emails (which the Citco Defendants state is the equivalent of 400 million documents). R. Doc. 458-1, R. Doc. 458, p. 5. Plaintiffs apparently seek to limit the potential scope of review by sending an initial email blast to all Citco employees (and presumably past employees). There is no indication that this would result in a less burdensome procedure.

11

discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."); *Ford Motor Co.* 257 F.R.D. at 427 ("The Court finds that reinventing the wheel here would be unduly burdensome to Ford. The gravamen of Edgewood's complaint is that it suspects it has not received all of the documents to which it is entitled. But such a conclusory allegation premised on nefarious speculation has not moved several courts, nor will it move this one, to grant burdensome discovery requests late in the game."); *In re Biomet M2A Magnum Hip Implant Products Liability Litigation (MDL 2391)*, 12-MD-2391, 2013 WL 1729682, at * 2 (N.D. Ind. April 18, 2013) (request to institute predicative coding method after significant electronic discovery efforts using keyword searching was essentially a request to "go back to square one" and sat "uneasily with the proportionality standard in Rule 26(b)(2)(C).").[41]

"'[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files," and "[i]n an era where vast amounts of electronic information is available for review,…[c]ourts cannot and do not expect that any party can meet a standard of perfection.'" *Enslin*, 2016 WL 7042206, at * 3 (citing *Treppel v. Bioval Corp.*, 03 Civ. 3002, 233 F.R.D. 363, 374 (S.D.N.Y. Feb. 6, 2006) & *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 05 Civ 9016, 685 F. Supp. 2d 456, 461 (S.D.N.Y. May 28, 2010) (abrogated on other grounds, *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012)).

---

[41] While Plaintiffs complain that Mr. Diver refused to answer questions regarding the accuracy of interrogatory responses, the undersigned agrees that such questions (although reasonably within the scope of the October 24, 2017 Order allowing the corporate deposition) were not raised as topics in the notice of deposition. The undersigned also notes that Glenn Hassett, not Mr. Diver, verified Citco Group's responses to what Plaintiffs now call the "Custodian Interrogatories." R. Doc. 484-10.

Here, Plaintiffs' request strikes the undersigned as a request to somehow ensure that every single potentially responsive document (no matter how cumulative or burdensome to obtain) should be produced. However, despite Plaintiffs' protestations, they have not established that the searches conducted so far were unreasonable, and the court's review of Mr. Diver's deposition testimony shows that the Citco Defendants' did make reasonable efforts to identify appropriate custodians and responsive documents. The undersigned assumes that the Citco Defendants, in keeping with the representations set forth in the opposition, will continue to be willing to discuss additional custodians and search terms with Plaintiffs.

## IV. Conclusion

For the reasons set forth herein, the Renewed Motion to Compel[42] filed by plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs") is **DENIED**.

Signed in Baton Rouge, Louisiana, on January 3, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[42] R. Doc. 484.