**FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.**

**CIVIL ACTION**

**VERSUS**

**13-373-SDD-EWD**

**CITCO GROUP LIMITED, ET AL.**

## RULING AND ORDER ON MOTION TO COMPEL

Before the court is a Motion to Continue Submission Date on Motion to Compel Privileged Documents or Alternative Motion to Compel Privileged Documents (the "Motion to Compel")[1] filed by plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs"). Defendants, Citco Technology Management, Inc. ("CTM"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and The Citco Group Limited ("Citco Group") (collectively, the "Citco Defendants") have filed an Opposition.[2] For the reasons set forth herein, Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

### I.     Background

By their instant Motion to Compel,[3] Plaintiffs ask either that the court: (1) require that Citco categorize its privileged documents into 13 categories (and have the Citco Defendants, as opposed to counsel, certify as to the accuracy of the categorizations); or (2) issue an order compelling production of documents listed on Citco's privilege log and/or review certain documents *in camera*. On December 12, 2017, the parties participated in a status conference in

---

[1] R. Doc. 481.

[2] R. Doc. 499.

[3] R. Doc. 481.

this matter and the Motion to Compel was discussed. During that status conference, the court explained that before considering any *in camera* review, the sufficiency of the privilege log would have to be determined. If the descriptions set forth in the log were insufficient, then the court would decide whether the party asserting the privilege should be given a chance to revise the log. If the descriptions were sufficient, then the court would consider whether the party seeking production had established an exception to the privilege. The court allowed the parties to present argument regarding the adequacy of Citco's privilege log and the potential applicability of the fiduciary duty and crime-fraud exceptions. Counsel for Plaintiff confirmed that all entries on the privilege log at issue in the Motion to Compel remained at issue. On December 20, 2017, the undersigned ordered the Citco Defendants to provide additional information regarding their privilege log.[4] On December 28, 2017, the Citco Defendants provided a revised "Exhibit 1" which identified in-house counsel and also provided a chart setting out the general function of each individual identified on the Citco Defendants' privilege log.[5]

## II.    Law and Analysis

### A.  Request for Categorization

Plaintiffs' first request is that the Citco Defendants be required to categorize the documents listed in Citco's privilege log using 12 substantive categories and a thirteenth "catch-all" category. Plaintiffs propose the following 12 categories:

> (1)    Reasons for the Leveraged loan in the amount of $20 million to Citco Bank being called in 2007;
>
> (2)    Review of the terms of the 2008 Series N Offering between January 1, 2008 and May 1, 2008;

---

[4] R. Doc. 508. Specifically, the Citco Defendants were ordered to submit a revised Exhibit 1 identifying instances in the log where in-house counsel only received a copy of the document in question rather than the document having been received directly or prepared by in-house counsel as well as a chart setting out the position and/or function of each individual named in the Defendants' privilege log.

[5] R. Doc. 510.

(3) Scope of the terms of the Subordination of the Series 4, 5, and 6 Shares to the Series N Shares;

(4) Use of the proceeds of the 2008 Series N Offering;

(5) Consents of the Series 4, 5, and 6 Shareholders to the term of the Series N Offering;

(6) Source of proceeds to purchase Richcourt Holding and compliance with Know Your Customer Rules of the Patriot Act (March 1, 2008 to September 1, 2008);

(7) Execution of the Exclusivity Agreement to purchase Richcourt by Fletcher and Citco between March 1, 2008 and May 1, 2008;

(8) Reasons for the termination of the Administrative Agreement between January 1, 2009 and December 31, 2009;

(9) Default on RBS Loan and unwinding of Global Hawk;

(10) Receipt of fees payable to Citco on unwinding of Global Hawk;

(11) Decision or rationale for redeeming Series 4, 5, and 6 shares without notifying Series N Shareholders; and

(12) Liability of Richcourt entities or Citco for any deficiency on the RBS Loan.

Plaintiffs request that the Citco Defendants put any documents that do not fall within any of these 12 categories into a "catch-all" category, and also that the Citco Defendants themselves certify as to the accuracy of the categorization. Plaintiffs' only explanation regarding the need for the proposed categorization as set forth in their briefing is that "if the Court were to order Citco to categorize the documents…the parties could continue to hone the privilege log entries that are really at issue. The Louisiana Funds believe that once this is done, they will be able to eliminate large amounts of log entries from Catch All Category based upon the dates."[6] During the December 12, 2017 conference, counsel for Plaintiffs also stated that the proposed categories would help the court conduct an *in camera* review of approximately 450 documents.

---

[6] R. Doc. 481-2, p. 3.

In opposition to this particular request, the Citco Defendants contend that Plaintiffs' brief "completely misrepresents the recent meet-and-confer process regarding Citco's privilege log."[7] The Citco Defendants confirm that they "did not agree to the requested client certification" because such "review would have been conducted by Citco's attorneys."[8] The Citco Defendants assert that they offered to "bucket the documents into categories if Plaintiffs agreed to withdraw their request that Citco revise its entire privilege log" and that during the parties' November 14, 2017 conference, "both parties agreed to not file any motions to compel regarding privilege logs in light of the parties' ongoing discussions."[9] In opposition to the Motion to Compel however, the Citco Defendants state they are "no longer willing to voluntarily undertake this exercise in order to avoid costs associated with motion practice, now that Plaintiffs have unilaterally abandoned the meet-and-confer process."[10] During the December 12, 2017 conference, counsel for the Citco Defendants confirmed that although the Citco Defendants were initially amenable to Plaintiffs' proposed categorization, they could no longer could agree to such request following the filing of Plaintiffs' Motion to Compel and the Citco Defendants' efforts in revising entries on their privilege log.

