UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

VERSUS

CITCO GROUP LIMITED, ET AL.

CIVIL ACTION

13-373-SDD-EWD

## NOTICE AND ORDER REGARDING *IN CAMERA* REVIEW

On January 5, 2018, the undersigned ordered defendants, Citco Technology Management, Inc. ("CTM"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and The Citco Group Limited ("Citco Group") (collectively, the "Citco Defendants") to submit twenty-one entries included on their privilege log for *in camera* review.[1] On January 9, 2018, the Citco Defendants submitted the documents as ordered and the undersigned has reviewed the documents to determine whether the withheld information is protected by the attorney-client privilege. As set forth herein, the undersigned ORDERS that the Citco Defendants shall produce documents corresponding to log entry numbers 211, 212, 213, and 2109 in their entirety and the documents corresponding to log entry numbers 945, 946, 950, 964, and 1837 in redacted form as set forth below to Plaintiffs within seven (7) days of this Notice and Order.

**I.  Background**

Plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs") filed a Motion to Continue Submission Date on Motion to Compel

---

[1] *See*, R. Doc. 513. The log entries required to be submitted were identified on the Citco Defendants' privilege log as log entry numbers 2079, 1548, 1621, 211, 213, 212, 2109, 516, 513, 1837, 2261, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947.

1

Privileged Documents or Alternative Motion to Compel Privileged Documents (the "Motion to Compel") on November 16, 2017.[2] Therein, Plaintiffs requested, *inter* alia, that the undersigned proceed with an *in camera* review of certain documents entered on the Citco Defendants' privilege log. In support of their Motion to Compel, Plaintiffs compiled four primary exhibits reflecting log entries which Plaintiffs argued were insufficient. The first of these exhibits, referred to by Plaintiffs as "Exhibit 1," logged documents received by in-house counsel (either sent to in-house counsel or on which in-house counsel was copied).

On December 20, 2017, the undersigned ordered the Citco Defendants to submit a revised Exhibit 1 that distinguished between documents which were sent "to" in house counsel or instead on which in-house counsel was "carbon copied."[3] On December 28, 2017, the Citco Defendants submitted a revised "Exhibit 1" identifying in-house counsel.[4] As revised, the majority of the entries included on Exhibit 1 were sent directly to in-house counsel (with additional in-house counsel sometimes carbon copied). However, the undersigned identified twenty-one (21) entries for which in-house counsel appear only in the "CC" field.[5] Six of these entries were produced in redacted form.[6] Fifteen of these entries have been withheld completely.[7] The undersigned questioned why some of these entries were produced in redacted form while some were not. Further, while the description for each of these entries is detailed, it was unclear whether these communications were actually confidential communications *to* a lawyer when the lawyer in

---

[2] R. Doc. 481.

[3] R. Doc. 508.

[4] R. Doc. 510, Exhibit 1.

[5] *See*, R. Doc. 510, Exhibit 1, Log Entry Numbers 2079, 1548, 1621, 211, 213, 212, 2109, 516, 513, 1837, 2261, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947.

[6] *See*, R. Doc. 510, Exhibit 1, Log Entry Numbers 2079, 1548, 2109, 516, 513, & 2261.

[7] *See*, R. Doc. 510, Exhibit 1, Log Entry Numbers 1621, 211, 213, 212, 1837, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947.

question only appears in the "CC" field. Accordingly, for these twenty-one (21) entries,[8] the undersigned ordered the Citco Defendants to submit the corresponding documents to the undersigned for an *in camera* review.[9]

On January 9, 2018, the Citco Defendants delivered a sealed envelope to the clerk's office containing the twenty-one requested documents. The court has subsequently filed the Citco Defendants' cover letter thereto into the record with any information quoted directly from the documents redacted by the court. Additionally, the undersigned has ordered the Citco Defendants to maintain the documents reviewed by this court *in camera* in the form they were presented to the court for purposes of any future appeal. Following review of the twenty-one documents, the undersigned finds as follows.

## II. Law and Analysis

### a. Legal Standard

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege. The Louisiana Code of Evidence states:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication ... made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication....

La. Code Evid. art. 506(B). Under Louisiana law, the party asserting the privilege has the burden of proving its applicability. *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La.

---

[8] R. Doc. 510, Exhibit 1, Log Entry Numbers 2079, 1548, 1621, 211, 213, 212, 2109, 516, 513, 1837, 2261, 948, 938, 945, 949, 950, 951, 953, 964, 946, & 947.

