UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

VERSUS

CITCO GROUP LIMITED, ET AL.

CIVIL ACTION

13-373-SDD-EWD

## RULING AND ORDER ON MOTION TO COMPEL

Before the court is a Motion to Compel Discovery from Citco Fund Services (Cayman Islands) Limited Regarding Ernst & Young (the "Motion to Compel")[1] filed by plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs"). Defendants, Citco Technology Management, Inc. ("CTM"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and The Citco Group Limited ("Citco Group") (collectively, the "Citco Defendants") have filed an Opposition.[2] Plaintiffs were granted leave to file the Motion to Compel during a February 8, 2018 status conference, and the Motion to Compel was discussed during a March 6, 2018 status conference. For the reasons set forth herein, Plaintiffs' Motion to Compel is **GRANTED IN PART**.

I.  **Background**

On March 1, 2013, Plaintiffs filed suit against 23 defendants, including the Citco Defendants, asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent

---

[1] R. Doc. 538.

[2] R. Doc. 548.

1

misrepresentation, and general tort claims.[3] Plaintiffs' claims arise from a $100 million investment loss. In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund ("Leveraged") for $100 million.[4] After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[5] Ultimately, the shares went unredeemed and Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[6]

In their Petition, Plaintiffs assert that CFS Cayman served as administrator of Leveraged and, *inter alia*, assisted in computing the Net Asset Value of the funds' shares.[7] As a defense to Plaintiffs' claim that CFS Cayman was required to value the assets held in the Fletcher funds and failed to adequately do so, the Citco Defendants assert, *inter alia*, that a draft "Project Ladder" report prepared by Ernst & Young ("E&Y") on behalf of Plaintiffs in 2011 "identified several parties involved in the valuation process, but said nothing about Citco in that regard" and explain that in light of the 2011 Project Ladder draft report, the Citco Defendants have asked Plaintiffs' witnesses during depositions "to confirm…that the EY report makes no mention whatsoever of Citco with respect to asset valuation."[8]

Plaintiffs contend that because the Citco Defendants' rely on the draft Project Ladder report to support a defense, E&Y's past work for Citco has been placed at issue. Plaintiffs explain that prior to Plaintiffs' retention of E&Y in 2011, E&Y "was also an auditor and consultant for CFS

---

[3] R. Doc. 1-3.

[4] R. Doc. 1-3, ¶ 34.

[5] R. Doc. 1-3, ¶ 41.

[6] R. Doc. 1-3, ¶¶ 34-45 & 18. Leveraged was a feeder fund which Plaintiffs allege was formed primarily to invest in a master fund, Fletcher Income Arbitrage, Ltd. R. Doc. 1-3, ¶ 10.

[7] R. Doc. 1-3, ¶¶ 46-48. *See also*, R. Doc. 1-3, ¶¶ 70-71.

[8] R. Doc. 548, p. 2. In the instant Motion to Compel, Plaintiffs explain that they retained E&Y "in July of 2011 to meet with EisenAmper (Fletcher's Auditors) and review the value of the assets held by Leveraged. E&Y prepared a draft report dated September 6, 2011 but it never became final." R. Doc. 538-2, p. 5. The review performed by E&Y of the Fletcher funds and Plaintiffs' investment in Leveraged is referred to by the parties as "Project Ladder."

2

Cayman on the very issues which are the subject of the lawsuit and may be biased in its testimony because of the amount of fees that Citco pays E&Y."[9] In addition to potential bias, Plaintiffs seek to compel discovery responses "for the purpose of seeing whether [E&Y] criticized Citco internal controls and techniques on valuation of assets of funds held by companies of which [Citco] serve as administrator."[10] Per their Motion to Compel, Plaintiffs assert that the following, broadly worded, discovery requests are at issue:

> **Interrogatory 17**: Please describe any services that EY performed for You between January 1, 2007 and September 1, 2010.[11]
>
> **Request for Production 125**: Please produce any reports prepared in connection with any services that EY performed for You between January 1, 2007 and September 1, 2010.[12]
>
> **Request for Production 126**: Please produce any documents that identify, describe, or relate to any services that EY performed for You between January 1, 2007 and September 1, 2010.[13]

However, Plaintiffs' briefing focuses on compelling production of "Statement on Accounting Standards 70" ("SAS 70") reports,[14] and during the March 6, 2018 status conference, counsel for Plaintiffs confirmed that they are only seeking to compel production of the SAS 70 reports.

