**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

VERSUS

CITCO GROUP LIMITED, ET AL.

CIVIL ACTION

13-373-SDD-EWD

**RULING ON MOTION TO EXTEND DISCOVERY ON GRANT THORNTON LLP AFTER THE MARCH 15, 2018 DISCOVERY CUTOFF AND REQUEST FOR EXPEDITED CONSIDERATION**

Before the court is a Motion to Extend Discovery on Grant Thornton LLP after the March 15, 2018 Discovery Cutoff and Request for Expedited Consideration (the "Motion to Extend Grant Thornton Discovery")[1] filed by plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs"). Defendants, Citco Technology Management, Inc. ("CTM"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and The Citco Group Limited ("Citco Group") (collectively, the "Citco Defendants") have filed an Opposition.[2]

For the reasons set forth herein, the Motion to Extend Grant Thornton Discovery[3] is **DENIED**.

### I. Background

On March 1, 2013, Plaintiffs filed this suit against 23 defendants, including the Citco Defendants, asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent

---

[1] R. Doc. 558.

[2] R. Doc. 559.

[3] R. Doc. 558.

1

misrepresentation, and general tort claims.[4] Plaintiffs' claims arise from a $100 million investment loss. In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund ("Leveraged") for $100 million.[5] After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[6] Ultimately, the shares went unredeemed and Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[7]

By the instant Motion to Extend Grant Thornton Discovery, Plaintiffs move this court to modify and amend the February 9, 2018 Amended Scheduling Order[8] solely for the purpose of extending the discovery deadline as to third party, Grant Thornton LLP ("GT") through May 16, 2018.[9] The current fact discovery deadline expired on March 15, 2018.[10] A jury trial is scheduled to begin on January 28, 2019.[11]

---

[4] R. Doc. 1-3.

[5] R. Doc. 1-3, ¶ 34.

[6] R. Doc. 1-3, ¶ 41.

[7] R. Doc. 1-3, ¶¶ 34-45 & 18. Leveraged was a feeder fund which Plaintiffs allege was formed primarily to invest in a master fund, Fletcher Income Arbitrage, Ltd. R. Doc. 1-3, ¶ 10.

[8] R. Doc. 540.

[9] R. Doc. 558, p. 1, R. Doc. 561, p. 1.

[10] R. Doc. 540. The undersigned recently granted two limited unopposed extensions through March 28, 2018 for the purpose of allowing the parties time to meet and confer regarding (1) Plaintiffs' March 15, 2018 responses to the Citco Defendants' requests for production and interrogatories; and (2) Plaintiffs' production of meeting minutes of the Leveraged and Arbitrage liquidation committees post-dating the filing of this matter. *See*, R. Docs. 565 & 572. Additionally, per the current scheduling order and the March 7, 2018 Status Conference Report and Order, the deadline for both Plaintiffs and the Citco Defendants to respond to each other's contention interrogatories is April 16, 2018. *See*, R. Docs. 540 & 554. Finally, the undersigned granted an unopposed Motion to extend the fact discovery deadline through May 16, 2018 solely for purpose of allowing Plaintiffs to receive a response to discovery issued to UBS AG on February 21, 2018 via Letters Rogatory.

[11] R. Doc. 541.

## II. Law and Analysis

Pursuant to Fed. R. Civ. P. 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."[12] The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[13] A trial court has broad discretion to preserve the integrity and purpose of its pretrial orders, "which, toward the end of court efficiency, is to expedite pretrial procedure."[14]

"The U.S. Fifth Circuit Court of Appeals has applied a four-factor balancing test in certain contexts to determine whether good cause exists to modify a scheduling order by weighing (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice."[15] "Notwithstanding this four-factor test, the court still has the 'inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion.'"[16] "The purpose of a scheduling order is to allow the district court to control and expedite pretrial discovery matters. Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner."[17] "To

---

[12] *See also*, R. Doc. 540 (Amended Scheduling Order) providing that "[t]he time limits set forth in this order shall not be modified except by leave of court upon a showing of good cause" and that "[a]ll motions to extend scheduling order deadlines must be supported by facts sufficient to find good cause as required by Rule 16….Extensions of deadlines governing discovery must be supported with information describing the discovery already completed, what necessary discovery remains, the parties' efforts to complete the remaining discovery by the deadline, and any additional information showing that the parties have diligently pursued their discovery."

[13] *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.,* 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

[14] *S&W Enters.*, 315 F.3d at 535.

[15] *Green v. Archer Daniels Midland*, Civil Action Nos. 10-4481, 10-4482, 2012 WL 85409, at * 3 (E.D. La. Jan. 11, 2012) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 790–92 (5th Cir.1990); *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257–58 (5th Cir.1997); *S & W Enters.*, 315 F.3d at 536)).

