# IIUNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

VERSUS

CITCO GROUP LIMITED, ET AL.

CIVIL ACTION

13-373-SDD-EWD

## RULING AND ORDER ON MOTION TO COMPEL

Before the court is the Citco Defendants' Motion to Compel Production of Arbitrage and Leveraged Liquidation Committee Minutes (the "Motion to Compel")[1] filed by Citco Technology Management, Inc. ("CTM"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and The Citco Group Limited ("Citco Group") (collectively, the "Citco Defendants"). Plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs") have filed an opposition.[2] For the reasons set forth herein, the Motion to Compel is **DENIED IN PART AND GRANTED IN PART**.

### I. Background

On March 1, 2013, Plaintiffs filed suit against 23 defendants, including the Citco Defendants, asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims.[3] Plaintiffs' claims arise from a $100 million investment loss. In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued

---

[1] R. Doc. 589.

[2] R. Doc. 623.

[3] R. Doc. 1-3.

1

by FIA Leveraged Fund ("Leveraged") for $100 million.[4] After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[5] Ultimately, the shares went unredeemed and Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[6]

The Citco Defendants explain that "[i]n 2012, the Plaintiffs forced Leveraged and Arbitrage into liquidation in the Cayman Islands and Ernst & Young ('EY') was appointed as the 'Joint Official Liquidators' ('JOLs') of the Leveraged and Arbitrage funds, which is the Cayman Islands equivalent of a bankruptcy trustee."[7] The Citco Defendants explain that "[a]s part of the liquidation process, a 'liquidation committee' for creditors of both Leveraged and Arbitrage was formed to coordinate the liquidation process with the JOLs. The liquidation committees – on which Plaintiffs (and others) sat – met several times from 2012 through 2017 to discuss liquidation and other related matters relevant to Leveraged and Arbitrage."[8] Both in their Motion to Compel, as well as in previous status conferences with the court, the Citco Defendants assert that the Leveraged Liquidation Committee meeting minutes and the Arbitrage Liquidation Committee meeting minutes (collectively, the "Liquidation Committee Minutes" or "Minutes") are relevant to issue of, *inter alia*, Plaintiffs' damages.[9]

---

[4] R. Doc. 1-3, ¶ 34. Leveraged was a feeder fund which Plaintiffs allege was formed primarily to invest in a master fund, Fletcher Income Arbitrage, Ltd. R. Doc. 1-3, ¶ 10.

[5] R. Doc. 1-3, ¶ 41.

[6] R. Doc. 1-3, ¶¶ 34-45 & 18.

[7] R. Doc. 589-1, pp. 1-2. *See also*, R. Doc. 1 (Notice of Removal), ¶ 8, n. 1 ("On January 31, 2012, Plaintiffs filed a winding up petition against the Leveraged Fund in the Grand Court of the Cayman Islands (the 'Cayman Court'). By order dated April 18, 2012, the Cayman Court appointed Roy Bailey and Robin Lee McMahon, each of Ernst & Young, Ltd., as Joint Official Liquidators of the Leveraged Fund. The liquidation proceedings of the Leveraged Fund, including the expenses of the Joint Official Liquidators, as funded by Plaintiffs.").

[8] R. Doc. 589-1, p. 2.

[9] R. Doc. 554, p. 5, R. Doc. 589-1, p. 2.

Plaintiffs do not contest the relevancy of the Liquidation Committee Minutes and have previously produced Minutes pre-dating February 1, 2013. During a March 6, 2018 status conference, the Citco Defendants raised the issue of Plaintiffs' production of only some of the Liquidation Committee Minutes. At that conference, counsel for the Citco Defendants argued that the Liquidation Committee Minutes would be relevant to the issue of Plaintiffs' damages and that the minutes were not privileged because they were prepared by third parties (the JOLs).[10] Following those arguments, counsel for Plaintiffs asserted that "[a]s long as [counsel for Citco Defendants] believes that they're relevant to this case and based upon that stipulation, we'll produce them."[11]

Thereafter, Plaintiffs produced Liquidation Meeting Minutes dated between March 14, 2013 and January 11, 2017 with certain portions of each redacted.[12] Plaintiffs contend that the redacted portions of these Minutes are protected by the work product doctrine. Although Plaintiffs previously produced Liquidation Committee Minutes pre-dating February 1, 2013, Plaintiffs explain that they "retained Campbells [a separate law firm], not Preis Gordon [Plaintiffs' counsel in these proceedings], to perform work in connection with the Cayman liquidations concerning the matters discussed at the pre-2013 meetings," and "[t]he Louisiana Funds retained Preis Gordon in February 2013 to pursue a private right of action independent of the liquidation proceedings."[13] Plaintiffs assert that the redactions currently at issue "contain the mental impressions of Preis

---

[10] R. Doc. 594 (transcript of March 6, 2018 status conference), pp. 71:12-72:20.

