# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.**

**CIVIL ACTION**

**VERSUS**

**13-373-SDD-EWD**

**CITCO GROUP LIMITED, ET AL.**

## RULING AND ORDER ON MOTION TO COMPEL SUPPLEMENTAL INTERROGATORY RESPOSES

Before the court is the Citco Defendants' Motion to Compel Supplemental Interrogatory Responses (the "Motion to Compel")[1] filed by Citco Technology Management, Inc. ("CTM"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and The Citco Group Limited ("Citco Group") (collectively, the "Citco Defendants"). Plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively, "Plaintiffs") have filed an opposition.[2] For the reasons set forth herein, the Motion to Compel is **DENIED IN PART AND GRANTED IN PART**.

## I.     Background

On March 1, 2013, Plaintiffs filed suit against 23 defendants, including the Citco Defendants, asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims.[3] Plaintiffs' claims arise from a $100 million investment loss. In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued

---

[1] R. Doc. 662.

[2] R. Doc. 680.

[3] R. Doc. 1-3.

1

by FIA Leveraged Fund ("Leveraged") for $100 million.[4]  After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[5]  Ultimately, the shares went unredeemed and Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[6]

On September 30, 2016, the District Judge ruled on various motions to dismiss.  The following claims remain against CFS Cayman: (1) seller liability under La. R.S. 51:712(A)(2) based on Plaintiffs' allegation that CFS Cayman was a "substantial factor" in the sale of the Series N shares;[7] (2) control person liability based on Plaintiffs' allegation that CFS Cayman was designated in the offering documents to provide information to prospective investors about the offering;[8] (3) a third party beneficiary claim;[9] (4) negligent misrepresentation based on Plaintiffs' allegation that CFS Cayman was the designated Administrator of Leveraged and that, as such, CFS Cayman would perform various functions including "computing the NET Asset Value ["NAV"] of the Fund's Shares;"[10] and (5) a holder claim.[11]  As to CTM, Citco Banking, and Citco Group,

---

[4] R. Doc. 1-3, ¶ 34.   Leveraged was a feeder fund which Plaintiffs allege was formed primarily to invest in a master fund, Fletcher Income Arbitrage, Ltd.  R. Doc. 1-3, ¶ 10.

[5] R. Doc. 1-3, ¶ 41.

[6] R. Doc. 1-3, ¶¶ 34-45 & 18.

[7] R. Doc. 327, pp. 5-11.  La. R.S. § 51:712(A)(2) provides that it is unlawful for any person

> To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

[8] R. Doc. 327, p. 7.

[9] R. Doc. 327, p. 9.  Plaintiffs contend they were third party beneficiaries of the administrative services agreement between CFS Cayman and Leveraged and that CFS Cayman failed to properly calculate the net asset value of Plaintiffs' investment and failed to inform Plaintiffs of material information at the time of the Series N offering and during the time of Plaintiffs' investment.

[10] R. Doc. 327, p. 10.

[11] R. Doc. 327, p. 10.

the following claims remain: (1) seller liability based on allegations that defendants are liable as sellers due to their extensive relationship with operations of Leveraged;[12] (2) control person liability based on allegations that Citco Defendants delivered the offering memorandum to Plaintiffs in Louisiana, that the offering documents represented the terms negotiated by the Citco Defendants, and that the Citco Defendants played a critical role in providing information necessary for Plaintiffs to make the investment;[13] (3) negligent misrepresentation based on allegations that Plaintiffs based their investment on the Citco Defendants' representations;[14] and (4) a holder claim[15]

On May 15, 2017, the Citco Defendants filed a Motion to Compel Supplemental Interrogatory Responses (the "2017 Motion to Compel").[16] In opposition to the 2017 Motion to Compel, Plaintiffs argued, *inter alia*, that the Citco Defendants had propounded contention interrogatories that were more properly responded to at or near the end of the discovery period.[17] Significant to the current Motion to Compel, Plaintiffs argued in opposition to the 2017 Motion to

---

[12] R. Doc. 325, p. 29.

[13] R. Doc. 325, p. 31. La. R.S. § 51:714(B) provides:

> Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist. There is contribution as in the case of contract among several persons so liable.

Subsection A provides for civil liability for any person who violates La. R.S. § 51:712(A). "Control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." La. R.S. § 51:702(4).

[14] R. Doc. 325, p. 34.

[15] R. Doc. 325, p. 35.

[16] R. Doc. 387.

[17] R. Doc. 399.

Compel that "[b]ecause of Citco's actions and the nature of this case"[18] – which Plaintiffs characterized as a "'fraudulent omission' case"[19] – "further responses to Citco's interrogatories should be delayed until the document production is completed by Citco and the representatives of Citco are deposed. This will allow the Funds to fully and adequately address the subject matter of the interrogatories."[20] In asserting this position, Plaintiffs relied on numerous cases deferring responses to contention interrogatories to the end of discovery based on goals of "narrowing issues and streamlining litigation,"[21] and ensuring responses based on fully developed discovery records.[22]

Following briefing and discussion with the parties during a June 27, 2017 status conference, the court ruled that Plaintiffs would supplement their responses to the particular contention interrogatories at issue in the 2017 Motion to Compel at the end of the fact discovery period.[23] Thereafter, Plaintiffs argued that the court's ruling was "equally applicable to a

---

[18] R. Doc. 399, p. 5.

[19] R. Doc. 399, p. 2.

[20] R. Doc. 399, p. 5.

[21] *See*, R. Doc. 399, p. 4, n. 2 (citing *In re Facebook, Inc.*, MDL No. 12-2389, 2016 WL 5080152, at * 4 (S.D.N.Y. July 7, 2016) ("the service of contention interrogatories before the conclusion of other discovery would not allow response [sic] to serve the interest of narrowing issues and streamlining litigation.")).

[22] R. Doc. 399, pp. 4-5 (citing *Sigman v. CSX Corp.*, 15-cv-13328, 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 12, 2016)).

[23] R. Doc. 410, p. 20. The contention interrogatories at issue in the 2017 Motion to Compel were some, but not all, of the contention interrogatories at issue in the present motion. *See*, R. Doc. 410, pp. 16-17. Although the Citco Defendants argued that the interrogatories were meant to elicit the universe of Plaintiffs' knowledge at the time the Petition was filed, the court noted that the interrogatories were not so limited by their own terms and instead broadly sought the bases for Plaintiffs' contentions. R. Doc. 410, p. 19. At various points in their opposition to the current Motion to Compel, Plaintiffs rely on this portion of the court's previous ruling. *See*, R. Doc. 680, p. 8 ("despite the argument of Citco, the responses are not limited to the allegations in the complaint."); p. 13 ("this Court has already ruled that these interrogatories are not limited to the allegations in the complaint."). It is unclear what point Plaintiffs are trying to make by citing to this portion of the prior ruling, and the undersigned does not find its previous statements regarding the breadth of the wording of the contention interrogatories has much, if anything, to do with whether Plaintiffs have adequately responded to the contention interrogatories at this juncture. Because the undersigned previously ruled that Plaintiffs could wait until the close of fact discovery to respond to the contention interrogatories, the concerns about the scope of the interrogatories should no longer be an issue.

substantial number of other interrogatories propounded by Citco" and requested leave to file a motion for protective order "so that the Court can determine that these additional interrogatories meet the definition of a contention interrogatory" and that Plaintiffs could defer supplemental responses to these interrogatories until the end of the fact discovery period.[24]  During a July 25, 2017 status conference, the parties agreed to defer Plaintiffs' responses to all contention interrogatories until the end of the fact discovery period.[25]

Plaintiffs timely provided supplemental responses to the contention interrogatories at the close of the fact discovery period.  During a May 7, 2018 status conference, the Citco Defendants complained that in response to the contention interrogatories Plaintiffs submitted a "Master Response," that failed to specifically identify and differentiate between the four Citco Defendants, and that certain of Plaintiffs' responses were otherwise non-responsive.[26]  The Citco Defendants asserted that Plaintiffs should be required to answer each contention interrogatory separately by first stating whether a particular defendant did a particular thing, and then Plaintiffs could further assert in response whether the actions of other Citco Defendants should be imputed to the particular

---

[24] R. Doc. 420, p. 2.

