# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

VERSUS

CITCO GROUP LIMITED, ET AL.

CIVIL ACTION

13-373-SDD-EWD

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendants, Consulting Services Group, LLC ("CSG") and Joe Meals ("Meals") (collectively, the "CSG Defendants"). Plaintiffs have filed an *Opposition*,[2] to which the CSG Defendants filed a *Reply*.[3] For the following reasons, the Court finds that the *Motion* by the CSG Defendants should be GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are the administrators of public pension plans that provide benefits for firefighters and other municipal employees in Louisiana. The instant suit arises out of Plaintiffs' collective $100 million dollar investment in FIA Leveraged Fund ("Leveraged") in 2008.[4] Plaintiffs allege that when they tried to redeem their investment in Leveraged, they discovered that the fund "was not liquid and that the valuations contained in the account statements issued to it were not accurate."[5] To date, they claim, "no cash

---

[1] Rec. Doc. No. 723.
[2] Rec. Doc. No. 792.
[3] Rec. Doc. No. 820.
[4] Rec. Doc. No. 1-3, p. 13 at ¶ 34.
[5] Rec. Doc. No. 1-3, p. 17 at ¶ 42.
48974

payment has been paid,"[6] and Leveraged has "been liquidated in the Cayman Islands pursuant to the order of Cayman Islands courts."[7]

Prior to and during their investment in Leveraged, Plaintiffs retained CSG as their investment advisor.[8] Each of the three Louisiana Funds who are Plaintiffs herein executed a separate contract with CSG.[9] Defendant Joe Meals "was a CSG representative and served as one of the firm's liaisons with the Plaintiffs"[10] at the time of their investment in Leveraged. In their *Petition for Damages,*[11] Plaintiffs asserted a claim entitled "Breach of Contract" against the CSG Defendants,[12] claiming that if CSG "had performed [its] due diligence with the due care and in the manner required by ordinary prudent professionals serving as investment advisors, [the CSG Defendants] would have discovered all or some of the material misrepresentations and omissions alleged herein and Plaintiffs would not have"[13] invested in Leveraged.

Now, in their *Motion for Summary Judgment*, the CSG Defendants argue that the claim against them is prescribed because it is actually "a professional negligence claim – not a "Breach of Contract" claim as [Plaintiffs] labeled it in their Petition for Damages."[14] Thus, they say, it is subject to the one-year prescriptive period applicable to negligence claims under Louisiana law.[15] Because "all the facts that support Plaintiffs' claim against

---

[6] *Id.* at ¶ 43.
[7] *Id.* at ¶ 44.
[8] Rec. Doc. No. 1-3, p. 7 at ¶ 15; Rec. Doc. No. 792, pp. 4-5.
[9] Rec. Doc. Nos. 723-8, 723-9, 723-10.
[10] Rec. Doc. No. 723-1, p. 4.
[11] Rec. Doc. No. 1-3.
[12] Plaintiffs' original Petition included three other claims against the CSG Defendants, but those claims were withdrawn in Plaintiffs' First Amendment to Petition for Damages (Rec. Doc. No. 1-3, p. 69).
[13] Rec. Doc. No. 1-3, p. 46.
[14] Rec. Doc. No. 723-1, p. 1.
[15] La. C. C. art. 3492.
48974

the CSG Defendants were known (or should have been known) by Plaintiffs more than one year before the filing of the lawsuit,"[16]  Defendants argue that the claim against them "was not timely filed and is prescribed."[17] Plaintiffs dispute the CSG Defendants' characterization of their claim as sounding in negligence, arguing that "it is plain to see that the claims . . . are based on the breach of the promises made by [the CSG Defendants] in the various contracts entered into with [Plaintiffs]."[18] Plaintiffs argue that, because their claim "is a breach of contract claim based upon a written agreement with specific terms,"[19]  the ten-year prescriptive period for breach of contract should apply.

As noted by the CSG Defendants, under Louisiana law, "the prescriptive period is not determined by the label of the cause of action but by 'the nature of the transaction and the underlying basis of the claim.'"[20] Applying the relevant law and jurisprudence to the facts of this claim, the Court concludes that it is a professional negligence claim, rather than a breach of any particular contractual obligation imposed by the Agreements between the parties. Further, because Plaintiffs' own pleadings demonstrate that there is no genuine dispute of material fact regarding when they had knowledge of the facts underlying the professional negligence claim, the Court finds that the claim against the CSG Defendants is prescribed and the instant *Motion for Summary Judgment* should be granted.

