**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| FIREFIGHTERS' RETIREMENT SYSTEM, ET AL | |
| | CIVIL ACTION |
| VERSUS | |
| | 13-373-SDD-EWD |
| CITCO GROUP LIMITED, ET AL | |

## RULING

This matter is before the Court on the *Motion for Partial Summary Judgment*[1] filed by Plaintiffs, collectively known as the Louisiana Funds. Defendants, The Citco Group Limited ("Citco Group"), Citco Banking Corporation N.V. ("Citco Banking"), Citco Fund Services (Cayman Islands) Limited ("CFS Cayman"), and Citco Technology Management, Inc. ("CTM") (collectively, the "Citco Defendants") have filed an *Opposition*.[2] For the following reasons, the Court finds that Plaintiffs' *Motion* should be denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are the administrators of public pension plans that provide benefits for firefighters and other municipal employees in Louisiana. The instant suit arises out of Plaintiffs' collective $100 million investment in FIA Leveraged Fund ("Leveraged") in 2008. Among other claims, Plaintiffs assert that the Citco Defendants are liable to Plaintiffs for their "failure to register"[3] the Series N Shares in accordance with the registration

---

[1] Rec. Doc. No. 732.
[2] Rec. Doc. No. 812.
[3] Rec. Doc. No. 1-3, p. 27 at ¶ 103.
49290

provisions of the Louisiana Securities Law; that they are liable as "seller[s]"[4] for certain "misrepresentations and omissions"[5]; and that they have secondary "control person" liability for those same misrepresentations and omissions because they had "the power to influence and control"[6] the actions of Leveraged.

Plaintiffs in this *Motion* seek partial summary judgment on two issues. First, they argue that summary judgment is merited with respect to their contention that the Millennium Cayman Island Foundation (hereinafter "Millennium") was a "control person" of Leveraged under the Louisiana Securities Law.[7] Citing primarily to the incorporating documents of Leveraged, Plaintiffs aver that Millennium "was the sole shareholder with voting rights"[8] in Leveraged and, as such, "elected the board of directors of Leveraged and approved . . . the creation of the Series N Shares purchased by the Louisiana Funds."[9] Thus, Plaintiffs argue, "the facts are uncontested that Millennium had the power to influence and control, and exercised such influence and control, directly or indirectly, the decision making of Leverage [sic]."[10]

Defendants oppose partial summary judgment on the issue of whether Millennium was a "control person" of Leveraged. First, they contend, Plaintiffs' motion is procedurally improper because Millennium is not a defendant in this case and as such, granting summary judgment on this issue cannot have the effect intended by the summary

---

[4] *Id.* at. p. 29, ¶ 114.
[5] *Id.*
[6] *Id.* at p. 30, ¶ 122.
[7] Specifically, La. R.S. 51:714(B).
[8] Rec. Doc. No. 732-2, p. 8.
[9] *Id.* at p. 5.
[10] *Id.* at p. 8.
49290

judgment mechanism, namely, to "'simplify the trial or save time and expense.'"[11] Secondly, the Citco Defendants claim that summary judgment is inappropriate because "genuine disputes of material fact clearly exist as to whether Millennium"[12] was a "control person."

Next, Plaintiffs seek partial summary judgment on the question of whether the Citco Defendants violated the "failure to register" provisions of the Louisiana Securities Law when they offered the unregistered Series N Shares. Per Plaintiffs, in addition to violating the Louisiana Securities Law, the Citco Defendants also failed to honor jurisprudential interpretations of securities law that required them to provide the Louisiana Funds with "access to the kind and type of information which registration would disclose"[13] regarding their investment in Leveraged.

The Citco Defendants reject Plaintiffs' summary of what is required by the Louisiana Securities Law, citing § 709(7) of that Law, which carves out an exemption to registration requirements for securities that are sold to a pension, as the Series N Shares were here. Even if the shares were required to be registered, which they dispute, the Citco Defendants argue that partial summary judgment is not warranted due to the factual disputes surrounding the issue. Further, they assert that Plaintiffs' "failure to register" claim is prescribed under the two-year prescriptive period for such claims as set forth in the Louisiana Securities Law.

