UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FIREFIGHTERS' RETIREMENT SYSTEM, et al<br><br>v.<br><br>CITCO GROUP LIMITED, et al. | CIVIL ACTION NO. 3:13-CV-00373<br><br>Honorable Chief Judge Shelly D. Dick<br><br>Magistrate Judge Erin Wilder-Doomes |

**MEMORANDUM OF LAW IN SUPPORT OF THE CITCO DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE TESTIMONY FROM PLAINTIFFS' EXPERT
PROF. JAMES SPINDLER INTERPRETING A PARTICULAR PROVISION
OF PLAINTIFFS' SUBSCRIPTION AGREEMENT WITH LEVERAGED**

Defendants Citco Banking Corporation N.V., The Citco Group Limited, Citco Fund Services (Cayman Islands) Limited, and Citco Technology Management, Inc. (collectively, the "Citco Defendants") respectfully submit this memorandum of law in support of their motion *in limine* to preclude Plaintiffs' expert Prof. James Spindler from offering his opinions concerning the interpretation of certain provisions of the Leveraged offering documents and Plaintiffs' Subscription Agreement with Leveraged.

**PRELIMINARY STATEMENT AND BACKGROUND**

This motion seeks to preclude Plaintiffs' securities law expert Prof. James Spindler from offering at trial his opinions concerning the interpretation of certain provisions of the Leveraged offering documents and the Subscription Agreement between Plaintiffs and Leveraged. Prof. Spindler's testimony concerning these provisions is (1) inadmissible legal opinion, (2) inadmissible parol evidence, and (3) unfounded speculation about the parties' original intent. For each of these reasons, the Court should grant the Citco Defendants' motion.

1

Plaintiffs invested $100 million in Leveraged on April 1, 2008. In doing so, each Plaintiff executed a "Subscription Agreement" with Leveraged, in which Plaintiffs "agree[d] to make a subscription to the Fund . . . on the terms and conditions described herein and in the Memorandum." (Kolatch Decl. Ex. 1 at -001-5; Kolatch Decl. Ex. 2 at -549; Kolatch Decl. Ex. 3 at -001-5.) In the Subscription Agreement each Plaintiff acknowledged and agreed, among other things, that, "**[o]ther than as set forth in the Memorandum, [Plaintiffs are] not relying upon any other information, representation, or warranty by the Fund**." (Kolatch Decl. Ex. 1 at -001-6; Kolatch Decl. Ex. 2 at -550; Kolatch Decl. Ex. 3 at -001-6 (emphasis added).) The Subscription Agreement defined "Memorandum" as "[the Series N Offering Memorandum], together with the Offering Memorandum of the Master Fund [Arbitrage] and any Supplements thereto delivered to the undersigned." (Kolatch Decl. Ex. 1 at -001-5; Kolatch Decl. Ex. 2 at -549; Kolatch Decl. Ex. 3 at -001-5; *see also* Kolatch Decl. Ex. 4 (Series N Offering Memorandum); Kolatch Decl. Ex. 5 (Arbitrage Offering Memorandum).) In this standard provision (hereinafter the "Reliance Disclaimer Provision"), Plaintiffs represented that in subscribing to Leveraged they were relying only on statements made by Leveraged in either the Series N Offering Memorandum or the Arbitrage Offering Memorandum (or in any supplements to the Arbitrage Offering Memorandum). Plaintiffs disclaimed reliance on any other statements made by Leveraged, including statements made by representatives of Leveraged or statements made in Leveraged's marketing materials.

In his expert report and at his deposition, Prof. Spindler has offered an interpretation of the Reliance Disclaimer Provision that upends its plain meaning. Despite the clear and unambiguous language that Plaintiffs agreed to disclaim reliance on materials outside the Leveraged offering documents, Prof. Spindler opined in his report that: "Given the language of

the Subscription Agreement and of the Supplement, the Plaintiffs had the reasonable expectation that they could rely upon the offering documents (which also incorporate by reference certain other documents) *as well as supplemental information provided by either Citco or the Leveraged fund, whether written or oral, and without regard to the particular form that it takes*." (Kolatch Decl. Ex. 6 at 14 (emphasis added); *see also* Kolatch Decl. Ex. 7 at 111:23–112:2; Kolatch Decl. Ex. 6 at 15 (opining that "[i]n this case, with its broad and non-specific language, it appears that the parties intended for Plaintiffs to be able to rely upon a wide range of information")).)