Plaintiffs have provided no authority, and the court is aware of none, that would require the Citco Defendants to categorize the documents set forth in their privilege log pursuant to the categories requested by Plaintiffs. As discussed with the parties during the December 12, 2017 conference, this court will not consider an *in camera* review of the documents listed on the Citco Defendants' privilege log without first determining the sufficiency of the log descriptions

---

[7] R. Doc. 499, p. 2.

[8] R. Doc. 499, p. 3.

[9] R. Doc. 499, p. 3.

[10] R. Doc. 499, p. 4.

themselves.[11]    Accordingly, the court proceeds with considering the sufficiency of the Citco

Defendants' privilege log, and the potential applicability of the exceptions to privilege advocated

by Plaintiffs.

> **B.  The Majority of Citco Defendants' Descriptions as Set Forth in Exhibits 1, 2, and 4 are Sufficient; however, the Undersigned Will Proceed with an *In Camera* Review of a Limited Set of Documents and Will Require the Citco Defendants to Revisit Log Entries on Which Third Parties Appear.**

In support of their Motion to Compel, Plaintiffs have not submitted the Citco Defendants'

actual privilege log.  Instead, it appears that Plaintiffs have compiled four primary exhibits

reflecting log entries which Plaintiffs contend are insufficient.[12]

---

[11] Plaintiffs rely primarily on *Equal Employment Opportunity Commission v. BDO USA, LLP*, 2017 WL 5494237 (5th Cir. Nov. 16, 2017) to argue that an *in camera* review is necessary.  *BDO* arose in the context of the EEOC's investigation of charges filed by BDO's former Chief Human Resources Officer, Hang Bower.  In the context of its investigation, the EEOC issued Requests for Information to BDO regarding Bower's charges of discrimination.  In response, BDO asserted that the EEOC was eliciting (and Bower was revealing) attorney client privileged communications between Bower and BDO's in-house and outside counsel.  *Id*. at * 1.  There were 278 entries on BDO's privilege log referencing documents between (1) Bower and in-house and outside counsel; (2) other BDO employees and in-house and outside counsel; (3) non-attorney employees with counsel courtesy copied; and (4) non-attorney employees regarding legal advice (but not involving any attorneys).  *Id*. at * 3.  The EEOC filed a subpoena enforcement action, and the magistrate judge ultimately denied the EEOC's request to enforce the subpoena based on the magistrate judge's determination that the EEOC had not made a sufficient showing that the privilege log reflected an improperly claimed privilege.  *Id*.  The Fifth Circuit held that this was an improper shifting of the burden to the EEOC (*i.e.*, it should have instead been BDO's burden to establish the documents on the log were privileged).  The EEOC objected to the magistrate judge's ruling, and appended to that objection an affidavit from Bower in which she stated that communications she exchanged with BDO's counsel and with other non-attorneys were for the purpose of business advice and that, in order to protect communications from disclosure in future legal proceedings, BDO required her to forward or copy in-house counsel on virtually all communications pertaining to employee investigations and to include in emails a false designation that the communication "was prepared at the request of legal counsel." *Id*. at * 2.  Given the "serious nature" of the allegations in Bower's declaration and the "lack of a countering affidavit" from BDO, the Fifth Circuit noted that an *in camera* review would likely be necessary and that "the amount of documents in this case – 278 – does not present an unduly burdensome task for review." *Id*. at * 5, n. 4.  Here, there are not the same sort of "serious" and uncontested allegations regarding improper use of privilege. *Compare*, *King v. University Healthcare System, L.C.*, 645 F.3d 713, 721 (5th Cir. 2011) (finding district court did not err in refusing to conduct a full *in camera* review of documents listed on privilege log when log set forth sufficient descriptions and plaintiff "offered only speculation that the e-mails are not covered by privilege because they were made for a purpose other than obtaining legal advice.").

[12] As discussed below, Exhibit 3 consists of documents for which Plaintiffs contend no privilege extends based on the crime-fraud exception.

First, Plaintiffs assert that log entries compiled on Plaintiffs' Exhibits 1[13] and 2[14] contain insufficient descriptions because these entries indicate that the Citco Defendants are asserting attorney-client privilege over documents received by or prepared by in-house counsel. Plaintiffs argue that the descriptions in the Citco Defendants' privilege log related to these documents are insufficient because the descriptions do not satisfy the Citco Defendants' burden of establishing that the documents were for the primary purpose of legal, rather than business, advice. The documents included in Plaintiffs' Exhibit 1 (321 documents) are documents received by in-house counsel (either sent to in-house counsel or on which in-house counsel was copied); the documents included in Plaintiffs' Exhibit 2 (267 documents) are those prepared by in-house counsel but which Plaintiffs contend were not prepared in anticipation of litigation or for the predominate purpose of obtaining legal advice. Second, with respect to the documents included in Plaintiffs' Exhibits 4(a) through 4(e),[15] Plaintiffs assert these entries are insufficient because the Citco Defendants have used generic, boilerplate objections. A review of the list of log entries included in Plaintiffs' Exhibit 4(a) through 4(e) reveals that these entries were also included as log entries in Plaintiffs' Exhibits 1, 2, or 3.