[9] R. Doc. 513. *See*, *e.g.*, *Varughese v. Mount Sinai Medical Center*, 12 Civ. 8812, 2014 WL 349698, at * 2 (S.D.N.Y. Jan. 31, 2014) (determining *in camera* review of documents where in house counsel was cc'd was appropriate).

3

Sept. 9, 1987). The Fifth Circuit has explained that "[f]or a communication to be protected under the privilege, the proponent 'must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *Equal Employment Opportunity Commission v. BDO USA, LLP*, 2017 WL 5494237, at * 3 (5th Cir. Nov. 16, 2017) (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).[10] The party claiming the privilege bears the burden of proof, and this is a highly fact-specific inquiry. *Id*. Ambiguities with respect to whether the elements of a privilege claim have been met are construed against the proponent of the privilege. *Id*.

"There is no presumption that a company's communications with counsel are privileged." *Id*. * 4. "'[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged,'…nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel…" *Id*. at * 4 (internal citations omitted). "[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim" and "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *Id*. (internal citations omitted). *See also*, *Chemtech Royalty Associates, L.P. v. United States*, Civil Action No. 05-944, 2010 WL 11538363, at * 7 (M.D. La. Sept. 23, 2010) (explaining

---

[10] As set forth above, Louisiana law must govern the court's determination regarding the applicability of the attorney client privilege. However, this court has explained that federal law is instructive, "given the 'federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege.'" *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, Civil Action No. 11-633, 2014 WL 29451, at * 6, n. 7 (M.D. La. Jan. 3, 2014) (citing *Akins v. Worley Catastrophe Response, LLC*, No. 12–2401, 2013 WL 796095, at *11 (E.D. La. March 4, 2013); *Soriano v. Treasure Chest Casino, Inc.*, No. 95–3945, 1996 WL 736962, at *2 (E.D. La. Dec. 23, 1996) (federal "common law and Louisiana statutory law are materially similar in this case in regards to attorney-client privilege")).

that when in-house counsel have responsibilities extending beyond rendering legal advice, "courts require a clear showing that the attorney was acting in his professional legal capacity" but that when "non-legal services such as…business advice that must be given along with legal advice in order for the legal advice to be understood by a client, are mixed with legal services, it does not render the legal services any less protected by the privilege. In fact, they are both protected when they are inextricably intertwined."). Attorney client privilege does not extend to materials assembled in the ordinary course of business, or which provide purely factual data. *See*, *U.S. v. Louisiana*, Civil Action No. 11-470, 2015 WL 4619561, at * 5 (M.D. La. July 31, 2015).

> **b. Documents 211, 212, and 213 Should Be Produced; Additional Portions of Documents 945, 946, 950, 964, 1837 and 2109 Should be Produced**[11]

Documents corresponding to log entry numbers 211, 212, and 213 are each part of an email chain in which Mr. Ermanno Unternaehrer, an employee of a non-defendant Citco entity, writes to Christopher Smeets, Robert Voges, Hans de Langen (each employees of Citco Group Limited), and Larry Luckmann (an employee of Citco Banking Corporation and Citco Group Monaco) regarding a dispute with Fletcher Asset Management ("FAM") and the terms of an agreement to sell Richcourt Paris. Mr. Unternaehrer's email sets forth a summary of a call with representatives of FAM. Mr. Unternaehrer states that he and Mr. Braham, an in-house lawyer for Citco Group Limited, participated in the call. Mr. Unternaehrer's summary appears to set forth his thoughts, does not include any confidential communications (it instead sets out what happened and what was said during the call with FAM), and does not appear to include Mr. Braham's legal advice or opinion. As such, the undersigned finds that the documents corresponding to log entry numbers

---

[11] Concurrent with their January 9, 2018 submission, the Citco Defendants advised that "on further review," the Citco Defendants determined that document number 1621 "was inadvertently withheld." The Citco Defendants aver that this document has been now produced to Plaintiffs. Accordingly, no *in camera* review of document number 1621 is necessary.

5

211, 212, and 213 are not privileged and ORDERS these documents to be produced to Plaintiffs within seven (7) days of this Notice and Order.