In opposition to the Motion to Compel, the Citco Defendants argue that compelling discovery of "wide-ranging documents and information related to run-of-the-mill auditing work a

---

[9] R. Doc. 538-2, p. 2. *See also*, R. Doc. 538-2, p. 11 ("E&Y's service to Citco would make it difficult for E&Y to critique Citco when it was performing a major contract of work for it. Further, because it was performing work for Citco, it is unlikely that E&Y would be critical of Citco when completing analysis on the Funds' behalf. This potential bias of E&Y is relevant to the claims made by the Funds….").

[10] R. Doc. 538-2, p. 2.

[11] Interrogatories to CFS Cayman, R. Doc. 538-6.

[12] Requests for Production to CFS Cayman, R. Doc. 538-7.

[13] Requests for Production to CFS Cayman, R. Doc. 538-7. Both the Interrogatories and Requests for Production define "you" as "Citco Fund Services (Cayman Islands) Limited." R. Docs. 538-6 & 538-7. As stated herein, the Citco Defendants explain that CFS Holdings actually retained E&Y and that CFS Holdings is the parent company of CFS Cayman.

[14] It appears that Plaintiffs refer to "SAS 70" and "FASB 70" interchangeably.

3

division of the international accounting firm Ernst & Young…performed between 2007 and 2010 for a nonparty Citco entity, Citco Fund Services (Holdings) Limited ('CFS Holdings')" would be irrelevant and disproportional.[15] With respect to relevancy, the Citco Defendants contend that "the forensic work of the EY team Plaintiffs retained in 2011 has *nothing* to do with the audit work an entirely different group of EY personnel did for CFS Cayman's parent company CFS Holdings from 2007 to 2010" and that there is no evidence that "one team knew about the other…and no conceivable basis for concluding that the EY forensic team skewed the results of its report for Plaintiffs in light of an entirely separate relationship with CFS Holdings."[16] With respect to proportionality, the Citco Defendants argue that documents already produced establish that CFS Holdings was a client of E&Y and that "to the extent any such EY reports and communications mention Fletcher or Leveraged or any related matters, they would *already* have been produced."[17]

## II.  Law and Analysis

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "'For purposes of discovery, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or

---

[15] *See*, R. Doc. 548, p. 1.

[16] R. Doc. 548, p. 2.

[17] R. Doc. 548, p. 3.

4

defense of any party.'" *Tadlock v. Arctic Cat Sales, Inc.*, Civil Action No. 15-766, 2017 WL 1032516, at * 3 (M.D. La. March 17, 2017) (quoting *Fraiche v. Sonitrol of Baton Rouge*, Civil Action No. 08-392, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1)). A determination of relevancy is tied to applicable substantive law and then weighed against the six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality. The court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"For a motion to compel, '[t]he moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.'" *Mirror Worlds Technologies, LLC v. Apple Inc.*, Case No. 6:13-cv-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016) (quoting *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2-08-cv-158, 2010 WL 547478, at *2 (E.D. Tex. Feb. 10, 2010)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Mirror Worlds Technologies, LLC*, 2016 WL 4265758 at *1. *See also*, *Wymore v. Nail*, No. 5:14-cv-3493, 2016 WL 1452437, at *1 (W.D. La. April 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections.") (citing *McLeod*,

*Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); *Rivero v. Sunbeam Products, Inc.*, Civil No. 08-591, 2010 WL 11451127, at *4 (W.D. Tex. Jan. 12, 2010) ("Plaintiffs, who bear the burden of proof in support of their motion to compel....").