[16] *Hernandez v. Mario's Auto Sales, Inc.*, Civil Action No. L-07-132, 617 F.Supp.2d 488, 493 (S.D. Tex. Jan. 21, 2009) (quoting *U.S. v. Waldman*, 579 F.2d 649, 653 (1st Cir.1978)).

[17] *Id*. (internal citations omitted).

achieve this end, the Court is given broad discretion so that the integrity and purpose of the pretrial order may be preserved."[18]

Plaintiffs seek a two-month extension of the discovery deadline to allow time to obtain documents responsive to a subpoena duces tecum served on Grant Thornton LLP. Plaintiffs explain that they served a subpoena duces tecum to Grant Thornton, LLP on December 18, 2018 (the "Grant Thornton Subpoena") "seeking a very limited scope of documents…" and that GT served objections to the Funds' subpoena on January 2, 2018."[19] Plaintiffs' counsel asserts that following Grant Thornton's objections, he "conducted phone conferences with GT's counsel on January 22, 2018, January 31, 2018, February 12, 2018, and February 28, 2018"[20] and engaged in "an ongoing dialogue of emails and letters from January 25, 2018 through as recently as March 5, 2018"[21] in the hopes of finding an amicable resolution. Plaintiffs further contend that Grant Thornton is aware of the discovery cutoff date in this suit "and has chosen to 'stonewall' its responses in hope of getting past these deadlines"[22] and that "GT has taken the position that it will not respond to the Funds' subpoena because it responded to a similar subpoena to GT from the Trustee in *In re Fletcher International Ltd.*, Case No. 12-12896, U.S. Bankruptcy Court, Southern District of New York."[23] In light of Grant Thornton's opposition to the Subpoena, Plaintiffs seek a limited extension of the fact discovery deadline through May 16, 2018 to allow Plaintiffs time to

---

[18] *Id*. (citing *Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir.2008) (stating that the district court's decision regarding whether to modify a scheduling order is afforded great deference, especially where the facts of the case suggest a lack of diligence on the part of the movant); *S & W Enters.*, 315 F.3d at 535; *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir.1979)).

[19] R. Doc. 558, p. 2.

[20] R. Doc. 558, p. 2.

[21] R. Doc. 558, p. 2.

[22] R. Doc. 558, p. 2.

[23] R. Doc. 558, p. 2.

4

obtain counsel in Illinois (the state in which Grant Thornton is allegedly domiciled), "file the appropriate discovery motion in the Illinois court, and to obtain responsive documents to the Funds' subpoena from GT."[24]

In opposition, Defendants contend that there is no good cause pursuant to Fed. R. Civ. P. 16(b)(4) to modify the scheduling order.[25] Defendants argue that Plaintiffs have known that Grant Thornton might have relevant documents since 2013, when Plaintiffs named Grant Thornton International, Ltd. as a defendant in this suit, and that Defendants instructed Plaintiffs to seek certain documents directly from Grant Thornton in March 2017.[26] Defendants point out that the issue of Grant Thornton's opposition to the subpoena was raised at numerous monthly status conferences with the court and that despite Grant Thornton's January 2018 objection, Plaintiffs still have not retained local counsel or filed a motion to compel against Grant Thornton.[27]

The undersigned agrees that Plaintiffs have known that some Grant Thornton entity may have relevant documents as early as 2013. Plaintiffs' 2013 Petition in this suit named Grant Thornton International, Ltd. as a defendant.[28] Additionally, on January 17, 2014, Plaintiffs filed a separate suit against Grant Thornton, USA.[29] In both suits, Plaintiffs alleged that a Grant Thornton entity prepared audit reports for Leveraged and Arbitrage for the years ending December 31, 2007

---

[24] R. Doc. 558, p. 3.

[25] R. Doc. 559.

[26] R. Doc. 559, p. 1.

[27] R. Doc. 559, p. 2.

[28] R. Doc. 1-3, ¶ 7.

[29] *Firefighters' Retirement System, et al. v. Grant Thornton LLP, et al.*, United States District Court, Middle District of Louisiana, Civil Action No. 14-cv-00103.

and December 31, 2008 and thereafter issued restated reports indicating that the net worth of Arbitrage had been overstated.[30]

The issue of Plaintiffs' ability to obtain documents via the Grant Thornton Subpoena has been discussed with Plaintiffs at numerous status conferences with the undersigned. During a January 12, 2018 status conference, the undersigned advised Plaintiffs to "continue to work with…Grant Thornton to resolve issues related to the subpoenas, but also to be cognizant of the March 14 [sic], 2018 discovery deadline and to file any necessary motions regarding compliance with [the Grant Thornton Subpoena] with enough time to allow the appropriate court to rule thereon."[31] During a February 8, 2018 status conference, Plaintiffs reported that they were still negotiating with Grant Thornton regarding the Subpoena.[32] The court stated that it was not inclined to extend the discovery cutoff date past March 15, 2018, and instructed Plaintiffs to proceed expeditiously with their discovery efforts to meet that deadline.[33] On March 6, 2018, Plaintiffs reported that Grant Thornton had refused to produce documents in response to the Subpoena.[34] During that conference, the undersigned asked Plaintiffs if it was possible for Plaintiffs to identify which documents in the trustee's database were those previously produced by Grant Thornton and whether Plaintiffs had asked Grant Thornton to provide the same documents