[11] R. Doc. 594, p. 73:5-7. On March 21, 2018, in response to a joint letter request from the parties, the court granted a limited extension of time through March 28, 2018 to meet and confer regarding Plaintiffs' production of the meeting minutes with what the Citco Defendants considered to be "substantial portions" redacted. R. Doc. 572.

[12] In their instant Motion to Compel, the Citco Defendants complain that Plaintiffs had not yet provided a privilege log. In conjunction with Plaintiffs' opposition, Plaintiffs attach a privilege log which logs 16 redacted sets of Minutes dated from March 14, 2013 to January 11, 2017. R. Doc. 623-1.

[13] R. Doc. 623, p. 6.

Gordon attorneys, Phillip Preis and Charles Gordon, discussing this current claim *vis a vis* the liquidation committee's claims"[14] and that "liquidation committee meetings routinely discuss the legal advice and mental impressions of attorneys about potential and filed claims."[15]

The Citco Defendants argue that unredacted versions of the Minutes should be produced because: (1) Plaintiffs waived any protection they may have asserted by way of their previous responses to these discovery requests; (2) the minutes cannot be work product because they were not prepared in anticipation of litigation (they were instead prepared during liquidation proceedings) and were not prepared by Plaintiffs or Plaintiffs' representative (because the JOL represented all creditors, not just Plaintiffs); and (3) even if the minutes could be considered work product and such protection had not been waived, the Citco Defendants have a substantial need for the documents and cannot, without undue hardship, obtain their substantial equivalent by other means.

## II. Law and Analysis

### A. Work Product Protection & Sufficiency of Plaintiffs' Privilege Log

The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.)."[16] "A determination of whether such materials were prepared in anticipation of litigation depends primarily on the reason

---

[14] R. Doc. 623, p. 4. *See also*, R. Doc. 623, p. 5 ("The redactions also contain statements made by the JOLs to Preis Gordon attorneys discussing the feasibility of claims coordination with the JOLs.").

[15] R. Doc. 623, pp. 4-5.

[16] FRCP 26(b)(3)(A).

4

or purpose for creating them."[17] "The Fifth Circuit…requires that the 'primary motivating purpose behind the creation of the document was to aid in possible future litigation."[18] "To determine the primary motivation for the creation of a document, courts look to a variety of factors, including, 'the retention of counsel and his involvement in the generation of the document and whether it was routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'"[19] "Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by" the work product doctrine.[20] "The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation."[21]

Ambiguities with respect to whether the elements of a privilege claim have been met are construed against the proponent of the privilege.[22] Once the privilege is established, the burden

---

[17] *Landry v. Georgia Gulf Corp.*, Civil Action No. 97-1164, 2001 WL 36286141, at * 4 (M.D. La. Feb. 26, 2001) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825 at 2 (E.D.La.2000); *Beal v. Treasure Chest Casino*, 1999 WL 461970 at 3 (E.D.La.1999)).

[18] *Cantu v. Titlemax, Inc.*, No. 5:14-cv-628, 2015 WL 5944258, at * 3 (W.D. Tex. Oct. 9, 2015) (citing *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).

[19] *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013) (citing *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653414 at *5 (E.D. Tex. July 9, 2003)).

[20] Fed.R.Civ.P. 26(b)(3), advisory committee's note to 1970 amendment. *See also*, *U.S. v. Louisiana*, 2015 WL 4619561, at *5 (M.D. La. July 31, 2015) (citing *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982) (privilege does not protect "materials assembled in the ordinary course of business, or pursuant to public requirements"); *Blockbuster Entertainment Corp. v. McComb Video, Inc.*, Civ. A. 90-209, 145 FRD 402, 403 (M.D. La. Oct. 16, 1992) ("Excluded from work product immunity are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation….[T]he general rule is that litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.").

[21] *Colony Ins. Co. v. NJC Enterprises, LLC*, Civil Action No. 09-763, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013). *See also*, *Landry*, 2001 WL 36286141, at * 4 (internal citations omitted).