[25] *See*, R. Doc. 434, pp. 96:1-98:5; R. Doc. 425, p. 3.  During the July 25, 2017 status conference, counsel for the Plaintiffs stated that he "was a little confused as to what [the Ruling on the 2017 Motion to Compel] applied to.  But, but procedurally, it only applied to the issues that were raised by Citco and after I thought about it, I said, well, you know, really, to make it applicable across the board we need, I assume, to file a protective order on the ones that weren't the subject of the, of the ruling."  R. Doc. 434, p. 96:7-12.  The parties thereafter agreed that Plaintiffs could defer providing supplemental responses to all contention interrogatories.  In opposition to the current Motion to Compel, Plaintiffs suggest that the Citco Defendants' motion should be limited to contesting the sufficiency of supplemental responses to interrogatories originally at issue in the 2017 Motion to Compel.  *See*, R. Doc. 680, p. 7 ("The Court's review of the motion can be substantially narrowed based upon the fact that only five interrogatories were required to be updated based upon the Court's prior ruling on June 30, 2017.").  The court finds this suggestion especially curious in light of the procedural history outlined herein, specifically that *Plaintiffs* subsequently requested that their responses to *all* contention interrogatories be deferred until the end of the fact discovery period.  Moreover, given this procedural history it appears that Plaintiffs have had the contention interrogatories since January 2017.  *See*, R. Doc. 387-1, p. 6.  Accordingly, not only have Plaintiffs had the entirety of the fact discovery period to obtain additional information, they have been able to do so presumably with an eye toward answering the specific contention interrogatories propounded by the Citco Defendants.

[26] *See*, R. Doc. 654, p. 6.

defendant. Counsel for Plaintiffs argued that the Master Response was detailed and provided the Citco Defendants with Plaintiffs' theory of the case, including specifying which Citco Defendant committed which act or omission. The court granted the Citco Defendants leave to file a Motion to Compel regarding the sufficiency of Plaintiffs' contention interrogatory responses.[27]

On May 14, 2018, the Citco Defendants filed the instant Motion to Compel.[28] Therein, the Citco Defendants contend that Plaintiffs' interrogatory responses "are replete with non-responsive and evasive answers that improperly incorporate hundreds of pages of extraneous materials by reference. And, not only have Plaintiffs failed to directly respond to many interrogatories, but they have also impermissibly grouped all Citco Defendants together without specifying which Citco Defendant is responsible for the particular acts alleged in the Petition."[29]

## II.   Law and Analysis

### A.  Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope

---

[27] R. Doc. 654, p. 7. The court further granted the parties relief from the requirements of Local Civil Rule 37, which would otherwise require each interrogatory and response to be quoted verbatim in the Motion to Compel, and instead allowed the Citco Defendants to provide this information via an appendix to the motion. R. Doc. 654, p. 7.

[28] R. Doc. 662.

[29] R. Doc. 662-1, p. 1. *See also*, R. Doc. 662-1, p. 4 ("Plaintiffs' interrogatory responses suffer from two primary deficiencies: (i) the responses do not actually answer the Citco Defendants' interrogatories, and (ii) the responses impermissibly group each of the Citco Defendants together.").

of discovery need not be admissible in evidence to be discoverable."[30]  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[31]

Fed. R. Civ. P. 33(a)(2) provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."[32]  A contention interrogatory is "an interrogatory that asks a party to state what it contends, state whether it makes a specified contention, state all the facts upon which it bases a contention, take a position and explain or defend the position concerning how the law applies to facts, or state the legal or theoretical basis for a contention."[33]  "The primary purpose of contention interrogatories, like those served here at the end of discovery, is to narrow the issues for trial."[34]

_____

[30] Fed. R. Civ. P. 26(b)(1).

[31] Fed. R. Civ. P. 26(b)(2)(C).

[32] *See also*, *United States v. State of Louisiana*, Civil Action No. 11-470, 2015 WL 9165910, at * 4 (M.D. La. Dec. 16, 2015) ("An interrogatory may reasonably ask for the material or principal facts which support a contention.  Rule 33 contemplates that a responding party may not object merely because a contention interrogatory requires the application of opinion to fact.").  *See also*, *In & Out Welders, Inc. v. H&E Equipment Services, Inc.*, Civil Action No. 16-86, 2018 WL 1370600, at * 7 (M.D. La. March 6, 2018) ("Contention interrogatories are specifically permitted by Rule 33….").

[33] *InternetAd Systems, LLC v. ESPN, Inc.*, 3:03CV2787, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004).  *See also*, *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D.N.Y. May 25, 2007) (explaining that contention interrogatories "'may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts.'") (quoting *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D.Conn. July 22, 1996)).

[34] *Linde v. Arab Bank, PLC*, No. 04-2799, 2012 WL 957970 (E.D.N.Y. Mar. 21, 2012) (citing cases).  *See also*, *Pasternak v. Dow Kim*, No. 10 Civ. 5045, 2011 WL 4552389, at * 3 (S.D.N.Y. Sept. 28, 2011) ("the essential purpose of contention interrogatories, coming at the end of discovery, is to narrow the issues for trial.").

This court has explained that "an interrogatory may reasonably ask for the material or principal facts which support a contention, including those asserted in affirmative defenses. As with any interrogatory, however, a contention interrogatory may be overly broad where it seeks 'each and every' single fact upon which a party bases its case."[35] "Courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and piece of evidence a party may wish to offer concerning a given issue at trial."[36] Instead, "[c]ourts have 'tended toward a middle ground, requiring parties to explain the factual bases for their contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all of the evidence that will be offered.'"[37] This court has explained that "[b]y or soon after the close of discovery, a 'defendant should be able to *generally explain* the factual basis for each'" of its contentions.[38]

## B. Propriety of Plaintiffs' Use of A Master Response

Fed. R. Civ. P. 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing…." The undersigned has previously held that interrogatory responses that refer generally to a deposition transcript do not meet this standard.[39] Courts interpreting Rule 33 have found that "it is 'technically improper and

---

[35] *In & Out Welders*, 2018 WL 1370600, at * 7 (citing *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998)). *See also*, *Steil v. Humana Kansas City, Inc.*, No. 99-2541, 197 F.R.D. 445, 447 ("An interrogatory may reasonably ask for the material or principal facts which support a party's contentions in the case. However, 'to require specifically 'each and every' fact and application of law to fact…would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details.'").

[36] *Id.*

[37] *In & Out Welders*, 2018 WL 1370600, at * 7 (citing *Linde v. Arab Bank, PLC*, No. 04-2799, 2012 WL 957970 (E.D.N.Y. Mar. 21, 2012) (citing cases)).

[38] *In & Out Welders*, 2018 WL 1370600, at * 7 (citing *Barkley v. Life Ins. Co. of North America*, No. 3-07-cv-1498, 2008 WL 450138, at * 1 (N.D. Tex. Feb. 19, 2008) ("Now that discovery is closed, defendant should be able to *generally explain* the factual basis for each of the denials and affirmative defenses pled in its original answer.")). By logical extension, this rationale would also apply to Plaintiffs where, as here, they have alleged that Defendants have more knowledge about certain aspects of their claims.

[39] *Tadlock v. Artic Cat Sales, Inc.*, Civil Action No. 15-766, 2017 WL 1032516 (M.D. La. March 16, 2017).

unresponsive for an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories.'"[40]

As an initial matter, the Citco Defendants assert that Plaintiffs' responses to the contention interrogatories "incorporate two different sets of extraneous materials: Plaintiffs' expert reports and their 'Master Response,' a 75-page document intended to lay out Plaintiffs' theory of the case. As to their expert reports, Plaintiffs' interrogatory responses incorporate by reference each of their four expert reports without once specifying any particular sections or statements in any of those reports."[41] While the Citco Defendants characterize both the Master Response and Plaintiffs' expert reports as extraneous materials, the Citco Defendants "do not take issue with the Master Response simply because it is technically an extraneous document."[42] Instead, the Citco Defendants argue that Plaintiffs' references to the Master Response are problematic in particular instances because Plaintiffs have "either (a) referred to specific paragraphs in the Master Response that are themselves not responsive to the interrogatory being answered, or (b) referred to the *entire* Master Response…leaving the Citco Defendants to guess which specific statements in the Master Response Plaintiffs purport to be relying on."[43]

---

[40] *Kleppinger v. Texas Dep't of Transportation*, No. 5:10-cv-124, 2013 WL 12138545, at *2 (S.D. Tex. Jan. 3, 2013) (citing *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 35 (D.D.C. Oct. 18, 2007) (citing 7 J. Moore, Moore's Federal Practice § 33.103 (2d ed. 2006)). *See also, Heerden v. Board of Supervisors of Louisiana State University*, Civil Action No. 10-155, 2011 WL 293758, at * 3 (M.D. La. Jan. 27, 2011) (noting that while it is permissible to refer to other specifically identified discovery answers, referring to "all policies and rules 'identified by plaintiff herein' and 'produced by defendant in this litigation'" was overly vague and that plaintiff was at least required to specifically identify the precise discovery response containing the information); *In re Bertucci Contracting Co., LLC*, Civil Action Nos. 12-664, 12-697, 12-1783, 12-1912, 12-1914, 2013 WL 5935154, at * 5 (E.D. La. Nov. 5, 2013) ("claimants cannot merely point to other vast repositories of documents, deposition transcripts, state-court pleadings, etc. and inform defendants to search the documents for the information that they want.").