---

[16] Rec. Doc. No. 723-1, p. 3.
[17] Rec. Doc. No. 723-1, p. 3.
[18] Rec. Doc. No. 792, p. 11.
[19] Rec. Doc. No. 792, p. 10.
[20] Rec. Doc. No. 723-1, p. 2 (citing *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 479 (5th Cir. 2002).
48974

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] In assessing whether a dispute to any material fact exists, the Court considers all of the evidence in the record but must refrain from making credibility determinations or weighing the evidence.[22] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[23] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[24] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[25]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[26] All reasonable factual

---

[21] Fed. R. Civ. P. 56(a).

[22] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[23] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[24] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[25] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[26] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

48974

inferences are drawn in favor of the nonmoving party.[27]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[28]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint.""[29]

### B. Characterization of the claim as "breach of contract" or professional negligence

At issue is whether the claim styled as a "Breach of Contract"[30] in Plaintiffs' *Petition* truly sounds in contract or, as the CSG Defendants argue, is in fact a professional negligence claim to which a one-year prescriptive period applies. Louisiana federal courts have repeatedly held that the applicable prescriptive period is not governed by the word choice on the face of the complaint. Instead, as the United States Court of Appeals for the Fifth Circuit held in *Copeland v. Wasserstein, Perella & Co.,*[31] it is determined "by 'the nature of the transaction and the underlying basis of the claim.'"[32] Furthermore, the mere existence of a contract is not sufficient to guarantee that a claim sounds in contract. In *Babin v. Quality Energy Servs., Inc.,*[33] the Fifth Circuit recognized that, "[e]ven where there is a contract between the parties . . .Louisiana courts will still scrutinize the claims

---

[27] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[28] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[29] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[30] Rec. Doc. No. 1-3, p. 45.
[31] 278 F.3d 472 (5th Cir. 2002).
[32] *Id.* at 479 (citing *Davis v. Parker*, 58 F.3d 183, 189 (5th Cir. 1995).
[33] 877 F.3d 621 (5th Cir. 2017).
48974

to determine if they are contractual or delictual."[34] Thus, it is the obligation of this Court to scrutinize Plaintiffs' claims and, as the *Copeland* court described, "correctly characterize[] the gravamen"[35] of this case as either breach of contract or negligence.

The *Babin* court also recognized that "Louisiana courts will treat an action as delictual unless a plaintiff alleges the violation of a specific contractual provision."[36] Moreover, it is the "plaintiff [who] has the burden to prove that the defendant breached some contractual duty above and beyond a general duty"[37] of the type that sounds in negligence. If the Plaintiff Louisiana Funds have not carried their burden by alleging the violation of a specific contractual provision, their claim will be treated as sounding in tort.

Count Six of Plaintiffs' *Petition for Damages* is entitled "Investment Advisor Defendants Breach of Contract."[38] Despite that breach of contract label, the Court finds that Plaintiffs have failed to, as required by *Babin*, alleged "the violation of a specific contractual provision."[39] It is not disputed that a contractual relationship existed between Plaintiffs and CSG; indeed, the CSG Defendants agree that "each Plaintiff hired CSG as its investment consultant."[40] However, CSG signed a separate Agreement with each of the three Plaintiff funds – a 2006 Agreement with FRS,[41] a 2007 Agreement with MERS,[42] and a 2010 Agreement with NOFF.[43] In their *Petition*, Plaintiffs do not allege the violation

---

[34] 877 F.3d 621, 625 (5th Cir. 2017) (citing *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 886 (5th Cir. 2002).
[35] *Copeland* at 478.
[36] *Babin* at 625.
[37] *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 887 (5th Cir. 2002).
[38] Rec. Doc. No. 1-3, p. 45.
[39] *Babin* at 625.
[40] Rec. Doc. No. 723-1, p. 4.
[41] Rec. Doc. No. 723-9.
[42] Rec. Doc. No. 723-10.
[43] Rec. Doc. No. 723-8.
48974

of any specific provisions of any of these Agreements. In fact, they do not cite any contractual provisions directly, offering instead that, "as a part of their scope of work, the Investment Advisor Defendants were to perform the following tasks,"[44] followed by a general nine-point list of Defendants' obligations, possibly distilled from the three separate Agreements. Plaintiffs' list does not account for the fact that each of the Louisiana Funds executed separate Agreements with CSG, years apart and with non-identical terms. Even if the general list of "tasks" offered by Plaintiffs in lieu of citing specific contractual provisions was sufficient, Plaintiffs fail to specify which "tasks" were allegedly not performed or which provisions were allegedly violated; they merely append the unspecified blanket allegation that "[a]s a result of this breach of the agreement, Plaintiffs have been damaged."[45]