---

[11] Rec. Doc. No. 812, p. 2 (citing *Dore Energy Corp. v. Prospective Inv. & Trading Co.*, 2010 WL 4068802 at *5 (W.D. La. 2010).
[12] Rec. Doc. No. 812, p. 2.
[13] Rec. Doc. No. 732-2, p. 9.
49290

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] In assessing whether a dispute to any material fact exists, the Court considers all of the evidence in the record but must refrain from making credibility determinations or weighing the evidence.[15] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[16] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[17] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[18]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[19] All reasonable factual inferences are drawn in favor of the nonmoving party.[20] However, "[t]he Court has no

---

[14] Fed. R. Civ. P. 56(a).
[15] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[16] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[17] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[18] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[20] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
49290

duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[21] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[22]

### B. "Control Person" Under the Louisiana Securities Law

1. <u>Applicable Law</u>

Section 712(A) of the Louisiana Securities Law makes it unlawful to sell securities in violation of the various provisions of that Law.[23] In turn, Section 714(A) of the Louisiana Securities Law imposes liability on "[a]ny person who violates [Section] 712(A)."[24] In addition to liability for the primary violator, the Law imposes so-called "control person" liability, which "is secondary only and cannot exist in the absence of a primary violation."[25] That secondary control person liability is set forth in Section 714(B), which provides that:

> *Every person who directly or indirectly controls a person liable* under Subsection [714] A of this Section . . . *is liable jointly and severally with and to the same extent as the person liable* under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist.[26]

---

[21] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[22] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[23] La. R.S. §51:712(A).
[24] La. R.S. § 51:714(A).
[25] *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.,* 537 F.3d 527, 545 (5th Cir. 2008). (quoting *Southland*, 365 F.3d at 383).
[26] La. R.S. §51:714(B).
49290

The Louisiana Securities Law defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[27] The United States Court of Appeals for the Fifth Circuit has noted that "Louisiana precedent is thin on when a defendant 'controls' a primary violator of Section 712,"[28] and suggested that courts should "look to federal law for instruction."[29] The Fifth Circuit has further held that "[c]ontrol person liability does not require participation in the fraudulent transaction. But a plaintiff 'must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based.'"[30]

2. <u>Analysis</u>

The Court agrees with the Citco Defendants that, because Millennium is not a defendant in this case, granting partial summary judgment on this issue would be unlikely to simplify the factual issues or narrow the scope of evidence at trial. The Court further recognizes that it would not be unprecedented to deny partial summary judgment on that basis alone.[31] Here, however, a denial of summary judgment is further supported by the existence of genuine issues of material fact regarding Millennium's status as a "control person."

---

[27] La. R.S. § 51:702.
[28] *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014).
[29] *Id.*
[30] Heck v. Triche, 775 F.3d 265, 283 (5th Cir. 2014) (citing *Meek v. Howard, Weil, Laboisse, Friedrichs, Inc.*, 95 F.3d 45, at *3 (5th Cir.1996) (unpublished decision) (citing *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619–20 (5th Cir.1993)).
[31] See *Dore Energy Corp. v. Prospective Inv. & Trading Co.,* No. 2:05 CV 1657, 2010 WL 4068802, at *5; (W.D. La. Oct. 14, 2010); *Stumbo v. Double Bull Archery, LLC*, No. 07-CV-01098-REB-MJW, 2008 WL 2721746, at *1 (D. Colo. July 10, 2008); *Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of New York*, No. 06-CV-1164, 2010 WL 3907489, at *16 (N.D.N.Y. Sept. 30, 2010).
49290

In the instant *Motion*, Plaintiffs describe how Millennium was the sole shareholder with voting rights in Leveraged and conclude that, therefore, it was a "control person." That conclusory allegation is not sufficient to merit summary judgment, especially because Defendants identify several places in the record where Millennium's power to control Leveraged is called into question. Indeed, as Defendants note, Plaintiffs' own *Petition for Damages* casts doubt on Millennium's "control person" status where it alleges that, in fact, "[t]he Fletcher Defendants had direct and supervisory involvement and control in the day-to-day-operations of Leverage [sic] as the investment manager and directors of Leverage [sic]."[32]

Additionally, the Citco Defendants cite the terms of Leveraged's incorporating document, the Articles of Association,[33] as evidence that Millennium was not a "control person" under the statute. Under that document, many of the powers that Plaintiffs ascribe to Millennium as managing shareholder are clearly reserved to the Board of Directors, of which Millennium was not a member. For example, while Plaintiffs claim that Millennium "approved the issuance of the Series N Shares"[34] when it issued a consent to amend the Articles of Association, the Citco Defendants note that the Articles did not require Millennium's consent. In fact, the Citco Defendants cite the resolution issued by the Board of Directors on March 31, 2008, which stated that "the Directors now wish to create a new class of participating shares . . ."[35] and proposed an amendment to the Articles to reflect such. This evidence suggests that Millennium was controlled by the Board, not vice versa,