Prof. Spindler provides two contorted explanations for these opinions concerning the legal meaning of the parties' contract. *First*, he argues that when the Series N Offering Memorandum affords Plaintiffs the opportunity to ask questions about the investment prior to investing, it thereby writes the Reliance Disclaimer Provision in the Subscription Agreement out of existence. He asserts that when the Series N Offering Memorandum provides that "[t]he Fund will make available to any prospective shareholder any additional information . . . necessary to verify or supplement the information set forth herein" (*see* Kolatch Decl. Ex. 4 at -374), that language gave the Plaintiffs the contractual right to rely on any and all pre-investment information provided to them by Leveraged, including information not contained within the Series N Offering Memorandum or Arbitrage Offering Memorandum, despite the fact that the clear and unambiguous language of the Reliance Disclaimer Provision provides otherwise. (Kolatch Decl. Ex. 6 at 14.)

*Second*, Prof. Spindler argues that because the Subscription Agreement does not define the word "Supplements" in the phrase "the Offering Memorandum of the Master Fund and any Supplements thereto," any information "whatever [that] would serve to supplement th[e] disclosure[s] [in the Subscription Agreement and Memorandum] would be included too." (Kolatch Decl. Ex. 7 at 123:9–17.) He thus reads the capitalized term "Supplements" to refer to any form

3

of information whatsoever that "supplements" or "adds to" the information contained in the Offering Memorandum, again, thus interpreting the clear and unambiguous Reliance Disclaimer Provision out of existence.

Plaintiffs' goal in offering Prof. Spindler's testimony about the Reliance Disclaimer Provision is clear: Plaintiffs want the jury to believe that they were entitled to rely on pre-investment representations made to them in March 2008 by Denis Kiely, a representative of Leveraged, as well as any other alleged extra-contractual statements or omissions on which Plaintiffs may attempt to claim they relied. (Kolatch Decl. Ex. 7 at 112:25–114:7.) These representations by Mr. Kiely—which Prof. Spindler considers to be part of the "terms of the Plaintiffs' investment" in Leveraged (Kolatch Decl. Ex. 6 at 10)—contained several representations that bear no resemblance to any of the information in the documents that actually governed Plaintiffs' investment and that Plaintiffs represented they were relying on. To take just one example, Mr. Kiely represented to Plaintiffs that Leveraged's "main business" was "structur[ing] . . . direct investments" with "publicly-traded companies." (Kolatch Decl. Ex. 8 at 11.) The Series N Offering Memorandum, on the other hand, never once mentions investments in publicly-traded companies in describing Leveraged's investment program. (Kolatch Decl Ex. 4 at -350.) In Prof. Spindler's view, Plaintiffs were contractually entitled to rely on these statements by Mr. Kiely, as well as any other "supplemental information provided by . . . the Leveraged fund, whether written or oral, and without regard to the particular form it takes." (Kolatch Decl. Ex. 6 at 14.)

Because Prof. Spindler's testimony about the Reliance Disclaimer Provision is a legal opinion, is inadmissible parol evidence, and cannot provide any insight into the parties' intent

4

...

regarding the Reliance Disclaimer Provision, he should not be allowed to testify at trial about these subjects.