Although Plaintiffs have obviously taken great pains to re-organize the Citco Defendants' log into the various exhibits, Plaintiffs have not focused on any particular entry in any of the exhibits. Instead, Plaintiffs generally argue that the descriptions are "generic" or "boilerplate" and that given Citco's business (as a plan administrator), establishing that correspondence by or with Citco in-house counsel was for the primary purpose of legal, rather than business, advice is almost impossible. In their opposition to the Motion to Compel, the Citco Defendants attach revised logs

---

[13] R. Doc. 481-3.

[14] R. Doc. 481-4.

[15] 481-6.

corresponding to Plaintiffs' Exhibit 1-4.[16]  Additionally, in response to this court's December 20, 2017 Notice and Order, the Citco Defendants submitted a Revised Exhibit 1 highlighting in-house counsel as well as a chart setting out the general function of each individual identified on the Citco Defendants' privilege log.[17]

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege.  The Louisiana Code of Evidence states:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication ... made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication....

La. Code Evid. art. 506(B).  Under Louisiana law, the party asserting the privilege has the burden of proving its applicability.  *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La. Sept. 9, 1987).

In *BDO*, the Fifth Circuit left the initial determination regarding whether the privilege log was sufficient to the district court on remand, and set forth some general rules regarding the assertion of privilege.  The court explained that "[f]or a communication to be protected under the privilege, the proponent 'must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'"  2017 WL 5494237 at * 3 (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).  The party claiming the privilege bears the burden of proof, and this is a highly fact-specific inquiry.  *Id.*  Ambiguities with respect to whether the

---

[16] R. Doc. 499-3-499-10.

[17] R. Doc. 510.

elements of a privilege claim have been met are construed against the proponent of the privilege. *Id.* Once the privilege is established, the burden shifts to the party seeking the documents to prove an applicable exception. *Id.* Generally, Plaintiffs assert that the Citco Defendants' privilege log fails to meet Defendants' burden of establishing the documents therein are privileged under the standards set forth in *BDO*.[18]

"There is no presumption that a company's communications with counsel are privileged." *Id.* * 4. "'[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged,'…nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel…" *Id.* at * 4 (internal citations omitted). "[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim" and "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *Id.* (internal citations omitted). *See also*, *Chemtech Royalty Associates, L.P. v. United States*, Civil Action No. 05-944, 2010 WL 11538363, at * 7 (M.D. La. Sept. 23, 2010) (explaining that when in-house counsel have responsibilities extending beyond rendering legal advice, "courts require a clear showing that the attorney was acting in his professional legal capacity" but that when "non-legal services such as…business advice that must be given along with legal advice in

---

[18] Plaintiffs contest the sufficiency of the Citco Defendants' privilege log primarily relying on *BDO*. As set forth above, Louisiana law must govern the court's determination regarding the applicability of the attorney client privilege. However, this court has explained that federal law is instructive, "given the 'federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege.'" *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, Civil Action No. 11-633, 2014 WL 29451, at * 6, n. 7 (M.D. La. Jan. 3, 2014) (citing *Akins v. Worley Catastrophe Response, LLC*, No. 12–2401, 2013 WL 796095, at *11 (E.D. La. March 4, 2013); *Soriano v. Treasure Chest Casino, Inc.*, No. 95–3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996) (federal "common law and Louisiana statutory law are materially similar in this case in regards to attorney-client privilege")). Given that this court routinely considers federal common law when considering the scope and applicability of the attorney-client privilege under Louisiana law, and in light of Plaintiffs' extensive reliance on *BDO*, the undersigned has addressed the Fifth Circuit's ruling herein.

order for the legal advice to be understood by a client, are mixed with legal services, it does not render the legal services any less protected by the privilege. In fact, they are both protected when they are inextricably intertwined."); *Swoboda v. Manders*, Civil Action 14-19, 2016 WL 2930962, at * 5, n. 41 (M.D. La. May 19, 2016) (recognizing that not all communications between an attorney and his client are privileged, "'[f]or example, no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer.'") (citing *In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997)); *U.S. v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) (explaining that work papers produced by an attorney in the course of preparing client's tax returns were not privileged "because although preparation of tax returns by itself may require some knowledge of the law, it is primarily an accounting service. Communications relating to that service should therefore not be privileged, even though performed by a lawyer."). Attorney client privilege does not extend to materials assembled in the ordinary course of business, or which provide purely factual data. *See*, *U.S. v. Louisiana*, Civil Action No. 11-470, 2015 WL 4619561, at * 5 (M.D. La. July 31, 2015).

Pursuant to Local Civil Rule 26(c):

> A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: **nam**e of the document, electronically stored information, or tangible things; **description** of the document, electronically stored information, or tangible thing, which description must **include each requisite element of the privilege** or protection asserted; **date**; **author**(s); **recipient**(s); and **nature of the privilege**.

Emphasis added.

The undersigned has reviewed the log entries in the Citco Defendants' revised Exhibits 1, 2, and 4.[19] The entries reflected in these Exhibits show the date of the document, who the document was from, who received the document, and who (if anyone) was carbon copied. Additionally, each entry includes a description of the document on which privilege is claimed.[20] These descriptions do more than simply state "legal advice." For each entry, the subject matter of the purported legal advice is also provided. For example, the first entry on Exhibit 1 is "email to counsel requesting legal advice re: legal propriety of FIA Leveraged subscription documents."[21] Descriptions on Exhibit 1 also include "email chain with counsel reflecting and requesting legal advice re: the requirements of the FIA Leveraged offering memorandum and articles of association," "email chain with counsel reflecting and requesting legal advice re: Project Ranier draft disclosure letter and outstanding details on share purchase agreement," "email to counsel requesting legal advice re: draft response letter to SEC information request of Fletcher funds," and "email with counsel reflecting and requesting legal advice re: interpretation of Offering Memorandum concerning investment manager requirements related to NAV backlog."[22] The first entry on Exhibit 2 is "email chain with counsel requesting and providing legal advice re: Project