Documents corresponding to log entry numbers 938, 945, 946, 947, 948, 949, 950, 951, 953, and 964 are each part of the same email chain. Per their January 9, 2018 cover letter, the Citco Defendants explain that they have previously produced the earlier portions of these email chains reflecting communications between representatives of FAM and Citco.[12] With respect to the top portions of these documents, the communications reflect requests for legal services to be performed by Maureen Gleeson, who the Citco Defendants have clarified is an in-house attorney.[13] Specifically, these communications are between Ms. Gleeson and Wiekert Weber, an employee of CFS Cayman, requesting Ms. Gleeson prepare documents related to the termination of services for the Fletcher Funds. Because these communications were for the primary purpose of obtaining legal services, they were properly redacted/withheld. However, with respect to log entry numbers 945, 946, 950, and 964, the most recent email in each document is not for the primary purpose of obtaining legal services. Specifically, in the document corresponding to log entry 945, the May 5, 2010 2:55 pm email to Wiekert Weber from Maureen Gleeson, should not have been withheld. In the document corresponding to log entry 946, both the May 5, 2010 9:55 am email from Maureen Gleeson to Wiekert Weber and the 2:57 pm email from Wiekert Weber to Maureen Gleeson should not have been withheld. In the document corresponding to log entry number 950, the 3:38 pm email from Wiekert Weber to Maureen Gleeson and Alex Brainis should not have been withheld. Finally, in the document corresponding to log entry 964, the 8:48 pm email from Wiekert Weber

---

[12] The Citco Defendants state that "[t]he e-mail exchange between Wiekert Weber, Denis Kiely, and Stuart Turner at the very bottom of this e-mail chain is not privileged and has already been produced to Plaintiffs."

[13] The Citco Defendants previously listed Ms. Gleeson as a non-lawyer employee of Citco Fund Services (Ireland). R. Doc. 510, Exhibit 2.

to Maureen Gleeson and Alex Brainis should not have been withheld. These specific communications generally reflect pleasantries rather than communications for purposes of seeking or obtaining legal advice. Accordingly, for the documents corresponding to log entry numbers 945, 946, 950, and 964, Defendants are ORDERED to unredact and produce the specific emails noted herein and to produce the revised redacted documents corresponding to log entry numbers 945, 946, 950, and 964 within seven (7) days of this Notice and Order. With the exception of the specific email correspondence noted herein as contained in the documents corresponding to log entry numbers 945, 946, 950, and 964, the undersigned finds that the previous production (including the other redactions not addressed in this Ruling and Order) of documents corresponding to log entry numbers 938, 945, 946, 947, 948, 949, 950, 951, 953, and 964 was proper.

The document corresponding to log entry number 1837 consists of a string of emails reflecting substantive discussions with Linklaters attorneys regarding a draft deed of amendment to the original purchase share agreement for Richcourt. However, the very top portion of this email string is a 5:27 p.m. request to Yves Bloch (an employee of Citco (Monaco) and Richcourt (Monaco)) from Mr. Unternaehrer simply asking that changes to the document be forwarded to Linklaters. Because this very top communication does not seek to secure either a legal opinion or services, or assistance in a legal proceeding, the undersigned ORDERS that this portion only should be produced. The remainder of the document corresponding to log entry number 1837 was properly withheld and should be redacted. The Citco Defendants are ORDERED to produce the as-redacted document corresponding to log entry number 1837 within seven (7) days of this Notice and Order.

Per the Citco Defendants' January 9, 2018 cover letter, the document corresponding to log entry 2109 "is an e-mail chain that was produced in full, except for the redaction of a two-line e-mail sent by Anthony Murray, an in-house lawyer at Citco Fund Services, in which Mr. Murray responds to a request by John Verhooren[14] in the prior e-mail for legal advice regarding the suspension of the NAV by the Richcourt Funds."  However, in the redacted portion of the email chain, Mr. Murray only reports what Richcourt is doing regarding the suspension of the official NAV while stills sending out an estimated NAV.  This appears to be factual information that would not be privileged.  Accordingly, the undersigned ORDERS that the previously redacted portion of the document corresponding to log entry number 2109 be unredacted and that the entire document be produced to Plaintiffs within seven (7) days of this Notice and Order.

   c. **Documents 513, 516, 938, 947, 948, 949, 951, 953, 1548, 2079 and 2261, or Portions Thereof, Were Properly Withheld**[15]

Documents corresponding to log entry numbers 513 and 516 are each part of the same email chain.  Per the Citco Defendants' January 9, 2018 cover letter, the Citco Defendants have produced the "top portions" of these email chains to Plaintiffs,[16] and have withheld as privileged portions of the email chain reflecting communications between in-house counsel regarding legal work on CFS Cayman's administration agreement with the Fletcher Funds.  Although the redacted portions of the email chain are not particularly substantive, the communications do appear to be for the primary purpose of providing legal services and therefore the undersigned finds the portions

---

[14] Mr. Verhooren is listed as an employee of Citco Fund Services (USA) and Citco Fund Services (Curacao).  R. Doc. 510, Exhibit 2.