Evidence regarding witness credibility and potential bias is relevant.[18] *See*, *Woodrard v. Diamond Offshore Drilling, Inc.*, Civ. A. 99-1661, 2000 WL 275797, at * 1 (E.D. La. March 9, 2000) ("A party clearly has the right to inquire as to the bias or prejudice of any witness.") (collecting cases); *Rogers v. Crosby Tugs, Inc.*, Civil Action No. 12-2453, 2016 WL 9406114, at * 1 (E.D. La. Jan. 22, 2016) (compelling responses to three discovery requests, limited in time to three years, seeking information regarding total amount of clients plaintiff's counsel referred to plaintiff's treating physician and total amount of monies paid to him because such information was relevant to issue of physician's potential bias). *See also*, *Behler v. Hanlon*, No. JFM-99-3877, 199 F.R.D. 553, 557 (D. Md. April 20, 2011) (explaining that "[e]xamples of relationships or circumstances that permit a finding of bias or prejudice are nearly limitless and include" a business relationship.) (citing 1 Michael Graham, Handbook of Federal Evidence, § 607.7 (4th ed. 1996)). However, and as discussed during the March 6, 2018 status conference, to establish such bias, the undersigned would expect to see an ongoing business relationship between E&Y and a Citco entity. Here, Plaintiffs concede that they only seek SAS 70 reports for the time period of 2007 through 2010, and that Plaintiffs retained E&Y *after* that timeframe in 2011. Moreover, to the extent Plaintiffs have subsequently limited their Motion to Compel to the SAS 70, it appears to the undersigned that such reports would not be the most probative evidence with respect to bias (*i.e.*, information regarding the scope of work E&Y performed for Citco entities, the amount paid for

---

[18] The Citco Defendants argue that the cases relied on by Plaintiffs are inapposite because "EY is not a witness here, and there is no motion pending to exclude any evidence at trial." R. Doc. 548, p. 7, n. 1. That no representative of E&Y may have been designated as a witness at this time does not preclude discovery of documentary evidence that may bear on the question of bias.

such work, and the proportion of E&Y's total work stemming from its contracts with Citco entities would seem to be more probative).[19]

Notwithstanding the questionable relevancy and proportionality of the 2007-2010 SAS 70 reports to the issue of establishing E&Y's potential bias, Plaintiffs have also explained that they seek the SAS 70 reports in order to analyze whether CFS Cayman was complying with its own internal controls. The Citco Defendants argue in opposition to the Motion to Compel that "[t]o the extent CFS performs valuation work for any of its clients, a SAS 70 report would not opine on techniques or models used to value specific types of illiquid assets."[20] However, no sample SAS 70 reports were attached to either parties' briefing related to the Motion to Compel and during the March 6, 2018 status conference, counsel for the Citco Defendants stated that he had not reviewed the SAS 70 reports. In support of their position that the SAS 70 may contain information relevant to CFS Cayman's compliance with internal controls, Plaintiffs cite language from a July 2007 Citco Fund Services Audit Report wherein SAS 70 reports are described as follows:

---

[19] During a February 8, 2018 status conference, production of the SAS 70 reports was discussed. *See*, R. Doc. 532. During that conference, counsel for the Citco Defendants objected to allowing discovery regarding the Citco Defendant's retention of E&Y (including any production of SAS 70 audit reports), and asserted that work done by E&Y's forensic accounting group was separate from any internal control auditing conducted by E&Y (*i.e.*, was a completely different and separate division of E&Y) such that any connection between the two E&Y groups was too attenuated to support Plaintiffs' desire to conduct discovery regarding E&Y's potential bias. Because both parties were only presenting argument regarding this issue, the court granted Plaintiffs leave to file a Motion to Compel Discovery Regarding E&Y's Relationship with the Citco Defendants and explained that briefing and evidence supporting or opposing the Motion to Compel should, *inter alia*, "outline the relationship and separations between the E&Y divisions." R. Doc. 532, p. 5. In opposition to the Motion to Compel, the Citco Defendants make assertions regarding the size of E&Y and argue that the two teams completing work for Plaintiffs and CFS Holdings were completely separate; however, they submit no evidence (such as an affidavit from E&Y) supporting this contention. *See*, *e.g.*, R. Doc. 548, p. 9, n. 3 (citing E&Y's website for proposition that E&Y is a large international firm and stating that "even if the two divisions of EY engaged separately by Plaintiffs on the one hand and by CFS Holdings on the other knew of the work the other was doing, it is hard to fathom that EY would intentionally jeopardize its reputation by skewing the findings of its *public* engagement for Plaintiffs supposedly to keep CFS Holdings happy."). The "Citco Fund Services – Divisional Audit Report – July 2007" relied on by Plaintiffs states only that "Citco has engaged Ernst & Young to provide an opinion on the design and effectiveness of our controls (SAS 70) for the period September 1, 2006 through September 30, 2007." R. Doc. 546, Exhibit 2 (filed under seal). Likewise, the Project Ladder scope of work indicates that "Ernst & Young LLP" was retained. R. Doc. 546, Exhibit 1 (filed under seal). Although the undersigned agrees that it appears likely that different groups of E&Y performed work for Plaintiffs and CFS Holdings, the division and separation between these groups is not clear from the evidence submitted.