---

[30] *See*, R. Doc. 1-3, ¶¶ 78 & 80; *Firefighters' Retirement System, et al. v. Grant Thornton LLP, et al.*, United States District Court, Middle District of Louisiana, Civil Action No. 14-cv-00103, R. Doc. 1-2, ¶¶ 20-22. Plaintiffs explain in their Motion to Extend Grant Thornton Discovery that the Grant Thornton Subpoena seeks "a very limited scope of documents concerning communications and documents between GT and Citco relating to the restated audit reports and restated financial statements for FIA Leveraged Fund for the years ending December 31, 2017 and December 31, 2018." R. Doc. 558, p. 2. Accordingly, the documents Plaintiffs now seek to obtain via the Subpoena apparently relate directly to Plaintiffs' 2013 and 2014 claims against Grant Thornton. Plaintiffs have provided no explanation for their significant delay in seeking to subpoena such documents.

[31] R. Doc. 522, p. 2.

[32] R. Doc. 532, p. 4.

[33] *Id*.

[34] R. Doc. 554, p. 4.

to Plaintiffs that had been previously provided to the Trustee as a means of resolving the dispute regarding the Subpoena.[35]

While the undersigned commends Plaintiffs' counsel's efforts to reach an amicable resolution with Grant Thornton via telephone conferences and correspondence, the court made it clear to Plaintiffs on numerous occasions that it was disinclined to extend the discovery deadline with respect to Grant Thornton and that Plaintiffs were to proceed in a way to ensure they obtained any necessary discovery from Grant Thornton prior to the March 15, 2018 deadline. Three months prior to the discovery cutoff date, the undersigned instructed Plaintiffs "to file any necessary motions regarding compliance with [the Grant Thornton Subpoena] with enough time to allow the appropriate court to rule thereon."[36] Despite this instruction, it appears Plaintiffs have done nothing to allow the appropriate court to consider Plaintiffs' request for documents via the Grant Thornton Subpoena. Indeed, based on Plaintiffs' own assertion that they need an additional two months to *retain* local counsel and file a discovery motion in Illinois district court, it appears that Plaintiffs have not yet even taken the first step necessary to litigate this issue in the appropriate court.[37] Based on Plaintiffs' knowledge of issues regarding Grant Thornton at the onset of this litigation, as well as the undersigned's instructions to Plaintiffs regarding the timing of such discovery, the undersigned finds that Plaintiffs have not met their burden of showing that the March 15, 2018 deadline could not have been met despite Plaintiffs' diligence. Accordingly, the undersigned **DENIES** Plaintiff's Motion to Extend Grant Thornton Discovery.[38]

---

[35] *Id.*

[36] R. Doc. 522, p. 2.

[37] R. Doc. 558, p. 3. In light of the fact it appears the issue of compliance with the Grant Thorton Subpoena would have to be litigated in another court, there is also no guarantee that the matter would be resolved within the extended timeframe Plaintiffs seek.

[38] R. Doc. 558. Even if the court analyzed the four factor balancing test, the undersigned would reach the same result. As discussed herein, the undersigned finds Plaintiffs' explanation for their failure to meet the March 15, 2018

### III. Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Extend Discovery on Grant Thornton LLP after the March 15, 2018 Discovery Cutoff and Request for Expedited Consideration[39] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for expedited consideration is **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on April 16, 2018.

                                          **ERIN WILDER-DOOMES**
                                          **UNITED STATES MAGISTRATE JUDGE**

---

discovery deadline unpersuasive in light of the court's instructions during the monthly status conferences. Further, the importance of the proposed extension and any potential prejudice to Plaintiffs is unclear given that Plaintiffs failed to address the court's questions regarding whether it is possible to discern what documents were previously produced by Grant Thornton in the Trustee's database. To the extent it is possible to distinguish Grant Thornton documents in the repository, Plaintiffs have not explained which documents (if any) are unavailable from that source. Similarly, despite the court's suggestion that Plaintiffs request a copy from Grant Thornton of whatever was produced in the related bankruptcy proceedings, Plaintiffs Motion does not address or even acknowledge this suggestion. Finally, although a two-month extension may not affect the January 2019 trial date, "the integrity of the Court's scheduling order and the importance of deterring such dilatory behavior by the parties weighs against" an extension. *Hernandez*, 617 F.Supp.2d at 497.

[39] R. Doc. 558.