[22] *Equal Employment Opportunity Commission v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. Nov. 16, 2017).

shifts to the party seeking the documents to prove an applicable exception.[23] Pursuant to Local Civil Rule 26(c):

> A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: **nam**e of the document, electronically stored information, or tangible things; **description** of the document, electronically stored information, or tangible thing, which description must **include each requisite element of the privilege or protection asserted**; **date**; **author**(s); **recipient**(s); and **nature of the privilege**.[24]

"[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim."[25] "The standard for testing the adequacy of the privilege log is whether, as to each document, the entry sets forth facts that 'would suffice to establish each element of the privilege or immunity that is claimed.' The focus is on the specific descriptive portion of the log, and 'not on conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be discharged by mere conclusory' assertions."[26] "Objections based on the attorney client privilege or work product doctrine "can only be sustained if they are both properly asserted and the facts supporting the privileges are established by the evidence, not merely declared by lawyer argument."[27] "The party claiming the privilege must 'describe those documents to the best of its ability without revealing the information privileged.'"[28]

---

[23] *Id*.

[24] Emphasis added.

[25] *BDO*, 876 F.3d at 697 (internal citations omitted).

[26] *Chemtech Royalty Associates, L.P. v. U.S.*, Civil Action Nos. 05-944, 06-258, 07-405, 2009 WL 854358, at * 3 (M.D. La. March 30, 2009) (internal citations omitted). *See also*, *U.S. v. Louisiana*, Civil Action No. 11-470, 2015 WL 2453719, at * 1 (M.D. La. May 22, 2015) (same).

[27] *U.S. v. Louisiana*, 2015 WL 2453719, at * 2 (citing *Estate of Manship v. U.S.*, Civil Action No. 04-91, 232 F.R.D. 552, 561 (M.D. La. Dec. 8, 2005).

[28] *Id*.

The Citco Defendants argue that the Liquidation Committee Minutes were assembled pursuant to the regulatory requirements applicable to liquidation committee proceedings and that liquidation itself is not equivalent to litigation.[29] In response, Plaintiffs contend that the redacted portions of the Liquidation Committee Minutes reflect Plaintiffs' counsel's mental impressions (regarding the coordination and interaction of claims brought by the JOLs and separately by the Plaintiffs).

In conjunction with their opposition to the Motion to Compel, Plaintiffs attach a privilege log describing redactions to 16 sets of Liquidation Committee Minutes.[30] Plaintiffs also provide a list identifying each individual who participated in each committee meeting.[31] It appears that the individuals participating in the meetings reflected on the privilege log represent the JOLs, Fletcher Income Alpha Funds, or the Louisiana Funds. Per the privilege log, the redactions at issue include "communication authored for the purpose of confidentially discussing specific litigation claims and assignments of litigation claims;" "description of discussion regarding litigation claims held individually and collectively including potential rights of action, potential defenses, and general terms of agreement between the parties regarding potential pooling of litigation claims;" and "legal advice and engagement of Reid Collins Tsai to represent JOLs concerning clawback claims and counsel's analysis of claims and mental impressions regarding same."[32] The descriptions also

---

[29] R. Doc. 589-1, pp. 6-7 (citing *U.S. v. Naegele*, Crim. Action 05-151, 468 F.Supp.165, 173 (D.C.C. Jan. 4, 2007) ("This bankruptcy filing was not itself 'litigation' in anticipation of which protected attorney work product can be created."); *In re Holley Performance Products, Inc.*, 457 B.R. 598, 600 (W.D. Ky Sept. 29, 2011) ("The documents were, however, apparently prepared in anticipation of the claims process in the bankruptcy case. The existence of a bankruptcy case does not necessarily equate to litigation.")).

[30] R. Doc. 623-1.

[31] *Id.*

[32] R. Doc. 623-1.

7

include specific references to this particular litigation, claims against Citco, and indicate in some instances that Plaintiffs' counsel in this litigation provided litigation strategy and legal advice.[33]

In opposition to the Motion to Compel, Plaintiffs assert that the redacted portions of the Minutes involve "Preis Gordon's mental impressions of this instant claim…"[34] and "contain statements made by the JOLs to Preis Gordon attorneys discussing the feasibility of claims coordination with the JOLs."[35] Plaintiffs contend that "Citco's latest Motion to Compel targets the heart of the work product doctrine in seeking production of material that clearly reflects the mental impressions of Preis Gordon attorneys in the throes of this instant litigation."[36] For all but two of the entries listed on Plaintiffs' privilege log, an attorney for Preis Gordon (the law firm representing Plaintiffs in this action) participated. However, entries with the "PG ID" of 14 & 17 do not include any attorney from Preis Gordon. The description regarding the redactions in 14 is "minutes reflecting legal analysis of and strategy concerning settlement of clawback claim, analysis of claims filed against estates."[37] The description regarding the redactions in 17 is "minutes contain description of work product made by JOLs including analysis of subscription and redemption transactions; analysis of strategy concerning clawback settlement and counsel's