[41] R. Doc. 662-1, p. 5.

[42] R. Doc. 661-1, p. 5.

[43] R. Doc. 662-1, pp. 5-6.

Plaintiffs respond that the "Master Response is a verified pleading prepared and filed simultaneously with the Interrogatories to avoid duplicating the same language for multiple interrogatory responses."[44]  Review of the Master Response confirms that signed Verifications by authorized representatives of FERS, MERS, and NOFF were attached to the Master Response.[45]  Here, where the Citco Defendants have not taken issue with the Master Response simply because it is a document separate from Plaintiffs' individualized responses to the contention interrogatories (discussed below), and Plaintiffs have represented that the Master Response is, in part, meant to streamline Plaintiffs' responses to the contention interrogatories and avoid unnecessary duplication, the court proceeds to consider Plaintiffs' specific responses to the contention interrogatories, including Plaintiffs' incorporation of the Master Response, below.[46]

Plaintiffs' reliance on their expert reports *en masse* and without specific pin point citations to particular lines and paragraphs of those expert reports is potentially another matter.[47]  However, because each of the responses in which the expert reports are cited also includes an additional narrative response, the undersigned finds that this is not a situation in which a party has simply referred to extraneous material in order to respond to the interrogatory.  Instead, Plaintiffs have

---

[44] R. Doc. 680, p. 9.

[45] R. Doc. 689, pp. 156-158.

[46] Plaintiffs contend that a review of the "290 exhibits referenced in Plaintiffs' Master Response" "along with the narrative in each paragraph of the Master Response clearly indicates that there is no confusion as to the facts that Plaintiffs are demonstrating in the Master Response."  R. Doc. 680, p. 8.  The undersigned's review indicates that the exhibits referenced by Plaintiffs in their Master Response total approximately 3,716 pages.  While the undersigned commends Plaintiffs for setting forth with such detail Plaintiffs' theory of the case, the undersigned finds that whether the Master Response is actually responsive to the contention interrogatories posed by the Citco Defendants is a separate issue.  Moreover, while the undersigned appreciates Plaintiffs' confidence that the Court will be able to review over 3,700 pages of exhibit materials, the sheer breadth of documentation relied upon by Plaintiffs is, in the undersigned's view, indicative of Plaintiffs' possible failure to specifically respond to the contention interrogatories as propounded by the Citco Defendants.

[47] In their Master Response, Plaintiffs state that the reports of their four experts were delivered on April 16, 2018 and that "[a]ll of the statements set forth in each of these reports are hereby adopted as a contention of the Louisiana Funds and are filed as a response to the interrogatories of Citco."  R. Doc. 689, ¶¶ 159-160.

provided a narrative response to each interrogatory and have also directed the Citco Defendants to Plaintiffs' expert reports.

### C. Plaintiffs' "Grouping" of the Citco Defendants in the Master Response

Although the Citco Defendants do not globally take issue with Plaintiffs' reliance on the Master Response as an "extraneous" document, the Citco Defendants do argue that Plaintiffs improperly "lump[] all four Citco Defendants together and [have] refused in their interrogatory responses to identify which Citco Defendant they contend is responsible for any alleged act or omission."[48]

In response, Plaintiffs assert that they "are not aware of any law which precludes all four defendants for being liable for the same conduct given the common control by the Citco Group as well as each entity being a financial beneficiary of $50 million from the offering."[49] Plaintiffs further argue that "the Master Response refers to the conduct of specific entities and the conduct of the employees and representatives during each of the three periods"[50] and that "all of the entities function as one entity based upon the common control of the Citco Group…."[51]

#### 1. There Has Been No Determination that the Citco Defendants Are a Single Business Enterprise

In their Petition, Plaintiffs allege that:

> The Citco Group serves as a vehicle by which its operating
> subsidiaries procure business, and it conducts extensive fund

---

[48] R. Doc. 662-1, p. 15.

[49] R. Doc. 680, p. 10.

[50] R. Doc. 680, p. 10. Plaintiffs' Master Response is divided between three main time periods. Plaintiffs refer to "Period One" as the time period prior to Plaintiffs' purchase of the Series N shares on April 15, 2008. Per the Master Response, "Period Two is the time period from the completion of the Series N Offering on or about April 15, 2008 to March 15, 2010. During this time period, Citco became aware of certain facts that were material omissions during Period One and failed to provide any supplemental information to the Series N Shareholders." R. Doc. 689, ¶ 102. "Period Three" is the time period after March 15, 2010, during which Plaintiffs contend that the Citco Defendants continued to provide services despite termination of the administration agreement with CFS Cayman. *See*, R. Doc. 689, ¶ 147.

[51] R. Doc. 680, p. 11.

management services for funds operated within the United States and around the world. The Citco Group represents that its operating subsidiaries constitute a "global fund administrator" and that its operating subsidiaries' ability to administer funds in offices throughout the world renders the combined enterprise able to provide a "consistent service platform."[52]

Per Plaintiffs' Master Response, Plaintiffs assert that "Ex. 1151, pages 11 to 63, sets forth in detail a full description of Citco's integrated business operation as described by Ernst and Young."[53] In addition to relying on this exhibit, Plaintiffs also cite to "Ex. 581," which includes a "company description" section.[54] Based on the undersigned's review of the Master Response, it appears that Plaintiffs primarily rely on these two exhibits to support their contention that the Citco Defendants should be treated as a combined enterprise and that the actions of one particular Citco Defendant should be imputed to the other Citco Defendants.

As the District Judge in this matter previously observed with respect to personal jurisdiction over each Citco Defendant, "[r]elated, but separately incorporated entities enjoy a presumption of independence which may be rebutted only by 'clear evidence' of interdependence or joint control beyond 'the mere existence of a corporate relationship.'"[55] Although the District Judge found Plaintiffs' allegations of common control by Citco Group were sufficient to support the exercise of personal jurisdiction over Citco Group,[56] the District Judge also explained that

---

[52] R. Doc. 1-3, ¶ 4. *See also*, R. Doc. 1-3, ¶ 65 ("The Citco Group does not earn any revenue independent of the revenue generated by its subsidiaries, and it serves as the vehicle by which its operating subsidiaries procure business from and conduct extensive fund management services for funds operated from within the United States and around the world."); ¶ 69 ("Citco Group's individual corporations are all controlled by Citco Group, which appoints division directors to monitor the daily operations of each division, including, relevant here, the fund services division."); ¶ 68 ("Despite the separate corporate identities that Citco Defendants used to contract with Leverage, Citco Group both markets and operates itself as a single financial services provider….").

[53] R. Doc. 689, ¶ 12, citing R. Doc. 690-8.

[54] R. Doc. 689-11.

[55] R. Doc. 325, p. 14 (citing *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir. 2004)).

[56] R. Doc. 325, p. 21.

"[t]he mere allegation that the various Citco entities are commonly held by a parent holding company is not *prima facie* evidence that all Citco subsidiaries comprise a 'single business entity', which is essentially what the Plaintiffs contend without invoking the actual terms."[57]  "Under Louisiana law, the single business enterprise theory is subject to an 18 part test.  Plaintiffs' allegations are woefully short of *prima facie* proof which would justify treating the various Citco subsidiaries as a single business enterprise."[58]  Although the District Judge in this matter has directed the parties to the various factors to be considered when determining whether a single business enterprise exists, there has been no determination as to whether the Citco Defendants constitute a single business enterprise under Louisiana law.