Where Plaintiffs accuse the CSG Defendants of not "perform[ing] their due diligence"[46] to the standard of care, they do not claim that the obligation to perform due diligence arises out of the Agreements between the parties. Instead, they claim that the CSG Defendants were bound to perform due diligence in keeping with "the due care and . . .the manner required by ordinary prudent professionals serving as investment advisors."[47] A duty that arises out of a standard of care is a quintessential feature of negligence analysis under Louisiana law. Insofar as the "breach" asserted by Plaintiffs is a breach of professional duty and not a breach of a specific contractual provision, the "underlying basis of the claim"[48] clearly sounds in tort, not contract. The Fifth Circuit held

---

[44] Rec. Doc. No. 1-3, p. 45 at ¶ 216.
[45] Rec. Doc. No. 1-3, p. 46 at ¶ 219.
[46] Rec. Doc. No. 1-3, p. 46 at ¶ 218.
[47] *Id.*
[48] *Copeland* at 479.

48974

as much in *Babin*, where the plaintiff "[did] not allege that [the defendant] violated any specific contractual provision," but instead alleged that the defendant "violated a statutory duty."[49] The court concluded that the *Babin* plaintiff's claim sounded in tort because "the 'breach' arises from a general statutory duty, rather than a specific provision in the parties' contract."[50] Likewise, the Louisiana Funds here appeal to the standard of care generally owed by "ordinary prudent professionals," not to any duty specifically created by the contract.

The *Babin* standard requires the Court to treat Plaintiffs' claim as delictual in the absence of allegations of breach of specific contractual provisions. The Court concludes that the delictual default cannot be not overcome by a paraphrased list of Defendants' obligations that does not cite any of the actual provisions of the Agreements between the parties,[51] nor by the unelaborated assertion that "[a]s a result of this breach of the agreement, Plaintiffs have been damaged."[52] Plaintiffs' allegations are conclusory, and they have failed to come forward with competent summary judgment evidence indicative of a breach of contract.

Additionally, the Court finds that in their *Petition* and *Opposition*, Plaintiffs repeatedly allege *mis*feasance, rather than *non*feasance, of the Agreements between the parties. The Fifth Circuit in *Copeland* recognized that, "although *non*feasance in the performance of an obligation creates a cause of action that prescribes in ten years,

---

[49] 877 F.3d 621, 626 (5th Cir. 2017).
[50] *Id.*
[51] Plaintiffs do cite specific contractual provisions in their *Opposition* to this *Motion*, but, as discussed below, they fail to allege breach of those provisions (nonfeasance), instead alleging misfeasance, which sounds in tort.
[52] Rec. Doc. No. 1-3, p. 46 at ¶ 219.

48974

*mis*feasance in the performance of a contract for professional services . . .gives rise to a claim in tort."[53] Applying that principle in *Ames v. Ohle*,[54] the Louisiana Fourth Circuit Court of Appeal held that a client's claim against her investment advisor for its alleged "false statements and omissions"[55] was "delictual in nature and subject to the prescription of one year" because the client did "not allege nonperformance of any specific promises made by defendants which could be considered nonfeasance."[56] Because she asserted "that she relied on false statements and omissions, not specific promises that were never performed,"[57] the court concluded that her claim sounded in tort.

Plaintiffs do not allege that the CSG Defendants failed to perform the contract at all; instead, they allege that due diligence was not performed "with the due care and in the manner required by ordinary prudent professionals."[58] That Plaintiffs are alleging *mis*feasance is clearly illustrated by their reliance on the testimony of James Hille, the due diligence expert retained by the Citco Defendants. Plaintiffs claim that "Hille's various conclusions show that [the CSG Defendants] breached the promises made in the contracts with the Louisiana Funds."[59] However, Hille's testimony focuses on how "Planitiffs' pre-investment due diligence. . .failed to meet industry standard practice."[60] Hille opines that the Plaintiffs "failed to evaluate"[61] their investment "in accordance with industry standard practice, as evidenced by" the failure to conduct a site visit, to request

---

[53] *Copeland* at 479 (emphasis in original).
[54] 2011-1540 (La.App. 4 Cir. 5/3/12), 97 So.3d 386.
[55] *Id.* at 393.
[56] *Id.*
[57] *Id.*
[58] Rec. Doc. No. 1-3, p. 46.
[59] Rec. Doc. No. 792, p. 12.
[60] Rec. Doc. No. 791-4, p. 138.
[61] *Id.* at p. 146.