---

[32] Rec. Doc. No. 1-3, p. 40 at ¶ 183.
[33] Rec. Doc. No. 733-9.
[34] Rec. Doc. No. 732-2, p. 7.
[35] Rec. Doc. No. 812, p. 8.
49290

and Plaintiffs' conclusory assertion that their consent was "required" to issue the shares is not sufficient for summary judgment on this issue, especially since Wiekert Weber, who signed that consent on behalf of Millennium, stated in his sworn declaration that he signed it "after receiving express instructions from the board of directors of Leveraged, which controlled these decisions at all times."[36]

As for Plaintiffs' allegation that Millennium was a "control person" because it elected Leveraged's Board of Directors, the Citco Defendants note that two of the three directors of Leveraged at the time of Plaintiffs' investment were actually elected to the Board *before* Millennium received its management shares in 2006.

Other provisions in Leveraged's Articles of Association cited by the Citco Defendants spell out a broad role for Leveraged's Board of Directors, which, again, did not include Millennium. Per the Articles, the Series N Shares were "designated . . . by the Board of Directors and . . .subject to the restrictions and fixed and determined by the Directors."[37] Moreover, the Articles specify that the Directors have broad control over redemptions, including the provision that "the Directors shall be entitled to cause the Company to suspend . . . redemptions for such period or period as the directors determine."[38]

The Citco Defendants further point to the deposition testimony of Denis Kiely, one of the three directors of Leveraged, as tending to prove that Millennium did not have the type of influence and control that Plaintiffs allege. Kiely testified that "all investment

---

[36] Rec. Doc. No. 812-14, p. 2 at ¶ 6.
[37] Rec. Doc. No. 733-9, p. 8.
[38] Rec. Doc. No. 733-9, p. 11.
49290

decisions are made by Buddy Fletcher,"[39] the head of Fletcher Asset Management, which was the investment manager for Leveraged.

Based on the above evidence, the Court concludes that Plaintiffs are not entitled to summary judgment on this issue, especially when the evidence is viewed in the light most favorable to the Citco Defendants as non-movants. Plaintiffs' assertion that "the facts are uncontested that Millennium had the power to influence and control"[40] is contradicted by numerous forms of competent summary judgment evidence.

### C. "Failure to Register" Under the Louisiana Securities Law

1. <u>Applicable Law</u>

Section 705(A) of the Louisiana Securities Law provides in pertinent part that:

> It shall be unlawful for any person to offer for sale or sell any securities in this state unless any of the following conditions are met: (1) They are subject to an effective registration statement under this Part. (2) The security or transaction is exempt under R.S. 51:708 or 709.[41]

The pertinent exemption is spelled out in Section 709(7), which provides that the registration requirements of Section 705 "shall not apply" to "[a]ny transaction involving the sale of securities to a . . . pension or profit-sharing plan or trust."[42] A claim arising out of a "failure to register" a security prescribes two years from "the date of the contract for sale or sale, if there is no contract for sale."[43] "Because the time period ... is prescriptive and not preemptive, the period does not begin to run until the plaintiff[ ] ha[s] either actual

---

[39] Rec. Doc. No. 812-3, p. 5, lines 15-16.
[40] Rec. Doc. No. 732-2, p. 8.
[41] La. R.S. § 51:705.
[42] La. R.S. § 51:709.
[43] La. R.S. § 51:714.

49290

knowledge of a violation or notice of facts which, in the exercise of due diligence, should lead to actual knowledge."[44]

2. Analysis

The Court has considered Plaintiff's *Motion* and concluded that the "failure to register" claim is prescribed. The substance of the prescription issue will be addressed in the Court's forthcoming *Ruling* on the Citco Defendants' *Motion for Summary Judgment on Plaintiffs' Louisiana Securities Act Claims*.[45] Accordingly, the partial motion for summary judgment on "failure to register" is denied.

## III. CONCLUSION

For the reasons set forth above, the *Motion for Partial Summary Judgment*[46] by the Plaintiffs is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>December 18, 2018</u>.

*[signature: Shelly D. Dick]*

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[44] *Fishman v. Morgan Keegan & Co.*, No. CIV.A. 10-2, 2011 WL 3705187, at *4 (E.D. La. Aug. 24, 2011) (citing *Beckstrom v. Parnell*, 97–1200, p. 7 (La.App. 1 Cir. 11/6/98); 730 So.2d 942, 947).
[45] Rec. Doc. No. 775.
[46] Rec. Doc. No. 732.
49290