## ARGUMENT

### I.  Prof. Spindler's Testimony Interpreting the Reliance Disclaimer Provision Is an Inadmissible Legal Opinion

Prof. Spindler's opinion on the Reliance Disclaimer Provision should be excluded because Prof. Spindler is unquestionably offering an impermissible interpretation of that provision. (*See* Kolatch Decl. Ex. 6 at 14–15; Kolatch Decl. Ex. 7 at 110:17–125:7.)  The opinion relies on Prof. Spindler's purported "analysis" of the text of several provisions in the Subscription Agreement and the Series N Offering Memorandum, on which he bases his conclusion that "[t]he primary offering document for the Plaintiffs, the Supplement, incorporates by reference a number of other documents, and also provides for additional information to be provided to the investors by both Citco and the Leveraged fund." (Kolatch Decl. Ex. 6 at 14; *see also* Kolatch Decl. Ex. 7 at 121:11–12 (opining that "as this [the Reliance Disclaimer Provision] is written, they're [Plaintiffs] allowed to rely upon everything that they received from the Fund").  This is inappropriate testimony for an expert witness. *See, e.g.*, *SJB Grp., LLC* v. *TBE Grp., Inc.*, 2013 WL 4499032, at *3 (M.D. La. Aug. 19, 2013) (Dick, C.J.) ("Federal courts have consistently held that expert testimony on issues of contractual interpretation is inappropriate and that such issues are reserved for the judge and jury.").

In fact, this Court recently excluded evidence from another of Plaintiffs' expert witnesses, Dr. Perryman, interpreting a different provision in one of the same documents (the Series N Offering Memorandum) that Prof. Spindler seeks to construe. (*See* ECF No. 891 at 11 ("Opinion as to the plain terms of the offering memorandum is not helpful to the trier of the fact, is impermissible legal opinion, and shall be excluded.").)  The same result should apply to Prof.

5

Spindler's attempt to offer an interpretation of the Subscription Agreement and the Leveraged offering documents. *See, e.g.*, *Weathersby* v. *Conoco Oil Co.*, 752 F.2d 953, 956 (5th Cir. 1984) ("Interpretation of the terms of a contract is a matter of law."); *Waste Mgmt. of La., L.L.C.* v. *Par.*, 2015 WL 5798029, at *14 (E.D. La. Oct. 5, 2015) (barring an expert from testifying "on matters of contract interpretation"); *MC Asset Recovery, LLC* v. *Castex Energy, Inc.*, 2012 WL 12919214, at *1 (N.D. Tex. Nov. 28, 2012) (excluding expert testimony about an expert's "interpretation of various contract terms").

## II. Prof. Spindler's Testimony About the Reliance Disclaimer Provision Is Inadmissible Parol Evidence

Prof. Spindler's testimony should also be excluded because it is inadmissible parol evidence.[1] Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code. art. 2046. Thus, when a contractual provision is clear and unambiguous, "the meaning and the intent of the parties . . . cannot be explained or contradicted by parol evidence." *Gulf Am. Indus.* v. *Airco Indus. Gases*, 573 So. 2d 481, 486 (La. Ct. App. 1990); *see also Miller Expl. Co.* v. *Energy Drilling Co.*, 130 F. Supp. 2d 781, 785 (W.D. La. 2001) ("Extrinsic evidence and interpretive theories may only be used to determine intent when the writing itself is ambiguous or otherwise unclear.").

Plaintiffs unambiguously represented in the Subscription Agreement that "[o]ther than as set forth in the Memorandum, the Investor is not relying upon any other information,

---

[1] This is not a situation where an expert has offered testimony about the technical meaning of a term of art in an otherwise-unambiguous contractual provision. *Cf. Mariner Energy, Inc.* v. *Devon Energy Prod. Co.*, 690 F. Supp. 2d 558, 571 (S.D. Tex. 2010) (noting that, "[u]nder Louisiana contract law . . . expert testimony can be used to explain the meaning of technical terms . . . even when a contract is unambiguous"). The Reliance Disclaimer Provision contains no language that is even conceivably technical—every word is plain English. *See Coregis Ins. Co.* v. *Bell*, 1999 WL 244097, at *1 (E.D. La. Apr. 21, 1999) (excluding expert testimony about the phrase "might be expected" in a contract because it is "<u>not</u> a term of art, science or trade") (emphasis in original).