---

[19] R. Docs. 499-3, 499-4, 499-6, 499-7, 499-8, 499-9, and 499-10. Again, Plaintiffs do not direct this court to a specific entry with which they take particular issue, and instead only generally argue that the descriptions are insufficient and that the Citco Defendants must meet a higher burden with respect to in-house counsel. The undersigned assumes that Plaintiffs are not asking this court to undertake a more detailed analysis of the Citco Defendants' privilege log than they themselves have undertaken and therefore does not address herein every single log entry set forth by the Motion to Compel individually. Moreover, while Plaintiffs seem to contend that *BDO* sets a higher standard for log entries involving in-house counsel, the undersigned reads *BDO* as continuing to require specific detail (regardless of whether counsel involved is in-house or not) to allow the court and the opposing party to test the sufficiency of the privilege claim. The undersigned finds that the descriptions set forth in the Citco Defendants' log generally meet this standard.

[20] Given the descriptions set forth in the log entries, as well as the parties arguments, it appears that the Citco Defendants are claiming attorney client privilege on all the entries at issue in Plaintiffs' Motion to Compel.

[21] R. Doc. 499-3.

[22] R. Doc. 499-3.

Ranier draft UBS engagement letter."[23]  Descriptions on that list also include "email with counsel reflecting and requesting legal advice re: legal propriety of FIA Leveraged subscription documents," "email from counsel reflecting and requesting legal advice re: legal propriety of Citco's resignation from Richcourt corporate directorships," "email with counsel reflecting and requesting legal advice re: analysis of RBS's ability to terminate ISDA agreement and implications of early termination of Global Hawk investment," "email chain with counsel requesting and providing legal advice re: interpretation of contract provisions governing FIA deferred performance fees," and "email chain with counsel reflecting and requesting legal advice re: contractual obligations to pay a deferred performance fee as a result of the Global Hawk settlement."[24]  Finally, Exhibits 4(a) through 4(e) contain descriptions such as "email from counsel reflecting legal advice re: draft term sheet for financing of Richcourt Paris transaction and drafting of financing agreement,"[25] "email chain with counsel reflecting and requesting legal advice re: Project Ranier Share Purchase Agreement and French Financial Markets Authority approvals,"[26] "chart reflecting legal advice and comments of J. Sadler (not disclosed to third party) re: summary and analysis of key legal terms for Richcourt bids (attachment to #27),"[27] "email with counsel requesting and reflecting legal advice re: proposed response to CIMA regulatory request,"[28] "email chain from counsel reflecting legal advice re: RBS reporting requirements,"[29] "email chain with

---

[23] R. Doc. 499-4.

[24] R. Doc. 499-4.

[25] R. Doc. 499-6.  Plaintiffs complain that certain entries do not include "from," "to" or "CC" information.  It appears that certain entries on the log that do not include this information were attachments to emails, and that the emails themselves were sent for the purpose of obtaining legal advice.  *See*, R. Doc. 499-6 ("materials sent to counsel for the purpose of obtaining legal advice re: Richcourt insurance policies.").

[26] R. Doc. 499-7.

[27] R. Doc. 499-7.

[28] R. Doc. 499-8.

[29] R. Doc. 499-9.

counsel requesting legal advice re: interpretation of Leveraged Offering Memorandum in connection with Global Hawk settlement with RBS,"[30] and "email chain with counsel requesting legal advice re: legality of audit report requested for Arbitrage."[31] With the exception of the documents discussed below, the undersigned finds the information contained on the Citco Defendants' privilege log sufficient to establish attorney-client privilege over the withheld communications.[32]

As noted above, on December 20, 2017, the undersigned ordered the Citco Defendants to submit a revised Exhibit 1 that distinguished between documents which were sent "to" in house counsel or instead on which in-house counsel was "carbon copied."[33] On December 28, 2017, the Citco Defendants submitted a revised "Exhibit 1" identifying in-house counsel.[34] As revised, the majority of the entries included on Exhibit 1 were sent directly to in-house counsel (with additional in-house counsel sometimes carbon copied). However, there are twenty-one (21) entries for which in-house counsel appear only in the "CC" field.[35] Six of these entries were produced in redacted

---

[30] R. Doc. 499-9.

[31] R. Doc. 499-10.

[32] In addition to asserting that the descriptions themselves as set forth in Citco's privilege log are insufficient, Plaintiffs assert that "[m]any of the in-house emails are between in-house lawyers that do not work for any of the Citco defendants and whose employers have not produced documents in this litigation." R. Doc. 481-2, p. 9. Plaintiffs do not explain which emails fall within this category, nor do they give any specific examples of such emails. In support of their assertion that it is inconsistent for the Citco Defendants to claim privilege on such emails, Plaintiffs cite *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710-711 (5th Cir. 2001). In *Santa Fe*, the Fifth Circuit discussed the "common legal interest" extension of privilege to communications between co-defendants and potential co-defendants in actual litigation and their counsel and found that the privilege did not extend to communications sent to third parties competitors circulated for the purpose of ensuring compliance with antitrust laws was not protected. To the extent Plaintiffs contend that there can be no privilege with respect to communications with lawyers and employees of other, non-defendant Citco entities, or between in-house lawyers employed by non-defendant Citco entities, the undersigned disagrees that such disclosure would result in waiver of the attorney client privilege. *See, American Airlines, Inc. v. Travelport Limited*, Civil Action No. 4:11-244, 2012 WL 12884822, at * 5 (N.D. Tex. July 16, 2012) (finding that "disclosure of communications between a parent and its majority-owned subsidiaries does not result in waiver of the attorney-client privilege.").