[15] As discussed above, with the exception of specific emails contained in the email strings corresponding to the documents logged as entry numbers 945, 946, 950, and 964, the undersigned finds that the documents corresponding to log entry numbers 938, 945, 947, 948, 949, 950, 952, 953, and 964 were properly redacted and produced.

[16] The Citco Defendants state that "[t]he top two e-mails of Document 513 and the top e-mail of Document 516 respond to a request for a summary of the fee arrangements with the Fletcher Funds, which is provided in the attachment to the e-mail chain (both of which have already been produced).  Those top e-mails are not being withheld as privileged and are being produced to Plaintiffs today."

8

of the documents corresponding to log entry numbers 513 and 516 were properly redacted/withheld.

The document corresponding to log entry number 1548 is an email string between an attorney of Linklaters[17] and in-house counsel and employees of Citco. In their January 9, 2018 cover letter, the Citco Defendants state that portions of this email string are not privileged and aver that those portions have been now produced to Plaintiffs.[18] The remaining portions of the document corresponding to log entry number 1548 are communications from or to Helio Banck (in-house counsel for Citco Group Limited) and/or counsel for Linklaters[19] regarding legal and tax issues related to the Richcourt transaction and reflect primarily the provision of legal services. Accordingly, this document was properly redacted.

The document corresponding to log entry number 2079 is an email chain which the Citco Defendants assert has been "produced in full, except for the redaction of a two-line e-mail sent by David Makin, an in-house lawyer with CFS Cayman, to others at CFS Cayman which contains legal advice regarding the Leveraged Offering Memorandum."[20] The redacted portion of the email chain reflects Mr. Makin's opinion regarding what, if anything is outstanding for the setup of Series N. The undersigned finds the redacted portion primarily provides legal opinion, and therefore was properly redacted.

---

[17] Per the Citco Defendants January 9, 2018 cover letter, Linklaters "represented The Citco Group and Citco Trading, Inc. in the Richcourt transaction."

[18] "The last three e-mails…reflect a request by Yves Bloch and Helio Banck to Michele Mauran for a copy of the shareholders register of Richcourt Fund Advisors SAS (which has been produced as an attachment to the e-mail). That part of the e-mail chain is not privileged and those e-mails are being produced to Plaintiffs today."

[19] Employees of UBS are also include on the email chain. The Citco Defendants aver that UBS "was Citco's agent and financial advisor with respect to the Richcourt transaction and is therefore within the scope of the privilege." On January 1, 2018, the Citco Defendants were ordered to provide Plaintiffs with a supplemental log as well as any legal authority or evidence establishing that inclusion of, *inter alia*, employees of UBS on privileged communications did not affect the existence of the attorney client privilege. *See*, R. Doc. 513.

[20] January 9, 2018 cover letter.

Finally, the document corresponding to log entry number 2261 is an email chain which the Citco Defendants assert has been "produced in full, except for the redaction of a request for legal advice by Albert van Nijen to the legal department of the Citco Fund Services."[21] Although not particularly substantive, the redacted portion of this email chain reflects a request for CFS legal to draft certain documents. Accordingly, the undersigned finds that this portion of the document was properly redacted.

### III. Conclusion

For the reasons set forth herein,

IT IS HEREBY ORDERED that the Citco Defendants produce the documents corresponding to log entry numbers 211, 212, and 213 to Plaintiffs within seven (7) days of this Notice and Order.

IT IS FURTHER ORDERED that the Citco Defendants produce redacted versions of the documents corresponding to log entry numbers 945, 946, 950, 964, and 1837 as set forth above to Plaintiffs within seven (7) days of this Notice and Order.

IT IS FURTHER ORDERED that the Citco Defendants unredact the previously redacted portion of the document corresponding to log entry number 2109 and produce the entire document corresponding to log entry number 2109 to Plaintiffs within seven (7) days of this Notice and Order.

Signed in Baton Rouge, Louisiana, on January 24, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] January 9, 2018 cover letter.