[20] R. Doc. 548, p. 8, n. 2.

7

> In an effort to provide our clients and their auditors with comfort that the operating environment of Citco Fund Services is operating effectively, Citco has engaged Ernst & Young to provide an opinion on the design and effectiveness of our controls (SAS 70) for the period September 1, 2006 through September 30, 2007. The controls in the SAS 70 are not intended to be all inclusive but rather the controls relevant to the financial reporting process for our clients. Two reports are produced: one for Ephesus clients and one for Aexeo clients.
>
> Internal audit spends a significant amount of time and effort performing tests to support the issuance of these reports. We document our results; provide them to management and Ernst & Young for review and inclusion in the SAS 70 reports. These tests serve a dual purpose meaning that we also use these results as a barometer of the control environment to direct the audit plan.
>
> These tests consist of reviewing evidence of the performance of significant controls in the operating environment and performing an ITF test. An Integrated Test Facility (ITF) is the process of running sample transactions through the existing system to ensure that the transactions are processed accurately and posted in a timely manner.[21]

The thrust of Plaintiffs' claims against CFS Cayman is that CFS Cayman failed to adequately advise Plaintiffs with regard to the value of the assets of the funds at issue. In light of the above language, which indicates that the reports may have bearing on whether CFS Cayman complied with internal controls and best practices relevant to the financial reporting process, the undersigned finds that Plaintiffs have met their burden of establishing that the discovery sought is relevant.

Moreover, despite the Citco Defendants' vague assertion that responding to the proposed discovery "would require Citco to incur significant additional expense and to devote substantial additional resources," the Citco Defendants have not explained how production of the SAS 70 reports would be unduly burdensome.[22] During the March 6, 2018 status conference, counsel for

---

[21] R. Doc. 546-1, Exhibit 2 (filed under seal).

[22] The Citco Defendants additionally argue that "to the extent documents relating to EY's work for Citco concerned Fletcher, Leveraged or any of the issues on which the parties have agreed to provide discovery, those documents would *already* have been produced pursuant to the broad electronic search parameters on which the parties long ago agreed and that the Court has otherwise directed over the past several months." R. Doc. 548, p. 10. However, the

the Citco Defendants stated that he did not know how many SAS 70 reports there were, or how frequently such reports were issued. In light of the relevancy of the SAS 70 reports, Plaintiffs subsequent limitation of their broadly worded discovery requests to only the SAS 70 reports, and the lack of any information indicating that production of the SAS 70 reports would be unduly burdensome, the undersigned finds that requiring production of SAS 70 reports for the time period of January 1, 2007 through September 1, 2010 would not be disproportional to the needs of this case.

### IV. Conclusion

For the reasons set forth herein, the Motion to Compel[23] filed by plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs") is **GRANTED IN PART**. CFS Cayman is **ORDERED** to produce SAS 70 reports for the time period of January 1, 2007 through September 1, 2010 within fourteen (14) days of this Ruling.

Signed in Baton Rouge, Louisiana, on March 9, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

undersigned finds that E&Y's evaluation of the design and effectiveness of Citco Fund Services' internal controls would not be necessarily tied to Fletcher or Leveraged.

[23] R. Doc. 538.