---

[33] *See*, R. Doc. 623-1 ("description of legal strategy by JOLs in anticipation of litigation against Citco;" "discussion relating to potential legal claims concerning Fletcher International Partners LTD (FIP) and Citco;" "legal advice and mental impressions of PP relating to the pending claim in the Middle District of Louisiana including proposed litigation strategy concerning claims against Citco, Skadden, and Grant Thornton;" and "legal advice by PP re Citco litigation in the Middle District of Louisiana."). "PP" is Phillip Preis, counsel for the Plaintiffs in this case.

[34] R. Doc. 623, p. 1. *See also*, R. Doc. 623, p. 2 ("Louisiana Funds timely produced the Leveraged and Arbitrage Liquidation Committee minutes post February 1, 2013 – with redactions…on March 20, 2018, with a privilege log identifying the redacted portions of Preis Gordon's mental impressions in the context of the liquidation proceeding and other litigations outside of the liquidation proceeding."); p. 3 (noting "the Louisiana Funds' litigation counsel, Preis Gordon, mental impressions were mentioned" in the redacted documents and that "the mental impressions and discussions of Preis Gordon have been redacted."); p. 4 ("The redactions…contain the mental impressions of Preis Gordon attorneys, Phillip Preis and Charles Gordon, discussing this current claim *vis a vis* the liquidation committee's claims.").

[35] R. Doc. 623, p. 5.

[36] R. Doc. 623, p. 5.

[37] R. Doc. 623-1, p. 7.

mental impressions and strategy re same." Neither of these descriptions indicate that these particular redactions include the mental impressions of Preis Gordon attorneys or statements made by the JOLs to Preis Gordon attorneys (especially since it appears that no Preis Gordon attorneys were present during these two meetings). Accordingly, for these two documents only, the undersigned finds that Plaintiffs have not met their burden of establishing, via their descriptions set forth on the privilege log, that the redacted portions of PD ID 14 and 17 are attorney opinion work product.[38] With respect to documents PG ID 14 and 17, Plaintiffs shall produce these documents without redactions within fourteen (14) days of this Ruling and Order.

With respect to the remaining documents identified on Plaintiffs' privilege log, although the undersigned agrees that generally, the Minutes themselves do not appear to be prepared in anticipation of this litigation, the court finds that Plaintiffs have established that the redacted portions themselves were in anticipation of litigation. With respect to the second necessary component for work product protection, *i.e.*, whether the Minutes were prepared by Plaintiffs or Plaintiffs' representative, although it appears that the Minutes were compiled by the JOLs, the redacted portions are, based on Plaintiffs' counsel's representations, reflections of Plaintiffs' counsel's litigation strategy. Accordingly, as to the remaining documents identified on the privilege log, *i.e.*, the documents other than PG ID 14 and 17, the undersigned proceeds with a consideration of whether Plaintiffs have waived protection over the redacted portions and whether the documents (without redactions) should otherwise be produced.

---

[38] While Campbells also represented Plaintiffs, Plaintiffs have explained that "[t]he Louisiana Funds retained Campbells, not Preis Gordon, to perform work in connection with the Cayman liquidations concerning the matters discussed at the pre-2013 meetings that were previously produced." R. Doc. 623, p. 6. The undersigned considers the liquidation proceedings to be separate from litigation. Plaintiffs have previously produced such minutes pre-dating February 1, 2013 and the descriptions of the redactions for these two meetings do not indicate that any discussion of counsel's litigation strategy or mental impressions was discussed.

9

## B. Waiver

The Citco Defendants argue that "Plaintiffs conceded to the court six months ago that communications between Plaintiffs and the JOLs are not protected by the work product doctrine. Plaintiffs have thus waived the opportunity to now assert work product protection."[39] In support of their waiver argument, the Citco Defendants rely on the disposition of a previously filed Motion to Compel production of communications between Plaintiffs and E&Y (the "September 2017 Motion to Compel")[40] as well as Plaintiffs' counsel's statements during a March 6, 2018 status conference.

The Citco Defendants have the burden of proving waiver of work product immunity.[41] The Fifth Circuit has explained:

> The work product privilege is very different from the attorney-client privilege. The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. The work product privilege, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent. Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege. This circuit has held, however, that the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered.[42]

---

[39] R. Doc. 589-1, p. 5.