### 2. Plaintiffs Master Response Must Consistently Specify Which Citco Defendant took the Alleged Action

Notwithstanding the fact that the District Judge has not determined whether the Citco Defendants should be considered a single business enterprise, the undersigned finds that there are a number of problems with Plaintiffs' treatment of the Citco Defendants as a "combined enterprise" and Plaintiffs' reference to Exhibits 1151 and 581 in the Master Response.  First, Plaintiffs' reliance in the Master Response on Exhibits 1151 and 581 *is* improper and unresponsive.[59]  Plaintiffs' citation to large swathes of these documents does not respond to the

---

[57] R. Doc. 325, p. 24.

[58] *Id*. (explaining that "[t]he eighteen factors include whether one corporation has sufficient ownership interest in another to give it actual working control, whether common directors or officers exist, whether a unified administrative control apparatus is present, and whether the business functions of the companies are similar or supplementary, whether the directors of one corporation act independently in the interest of that corporation or instead in the interest of another corporation, whether one corporation finances or pays the salaries and expenses of another corporation, and whether one corporation is inadequately capitalized or receives no business other than that given to it by another corporation, whether a corporation uses the property of another corporation as its own,  complies with corporate formalities, or keeps common employees or offices with another corporation, and whether there are financial transactions between the companies.") (citing *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. App. 1 Cir. 2013) and *Bona Fide Demolition and Recovery, LLC v. Crosby Const. Co. of Louisiana, Inc.*, 690 F.Supp.2d 435, 444 (E.D. La. 2010)).

[59] *See*, *Tadlock*, 2017 WL 1032516, at * 5 (citing *Kleppinger*).

question of what Plaintiffs contend the basis for asserting the Citco Defendants should be considered as a combined or single business enterprise is.[60]   As explained above, although Plaintiffs have consistently taken the position that the Citco Defendants should be treated as a single enterprise,[61] there has been no judicial determination regarding that fact.   Moreover, even if the Citco Defendants are ultimately determined to be a single business enterprise (such that the actions of one Defendant may be imputed to the others), that does not absolve Plaintiffs from responding to the interrogatories asked and specifying which Citco Defendant actually acted.[62]

The contention interrogatories propounded by the Citco Defendants uniformly ask Plaintiffs to specifically identify which Citco Defendant did what.   Although Plaintiffs explicitly identify a particular Citco Defendant or employee at certain points in Plaintiffs' 75-page Master Response,[63] the Master Response is replete with generic references to "Citco."   Plaintiffs define

---

[60] To the extent this contention is based on exhibits 1151 and 581, Plaintiffs must *specifically pinpoint* the language of those exhibits upon which they rely.

[61] Plaintiffs argue that "Citco understands precisely the role that each [defendant] was playing based upon depositions and questioning" and point out that the documents primarily relied upon in the Master Response "are documents produced by Citco of which they are thoroughly familiar."  R. Doc. 680, pp. 11 & 2.  Regardless of what the Citco Defendants believe the likely answers to the contention interrogatories are (based on the Citco Defendants' understanding of their own documents and their own representatives' depositions), that is not the same as *Plaintiffs* providing responses setting out what *Plaintiffs* contend.  *See, e.g., United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594-595 (D.D.C. May 20, 2016) (noting multiple problems with supplemental responses to contention interrogatories that directed the propounding party to review its own documents and explaining, *inter alia*, that the court would "not require the government to answer its own interrogatories by filtering a mass of documentary evidence through an adversary's legal lens.").  To the extent Plaintiffs seek to rely on Fed. R. Civ. P. 33(d) to justify their extensive citations in the Master Response to the Citco Defendants' business records, "courts and commentators have long agreed that Rule 33(d) applies only where the answers to the interrogatories may be found in the business records of the party upon whom the interrogatories have been served."  *Id.* at 595 (collecting cases, internal quotations omitted).  *See*, R. Doc. 680, p. 8 ("In the Master Response, the Plaintiffs have gone well beyond the requirement of Rule 33(d).").

[62] Moreover, even assuming *arguendo* that the Citco Defendants are held to be a single business enterprise, the trier of fact must know which entity actually took the action in order to determine whether the entity is, as a threshold matter, within the scope of the common enterprise.

[63] *See, e.g.*, R. Doc. 689, ¶¶ 21 (CFS Cayman agreed to serve as the independent administrator); 81 ("CFS Cayman was the administrator of Leveraged and was required to approve the disclosures in the Offering Memorandum"); 11 ("The Citco Group is a worldwide group of independent financial service providers, comprised of international banks, fund services and trust companies."); 49 ("A copy of the term sheet was sent to Magris and Unternaehrer, members of the Citco Group Executive Committee for approval."); 59 ("Unternaehrer testified that he and Magris were solely responsible for reviewing the Offering Memorandum provided by Skadden…."); 15 ("The Citco Bank acts as escrow agents [sic] during the initial subscription period for hedge fund shares and as paying agent to facilitate the processing

the term "Citco" for purposes of their discovery responses to mean Citco Group, CFS Cayman, Citco Fund Services (Suisse) S.A., Citco Banking, Citco Trading, Inc., CTM, and their representatives.[64]  Not only does Plaintiffs' definition of this term include entities which are not defendants, it appears that Plaintiffs alternate between the generic term and specific identification throughout the Master Response.  For example, while Plaintiffs state that "CFS Cayman agreed to serve as the independent administrator," the same paragraph of the Master Response also states that "[a]s the independent administrator, Citco was responsible for insuring that all redemptions and use of the proceeds of the Leveraged offering were in accordance with the Offering Memorandum…."[65]

In light of the purpose of these contention interrogatories to narrow the issues at trial, and especially where responses to these contention interrogatories were deferred to the end of the fact discovery period in order for Plaintiffs to be able to fully respond to these interrogatories, Plaintiffs must revise their Master Response to identify specifically the particular defendant to which they refer.  Although the undersigned agrees with Plaintiffs that they are allowed to argue that the actions of one Citco Defendant should be imputed to another, the District Judge has not ruled that the Citco Defendants should (or should not) be considered a single business enterprise or that the actions of one defendant may otherwise be imputed to the others.  In any event, the contention interrogatories at issue ask Plaintiffs to specifically identify the actions taken by each Citco

---

of dividend, distribution, and redemption payments to fund investors."); 82 ("Because the $20 million loan was in default, Citco Bank had the ultimate say so in determining whether the offering would be completed."); 22 ("This process extensively used the computer programs of Citco Technology Management known as Ephesus, NTAS, AExeo and AXI.  As noted by Mr. Smeets and Mr. Unternaehrer, the proprietary computer programs of Citco Technology were the cornerstone of the success of the Funds' business and but for these programs, Citco would not be competitive in the world wide administrative services business.").

[64] R. Doc. 689, Appendix A, p. 85.

[65] R. Doc. 689, ¶ 21.

Defendant. To the extent Plaintiffs can identify the specific actor, they must do so. [66] To the extent

they cannot (or still do not know despite completing fact discovery), they must so state. Plaintiffs

must answer the interrogatories asked for each individual Citco Defendant. Accordingly, Plaintiffs

are ORDERED to revise their Master Response[67] to identify specifically the particular Defendant

to which they refer, or to state that they cannot identify the specific Citco Defendant which acted.

### 3. Plaintiffs' Grouping of the Citco Defendants in Response to Particular Contention Interrogatories[68]

The Citco Defendants specifically assert that Plaintiffs' responses to four particular

interrogatories improperly group all the Citco Defendants together without specifying the acts of

each particular Defendant. The interrogatories that fall within this category are: (1) CFS

Cayman/Citco Banking/CTM Interrogatory No. 14; Citco Group Interrogatory No. 15[69]; (2) Citco

---

[66] *See, Southern Scrap Material Co. v. Fleming*, Civ. A. 01-2554, 2003 WL 21920899, at * 5 (E.D. La. Aug. 8, 2003) (compelling supplemental responses to interrogatories and finding that "each Defendant Attorney [had] a right to know exactly what the plaintiffs contend are his alleged improper acts and omissions" in lawsuit alleging individual attorneys engaged in a conspiracy such that plaintiff sought to impute the alleged wrongdoing of each defendant to every other defendant).