48974

a due diligence questionnaire, and to conduct background or reference checks.[62] Again, Hille's testimony focuses on how the performance of the Agreements fell short of "industry standard practice"[63] – he does not claim that the CSG Defendants *did not perform* any particular contractual obligation. Again, Louisiana courts have held that, while a claim for non-performance of a contract sounds in contract law, misfeasance gives rise to a tort claim.

Further, the Court notes that the "industry standard" or custom evidence discussed by Hille is a hallmark of negligence analysis, as it focuses on the standard of care and the reasonableness of Defendants' conduct.[64] Of course, it is not dispositive that Plaintiffs rely on negligence-related *terminology* in discussing their claim – as *Copeland* instructs, the language used to describe a claim is not the last word as to its nature. The issue is that Plaintiffs purport to be claiming breach of contract while relying on arguments that go to the substantive elements of a negligence claim. To the extent that Plaintiffs attempt to prove "breach of contract" by pleading the elements of negligence, the Court concludes that the claim is, in its essence, a claim for negligence. Plaintiffs' conclusory statement that "the claim is a breach of contract claim based upon a written agreement with specific terms"[65] rings hollow in the absence of a more specific showing that their harm resulted from breach of specific contractual provisions.

---

[62] *Id.*
[63] Rec. Doc. No. 791-4, p. 138.
[64] See, e.g., *Canal Barge v. Torco Oil Co.*, 220 F.3d 370, 377 (5th Cir. 2000) ("Although custom itself does not create a duty, "custom may help define the standard of care a party must exercise after it has undertaken a duty....").
[65] Rec. Doc. No. 792, p. 10.
48974

Louisiana courts have not hesitated to find that a claim sounded in tort even where there was a contract between the parties. In *AGEM Management Services, LLC v. First Tennessee Bank National Association*,[66] the United States District Court for the Eastern District of Louisiana considered whether a claim brought between parties to a financial contract was properly characterized as breach of contract or tort. The plaintiff in *AGEM* argued that its claim sounded in contract because it alleged that, during the course of the contract, it was damaged by certain misrepresentations and failures to disclose by the defendant. The Eastern District held that, "while guised as a breach of contract action, [the suit] is merely a repeat of other allegations . . . namely misrepresentation, breach of fiduciary duty, and fraudulent suppression, [which] are actually based in tort and not in contract."[67] The court reasoned that a breach of contract claim did not exist because the duties allegedly breached by the defendant were delictual in nature, "not duties that [the defendant] contractually assumed."[68] The same can be said here. To the extent that the CSG Defendants had a duty to "perform[] their due diligence with the due care and in the manner required by ordinary prudent professionals,"[69] that duty derives from the general standard of professional negligence. The Louisiana Supreme Court held as much in *Roger v. Dufrene*,[70] where it reviewed a host of state law precedent regarding professional services contracts and found that

> The nature of certain professions is such that the fact of employment does not imply a promise of success, but an agreement to employ ordinary skill and care in the exercise of the particular profession. The duty imposed upon [professionals] upon whose advice the client or patient depends is that of

---

[66] 942 F.Supp.2d 611 (E.D. La. 2013).
[67] *Id.* at 622.
[68] *Id.*
[69] Rec. Doc. No. 1-3, p. 46.
[70] 613 So.2d 947 (La. 1993).
48974

"reasonable diligence," a breach of which duty results in an action in negligence.[71]

By contrast, cases where courts have found that a professional services contract *did* give rise to a breach of contract claim are distinguishable from the instant case. For example, this Court in *Murray v. Cannon Cochran Management Services, Inc.,*[72] held that a breach of contract claim necessarily included allegations that were directly linked to contractual provisions. This Court recognized the plaintiff's claim as being for "failure to timely report a claim to an excess carrier."[73] In the contract between the plaintiff and the insurer and administrator defendants, the defendants agreed to secure coverage for the plaintiff and "report to excess insurance carriers"[74] regarding that coverage. Thus, the defendants' failure to report in accordance with the contract was "an instance of nonfeasance"[75] that was cognizable in contract law because the plaintiff "allege[d] the breach of specific provisions"[76] of the contract. The plaintiff's claim did "not arise from the breach of general duties but from specific contractual promises"[77] that were not performed.