6

representation or warranty by the Fund." (Kolatch Decl. Ex. 1 at -001-6; Kolatch Decl. Ex. 2 at -550; Kolatch Decl. Ex. 3 at -001-6.) The meaning of this provision is clear on its face: Plaintiffs acknowledged that the only information that they relied on in deciding to invest in Leveraged was the information <u>set forth</u> in the Memorandum. *See, e.g.*, *Set Out*, Black's Law Dictionary (10th ed. 2014) (defining "set out" or "set forth" as "[t]o recite, explain, narrate, or incorporate (facts or circumstances)"); La. Civ. Code. art. 2047 ("The words of a contract must be given their generally prevailing meaning."). Indeed, when interpreting near-identical provisions to the one at issue here, courts have found disclaimer-of-reliance provisions to clearly and unambiguously bar reliance on representations not contained in the documents referenced in the provision. *See, e.g.*, *Redprairie Corp.* v. *Jerome's Furniture Warehouse*, 2007 WL 2819572, at *6 (E.D. Wis. Sept. 26, 2007) ("[N]on-reliance or integration clauses are common in commercial transactions and courts have repeatedly held that such clauses preclude parties from alleging reliance upon representations not contained in the contract."); *O'Toole* v. *Lawlogix*, 2017 WL 749194, at *4 (S.D. Ohio Feb. 27, 2017) (finding that "Plaintiff cannot claim to have reasonably relied on a promise made before he signed his employment contract" because Plaintiff represented in his written employment contract that he "do[es] not rely and ha[s] not relied upon any representation or statement not set forth in this Agreement with regard to the subject matter, bases or effect of this Agreement"); *Rissman* v. *Rissman*, 1999 WL 495481, at *6–7 (N.D. Ill. June 30, 1999) (finding that "no reliance could have been justified on [] alleged [oral] misrepresentations" to plaintiff because plaintiff represented in the parties' settlement agreement that "this Agreement is executed . . . without reliance upon any statement or representation made by [defendant] except as set forth herein"). Accordingly, because the Reliance Disclaimer Provision is clear and unambiguous, it must be enforced according to its terms without resort to the sort of baseless parol evidence Prof. Spindler attempts to offer here.

7

*See, e.g.*, *Voisey* v. *State Farm Fire & Cas. Co.*, 2008 WL 11352608, at *2 (E.D. La. Jan. 29, 2008) (granting motion *in limine* to exclude parol evidence because "there is no ambiguity in the contract" due to the clarity of "the terms of the policy"); *Nexen Petroleum U.S.A., Inc.* v. *Sea Mar Div. of Pool Well Servs. Co.*, 2007 WL 2874805, at *2 (E.D. La. Sept. 26, 2007) (granting motion *in limine* to exclude parol evidence when terms of written contract were unambiguous); *see also, e.g.*, *Mahavier* v. *PNC Bank, Nat'l Ass'n*, 2014 WL 12489602, at *12 (W.D. Tex. July 11, 2014) ("Expert testimony offered to vary or contract the terms of unambiguous contracts is barred by the well-settled parol evidence doctrine.").[2]

In any event, Prof. Spindler's attempt to manufacture ambiguity in the Reliance Disclaimer Provision borders on the specious and betrays certain fundamental principles of contract interpretation:

*First*, Prof. Spindler suggests that a provision in the Series N Offering Memorandum providing that Leveraged "will make available to any prospective shareholder any additional information . . . necessary to verify or supplement the information set forth herein" (*see* Kolatch Decl. Ex. 4 at -374) gave Plaintiffs the right to rely on any and all pre-investment information provided to them by Leveraged, including information provided to Plaintiffs *before* they executed the Subscription Agreement. (Kolatch Decl. Ex. 6 at 14.) This interpretation, however, would render the Reliance Disclaimer Provision meaningless; indeed, it would make the