[33] R. Doc. 508.

[34] R. Doc. 510, Exhibit 1.

[35] *See*, R. Doc. 510, Exhibit 1, Log Entry Numbers 2079, 1548, 1621, 211, 213, 212, 2109, 516, 513, 1837, 2261, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947. The Citco Defendants assert that "[a]s to the handful of entries in

form.[36]  Fifteen of these entries have been withheld completely.[37]  The undersigned questions why some of these entries were produced in redacted form while some were not.  Further, while the descriptions for each of these entries is detailed, it is unclear whether these communications were actually confidential communications *to* a lawyer as required by *BDO* when the lawyer in question only appears in the "CC" field.[38]  Accordingly, for these twenty-one (21) entries,[39] the undersigned **GRANTS** Plaintiffs' Motion to Compel in part and will undertake an *in camera* review.  The Citco Defendants are **ORDERED** to submit the twenty-one (21) documents to the undersigned for an *in camera* review on or before **Tuesday, January 9, 2018.**  The Citco Defendants are instructed to provide the twenty-one (21) documents directly to the undersigned in hardcopy form (via a sealed envelope delivered to the clerk's office), following which the court will file the documents into the record under seal with the appropriate restrictions.  For the documents that were produced in redacted form, the Citco Defendants shall provide both a redacted and an unredacted copy.

Additionally, as noted above, the undersigned previously ordered the Citco Defendants to provide a chart setting out the position and/or function of each individual named on the Defendants' privilege log.[40]  Based on the undersigned's review of the chart submitted by the Citco

---

which an attorney appears only in the 'CC' field, we have again confirmed that these emails were send to in-house counsel and contain requests for legal advice directed to an attorney that were either redacted or withheld…."  R. Doc. 510, p. 1.  As explained herein, without reviewing the twenty-one documents for which in-house counsel appears only as a "CC," the undersigned cannot determine whether these communications were directed to counsel for the purpose of obtaining legal advice.

[36] *See*, R. Doc. 510, Exhibit 1, Log Entry Numbers 2079, 1548, 2109, 516, 513, & 2261.

[37] *See*, R. Doc. 510, Exhibit 1, Log Entry Numbers 1621, 211, 213, 212, 1837, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947.

[38] *See, e.g., Varughese v. Mount Sinai Medical Center*, 12 Civ. 8812, 2014 WL 349698, at * 2 (S.D.N.Y. Jan. 31, 2014) (determining *in camera* review of documents where in house counsel was cc'd was appropriate).

[39] R. Doc. 510, Exhibit 1, Log Entry Numbers 2079, 1548, 1621, 211, 213, 212, 2109, 516, 513, 1837, 2261, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947.

[40] R. Doc. 508.

Defendants,[41] certain individuals included on the Citco Defendants' log are third parties (*i.e.*, not Citco employees or outside counsel). Specifically, the Citco Defendants' chart includes Andrea Brandenberger, Louise Campbell, Edourard Devitry, John McElroy, Thomas Ranysford, and Alexis Theiriet who are described as UBS employees.[42] Additionally, the Citco Defendants' chart includes Davide De Vittori, Gregory Garoscio, Enrico Laddaga, Sonia Lopez, Silvia Massari, Michele Mauran, John Mensack, and Rudolph Preud'Homme, who are described as Richcourt non-lawyer employees.[43] Finally, the Citco Defendants' chart includes Pascal Noel, who is described as a Deloitte non-lawyer employee. Because there are entries on the Citco Defendants' privilege log that appear to be communications where employees of UBS, Richcourt, or Deloitte are included, it is not clear with regard to these entries that the elements of privilege have been met.[44] "A party invoking the attorney-client privilege must establish: (1) that there was a communication between client and counsel; (2) the communication was intended to be confidential; (3) the communication was, in fact, kept confidential; and (4) the communication was made for the purpose of obtaining or providing legal advice." *Swoboda*, 2016 WL 2930692, at *

---

[41] R. Doc. 510, Exhibit 2.

[42] Plaintiffs contend that "UBS provided investment banking services for Citco and assisted Citco in the sale of Richcourt to Fletcher." R. Doc. 481-2, p. 6.

[43] Plaintiffs state that they are "willing to concede that all Richcourt documents between September 1, 2008 and March 1, 2020 are privileged." R. Doc. 481-2, p. 7. "Richcourt documents" (*i.e.*, documents included on Plaintiffs' Exhibit 3 and purportedly subject to the crime/fraud exception) within this date range include documents on which Enrico Laddaga, Silvia Massari, and Michele Mauran were involved. Accordingly, based on Plaintiffs' assertion that documents with Richcourt non-lawyer employees remain privileged, it appears that Plaintiffs have conceded that, at least with respect to certain Richcourt employees, no waiver based on disclosure to a third party has occurred.