[40] R. Doc. 455.

[41] *BASF Corp. v. Man Diesel & Turbo North America, Inc.*, Civil Action NO. 13-42, 2015 WL 542247, at * 4, n. 8 (citing *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 n. 10 (5th Cir. 2010) ("The work product doctrine differs from the attorney-client privilege in that non-waiver need not be proven to invoke work product immunity.")).

[42] *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (internal citations omitted).

Even where this court has found other objections to discovery waived based on a parties' failure to timely assert such objections, this court has not found waiver of any potential privileges or immunities.[43]

### 1. The September 2017 Motion to Compel

The Citco Defendants contend that Plaintiffs waived any work product protection of the Liquidation Committee Minutes based on Plaintiffs' response to the September 2017 Motion to Compel. On September 21, 2017, the Citco Defendants moved to compel production of, *inter alia*, 169 documents reflecting communications between Plaintiffs and E&Y after E&Y was appointed to serve as the JOL in Leveraged's Cayman Islands liquidation proceeding.[44] In that Motion to Compel, the Citco Defendants argued that communications dated between April 20, 2012 and January 29, 2013 between Plaintiffs and E&Y were not subject to attorney-client privilege, work product protection, or a "common interest" privilege.[45] The Citco Defendants asserted that because the JOL was not acting as Plaintiffs' lawyer, the communications were not in "anticipation of litigation," and because E&Y was not a "representative" of Plaintiffs, the protections asserted

---

[43] *Baxter v. Anderson*, Civil Action No. 16-142, 2016 WL 4443178, at * 5 n. 4 (M.D. La. Aug. 19, 2016) (granting in part an unopposed motion to compel more complete discovery responses and ordering plaintiff to provide complete responses to discovery requests, "without further objection (with the exception of any objections pertaining to any applicable privileged and/or immunities)….") (citing *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); *B&S Equip. Co. v. Truckla Servs., Inc.*, 2011 WL 2637289, at *6 (E.D. La. July 6, 2011) (finding waiver of all objections to "discovery requests based on relevance, unduly burdensome, over broad, or any other objection not grounded on the attorney client or the work product privilege.")). "Courts have found that, pursuant to Rule 26(b)(5) which concerns withholding information on the basis of privilege, the failure to timely object on the basis of privilege does not result in an automatic waiver." *B&S Equip.*, 2011 WL 2637289, at * 5 (citing *Applied Systems, Inc. v. Northern Ins. Co. of New York*, No. 97 C 1565, 1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997)). "'Rather, a waiver of privilege is a serious sanction reserved for cases of unjustified delay, inexcusable conduct, bad faith, or other flagrant violations.'" *Id*. "Thus, a party's failure to assert privilege will not necessarily short circuit his or her efforts to preserve the confidentiality of a privileged document. Therefore, the circumstances surrounding the objections must be weighed in order to determine whether the documents should be produced or kept outside of the scope of discovery." *Id*.

[44] R. Doc. 455.

[45] *See*, R. Doc. 455-1, Appendix A.

by Plaintiffs were inapplicable.[46] In response to the September 2017 Motion to Compel, Plaintiffs asserted that they had "produced to Citco any communications where Ernst & Young was either an author or recipient" such that the Motion to Compel was moot.[47] During an October 24, 2017 status conference, counsel for the Citco Defendants confirmed that Plaintiffs had produced the documents at issue in the September 2017 Motion to Compel and that the Motion was moot.[48]

The undersigned recognizes that the documents placed at issue by the Citco Defendants' September 2017 Motion to Compel, like the documents at issue in the instant Motion to Compel, involve communications with E&Y in its capacity as the Joint Official Liquidator. However (and notwithstanding the fact that the undersigned did not rule on the substance of the September 2017 Motion to Compel based on the parties' representations that the Motion was moot), the undersigned notes that the documents at issue in the September 2017 Motion to Compel addressed a different time period (April 20, 2012 to January 29, 2013 versus March 14, 2013 to January 11, 2017).[49] Further, the privilege log associated with the September 2017 Motion to Compel did not provide the same level of detail regarding the descriptions of withheld documents[50] and did not, based on the descriptions contained on that privilege log, involve the mental impressions of Plaintiff's counsel.[51] Accordingly, the undersigned does not find the history regarding the

---

[46] *See*, R. Doc. 455-3, p. 2 ("To the contrary, E&Y was the Cayman Islands equivalent of a bankruptcy trustee with fiduciary duties to *all* creditors of Leveraged's estate – not just Plaintiffs – and thus was charged with pursuing claims belonging to Leveraged for the benefit of all such creditors.").