[67] R. Doc. 689.

[68] With respect to all of the particular interrogatories discussed herein, the court has quoted the language as set forth in the appendixes attached to the Citco Defendants' Motion to Compel. The Citco Defendants note that each interrogatory at issue in the instant Motion to Compel was propounded on each Plaintiff and that the responses by each Plaintiff are deficient for the same reasons. R. Doc. 662-1, p. 6, n. 1.

[69] R. Doc. 662-2, p. 18; R. Doc. 662-3, p. 16; R. Doc. 662-4, p. 19; R. Doc. 662-5, p. 18 ("State whether You contend that [CFS Cayman/Citco Banking/Citco Group/CTM] directly or indirectly controlled a person liable under La. R.S. 71:714(A) or occupied a similar status or performed a similar function as such a person, as alleged in paragraphs 120 to 124 of the Petition and, if so, identify (i) each person that [defendant] directly or indirectly controlled who You contend is liable under La. R.S. 51:714(A) or who occupied a similar status or performed a similar function as [defendant]; and (b) state the basis for Your contention that [defendant] directly or indirectly controlled such person(s) or that such person(s) occupied a similar status or performed a similar function as [defendant].").

Banking Interrogatory No. 24 to FRS;[70] (3) Citco Banking Interrogatory No. 25 to FRS;[71] and (4) CTM Interrogatory No. 22 to FRS.[72]  With respect to Citco Banking interrogatory number 24 directed to FRS,[73] and in addition to arguing that Plaintiffs' response is insufficient based on improper grouping, the Citco Defendants also argue that "Plaintiffs' response does not answer subparts (c) and (d) of the interrogatory, which ask Plaintiffs to identify *when* they relied on each of the alleged omissions in deciding to hold the Series N shares and *how much* of their investment Plaintiffs would have redeemed on each such date had the supposedly omitted information been disclosed."[74]

Plaintiffs' revision of the Master Response to identify the specific actor (or state that they cannot identify the specific Citco Defendant which acted) would adequately address the "improper grouping" issue raised by the Citco Defendants with respect to these four interrogatories.

---

[70] R. Doc. 662-8, p. 4 ("Identify every omission by each Citco Defendant that You contend you relied upon in deciding to retain ownership of the Series N shares, as alleged in paragraphs 35, 36, and 308 of the Petition, and for every such omission (a) identify the Citco Defendant that You contend made the omission; (b) state the basis for your contention that the Citco Defendant had a legal duty to disclose the information You contend was omitted; (c) identify the date or dates on which You contend that You relied upon the omission in deciding the retain ownership of the Series N shares; and (d) identify the number of Series N shares that You would have redeemed on the date or dates identified but for the omission.").

[71] R. Doc. 662-8, p. 6 ("Identify every conflict of interest that You contend affected any of the Citco Defendants as alleged in paragraphs 33, 35, and 54 of the Petition, and for each such conflict of interest (a) identify the Citco Defendant that You contend was affected by such conflict of interest, (b) state the basis for Your contention that such Citco Defendant was affected by the conflict of interest, (c) state whether such conflict of interest was ever disclosed to You by the Citco Defendants (and if so, which Citco Defendant) or in the Offering Memorandum, and (d) state the date and manner by which You first learned about such conflict of interest.").  Paragraphs 33 and 35 of the Petition allege that the Citco Defendants, Fletcher Defendants, and Investment Advisor Defendants made certain misrepresentations.  R. Doc. 1-3, ¶¶ 33(A)-(G); 35(A)-(J).  Paragraph 54 of the Petition alleges that "the Citco Defendants had a conflict of interest in the role that it played in providing information to Plaintiffs as a participant in the offering of the Series N shares because all or part of the proceeds of the offering was being used to redeem out interests in Arbitrage or Leverage owned by funds related to or managed by Citco Defendants.  These inducements created unacceptable conflicts of interest or influence to the managers and administrators of Leverage and Arbitrage and resulted in the Citco Defendants acting against the best interest of Plaintiffs and Leverage and Arbitrage in order to result in material gain to other funds managed by the Citco Defendants."  R. Doc. 1-3, ¶ 54.

[72] R. Doc. 662-9, p. 10 ("State whether You contend that any of the Citco Defendants owed any duties to You after CFS Cayman's resignation as administrator of Leveraged became effective on or about March 31, 2010, and, if so, state the basis for the duty and all facts that You contend establish such a duty.").

[73] R. Doc. 662-8, p. 4.

[74] R. Doc. 662-1, p. 18.

Accordingly, in light of the order requiring Plaintiffs to revise the Master Response to identify the specific actor (or state that they cannot identify the specific Citco Defendant which acted), the Citco Defendants' Motion to Compel a supplemental response to (1) CFS Cayman/Citco Banking/CTM Interrogatory No. 14; Citco Group Interrogatory No. 15[75]; (2) Citco Banking Interrogatory No. 25 to FRS;[76] and (3) CTM Interrogatory No. 22 to FRS[77] is DENIED AS MOOT.

Additionally, with respect to Citco Banking interrogatory number 24 directed to FRS, the undersigned agrees that Plaintiffs have not responded to subparts (c) and (d) of the interrogatory.[78] In their opposition, Plaintiffs contend that they "would not have purchased the securities in the first place if Plaintiffs had known the complete facts."[79] Plaintiffs further aver that had certain information been disclosed, "Plaintiffs would not have invested and each day after the investment on April 1, 2008, the Plaintiffs would have redeemed 100% of their shares upon the discovery of the $50 million financial benefits. Each and every day after these non-disclosures, Plaintiffs would have redeemed the entire amount."[80] These assertions appear to be responsive to subparts (c) and (d) of the interrogatory; however, they are not included in Plaintiffs' verified response thereto. Accordingly, the Citco Defendants' Motion to Compel a supplemental response to Citco Banking Interrogatory No. 24 to FRS[81] is GRANTED IN PART. Plaintiffs are ORDERED to provide a

---

[75] R. Doc. 662-2, p. 18; R. Doc. 662-3, p. 16; R. Doc. 662-4, p. 19; R. Doc. 662-5, p. 18.

[76] R. Doc. 662-8, p. 6

[77] R. Doc. 662-9, p. 10.

[78] R. Doc. 662-8, p. 4 ("… (c) identify the date or dates on which You contend that You relied upon the omission in deciding the retain ownership of the Series N shares; and (d) identify the number of Series N shares that You would have redeemed on the date or dates identified but for the omission.").

[79] R. Doc. 680, p. 14.

[80] R. Doc. 680, p. 14.

[81] R. Doc. 662-8, p. 4.

supplemental verified response to subparts (c) and (d) of Citco Banking Interrogatory No. 24 to FRS.

### III. Particular Interrogatories for which the Citco Defendants Contend Plaintiffs' Responses are Non-Responsive

The Citco Defendants also assert that Plaintiffs' responses to six interrogatories are non-responsive because they rely on portions of the Master Response that are in themselves non-responsive or that Plaintiffs' answers are otherwise evasive.

#### 1. Citco Defendants' Interrogatory No. 1

The Citco Defendants propounded the following interrogatory:

> State whether You contend that [CFS Cayman/Citco Group/Citco Banking/CTM] prepared and delivered to FRS in Louisiana the offering memorandum for the Series N shares of Leveraged, as alleged in paragraph 9 of the Petition, and, if so, state the basis for such contention.[82]

Both parties seem to agree that this interrogatory seeks information relevant to Plaintiffs' "failure to register" claim.[83] The Citco Defendants point to the language of La. R.S. § 51:705(A) to argue that for Plaintiffs to prevail on this claim, they must show, *inter alia*, that "each Citco Defendant offered or sold the Series N shares *in Louisiana*."[84] Plaintiffs argue in opposition to the Motion to Compel that they "have stated over and over that no Citco representative came to Louisiana to offer the securities…" and that the Citco Defendants are liable for "failing to register" the Series N shares based on other reasons.[85]

---

[82] R. Doc. 662-2, p. 4; R. Doc. 662-3, p. 4; R. Doc. 662-4, p. 4; R. Doc. 662-5, p. 4. Paragraph 9 of the Petition alleges, *inter alia*, that "[t]he Citco Defendants and Fletcher Defendants prepared and delivered to Plaintiffs in Louisiana the offering memorandum for the Series N shares of Leverage which is the subject of this lawsuit." R. Doc. 1-3, ¶ 9.