Similarly, the Eastern District in *Brees v. Houser*[78] held that a claim arising out of an investment contract constituted breach of contract because the defendant "failed to do"[79] what he agreed to do in the contract. In *Brees*, the plaintiffs claimed that they gave

---

[71] *Id.* at 949 (internal citation omitted).
[72] No. CIV.A. 14-310-JWD, 2014 WL 5794997 (M.D. La. Nov. 6, 2014).
[73] *Id.* at *4.
[74] *Id.* at *12.
[75] *Id.* at *11.
[76] *Id* at *12.
[77] *Id.* at *12.
[78] No. CIV.A. 13-4760, 2014 WL 3587333 (E.D. La. July 21, 2014).
[79] *Id* at *4.
48974

personal checks to the defendant "to purchase Louisiana Film Tax Credits . . .for which [they] expected a $200,000 return."[80] The defendant "led [plaintiffs] to believe that the money would be kept in an escrow account until the tax credits had been certified,"[81] but instead, it "was dissipated before the tax credits could be purchased."[82] When the plaintiffs brought suit, the defendants argued the claim was delictual and prescribed. The court disagreed, finding that "the plaintiffs allege[d] that [defendant] induced them to rely to their detriment by promising to protect their money and deliver state tax credits, which [defendant] failed to do."[83] That failure to perform according to the agreement was nonfeasance and thus governed by the ten-year prescriptive period.[84] The contract in *Brees* is distinguishable from the Agreements between the Louisiana Funds and the CSG Defendants because it imposed a specific, result-oriented obligation – the delivery of tax credits – that was not performed, resulting in nonfeasance. Plaintiffs in the instant case have not identified any such failure to perform on the part of Defendants; rather, they assert that the performance was not rendered in the manner of an "ordinary prudent professional." This is a tort claim, both on its face and with respect to what the Fifth Circuit in *Copeland* said is the ultimate consideration, namely, "the underlying basis of the claim."[85]

Plaintiffs claim *Copeland* is distinguishable and inapplicable because they "are alleging . . .a breach of contract,"[86] while the plaintiff in *Copeland* was not. This is a

---

[80] *Id.* at *1
[81] *Id.*
[82] *Id.*
[83] *Id.* at *4.
[84] See *City of Alexandria v. Cleco Corp., et al.,*, No. 1:05-cv-01121, 2010 WL 290506 (W.D. La. Jan. 22, 2010) for similar analysis of nonfeasance of a contract for professional services.
[85] *Copeland* at 479.
[86] Rec. Doc. No. 792, p. 11.

48974

perplexing argument to make in the context of *Copeland*, which rejects the tautological argument that a claim sounds in contract simply because the plaintiff calls it "breach of contract." The fact that the words "breach of contract" appear here and not in the *Copeland* petition is irrelevant. Moreover, setting aside the absence of an explicit "breach of contract" claim in *Copeland*, the facts are otherwise highly analogous to the instant case. In *Copeland*, the defendant was a financial advisor being sued for, among other things, making certain assurances regarding a prospective investment that plaintiffs claimed they relied upon to their detriment. When considering whether this claim sounded in tort, the *Copeland* court cited *Roger v. Dufrene*[87] for the proposition that a breach of the duty of due diligence in the context of a professional services contract gives rise to a cause of action in negligence, and concluded:

> We discern no valid reason to treat a financial adviser such as [the defendant] differently. [The defendant] can reasonably be thought to have promised only to advise [plaintiff] diligently, in accordance with the standard of care among financial advisers. [The plaintiff] claims that [the defendant's] advice fell short of that standard; but this states a quintessentially delictual claim that prescribed years ago . . .[88]

Overall, for the reasons stated above, the Court concludes that Plaintiffs' claim against the CSG Defendants, while styled as a claim for "breach of contract," actually sounds in tort.[89]

---

[87] 613 So. 2d 947 (La. 1993).

[88] 278 F.3d 472, 479–80 (5th Cir. 2002).