---

[2] For the same reasons, Prof. Spindler should also be barred from offering testimony concerning the pre-investment oral statements made by Mr. Kiely, which are parol evidence "as to the facts and circumstances surrounding the parties at the time the contract was made." *BRP LLC (Delaware)* v. *MC La. Minerals LLC*, 196 So. 3d 37, 48 (La. Ct. App. 2016). In his report, Prof. Spindler characterized Mr. Kiely's statements as "terms" of the Plaintiffs' investment and provided a detailed interpretation of what he construes as the "misstatements and omissions" in Mr. Kiely's statements. (Kolatch Decl. Ex. 6 at 10–11, 21–23.) However, these are statements to which Plaintiffs contractually disclaimed reliance. Prof. Spindler should not be allowed to muddy the waters of the jury's fact-finding by offering testimony about these parol statements. *See Beauregard Par. Sch. Bd.* v. *Honeywell, Inc.*, 2008 WL 821053, at *5 (W.D. La. Mar. 24, 2008) (excluding expert testimony providing a damages calculation that "refers to pre-contractual negotiations, proposals, discussions, and other parol evidence" because the "scope of [the] contract [at issue was] clear and complete").

8

provision hollow, as Prof. Spindler readily admitted at his deposition. When asked whether his interpretation would allow Plaintiffs to rely on "[a]nything they're told by the Fund, anything they receive from the Fund, they can rely on anything whatsoever?," Prof. Spindler answered, "**Yeah**." (Kolatch Decl. Ex. 7 at 124:7–13) (emphasis added). Prof. Spindler's interpretation thus disregards the fundamental principle of contract interpretation that "[t]he provisions of a contract are to be interpreted to give them effect." *Morris* v. *Haas*, 659 So. 2d 804, 810 (La. Ct. App. 1995); *see also, e.g.*, *Clovelly Oil Co., LLC* v. *Midstates Petroleum Co., LLC*, 112 So. 3d 187, 195 (La. 2013) (reversing a Louisiana court of appeal's interpretation of a joint operating agreement because the court of appeal's reading would cause a section of the agreement to be "essentially rendered meaningless").

*Second*, Prof. Spindler argues that, because the Subscription Agreement does not define the word "Supplements" in the phrase "the Offering Memorandum of the Master Fund and any Supplements thereto," therefore "whatever would serve to supplement th[e] disclosure[s] [in the Subscription Agreement and Memorandum] would be included too." (Kolatch Decl. Ex. 7 at 123:9–17.) But this interpretation of the Reliance Disclaimer Provision is contrary to the plain meaning of the provision, as well. The phrase "Supplements thereto" (in which the word Supplements is capitalized) is clearly limited by the preceding phrase "the Offering Memorandum of the Master Fund." In other words, "Supplements thereto" refers to Supplements of the Arbitrage Offering Memorandum. Prof. Spindler's interpretation to the contrary is simply untenable on its face, and like his prior argument, would read an entire contract provision out of existence.

9

## III. Even if the Reliance Disclaimer Provision Were Ambiguous, Prof. Spindler's Testimony Regarding It Would Shed No Light on the Parties' Intent

Finally, even if the Reliance Disclaimer Provision were ambiguous, Prof. Spindler's testimony interpreting the provision should nonetheless be excluded for the following reasons.