[44] Plaintiffs contend that "[i]t is inconsistent for Citco to claim that the employees of these companies are so closely related so as to qualify for a joint privilege, yet at the same time argue they are not required to produce non-privileged documents in their possession even though under the control of Citco Group, Ltd. Citco has asserted broad coverage of affiliates under the privilege based upon its definition of common control." R. Doc. 481-2, p. 9. As noted above, to the extent Plaintiffs contend that there can be no privilege based on communications with in-house lawyers employed by non-defendant Citco entities, the undersigned disagrees. To the extent Plaintiffs are also concerned with inclusion of third party non-lawyer employees of UBS, Richcourt, or Deloitte on the privilege log, Plaintiffs have not directly addressed this issue in their briefing. However, given the inclusion of these third parties on the Citco Defendants' privilege log, the undersigned finds it appropriate to require a supplemental submission from the Citco Defendants to the Plaintiffs to resolve this potential issue.

4 (citing *Bross v. Chevron USA, Inc.*, Civil Action No. 06-1523, 2009 WL 854446, at *3 (W.D. La. March 25, 2009) (citing *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996)). "The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Here, the inclusion of individuals who appear to be third parties makes the questions of whether the communication was between client and counsel and whether the communication was intended to be confidential a closer call. As currently presented, the undersigned is unable to determine the sufficiency of the Citco Defendants' privilege log entries on which employees of UBS, Richcourt, or Deloitte are included. Accordingly, with respect to these entries, the Plaintiffs' Motion to Compel is **GRANTED IN PART**. Specifically, the Citco Defendants are **ORDERED** to provide to Plaintiffs, within fourteen (14) days of this Ruling, a supplemental log (the supplemental log may consist only of the entries on which employees of UBS, Richcourt, or Deloitte are included), as well as any legal authority or evidence establishing that inclusion of these individuals does not affect the existence of the attorney client privilege.[45]

### C. Potential Exceptions to Privilege

In the first step of the analysis, as set out above, the undersigned found the entries sufficient to establish attorney client privilege on the vast majority of documents listed on the Citco Defendants' privilege log. Once the privilege is established, the burden shifts to the party seeking

---

[45] "[T]he majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver." *Cashman Equipment Corp. v. Rozel Operating Co.*, Civil Action 08-363, 2009 WL 2487984, at * 2 (M.D. La. Aug. 11, 2009) (collecting cases); *see also*, *Chemtech*, 2009 WL 854358, at * 5 (requiring plaintiff to provide a revised privilege log and noting "[a]t this juncture, the court will not order that any of the 379 documents be produced, and will not conduct an in camera review of the documents. Obviously, such a log will require some work, but an in camera inspection of 379 documents is no substitute for an informative log.").

the documents to prove an applicable exception. *BDO*, 2017 WL 5494237, at * 3. The Court must now turn to the issue of whether any exceptions apply that would require production of these documents. First, Plaintiffs contend that "[a]ll of the documents which are listed on the privilege log fall into the 'fiduciary duty exception' to the attorney client privilege."[46] Second, Plaintiffs raise the possibility that certain documents set forth in Exhibit 3[47] are not privileged under the crime/fraud exception. [48]

### i. Plaintiffs Have Not Established that the Fiduciary Duty Exception Applies

Plaintiffs assert that all the documents listed on the Citco Defendants' privilege log must be produced because of the fiduciary duty exception to privilege. Plaintiffs contend that "[a]s administrator of the funds, Citco Cayman was in a fiduciary relationship with the Louisiana Funds. Citco had a fiduciary duty to the Louisiana Funds because of the role it played as administrator of Leveraged and the fact that Citco was the recipient of $50 million of the offering proceeds of the Series N Shares."[49] In support of their position, Plaintiffs rely on *Landry v. Georgia Gulf Corp.*, Civil Action No. 97-1164, 2001 WL 36286141 (M.D. La. Feb. 26, 2001).

---

[46] R. Doc. 481-2, p. 5.

[47] R. Doc. 499-5.

[48] Plaintiffs also contend that "Citco cannot rely on the opinion of legal counsel in defending this lawsuit yet invoke the attorney-client privilege." R. Doc. 481-2, p. 6 (citing *United States v. Glailani*, 751 F.Supp.2d 498, 501 (S.D.N.Y. April 26, 2010) ("The fundamental proposition governing implied or 'at issue' waivers of attorney-client and other evidentiary privileges is that a party may not affirmatively rely on privileged communications to support a claim or defense and then shield those communications from discovery by its adversary."). *See also*, *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, Civil Action No. 11-633, 2014 WL 29451, at * 6 (M.D. La. Jan 3, 2014) (noting that under Louisiana law regarding attorney-client privilege, "when the privilege holder makes a confidential communication a material issue in litigation, 'fairness demands treating the defense [or claim] as a waiver of the privilege.'"). Plaintiffs do not provide any additional explanation for their apparent position that the privilege has been waived based on the Citco Defendants placing the opinion of legal counsel "at issue." As such, Plaintiffs have done nothing to carry their burden of establishing that such waiver occurred. *See*, *Glailani*, 751 F.Supp.2d at 501 ("But the critical point is that a party claiming an implied or at issue waiver must make 'some showing…that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense.'") (internal citation omitted)).

[49] R. Doc. 481-2, p. 5.

In *Landry*, this court explained "[i]n an ERISA case, an exception to the attorney-client privilege has been adopted by the United States Fifth Circuit Court of Appeals. Under the 'fiduciary exception,' a person or entity which acts as a fiduciary to an ERISA plan cannot assert the attorney-client privilege about legal advice concerning plan administration." *Id*. at * 3 (citing *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir. 1992) ("An ERISA plan is a separate legal entity from its sponsor, 29 U.S.C. § 1132(d), and a plan's administrator owes a fiduciary duty to the plan's beneficiaries, not its sponsor. *See* 29 U.S.C. §§ 1002(21), 1103(a) and (c)(1), and 1104(a)(1). When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator. *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F.Supp. 906, 909 (D.D.C.1982). Therefore, an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration.").