[47] R. Doc. 459.

[48] R. Doc. 479, p. 5:2-9. Plaintiffs produced these documents with some portions of certain email chains redacted based on the assertion of attorney-client privilege. R. Doc. 459, p. 2.

[49] Plaintiffs concede that they produced liquidation committee meeting minutes prior to February 1, 2013. R. Doc. 623, p. 2.

[50] *See*, R. Doc. 455-1 (describing withheld documents as "email re NY Bankruptcy Proceeding of FILB;" "Email authored by Ernst & Young to LA Funds et al re conference call").

[51] Presumably, this is because, as stated by Plaintiffs, the "Louisiana Funds formally retained Preis Gordon on February 25, 2013" (*i.e.*, after the date of the documents placed at issue by the Citco Defendants' September 2017

September 2017 Motion to Compel, including Plaintiffs' subsequent production of documents in response to that Motion to Compel, determinative of the issue of whether Plaintiffs waived work product protection over the Liquidation Committee Minutes at issue here.[52]

### 2. Statements During the March 6, 2018 Status Conference

As noted above, the Citco Defendants raised the issue of Plaintiffs' production of only some of the Liquidation Committee Minutes during a March 6, 2018 status conference. During that conference, counsel for Plaintiffs agreed to produce the Liquidation Committee Minutes, and did not raise any potential issues regarding work product protection.[53] Plaintiffs' counsel's statement during the March 2018 status conference presents a close question on the issue of waiver (in that it appears counsel voluntarily agreed to produce the Minutes). A review of the transcript of that status conference reveals that Plaintiffs' counsel agreed to produce the Liquidation Committee Minutes dated after February 1, 2013 without any indication that such Minutes may contain protected work product.[54] Indeed, Plaintiffs' counsel presented absolutely no objection to production of the Minutes at the March 2018 status conference and did not state that such Minutes

---

Motion to Compel). R. Doc. 623, p. 3. The undersigned notes that the documents sought in the September 2017 Motion to Compel were also for a time period before this suit was filed.

[52] During the September 11, 2017 status conference, and prior to granting the Citco Defendants leave to file the September 2017 Motion to Compel, the undersigned noted that it appeared Plaintiffs would have a difficult time establishing that communications between Plaintiffs and the JOL were privileged. *See*, R. Doc. 456, p. 25:11-15. The court noted that Plaintiffs would have "an uphill battle" because the undersigned did not see how communications with E&Y would be privileged. R. Doc. 456, p. 25:21-23. However, because counsel were arguing this issue without the undersigned having the benefit of any specific information, the court allowed the parties an opportunity to brief the issue. As explained herein, the resulting September 2017 Motion to Compel addressed different documents withheld pursuant to a different privilege log. With respect to only the documents at issue in the instant Motion to Compel, the undersigned finds that Plaintiffs have met their burden of establishing that the redacted portions were properly withheld from production.

[53] Plaintiffs' counsel stated "[a]s long as [counsel for Citco Defendants] believes that they're [the meeting minutes] relevant to this case and based upon that stipulation, we'll produce them." R. Doc. 594, p. 73:5-7. On March 21, 2018, in response to a joint letter request from the parties, the court granted a limited extension of time through March 28, 2018 to meet and confer regarding Plaintiffs' production of the meeting minutes with what the Citco Defendants considered to be "substantial portions" redacted. R. Doc. 572.

[54] Plaintiffs filed their Petition for Damages in state court on March 1, 2013. R. Doc. 1-3.

would be produced with redactions. Notwithstanding Plaintiffs' lack of objection at the March 2018 conference, Plaintiffs' counsel now argues in opposition to the Motion to Compel that the redacted portions of these documents are "opinion work product" that "receives special, enhanced protection from disclosure and is arguably immune from a 'substantial need' standard."[55] Plaintiffs' counsel explained at the May 7, 2018 status conference that Plaintiffs did not have a complete set of the Minutes and were not aware there was a potential work product issue until the Minutes were reviewed in connection with production to the Citco Defendants.

While the court finds Plaintiffs' counsel's statements during the March 2018 status conference verge on waiver, the court is reluctant to require production of unredacted versions of the Liquidation Committee Minutes in light of Plaintiffs' assertion that these documents contain opinion work product, the fact that Plaintiffs have produced the Minutes (albeit in redacted form) in arguable compliance with their March 2018 representations, and given the detail contained in the privilege log with regard to these portions of the Minutes which satisfies the court that the redacted portions do reflect mental impressions of counsel regarding anticipated and actual litigation.