[83] *See*, R. Doc. 662-1, p. 6 ("The Petition alleges that each Citco Defendant violated Section 705 of the Louisiana Securities Act by 'failing to register' the Series N shares…"); R. Doc. 680, p. 15, n. 19.

[84] R. Doc. 662-1, p. 6. La. R.S. § 51:705(A) provides that "[i]t shall be unlawful for any person to offer for sale or sell any securities in this state unless…."

[85] R. Doc. 680, p. 15.

In their particular response to this interrogatory as to CFS Cayman, Plaintiffs state that:

> CFS Cayman *assisted in the preparation* of the Series N Offering Memorandum that was delivered to the Louisiana Funds in Louisiana as set forth in Citco Relation to the Series N Offering (para. 60 to 77 of Master Response). In addition, Citco obtained the Consents of the Non-Series N Shareholder authorizing the issuance of the Series N Shares. (See para. 6, 49, 50, 58 of Master Response). Further, Millennium, an affiliate of the administrator, held all of the voting shares and approved the issuance of the Series N Shares, the amendment of Leveraged's Articles of Association and had the sole right to elect and terminate the directors of Leveraged of the board of directors. (*See* para. 6, 67, 79, and 80 of Master Response).

> The further basis for such contention is set forth in Period One (para. 21-101 of the Master Response).[86]

Regarding Citco Banking, Citco Group, and CTM, Plaintiffs assert that these Defendants were "control person[s] of Leveraged, as explained in [responses to previous interrogatories], [and are] responsible for the acts of the issuer in delivering the Offering Memorandum to Plaintiff in Louisiana. (*See* para. 61 to 70 of Master Response)."[87] In further response, Plaintiffs state that "Citco Bank was the financial beneficiary of the misrepresentations and omissions in the Series N Offering Memorandum" and "was a member of the integrated group of companies operated by Citco Group…."[88] With regard to Citco Group, Plaintiffs additionally state that Citco Group "exercised its substantial assistance through its wholly owned subsidiary CFS Cayman. Two members of the Citco Group Executive Committee, Mr. Smeets, and Mr. Unternaehrer were at all times knowledgeable of the facts and issues set forth in detail relating to Period One" and that "Citco Group and the Executive Committee of Citco Group at all times controlled the operations of CFS Cayman…."[89] With respect to CTM, Plaintiffs additionally assert that:

---

[86] R. Doc. 662-2, p. 4. Emphasis added.

[87] R. Doc. 662-3, p. 4; R. Doc. 662-4, p. 4; R. Doc. 662-5, p. 4.

[88] R. Doc. 662-3, p. 4.

[89] R. Doc. 662-4, p. 4.

the acts and omissions of Citco set forth in Period One (para. 21 to 101 of Master Response) during the issuance of the Series N offering memorandum to Plaintiffs in Louisiana could not have been performed without the use of the computer systems and programs owned and provided to Citco by CTM. The proprietary computer systems were necessary for the performance of the work of the administrator, and based upon the testimony of Mr. Smeets, was the intangible that provided Citco the competitive edge in its fund administration business. CTM's technology allowed Citco Group, Citco Bank and CFS Cayman to initiate and perpetuate the acts and omissions against the Louisiana Funds. Citco's reliance on CTM's technology is set forth in Ex. 581 and Ex. 1151, pages 11 to 63. In further response, Plaintiff states that CTM was a member of the integrated group of companies operated by Citco Group and its subsidiaries and affiliates, with employees of various subsidiaries and affiliates performing services for other subsidiaries and affiliates without contractual agreements governing such actions. Ex. 581 and Ex. 1151 describe the integrated operation of the Citco companies.[90]

In addition to these responses, Plaintiffs cite to paragraphs 21 through 101 of the Master Response and, for CTM, "the expert reports submitted by Plaintiff in this matter."[91]

The Citco Defendants complain that Plaintiffs' responses to interrogatory number 1 are non-responsive "because [they] do not answer the basic question of whether any Citco Defendant sold the Series N shares in Louisiana."[92] The Citco Defendants assert that the interrogatory "simply asks whether a particular Citco Defendant itself delivered the Series N offering memorandum to Plaintiffs in Louisiana."[93] As the court reads interrogatory number 1, that is arguably not what the Citco Defendants asked. Instead, the interrogatory asks whether a particular defendant "prepared and delivered to [Plaintiff] in Louisiana the offering memorandum." It is unclear whether "in Louisiana" is meant to modify the location of Plaintiffs or instead the location

---

[90] R. Doc. 662-5, p. 4.

[91] R. Doc. 662-5, p. 5.

[92] R. Doc. 662-1, p. 6.

[93] R. Doc. 662-1, p. 7.

of a defendant's actions. In light of this ambiguity, Plaintiffs' response that CFS Cayman "assisted" in the preparation of the offering memorandum is responsive.[94] However, based on the court's review of the portions of the Master Response cited by Plaintiffs, there does not appear to be any explicit answer to the question of whether any Citco Defendant itself actually delivered the offering memorandum to Plaintiffs in Louisiana. In their briefing in opposition to the Motion to Compel, Plaintiffs assert that they "have stated over and over that no Citco representative came to Louisiana to offer the securities…."[95] This is not, however, part of Plaintiffs' sworn responses to the contention interrogatories. Accordingly, the Citco Defendants' Motion to Compel a supplemental response to interrogatory number 1[96] is GRANTED. Plaintiffs are ORDERED to supplement their sworn interrogatory responses to interrogatory number 1 propounded by each Citco Defendant to state whether any representative of any Citco Defendant delivered the Offering Memorandum to Plaintiff(s) in Louisiana.[97]

### 2. Citco Defendants' Interrogatory No. 4

Interrogatory number 4 asks Plaintiffs to:

> State whether You contend that [CFS Cayman/Citco Group/Citco Banking/CTM] made any of the representations, or failed to provide any information, as described in in [sic] paragraphs 33, 34, 35, 106, 153, and 300 of the Petition and, if so, identify: (i) the speaker of the

---

[94] Although this is a close call, paragraph 60 of the Master Response asserts that a draft of the offering memorandum was sent to an employee of CFS Cayman for review and comments. R. Doc. 689, ¶ 60.

[95] R. Doc. 680, p. 15.

[96] R. Doc. 662-2, p. 4; R. Doc. 662-3, p. 4; R. Doc. 662-4, p. 4; R. Doc. 662-5, p. 4.

[97] Plaintiffs' responses regarding Citco Group, Citco Banking, and CTM intimate what they assert in opposition to the Motion to Compel – that these Defendants are liable for a failure to register claim based on other legal reasons. *See*, R. Doc. 680, pp. 15-16 ("based upon the Master Response, Citco has liability for the failure to register claims for three legal reasons: (i) control person liability under La. R.S. 51:714; (ii) omission of material information results in denial of the private offering exemption…; and (iii) Citco prepared financial information and reviewed the prospectus at the same time it was the recipient of the financial benefits…."). Plaintiffs are entitled to argue that these Defendants are liable notwithstanding whether an individual Defendant sold the securities in Louisiana. Plaintiffs are also entitled to argue that the actions of CFS Cayman should be imputed to the other Citco Defendants. However, that does not relieve Plaintiffs from responding to the interrogatory asked – whether Plaintiffs contend that a particular Defendant "prepared and delivered" the offering memorandum to a Plaintiff in Louisiana.

representation; (ii) the content of the representation; (iii) the date on which the representation was made; (iv) the document in which the representation is contained, if any; (v) the person(s) to whom the representation was made; (vi) all person(s) at [FRS/MERS/NOFF] who were aware of or received the representation; (v) [sic] when You would have redeemed if not for each such representation; and (vi) [sic] the amount You would have redeemed if not for each such representation.[98]

In response to this interrogatory, Plaintiffs rely heavily on the Master Response[99] and, for CFS Cayman, Citco Banking and CTM, focus on the alleged misrepresentations and omissions of CFS Cayman.[100] However, with respect to the interrogatory directed to Citco Group, Plaintiffs state that "the omissions made by *each Citco Defendant* are the Period One misrepresentations…the Period Two misrepresentations and the Period Three misrepresentations…."[101] Plaintiffs further assert that "Citco Group, CFS Cayman, Citco Bank, Mr. Smeets, and Mr. Unternaehrer were at all times knowledgeable of the issues set forth in detail related to Period One to Three," that "[t]he Citco Group and the Executive Committee of the Citco Group at all times controlled the operations of CFS Cayman…," and that "these parties had knowledge of the misrepresentation and omissions…."[102]

As ordered above, Plaintiffs must revise their Master Response to identify the specific actor (or state that they cannot identify the specific Citco Defendant which acted). Once Plaintiffs have

---

[98] R. Doc. 662-2, p. 7; R. Doc. 662-3, p. 7; R. Doc. 662-4, p. 6; R. Doc. 662-5, p. 8.