[89] The Court finds Plaintiffs' "breach of promise" and "breach of fiduciary" arguments unpersuasive. Successfully pleading breach of promise requires the identification of a specific "promise" or obligation that was breached by the defendant. And, where courts have recognized a "breach of promise" claim, it has typically pertained to an oral or otherwise less-formal contract, which is not the case here. See, e.g., *Stokes v. Georgia-Pac. Corp.,* 894 F.2d 764, 766 (5th Cir. 1990) *(*finding breach of promise claims existed where the plaintiff alleged that he relied on the defendant's oral promise to give him a long-term contract). See also *Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of Louisiana*, No. CV 11-806, 2016 WL 7468165, at *17 (E.D. La. May 6, 2016) (finding that "breach of promise" claim existed where "[p]laintiffs have clearly alleged that an oral contract was created when Plaintiffs contacted Defendants to 48974

## C. Whether Plaintiffs' Negligence Claim is Prescribed

Because the Court determined above that Plaintiffs' claim against the CSG Defendants sounds in tort, the one-year prescriptive period for delictual actions set out in Louisiana Civil Code Article 3492 applies to their claim.[90] The instant suit was filed on March 1, 2013.[91] Per Defendants, the claim is prescribed because:

> Plaintiffs' allegations in the Petition, other judicial filings, and documents and deposition testimony demonstrate that there is no question that Plaintiffs clearly knew (or should have known) of the facts that they allege support their professional negligence claim more than a year before they filed their Petition on March 1, 2013.[92]

Plaintiffs disagree, calling for the application of the doctrine of *contra non valentem*, which prevents the running of liberative prescription when the cause of action is not known or reasonably knowable by the plaintiff.[93] There are four instances recognized by the Louisiana Supreme Court where *contra non valentem* is applied to prevent the running of prescription:

> (1) where there is some legal cause which prevented the courts or their officials from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though this ignorance is not induced by the defendant.[94]

---

obtain preauthorization to perform the procedures"). As for the breach of fiduciary duty argument, Plaintiffs did not assert such a claim in their *Petition*. It would contravene civil procedure to read in such a claim at this stage.

[90] "Delictual actions are subject to a liberative prescription of one year."

[91] Rec. Doc. No. 1-3.

[92] Rec. Doc. No. 723-1, p. 2.

[93] *Cole v. Celotex Corp.,* 620 So.2d 1154, 1156-57. (La.1993).

[94] *Dominion Exploration & Prod., Inc. v. Waters*, 07–0386, (La.App. 4 Cir. 11/14/07), 972 So.2d 350, 358.

48974

Plaintiffs assert that the fourth category of *contra non valentem* applies to this case because they were not aware of the facts giving rise to their claim against the CSG Defendants at the time of filing, and because they "did not discover the facts [regarding CSG's] lack of due diligence until after the lawsuit commenced."[95] The Court finds it improbable that Plaintiffs were unaware of any lack of due diligence on the part of the CSG Defendants until after their lawsuit commenced, considering that their *Petition*, which initiated this lawsuit, states that if CSG "had performed their **due diligence** with the due care and in the manner required by ordinary prudent professionals serving as investment advisors,"[96] Plaintiffs would not have invested in Leveraged. Obviously, Plaintiffs were aware of the possibility of a claim against the CSG Defendants before their Petition asserting a claim against the CSG Defendants was filed. If Plaintiffs were aware of their claim against the CSG Defendants *more than a year* before the *Petition*, their claim is prescribed.

Louisiana courts have held that the prescriptive period for a tort claim "commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[97] Constructive knowledge, as defined by the Louisiana Supreme Court, is "whatever notice is enough to excite attention and put the injured party on guard or call for inquiry."[98] In light of that definition, Plaintiffs' statement that, before this lawsuit, they "were never informed of any failures of [the CSG

---

[95] Rec. Doc. No. 792, p. 14.
[96] Rec. Doc. No. 1-3, p. 46.
[97] *Ferguson v. Sugar*, 05-921 (La.App. 4 Cir. 6/25/08), 988 So.2d 816, 824.
[98] *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 07/06/10), 45 So.3d 991, 997.
48974

Defendants] to provide due diligence"[99] misses the point.[100] Prescription does not begin

to run only when a party is provided with direct and explicit information regarding a tort.

Indeed, the Louisiana Supreme Court instructs that a "court's ultimate consideration is

the reasonableness of the injured party's action or inaction in light of the surrounding

circumstances."[101]

Defendants claim that several portions of the record establish the timing of

Plaintiffs' knowledge of their cause of action against the CSG Defendants. First, Plaintiffs

allege that, on January 20, 2011, they received revised financial statements for Arbitrage

and Leveraged and thus became aware of "an error in the financial statement"[102] issued

previously. Because this error "is one of the things Plaintiffs allege the CSG Defendants

failed to discover,"[103] Defendants argue that January 20, 2011 triggered the running of

prescription on this claim. The Court is not persuaded by this argument. Although the

knowledge of errors in prior financial statements may have sufficiently provided Plaintiffs

notice of a cause of action against the accounting firm or the funds themselves, there is

no evidence before the Court to establish that Plaintiffs' notice of those errors by a third

---

[99] Rec. Doc. No. 792, p. 16.