As an initial matter, Prof. Spindler has no expertise to offer regarding the parties' intent. The sole purpose of considering parol evidence when interpreting an ambiguous contractual provision is to "determine[] the intent of the parties." *Nelson* v. *Nelson*, 985 So. 2d 1285, 1291 (La. Ct. App. 2008). Prof. Spindler's testimony that "Plaintiffs had the reasonable expectation that they could rely upon . . . supplemental information provided by . . . the Leveraged fund," however, could not possibly aid the Court or the jury in ascertaining Plaintiffs' intent because Prof. Spindler has no basis from which he can opine that Plaintiffs had any such expectation. (Kolatch Decl. Ex. 6 at 14.) Prof. Spindler was retained as an expert witness in this litigation in 2017, nine years after Plaintiffs invested in Leveraged. (Kolatch Decl. Ex. 7 at 9:10–25.) He was not present for the negotiations of Plaintiffs' investment; he reviewed no drafts of the Leveraged offering documents or Subscription Agreement; he had no conversations with Plaintiffs (or anyone else) about Plaintiffs' investment at the time; and, the documentary and testimonial record is silent on this score. Accordingly, Prof. Spindler has no knowledge that would enable him to speak to the parties' intent. *See, e.g.*, *Karaha Bodas Co., L.L.C.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Nebara*, 264 F. Supp. 2d 490, 495 n.4 (S.D. Tex. 2003) (excluding expert testimony about the parties' intent because the "[expert] witnesses have no personal knowledge of the contract negotiation"); *Chi. Title Ins. Co.* v. *Citizens and S. Nat'l Bank*, 821 F. Supp. 1492, 1495 (N.D. Ga. 1993) (disregarding expert testimony interpreting a contract

because "the[] experts were not involved in the formation of th[e] contract, and, therefore, their comments only constitute legal advice to the court").

Moreover, even assuming Prof. Spindler could possibly offer testimony on the parties' intent at the time the Subscription Agreement was executed, it is well-established that an expert witness such as Prof. Spindler cannot offer such testimony on intent anyway. *See, e.g.*, *Harvey* v. *Toyota Material Handling, USA, Inc.*, 2007 WL 4618577, at *1 (W.D. La. May 10, 2007) (granting a motion *in limine* to preclude experts from "speculat[ing] as to [Plaintiffs'] 'intent' or state of mind'"); *Retractable Techs., Inc.* v. *Abbott Labs., Inc.*, 2010 WL 11531436, at *6 (E.D. Tex. June 18, 2010) ("[T]he question of intent is a classic jury question and not one for the experts.").[3] Accordingly, his testimony should be precluded for this additional reason as well.

## CONCLUSION

The Court should grant the Citco Defendants' motion *in limine*.


Dated:  January 7, 2019

                              Respectfully submitted,

                              LOWE, STEIN, HOFFMAN,
                                ALLWEISS & HAUVER, L.L.P.


                              By:  */s/ Michael R. Allweiss*
                                  Michael R. Allweiss, 2425
                                  mallweiss@lshah.com
                                  Alicia M. Bendana, 21472
                                  abendana@lshah.com

---

[3] Nor is this a situation in which Prof. Spindler has offered expert testimony regarding the industry practices of investors and hedge funds with respect to disclaimer-of-reliance provisions. *Cf. La. Land & Expl. Co.* v. *Unocal Corp.*, 1994 WL 495794, at *2 (E.D. La. Sept. 7, 1994) (allowing expert testimony regarding typical practices in the oil and gas industry in order to interpret an ambiguous lease provision).  Prof. Spindler has offered no testimony about the regular practices of hedge funds or hedge fund investors with respect to disclaimer-of-reliance provisions—rather, he is offering a direct interpretation of the Reliance Disclaimer Provision at issue in this case.

701 Poydras Street, Suite 3600
New Orleans, LA 70139
Telephone:  (504) 581-2450
Facsimile:  (504) 581-2461

– and –

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
Andrew G. Gordon, T.A. (*Pro Hac Vice*)
agordon@paulweiss.com
Gregory F. Laufer (*Pro Hac Vice*)
glaufer@paulweiss.com
Julia Tarver Mason Wood (*Pro Hac Vice*)
jwood@paulweiss.com
Joseph P. Kolatch (*Pro Hac Vice*)
jkolatch@paulweiss.com

1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3890

– and –

TAYLOR, PORTER, BROOKS & PHILLIPS, LLP
Harry Joseph Philips, Jr., 2047
skip.philips@taylorporter.com

450 Laurel Street
P.O. Box 2471
Baton Rouge, LA 70821
Telephone:  (225) 387-3221
Facsimile:  (225) 346-8049

*Attorneys for Citco Technology Management, Inc., Citco Banking Corporation N.V., Citco Fund Services (Cayman Islands) Limited, and The Citco Group Limited*