In *U.S. v. Jicarilla Apache Nation*, 564 U.S. 162 (2011), the Supreme Court more generally discussed the history and applicability of the common law fiduciary exception to the attorney client privilege.[50] The Court explained that under English common law, "when a trustee obtained legal advice to guide the administration of the trust, and not for the trustee's own defense in litigation,

---

[50] As a threshold matter, and as discussed above, rule 501 of the Federal Rules of Evidence provides that "[t]he common law – as interpreted by United States courts in light of reason and experience – governs a claim of privilege…But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Because this suit is based on federal diversity jurisdiction, state law of privilege (which is generally the same as federal common law) should govern. The Citco Defendants assert that the fiduciary duty exception relied upon by Plaintiffs is a creature of federal common law, and that "no Louisiana court has ever recognized a fiduciary duty exception, which does not exist in the Louisiana Code." R. Doc. 499, p. 6. To the extent Plaintiffs contend that the fiduciary duty exception applies based on the premise that they were the "real client" of the purportedly privileged communications, the Louisiana Code of Evidence does recognize an exception to privilege as to communications which are "relevant to a matter of common interest between or among two or more clients if the communication was made by any of them or their representative to a lawyer or his representative retained or consulted in common, when subsequently offered by one client against the other in a civil action." La. Code. Evid. Art. 506(C)(5). Assuming the "common interest" privilege set forth in the Louisiana Code of Evidence would allow for the application of a fiduciary duty exception or that Louisiana law would otherwise recognize the applicability of a fiduciary duty exception to attorney client privilege, Plaintiffs have not established such exception should apply here.

the beneficiaries were entitled to the production of documents related to that advice." *Id*. at 171. Although this exception to the attorney client privilege was first met with skepticism by American courts, in "[t]he leading American case on the fiduciary exception," *Riggs Nat. Bank of Washington, DC v. Zimmer*, 355 A.2d 709 (Del.Ch. 1976), the court identified two reasons for applying the exception. *Id*. First, the trustees had obtained the legal advice at issue as "mere representative" of the beneficiaries "because the trustees had a fiduciary obligation to act in the beneficiaries' interest when administering the trust" such that the beneficiaries were the "real clients." *Id*. at 172. The *Jicarilla* Court explained that the "real client" determination in *Riggs* was based on several factors: "(1) when the advice was sought, no adversarial proceedings between the trustees and beneficiaries had been pending, and therefore there was no reason for the trustees to seek legal advice in a personal rather than a fiduciary capacity; (2) the court saw no indication that the memorandum was intended for any purpose other than to benefit the trust; and (3) the law firm had been paid out of trust assets." *Id*.[51] Second, the *Riggs* court "concluded that the trustees' fiduciary duty to furnish trust-related information to the beneficiaries outweighed their interest in the attorney-client privilege." *Id*. at 173.

Other than *Landry*, Plaintiffs provide no additional support for their assertion that Citco Cayman (presumably CFS Cayman) owed a fiduciary duty to Plaintiffs (either based on jurisprudence or the terms of the administration agreement), nor do Plaintiffs explain how such fiduciary duty (assuming it exists) would extend to the other Citco Defendants. As indicated in *Landry*, while the Fifth Circuit has recognized a fiduciary duty exception to the attorney-client privilege in the specific context of ERISA, that exception was based on specific fiduciary duties

---

[51] In analyzing whether the fiduciary exception could apply to the United States' management of Indian tribal trust accounts (it did not), the Court noted that the source of funds used to obtain the legal advice was a "strong indicator" of who should be considered the "real client." *Id*. at 179.

set forth by statute, and has been applied only in that limited context. *See*, *Landry*, 2001 WL 36286141, at * 4 (finding fiduciary exception to attorney client privilege did not apply where legal advice at issue concerned amendments to the plan clarifying eligibility and did not relate to administration or management of the plan); *Tolbert v. RBC Capital Markets Corp.*, Civil Action No. H-11-107, 2012 WL 1067629, at * 5 (S.D. Tex. March 28, 2012) ("Even assuming the fiduciary duty exception were to apply, conduct involving the design, modification, or amendment of an ERISA plan does not constitute fiduciary conduct."). Moreover, although the fiduciary duty exception has its roots in the common law exception discussed in *Jicarilla*, Plaintiffs have made no showing that the documents for which they contend the exception applies contain legal advice for which Plaintiffs should properly be considered the "real clients."[52]

### ii. Plaintiffs Have Not Established that the Crime-Fraud Exception Applies

Plaintiffs attach Exhibit 3, which includes documents related to "Richcourt/Project Ranier."[53] Although Plaintiffs list 898 documents in Exhibit 3, they state they "are willing to concede that all Richcourt documents between September 1, 2008 and March 1, 2010 are privileged. All documents before and after these dates remain contested."[54] There are a little over 600 documents listed in Exhibit 3 that are within the date range of September 1, 2008 through March 1, 2010. Plaintiffs argue that the documents listed in Exhibit 3 that are outside this date

---

[52] In opposition, the Citco Defendants attach an affidavit from a Cayman Islands attorney attesting that under Cayman Islands law, CFS Cayman owed no fiduciary duties to Plaintiffs. R. Doc. 499-1. The Citco Defendants further assert that "Plaintiffs did not pay CFS Cayman or any other Citco entity any fees at all, let alone fees for legal services. Because CFS Cayman was using its own funds to pay for legal advice on its own behalf that had nothing to do with Plaintiffs, the fiduciary exception cannot apply." R. Doc. 499, p. 7. During the December 12, 2017 status conference, the undersigned asked Plaintiffs if they had any information regarding the source of the funds used to pay for legal services. Plaintiffs did not provide a response to that specific inquiry. *See*, R. Doc. 509, pp. 18:13-19:25.