### 3. Participation by Third Parties During the Committee Meetings

Here, although the court considers representatives of the JOL and Alpha to be third parties present at the Liquidation Committee meetings, the Fifth Circuit has explained that the presence of a third party does not necessarily waive work product protection.[56] Instead, the court must consider whether such disclosure was made in a way as to "substantially increase" the possibility

---

[55] R. Doc. 623, p. 8.

[56] *Shields*, 864 F.2d at 382.

for Plaintiffs' adversary to obtain the information.[57] Plaintiffs aver that "the parties participating in the liquidation committee minutes maintained an expectation of privacy…."[58] In support, Plaintiffs attach the declaration of Claire Loebell, an executive director of EY Cayman Ltd., who was appointed as one of the two JOLs of Leveraged and Arbitrage.[59] Ms. Loebell asserts in her Declaration that "[l]egal matters often dominate the agenda for liquidation committee meetings because litigation claims are frequently an insolvent company's most valuable asset" and that she expects "that discussions at committee meetings about legal matters, proprietary information, and personal information about investors or creditors will remain confidential."[60] For some of the redacted documents, it appears that only representatives of E & Y and Plaintiffs were present. For others, representatives of E & Y, Plaintiffs, and Fletcher Income Alpha Funds were present. In either event, the privilege log indicates that attendance during these meetings was more restricted than intimated by the Citco Defendants. Although the court recognizes that there is some inherent tension between a JOL and a particular creditor (because the JOL must consider the interests of *all* creditors), the court finds that disclosure to the JOLs or others participating in the Liquidation

---

[57] *See also*, *Ecuadorian Plaintiffs v. Cevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) ("Although work product immunity is not automatically waived by disclosure of protected material to third parties, disclosure does waive protection if it 'has substantially increased the opportunities for potential adversaries to obtain the information.'") (citing 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (3d ed.2010)).

[58] R. Doc. 623, p. 7.

[59] R. Doc. 623-3, ¶ 1.

[60] R. Doc. 623-3, ¶ 4. *See also*, R. Doc. 623-3, ¶ 5 ("As a routine matter at liquidation committee meetings, the JOLs summarize legal advice they have received and discuss highly sensitive matters involving legal strategy. JOLs discuss critical decisions, such as whether to file a lawsuit, the strengths and weaknesses of potential or filed claims, how to structure payment arrangements with counsel, whether to seek a settlement, and if a settlement is desirable, what should be the desired parameters for settlement. These decisions, and the JOLs' views about these matters, are all shaped by the confidential legal advice rendered by legal counsel to the JOLs and counsel's opinions and conclusions. Frank and detailed discussions of legal matters are so important to the operation of the liquidation committee that the committee may hire its own counsel, paid as an expense of the liquidation.").

Committee Meetings does not substantially increase the likelihood that the same information would be disclosed to defendants in this action.[61]

### C. Substantial Need

In their Motion to Compel, the Citco Defendants do not explain with any detail what substantial need they have for the specific information they believe to be contained in the redacted portions of the Liquidation Committee Minutes. However, during the March 2018 conference, counsel for the Citco Defendants explained as follows:

> So there are a lot of things in those minutes that are going to be relevant. For instance, you, you highlighted the holder claim. You also – there's also the issue of damages…to the extent the Leveraged and Arbitrage liquidation committees are having discussions about assets that are still in the Funds, assets that have been recovered from the Funds, assets that could be recovered from the Funds, to the extent they're fighting over whose claims this, this is. Because we have made a direct and derivative argument that some of these claims are more properly brought by the Leveraged and Arbitrage Funds.
>
> So there are a lot of things that are being discussed in the ordinary course of the liquidation committees about assets and recoveries and claims that, that would be highly relevant here and even the absence of such discussions would be highly relevant here. Because if, if people are foregoing recoveries of assets that might exist, we're entitled to know that as well.[62]

---

[61] *See*, *In re National Liquidators, Inc.*, No. C-2-94-1066, 182 B.R. 186, 192 (S.D. Ohio April 18, 1995) ("By eliminating the per se bar to dual representation in 1984, Congress implicitly determined that the inherent tension between a committee and one of its creditors, standing alone, was immaterial and any conflict too theoretical to warrant being classified as an adverse interest. That is, merely the remote potential for dispute, strife, discord, or difference between a committee and one of its creditors does not give rise to any conflict of interest or appearance of impropriety that would bar an attorney from representing both parties."); *In re The Circle K Corporation*, Nos. 96 Civ. 5801, 96 Civ. 6479, 1997 WL 31197, at * 10 (S.D.N.Y. Jan. 28, 1997) (explaining that "[w]ork product is not necessarily waived by disclosure to a non-client. Rather, voluntary disclosure of work product to an adversary, or disclosure in such a manner that it is likely to be revealed to an adversary, waives the privilege as to other parties" and finding that disclosure of creditor's committee work product to creditor did not waive work product protection because creditor "was not an adversary, or opposing party…[and] had the same basic goal as the Committee and its counsel in these proceedings: ensuring that the debenture holders received some distribution under the plan.").