[99] *See*, R. Doc. 662-2, p. 7 ("the omissions and misrepresentations made by CFS Cayman are the Period One misrepresentations as set forth at para. 100 of the Master Response…the Period Two misrepresentations as set forth at para. 138 of the Master Response and the Period Three misrepresentations as set forth at para. 156 of the Master Response.").

[100] With regard to the interrogatory directed to Citco Banking's alleged omissions and misrepresentations, Plaintiffs aver that "the omissions and misrepresentations *made by CFS Cayman* are…." R. Doc. 662-3, p. 7. With regard to the interrogatory directed to CTM, Plaintiffs aver that "the omissions and misrepresentations made by *CFS Cayman* are…." R. Doc. 662-5, p. 8.

[101] R. Doc. 662-4, p. 6. Emphasis added.

[102] R. Doc. 662-2, p. 7. *See also*, 662-3, p. 7.

made these required revisions, the undersigned finds that Plaintiffs' responses to interrogatory number 4 are generally responsive with the exception of the last two subsections (*i.e.*, those improperly numbered as repeat subsections (v) and (vi)). In opposition to the Motion to Compel, Plaintiffs assert that they "would not have invested and each day after the investment on April 1, 2008, the Plaintiffs would have redeemed 100% of their shares upon the discovery of the $50 million financial benefits. Each and every day after these non-disclosures, Plaintiffs would have redeemed the entire amount."[103] These assertions appear to the undersigned to be responsive to the second subparts (v) and (vi) of the interrogatory; however, they are not included in Plaintiffs' verified response thereto. Accordingly, the Citco Defendants' Motion to Compel a supplemental response to interrogatory 4[104] is GRANTED IN PART. Plaintiffs are ORDERED to provide a supplemental response to interrogatory number 4 by revising the Master Response and by providing a supplemental response to the second subparts (v) and (vi) of the interrogatory.

### 3. CFS Cayman/Citco Banking/CTM Interrogatory No. 10; Citco Group Interrogatory No. 11

These interrogatories ask Plaintiffs to

> State whether You contend that [CFS Cayman/Citco Banking/Citco Group/CTM] failed to take "industry-standard steps" in performing any services to Leveraged, as alleged in paragraph 74 of the Petition and, if so (i) identify the "industry-standard steps" that You contend [Defendant] did not take and (ii) state the basis for Your contention that such steps are "industry-standard."[105]

In response to these interrogatories, Plaintiffs contend that "CFS Cayman's involvement in the Leveraged Series N Offering, its actions after the Offering, as well as its failure to take industry standard actions are set forth in detail" in paragraphs 21 through 156 of the Master

---

[103] R. Doc. 680, p. 14.

[104] R. Doc. 662-2, p. 7; R. Doc. 662-3, p. 7; R. Doc. 662-4, p. 6; R. Doc. 662-5, p. 8.

[105] R. Doc. 662-2, p. 15; 662-3, p. 13; 662-4, p. 16; 662-5, p. 15.

Response.[106]  Additionally, Plaintiffs aver that CFS Cayman "had an affirmative duty" to disclose known adverse financial information about Leveraged and that "CFS Cayman failed to disclose known adverse financial information or known conflicts of interest, all of which is contrary to industry standards, and all of which is discussed in the expert reports issued submitted [sic] by Plaintiff in this matter."[107]

With regard to Citco Banking, Plaintiffs aver that "it is a violation of industry standard for a bank such as Citco Bank, that is a member of the same control group as the administrator, CFS Cayman, to receive the proceeds of an offering subject to the Louisiana Blue Sky law…and not disclose the history of the loan or its evaluation of the borrower, all of which is more fully detailed in the expert reports submitted by Plaintiff in this matter."[108]  As to Citco Group, Plaintiffs answer that two members of the Citco Group Executive Committee were knowledgeable of the "facts and issues" set forth in in paragraphs 21 through 156 of the Master Response, that those two members "at all times controlled the operations of CFS Cayman because of the high risk and profile of the Fletcher entities," and that Citco Group "had an affirmative duty to disclose the adverse financial information about Leveraged that was known to it" as discussed in Plaintiffs' expert reports.[109] Finally, with respect to CTM, Plaintiffs state that "CTM failed to take industry-standard steps by supporting the efforts of CFS Cayman" and that CFS Cayman's actions "would not have been possible without CTM."[110]  Specifically with respect to CTM, Plaintiffs go on to state:

> the NAV statements issued to Plaintiff could not have been performed without the use of the computer systems and programs owned and provided to Citco by CTM.  The proprietary computer

[106] R. Doc. 662-2, p. 15.

[107] R. Doc. 662-2, p. 15.

[108] R. Doc. 662-3, p. 13.

[109] R. Doc. 662-4, p. 16.

[110] R. Doc. 662-5, p. 15.

systems were necessary for the performance of the work of the administrator, and based upon the testimony of Mr. Smeets, was the intangible that provided Citco the competitive edge in its fund administration business. CTM's technology allowed Citco Group, Citco Bank and CFS Cayman to initiate and perpetuate the acts and omissions against the Louisiana Funds. Citco's reliance on CTM's technology is set forth in Ex. 581 and Ex. 1151, pages 11 to 63. In further response, Plaintiff states that CTM was a member of the integrated group of companies operated by Citco Group and its subsidiaries and affiliates, with employees of various subsidiaries and affiliates performing services for other subsidiaries and affiliates without contractual agreements governing such actions. Ex. 581 and Ex. 1151 describe the integrated operation of the Citco companies. Please refer to the Master Response at para. 1-160.[111]

While the court has concerns with Plaintiffs' attempt to incorporate almost the entirety (or in the case of CTM, the entirety) of its Master Response as an answer to these interrogatories, the undersigned also finds that Plaintiffs' revision of the Master Response to be consistently specific as to each Citco Defendant's actions will alleviate much of that concern. Further, and setting aside the as-ordered revisions to the Master Response, the undersigned finds Plaintiffs' responses to these interrogatories with respect to CFS Cayman, Citco Banking, CTM, and Citco Group to be generally responsive because Plaintiffs have generally set forth the basis for their contention that each of these Defendants failed to take "industry standard steps." Accordingly, the Citco Defendants' Motion to Compel supplemental responses to CFS Cayman/Citco Banking/CTM Interrogatory No. 10; Citco Group Interrogatory No. 11[112] is DENIED.

### 4. CFS Cayman/Citco Banking/CTM Interrogatory No. 13; Citco Group No. 14

These interrogatories ask Plaintiffs to

State whether You contend that [CFS Cayman/Citco Banking/Citco Group/CTM] provided "substantial assistance" and/or was a "substantial factor" in the sale of the Series N shares to FRS, as

---

[111] R. Doc. 662-5, p. 15.

[112] R. Doc. 662-2, p. 15; 662-3, p. 13; 662-4, p. 16; 662-5, p. 15.

alleged in paragraph 114 of the Petition and, if so, state the basis for
such contention.[113]

In response to these interrogatory regarding CFS Cayman and Citco Banking Plaintiffs reference
paragraphs 21-101 of the Master Response and Plaintiffs' expert reports.[114]  With regard to Citco
Group, Plaintiffs assert that "Citco Group exercised its substantial assistance through its wholly
owned subsidiary CFS Cayman" and that members of the Citco Group executive committee were
knowledgeable of the facts set out in the Master Response.[115]  Finally, with respect to CTM,
Plaintiffs contend (as they did in response to CTM interrogatory number 10, above), the actions of
CFS Cayman would not have been possible without the computer systems and programs provided
by CTM.[116]

Generally speaking, paragraphs 21 through 101 of the Master Response (which purport to
set out the "Period One" facts) outline Plaintiffs' contentions regarding "Citco's" involvement in
events leading up to issuance of the Offering Memorandum, including "Citco's" knowledge of the
alleged material omissions regarding the Offering Memorandum.  With respect to some of these
paragraphs, Plaintiffs have specifically identified the Citco Defendant to which the contention
relates.  For example, in paragraph 81 of the Master Response, Plaintiffs state that "CFS Cayman
was the administrator of Leveraged and was required to approve the disclosures in the Offering
Memorandum."[117]  However, for other portions of the Master Response, Plaintiffs generically refer

---

[113] R. Doc. 662-2, p. 17; R. Doc. 662-3, p. 15; 662-4, p. 18; 662-5, p. 17.  Plaintiffs allege in paragraph 114 of the
Petition that "[t]he Citco Defendants provided 'substantial assistance' and were a 'substantial factor' in the sale of the
Series N shares to Plaintiffs."  R. Doc. 1-3, ¶ 114.