[100] Likewise, Plaintiffs' reliance on *Sudo Properties, Inc. v. Terrebonne Par. Consol. Gov't*, 503 F.3d 371, 378 (5th Cir. 2007), is misplaced. Although the Fifth Circuit did conclude that the plaintiff's knowledge of "dramatic discrepancies between the projected and actual expenses" connected to an investment was "not sufficient to create notice inquiry as a matter of law," the claim at issue in *Sudo* was a fraud claim brought under the Securities Act. Thus, although the discrepancies in expenses were not enough to give rise to notice of a potential cause of action for fraud, the *Sudo* court does not address whether it would suffice where, as here, the claim is professional negligence. Moreover, the Plaintiffs do not allege a discrepancy between actual and projected earnings; they allege a total inability to redeem their investment. The latter is more likely to constitute notice.

[101] *Hogg v. Chevron USA, Inc.,* 09-2632 (La. 07/06/10), 45 So.3d 991, 997-98.

[102] Rec. Doc. No. 723-1, p. 21 (citing Rec. Doc. No. 1-3, p. 23).

[103] Rec. Doc. No. 723-1, p. 21.

48974

party necessarily demonstrates that the Plaintiffs were aware of any lack of due diligence on the part of *CSG* as of those dates.

Second, Defendants cite Plaintiffs' statement that March 3, 2011 is the "date prescription commences."[104] Again, the Court is not persuaded that this statement constitutes knowledge of Plaintiffs' cause of action against the CSG Defendants, however; as Defendants concede, the statement was made in reference to a different claim.[105] Third, Defendants cite the fact that, as of August 29, 2011, Plaintiffs had retained "an expert from the Ernst & Young Fraud Investigative Unit to prepare his opinion or impressions in anticipation of litigation with the hedge fund(s)"[106] as evidence of Plaintiffs' knowledge. Although Plaintiffs were clearly preparing for litigation at that point, and it is conceivable that they anticipated litigation with CSG, their statement describes "litigation with the hedge fund(s),"[107] which does not mandate the conclusion that they were aware of a cause of action specifically against CSG.

Nevertheless, the Court finds that Plaintiffs' claim is prescribed. Even if none of the above "triggers" offered by Defendants conclusively demonstrate constructive knowledge by Plaintiffs of their potential cause of action against the CSG Defendants, the Court finds that Plaintiffs' Winding Up-Petition,[108] filed on January 31, 2012, demonstrated sufficient "knowledge of facts indicating to a reasonable person that [they were] the victim of a

---

[104] Rec. Doc. No. 81, p. 10-11.
[105] Rec. Doc. No. 723-1, p. 22, n. 64.
[106] Rec. Doc. No. 723-4, p. 2.
[107] *Id.*
[108] Rec. Doc. No. 723-17.
48974

tort"[109] as to trigger the running of prescription on Plaintiffs' claim against the CSG Defendants.

The Winding-Up Petition is effectively a snapshot of what Plaintiffs knew about their failed investment as of January 31, 2012, the day the Petition was filed. It is difficult to see how the investment advisors who recommended the Leveraged investment are not implicated by Plaintiffs' knowledge that, as the Winding-Up Petition alleges, Leveraged was refusing to redeem Plaintiffs' investment despite multiple requests,[110] that Leveraged "ha[d] failed to provide or file audited accounts since 2008"[111] or that the manager of Leveraged "[was] under investigation by the US Securities Exchange Commission."[112] Plaintiffs themselves describe the inevitable connection between these facts and the CSG Defendants in their Petition, where they claim that, "if [CSG] had performed their due diligence [they] would have discovered all or some of the material misrepresentations and omissions alleged herein and Plaintiffs would not have purchased the Series N Shares."[113] The knowledge that Plaintiffs were unable to redeem their investment and the indications of mismanagement of the fund was sufficient to put Plaintiffs on notice that they may have a claim against the investment advisor who recommended the fund. The Winding-Up Petition evidences what the Fifth Circuit in *Jensen v. Snellings*[114] called "'storm warnings' that trigger the duty to inquire further."[115]

---

[109] *Ferguson v. Sugar*, 05-921 (La.App. 4 Cir. 6/25/08), 988 So.2d 816, 824.
[110] Rec. Doc. No. 723-17, p. 8.
[111] Rec. Doc. No. 723-17, p. 8.
[112] Rec. Doc. No. 723-17, p. 9.
[113] Rec. Doc. No. 1-3, p. 46.
[114] 841 F.2d 600 (5th Cir. 1988).
[115] *Id.* at 608.
48974