[53] R. Doc. 481-5.

[54] R. Doc. 481-2, p. 7.

range should be reviewed by the court *in camera* to determine whether the documents are exempted from privilege based on the crime-fraud exception.

"The crime-fraud exception applies to both the attorney-client and work product privileges." *In re EEOC*, 207 Fed. Appx. 426, 434 (5th Cir. 2006). "Pursuant to the crime-fraud exception, privilege is overcome when an attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity. The party seeking discovery of privileged information bears the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity." *Id.* (internal citations omitted). *See also*, *Bridlington Company, LLC v. Southern Disposal Services, LLC*, 216 So.3d 219, 223 (La. App. 2 Cir. Feb. 15, 2017) ("In order to vitiate the attorney-client privilege, the trial court must make a finding that the attorney-client relationship was intended to further continuing or future criminal or fraudulent activity. The party challenging the privilege must (1) make an independent prima facie case that a crime has been committed, and (2) then demonstrate that the privileged information bears a relationship to the alleged crime or fraud.") (internal citations omitted).

Despite bearing the burden, Plaintiffs have done very little to establish the exception's applicability. Here, Plaintiffs assert that "[a]s a matter of law under the Patriot Act, Citco was required to know the source of the funds that was [sic] being used to pay the purchase price on the June 23, 2008 closing [of the sale of Richcourt to Fletcher]" and that "failure to disclose this information to the Louisiana Funds would be a violation of the securities law."[55] Plaintiffs speculate that Citco knew of the source of the funds and failed to disclose that source,[56] and argue

---

[55] R. Doc. 481-2, p. 6.

[56] R. Doc. 484-4, p. 105:17-19.

that is enough to establish fraud and eliminate the privilege. First, while Plaintiffs assert that they seek the withheld information because they "are entitled to any communications between Citco and its counsel on the source of the funds that would be used to make this purchase….,"[57] during Mr. Diver's corporate deposition on behalf of Citco Group, Mr. Diver testified that "[w]e have produced documents on what we understood to be the source of funds of Fletcher for the Richcourt Acquisition."[58] Accordingly, it appears that Plaintiffs have previously been provided with factual information regarding the source of the funds. Additionally, although Plaintiffs blankety assert that Citco (though perhaps only CFS Cayman) was required to know the source of the funds and the failure to disclose this information to Plaintiffs would violate securities laws, Plaintiffs do not specifically explain the basis upon which they claim they were entitled to disclosure or how, even assuming the Citco Defendants (or some of them) violated the Patriot Act or securities law, such a violation would constitute the necessary criminal or fraudulent activity needed to establish the applicability of the crime-fraud exception. "A party must present evidence of an intent to deceive to establish a *prima facie* case of fraud or perjury." *Industrial Clearinghouse, Inc. v. Browning Manufacturing Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1008 (5th Cir. 1992). Finally, Plaintiffs have not pointed to any specific entry on the Citco Defendants' privilege log (specifically, Exhibit 3) that demonstrates that the source of the funds was at issue in any of the communications withheld as privileged and logged on Exhibit 3. Therefore, Plaintiffs have failed to show that the withheld communications bear a relationship to an alleged crime or fraud. Based on their undeveloped allegations, Plaintiffs have not met their burden of establishing that the crime-fraud exception applies here.

---

[57] R. Doc. 481-2, p. 6.
[58] R. Doc. 484-4, p. 105:17-19.

## IV.    Conclusion

For the reasons set forth herein, the Motion to Compel[59] filed by plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs") is **GRANTS IN PART AND DENIED IN PART**.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART**. The undersigned will undertake an *in camera* review of the twenty-one (21) entries listed in R. Doc. 510, Exhibit 1, Log Entry Numbers 2079, 1548, 1621, 211, 213, 212, 2109, 516, 513, 1837, 2261, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947.  The Citco Defendants are **ORDERED** to submit the twenty-one (21) documents to the undersigned for an *in camera* review on or before **Tuesday, January 9, 2018.**  The Citco Defendants are instructed to provide the twenty-one (21) documents directly to the undersigned in hardcopy form (via a sealed envelope delivered to the clerk's office), following which the court will file the documents into the record under seal with the appropriate restrictions.  For the documents that were produced in redacted form, the Citco Defendants shall provide both a redacted and an unredacted copy.

**IT IS FURTHER ORDERED** that, with respect entries on the Citco Defendants' privilege log on which employees of UBS, Richcourt, or Deloitte are included, the Plaintiffs' Motion to Compel is **GRANTED IN PART**.  Specifically, the Citco Defendants are **ORDERED** to provide to Plaintiffs, within fourteen (14) days of this Ruling, a supplemental log (the supplemental log may consist only of the entries on which employees of UBS, Richcourt, or Deloitte are included), as well as any legal authority or evidence establishing that inclusion of these individuals does not affect the existence of the attorney client privilege.

---

[59] R. Doc. 481.

In all other respects, Plaintiffs' Motion to Compel is **DENIED**.

Signed in Baton Rouge, Louisiana, on January 5, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**