[62] R. Doc. 594, pp. 71:12-72:5.

16

The court agrees that the Liquidation Committee Minutes are relevant to the issue of Plaintiffs' damages. However, while the Citco Defendants assert they have a substantial need for the documents at issue and cannot obtain the substantial equivalent of the redacted information via other means,[63] the court agrees with Plaintiffs that the structure of Rule 26 protects opinion work product almost absolutely.[64]

"'Opinion' work product...which conveys the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' has been accorded almost absolute protection from discovery by some courts."[65] "Opinion work product generally includes 'such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses.'"[66] While opinion work product may become subject to disclosure if "'mental impressions are at issue in a case and the need for the material is compelling,'"[67] the Citco Defendants have not established that Plaintiffs' counsel's mental impressions are at issue in this case (as they would arguably be in a bad faith insurance settlement matter, for example). Further, courts in this Circuit consistently view waiver of work product protection narrowly.[68]

---

[63] R. Doc. 589-1, pp. 7-8 ("By failing to assert any privilege over these documents until after the close of fact discovery, Plaintiffs have effectively barred the Citco Defendants from obtaining these documents at all and have left us with no other avenues from which we could seek this information."). Presumably, to the extent other parties have filed suit against the Funds, information regarding those suits could be obtained via review of documents in the public record.

[64] Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of these materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.").

[65] *Conoco, Inc. v. Boh Bros. Constr. Co.*, 191 FRD 107, 118 (W.D. La. 1998) (citing *Thomas v. General Motors Corp.*, 174 FRD 386, 388 (E.D. Tex. 1997); *Spotck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1240 (5th Cir. 1982)).

[66] *Lassere v. Carroll*, Civil Action No. 13-5430, 2014 WL 7139138, at * 5 (E.D. La. Dec. 15, 2014) (citations omitted).

[67] *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998) (citing *Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992) (opinion work product discoverable in bad faith insurance settlement case because in such case "mental impressions are at issue...and the need for the material is compelling.").

[68] *See*, *Varel v. Banc One Capital Partners, Inc.*, No. 93–1614–, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997) ("In light of the distinctive purpose underlying the work-product doctrine, a general subject-matter waiver of work-

### D. Fees and Costs

In addition to seeking to compel production of unredacted versions of the Liquidation Committee Minutes, the Citco Defendants also request an award of costs associated with filing the Motion to Compel "given that this is now the *third* time that the Citco Defendants have had to come to this Court seeking to compel production of communications between Plaintiffs and the JOLs, which includes the liquidation committee minutes…."[69] Because the undersigned denies the Citco Defendants' Motion to Compel, it also denies the Citco Defendants' request for fees and costs.[70]

### III. Conclusion

For the reasons set forth herein, the Citco Defendants' Motion to Compel Production of Arbitrage and Leveraged Liquidation Committee Minutes (the "Motion to Compel")[71] is **DENIED IN PART AND GRANTED IN PART**.

With respect to entries with the "PG ID" of 14 & 17 only, the Motion to Compel is **GRANTED**. The court ORDERS Plaintiffs to produce these documents without redactions within fourteen (14) days of this Ruling and Order.

---

product immunity is warranted only when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the same subject matter."). *Compare*, *Cantu v. TitleMax, Inc.*, 5:14-CV-628, 2015 WL 5944258 (W.D. Tex. Oct. 9, 2015) (finding letter sent as part of a financial audit was not subject to work product protection because primary purpose was not in anticipation of litigation and that, even if protected, defendant waived work product protection based on failure to assert work product protection over specific document in five iterations of a privilege log and despite two opportunities to brief the issue).

[69] R. Doc. 589-1, p. 3.

[70] *See*, Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

[71] R. Doc. 589.

With respect to the remaining documents set forth on the privilege log[72] the Motion to Compel is **DENIED**.

Signed in Baton Rouge, Louisiana, on May 10, 2018.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[72] R. Doc. 623-1.