[114] R. Doc. 662-2, p. 17; R. Doc. 662-3, p. 15;

[115] R. Doc. 662-4, p. 18.

[116] R. Doc. 662-5, p. 17.

[117] R. Doc. 689, ¶ 81.

to "Citco."[118]  As discussed above, Plaintiffs must revise their Master Response to specifically identify the Citco Defendant to which they refer.  Following such revision, the undersigned finds that Plaintiffs' reliance on the Master Response would be adequately responsive.  Accordingly, the Citco Defendants' Motion to Compel supplemental responses to CFS Cayman/Citco Banking/CTM interrogatory number 13 and Citco Group interrogatory number 14 is DENIED AS MOOT.[119]

### 5. CFS Cayman Interrogatory 20 to FRS

Per interrogatory number 20 propounded by CFS Cayman to FRS, Plaintiffs are asked to

> Identify every NAV Statement that You received that You contend was erroneous, and for every NAV Statement so identified, (a) state the basis for Your contention and (b) identify the Citco Defendant that sent the NAV Statement.[120]

In response, Plaintiff states "that each NAV statement that it received from CFS Cayman stated a false value.  The NAV statements that Plaintiff received demonstrated a consistent 1% increase monthly.  However, the values of the assets making up the NAV were grossly overstated and failed to take into account the fact that such assets were illiquid."[121]

The undersigned finds Plaintiff's response to this interrogatory adequate.  Plaintiff has asserted that *every* NAV statement received from *CFS Cayman* was erroneous based on a failure to take into account the liquidity of the assets.  This response sufficiently outlines the general basis

---

[118] *See*, *e.g.*, R. Doc. 689, ¶ 78 ("Prior to the closing, Citco had full knowledge of Leveraged's financial condition as Citco prepared monthly financial statements for Leveraged and performed due diligence on Leveraged prior to the Offering.").

[119] R. Doc. 662-2, p. 17; R. Doc. 662-3, p. 15; 662-4, p. 18; 662-5, p. 17.

[120] R. Doc. 662-6, p. 4.

[121] R. Doc. 662-6, p. 4.

for Plaintiff's contention.[122]     Accordingly, the Citco Defendants' Motion to Compel a supplemental response to CFS Cayman interrogatory number 20 to FRS[123] is DENIED.

### 6.   CFS Cayman Interrogatory 22 to FRS

CFS Cayman interrogatory number 22 to FRS asks Plaintiff to

> State whether You contend that CTM injured You and, if so, state the basis for Your contention, including (a) the basis for the duty that You contend CTM owed to You, (b) the precise circumstances by which CTM breached that duty, and (c) the harm that You contend was caused to you as a result of CTM's breach.[124]

In response to this interrogatory, Plaintiff identifies numerous responses to other interrogatories and then goes on to state that the "acts and omissions of Citco" set forth in paragraphs 21 through 156 of the Master Response "could not have been performed without the use of the computer systems and programs owned and provided to Citco by CTM."[125]

Plaintiff's response to CFS Cayman interrogatory number 22 incorporates a great deal of extraneous material (including exhibits 581 and 1151 and Plaintiffs' expert reports).  However, Plaintiff has also set forth its contention that CTM's provision of computer systems and programs allowed "Citco Group, Citco Bank and CFS Cayman to initiate and perpetuate the acts and omissions against the Louisiana Funds."[126]  This is sufficient to meet Plaintiffs' obligation to generally explain the basis of their contention in response to this interrogatory.  Accordingly, the Citco Defendants' Motion to Compel a supplemental response to CFS Cayman interrogatory number 22[127] is DENIED.

---

[122] *See*, *In & Out Welders*, 2018 WL 1370600, at * 7.

[123] R. Doc. 662-6, p. 4.

[124] R. Doc. 662-7, p. 4.

[125] R. Doc. 662-7, p. 4.

[126] R. Doc. 662-7, p. 4.

[127] R. Doc. 662-7, p. 4.

## IV. Conclusion

For the reasons set forth herein, the Motion to Compel[128] is **DENIED IN PART AND GRANTED IN PART**.

Plaintiffs are **ORDERED** to revise their Master Response[129] to identify specifically the particular Defendant to which they refer, or to state that they cannot identify the specific Citco Defendant which acted.

The Citco Defendants' Motion to Compel a supplemental response to (1) CFS Cayman/Citco Banking/CTM Interrogatory No. 14; Citco Group Interrogatory No. 15;[130] (2) Citco Banking Interrogatory No. 25 to FRS;[131] (3) CTM Interrogatory No. 22 to FRS;[132] and (4) CFS Cayman/Citco Banking/CTM interrogatory number 13 and Citco Group interrogatory number 14[133] is **DENIED AS MOOT**.

The Citco Defendants' Motion to Compel a supplemental response to Citco Banking Interrogatory No. 24 to FRS[134] is **GRANTED IN PART**. Plaintiffs are **ORDERED** to provide a supplemental verified response to subparts (c) and (d) of Citco Banking Interrogatory No. 24 to FRS.

The Citco Defendants' Motion to Compel a supplemental response to interrogatory number 1[135] is **GRANTED**. Plaintiffs are **ORDERED** to supplement their sworn interrogatory responses

---

[128] R. Doc. 662.

[129] R. Doc. 689.

[130] R. Doc. 662-2, p. 18; R. Doc. 662-3, p. 16; R. Doc. 662-4, p. 19; R. Doc. 662-5, p. 18.

[131] R. Doc. 662-8, p. 6

[132] R. Doc. 662-9, p. 10.

[133] R. Doc. 662-2, p. 17; R. Doc. 662-3, p. 15; 662-4, p. 18; 662-5, p. 17.

[134] R. Doc. 662-8, p. 4.

[135] R. Doc. 662-2, p. 4; R. Doc. 662-3, p. 4; R. Doc. 662-4, p. 4; R. Doc. 662-5, p. 4.

to interrogatory number 1 propounded by each Citco Defendant to state whether any representative of any Citco Defendant delivered the Offering Memorandum to Plaintiff(s) in Louisiana.

The Citco Defendants' Motion to Compel a supplemental response to interrogatory 4[136] is **GRANTED IN PART**. Plaintiffs are **ORDERED** to provide a supplemental response to interrogatory number 4 by revising the Master Response and by providing a supplemental response to subparts (v) and (vi) of the interrogatory.

The Citco Defendants' Motion to Compel supplemental responses to CFS Cayman interrogatory number 10, Citco Banking interrogatory number 10, CTM interrogatory number 10, and Citco Group interrogatory number 11[137] is **DENIED**.

The Citco Defendants' Motion to Compel a supplemental response to CFS Cayman interrogatory number 20 to FRS[138] is **DENIED**.

The Citco Defendants' Motion to Compel a supplemental response to CFS Cayman interrogatory number 22[139] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall provide to the Citco Defendants the revised Master Response, as well as Plaintiffs' supplemental responses to the interrogatories as ordered herein, within twenty-one (21) days of this Ruling and Order.

Signed in Baton Rouge, Louisiana, on August 17, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[136] R. Doc. 662-2, p. 7; R. Doc. 662-3, p. 7; R. Doc. 662-4, p. 6; R. Doc. 662-5, p. 8.

[137] R. Doc. 662-2, p. 15; 662-3, p. 13; 662-4, p. 16; 662-5, p. 15.

[138] R. Doc. 662-6, p. 4.

[139] R. Doc. 662-7, p. 4.