Plaintiffs argue that the Winding-Up Petition and the other "triggers" cited by Defendants cannot be evidence of constructive knowledge because they only demonstrate that Plaintiffs knew their investment was failing, and because, they claim, courts have held that "failure to reach earnings levels was not sufficient, by itself, to put the plaintiff on notice inquiry [of a cause of action], as a myriad of business reasons could have caused this problem."[116] Thus, Plaintiffs argue, Defendants "are in error to even claim that the Louisiana Funds were aware of any errors or omissions at that time."[117] This argument is difficult to reconcile with Plaintiffs' statements elsewhere in the record. For example, in their *Petition*, Plaintiffs state that "June 15, 2011 . . . was the first point in time that Plaintiffs had any notice of knowledge that its investment in Leverage [sic] was not liquid and that the valuations contained in the account statements issued to it were not accurate."[118] It cannot be true that Plaintiffs were unaware of any errors or omissions when they filed their Winding-Up Petition in 2012, because Plaintiffs' own allegations demonstrate their awareness of one such error or omission on June 15, 2011.

The Winding-Up Petition was filed in the Grand Court of the Cayman Islands on January 31, 2012,[119] more than one year before the filing of the instant suit on March 1, 2013. The Court finds that the Winding-Up Petition extinguishes any genuine issue of material fact regarding when Plaintiffs were aware of their cause of action against CSG. Presented with the facts contained therein, a reasonable jury could not conclude that Plaintiffs were not on notice as of that date. Plaintiffs have not pointed to specific summary

---

[116] Rec. Doc. No. 792, pp. 16-17.
[117] Rec. Doc. No. 792, p. 16.
[118] Rec. Doc. No. 1-3, p. 17 at ¶ 42.
[119] Rec. Doc. No. 723-17.

48974

judgment evidence that demonstrates a genuine issue of fact regarding their awareness of the claim against the CSG Defendants on January 31, 2012, which is their burden to defeat this motion. Conversely, the CSG Defendants have carried their summary judgment burden of demonstrating the absence of a genuine issue of material fact as to the date prescription begins to run.

Plaintiffs argue that whether *contra non valentem* applies at the summary judgment stage is a question of fact that cannot be resolved by the court. Plaintiffs cite several Fifth Circuit cases for the proposition that "*contra non valentem* exceptions are questions of fact and should be referred to the jury."[120] In particular, Plaintiffs rely on *Keenan v. Donaldson, Lufkin, & Jenrette, Inc.,*[121] where the Fifth Circuit stated that "when a plaintiff should know of his cause of action is usually a question of fact."[122] This citation is inapposite to Plaintiffs' case; although the Fifth Circuit did recognize the general principle that knowledge is a question of fact, it went on to *affirm* the district court's granting of summary judgment on the question of *contra non valentem*. To the extent that it reversed the district court, it was because the defendant had "failed to prove as a matter of law"[123] that the plaintiff knew of his cause of action before it prescribed. In other words, *Keenan* only prevents this Court from ruling on the applicability of *contra non valentem* if there is a genuine dispute of material fact surrounding Plaintiffs' knowledge. If the facts are not in

---

[120] Rec. Doc. No. 792, p. 17.
[121] 575 F.3d 483 (5th Cir. 2009).
[122] *Id.* at 486.
[123] *Id.* at 490.

48974

dispute, this Court is fully empowered to grant summary judgment, as it has done before in similar circumstances.[124]

The record demonstrates that Plaintiffs had constructive knowledge of their cause of action against the CSG Defendants as of January 31, 2012, if not before; thus, their claim was prescribed when filed. Therefore, because the record demonstrates no genuine issue of material fact regarding the timing of Plaintiffs' knowledge of their cause of action, the Court finds that summary judgment should be granted in favor of the CSG Defendants.

## III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[125] by the CSG Defendants (CSG and Joe Meals) is GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>December 14, 2018</u>.


_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[124] See *Crochet v. Bristol-Myers Squibb Co.,* No. CV 16-36-SDD-EWD, 2018 WL 1935855, at *4 (M.D. La. Apr. 24, 2018); *Union Pac. R.R. Co. v. Morel G. Lemoine Distributors*, No. CV 04-00474-BAJ-EWD, 2017 WL 4185476, at *3 (M.D. La. Sept. 21, 2017).
[125] Rec. Doc. No. 723.
48974