# Exhibit 2

Confidential

# FIA LEVERAGED FUND

---

## SUBSCRIPTION

## BOOKLET FOR

## U.S. TAX-EXEMPT INVESTORS

---

## SERIES N SHARES

This Subscription Booklet is utilized for the private offering of Series N shares (the "**Shares**") in the FIA Leveraged Fund (the "**Fund**")  This Subscription Booklet may be used only by U S. tax-exempt investors that are "accredited investors" within the meaning given to such term in Regulation D under the U S  Securities Act of 1933, as amended (the "**Securities Act**")



RECEIVED
MAR 3 1 2008
MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM

723508 12-New York Server 2A - MSW

.

**FIA LEVERAGED FUND**

### DIRECTIONS FOR THE COMPLETION
### OF THE SUBSCRIPTION DOCUMENTS

Prospective investors must complete all of the Subscription Documents contained in this package in the manner described below. For purposes of these Subscription Documents, the **"Investor"** is the person for whose account Shares of the Fund are being purchased. Another person with investment authority may execute the Subscription Documents on behalf of the Investor, but should indicate the capacity in which it is doing so and the name of the Investor.

1.    Subscription Agreement

   (a)    Read the entire Subscription Agreement and complete the enclosed Payment Origination Certification Form

   (b)    Enter the amount of the subscription the Investor is subscribing for on the signature page.

   (c)    Date, print the name of the Investor and sign (print name, capacity and title, if applicable), and have two witnesses sign, on the signature page

   (d)    By signing this Subscription Agreement, you will be granting the Power of Attorney contained in this Subscription Agreement.

   (e)    By signing this Subscription Agreement, you will be agreeing to be, and upon acceptance of this Subscription Agreement shall be, bound as an Investor by the terms, provisions and requirements applicable to Investors as set forth in the Memorandum (as defined in this Subscription Agreement), which is incorporated herein in its entirety.

2.    Investor Questionnaire

   ENTITIES should answer or initial their answer to each of the questions in the enclosed Investor Questionnaire for Entities.

   The beneficial owners of an entity (in addition to the entity itself) must complete an Investor Questionnaire in the following circumstances:

   •    The entity was *formed for the purpose* of purchasing Shares;

   •    The *entity's Shares* (having a value for this purpose equal to the subscription amount applied for hereunder) constitutes 40% or more of the entity's total assets or committed capital;

   •    The entity is *participant-directed* (as described in Sections 3(c)(iv) and 3(i) of the Subscription Agreement included herein); or

   •    The entity is a *revocable trust*.

MERS004523

- a Small Business Investment Company licensed by the U.S. Small Business Administration; OR
- an employee benefit plan whose investment decision is being made by a plan fiduciary, which is either a bank, savings and loan association, insurance company or registered investment adviser, or an employee benefit plan whose total assets are in excess of $5,000,000 or a self-directed employee benefit plan whose investment decisions are made solely by persons that are accredited investors.

3.  _____ The Investor is a trust, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000 and whose purchase is directed by a sophisticated person

4.  _____ The Investor is an entity as to which all the equity owners (or, in the case of a trust, all the income beneficiaries) are accredited investors. If only this statement (4) has been initialed (i.e., not 1, 2, or 3), please have each equity owner (or, in the case of a trust, each income beneficiary) fill out and sign the Investor Questionnaire for Individuals or this Investor Questionnaire for Entities, as applicable. Please feel free to make copies of these pages for each equity owner (or income beneficiary).

Authorized Signatories

Set forth below are the names of persons authorized by the Investor to give and receive instructions between the Fund and the Investor, together with their respective signatures. Such persons are the only persons so authorized until further written notice to FAM signed by one or more of such persons is received by FAM

(please attach additional pages if needed)

| Name | Signatures |
|---|---|
| Robert Rust | _(signature)_ |
| | |
| | |
| | |
| | |

Standing Wire Instructions

Until further written notice to FAM signed by one or more of the persons listed above is received by FAM, funds may be wired to the Investor (for instance, upon redemption) using the following instructions:

Bank Name: Regions Bank Birmingham
Bank Address: 480 W. Capitol Ave. Little Rock, AR. 72201
ABA or CHIPS Number: 062000019
Account Name: Municipal Employee' Retirement system of La. (mERS)
Account Number: 0017541387
Reference: 5350002814

Status as a Politically Exposed Person

Is the Investor a current or former senior foreign political figure, an immediate family member or close associate[1] (a **"politically exposed person"**)?

_____ Yes          _ℛℛ_ No

If yes, which government _____, what position in the government _____
and, if an immediate family member or close associate of a politically exposed person, what relationship to the politically exposed person _____.

---

[1]   A "senior foreign political figure" is a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation  In addition, a senior foreign political figure includes any corporation, business, or other entity that has been formed by, or for the benefit of, a senior foreign political figure

The "immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children, and in-laws

A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure

MERS004525

II.    Verification of Status as a "Qualified Purchaser" under the Investment Company Act

The Investor represents and warrants that it is a "Qualified Purchaser" within the meaning given to such term under the Investment Company Act and has initialed the applicable statements below pursuant to which the Investor so qualifies.

PLEASE INITIAL ALL APPLICABLE STATEMENTS BELOW

1.    ✓    The Investor is an entity which:
- was not formed for the specific purpose of investing in the Fund;[1]
- is acting for its own account or the accounts of other Qualified Purchasers; AND
- in the aggregate owns and/or invests on a discretionary basis not less than $25,000,000 in "investments."

2.    _____    Each beneficial owner of the Investor's securities is a Qualified Purchaser (in the case of a trust, please complete question 5 below). If only this statement (2) has been initialed (i.e., not 1, 3, or 4), please have each equity owner (or, in the case of a trust, each income beneficiary) fill out and sign the Investor Questionnaire for Individuals or this Investor Questionnaire for Entities, as applicable. Please feel free to make copies of these pages for each equity owner (or income beneficiary).

3.    _____    The Investor is an entity which:
- was not formed for the specific purpose of investing in the Fund;
- owns not less than $5,000,000 in "investments;" AND
- is, or is directly or indirectly owned entirely by or for, a "Family Company"[2]

4.    _____    The Investor is a "qualified institutional buyer"[3] acting for its own account or the account of other qualified institutional buyers, provided that:
- a dealer described in paragraph (a)(1)(ii) of Rule 144A must own and invest on a discretionary basis at least $25 million in securities of issuers that are not affiliated persons of the dealer; AND
- a plan referred to in paragraph (a)(1)(D) or (a)(1)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(F) of Rule 144A that holds the assets of such a plan, will only be deemed to be acting for its own account to the extent that investment decisions are made by the fiduciary, trustee or sponsor of such plan (i.e., there must be at least $100 million of non self-directed assets in the plan) and then only with respect to the assets as to which investment decisions are made by the fiduciary, trustee or sponsor.

---

[1]    An Investor may be deemed to be "formed for the specific purpose of investing in the Fund" if either (i) the amount of the Investor's subscription for Shares in the Fund exceeds 40% of the total assets (on a consolidated basis with its subsidiaries) of the Investor, or (ii) interest holders in the Investor are able to decide individually whether to participate, or the extent of their participation, in the Investor's investment in the Fund (i.e., can holders of interests in the Investor determine whether their capital will form part of the capital invested by the Investor in the Fund).

[2]    A "Family Company" consists of two or more natural persons who are related (as siblings or spouses (including former spouses), or direct lineal descendants by birth or adoption), their spouses, and estates or foundations, charities or trusts formed by them or for their benefit

[3]    As defined in paragraph (a) of Rule 144A under the Securities Act

MERS004526

5 _____ The Investor is a trust that:

- is directed by a Qualified Purchaser;
- was not formed for the specific purpose of investing in the Fund; AND
- with respect to which each settlor or other person who contributed assets is a Qualified Person.

In order to complete questions 1 and 3 above, please read Annex B of this Subscription Agreement for information regarding what is includable in "investments" and for information regarding the valuation of such "investments."

Q-6

MERS004527

III.    Verification of Status as Eligible Participant in New Issues

PLEASE INITIAL ALL APPLICABLE STATEMENTS BELOW

A.    The Investor is any of the following:

_____    1.    An NASD member firm or other broker or dealer;

_____    2.    An officer, director, general partner, associated person or employee of an NASD member firm or other broker or dealer (other than a limited business broker-dealer)[1] ("**Covered Broker Dealer**");

_____    3.    An agent of a Covered Broker-Dealer if the agent is engaged in the investment banking or securities business;

_____    4.    An immediate family member[2] of a person specified in 2 or 3 above;

_____    5    A finder or other person acting in a fiduciary capacity to a Covered Broker-Dealer, including attorneys, accountants and financial consultants;

_____    6.    A person who has the authority to buy or sell securities for a bank, savings and loan institution, insurance company, investment company, investment adviser or collective investment account;[3]

_____    7.    An immediate family member of a person specified in 5 or 6 above who receives from or provides to such person material support;[4]

_____    8.    A person listed (or required to be listed) in Schedule A or Schedule C to Form BD as owning 10% or more of a Covered Broker-Dealer (a "**Covered Owner**");

_____    9.    A person listed (or required to be listed) in Schedule B or Schedule C of Form BD whose ownership interest is in a Covered Owner ("**Covered Indirect Owner**");

---

[1]    "Limited business broker-dealer" means a broker-dealer whose authorization to engage in the securities business is limited solely to the purchase and sale of investment company/variable contracts securities and direct participation program securities.

[2]    "Immediate family members" include a person's parents, mother-in-law, father-in-law, spouse, brother, sister, brother-in-law, sister-in-law, son-in-law, daughter-in-law and children and any other individual to whom the person provides material support.

[3]    The term "collective investment account" means any hedge fund, investment partnership, investment corporation or other collective investment vehicle but does not include a family investment vehicle (i e , a legal entity that is beneficially owned solely by immediate family members) or an investment club (i.e., a group of friends, neighbors or business associates or others that pool their money to invest in securities and are collectively responsible for making investment decisions).

[4]    "Material support" means providing 25% or more of a person's income in the prior calendar year. Members of the immediate family living in the same household are deemed to be providing one another with material support.

Q-7

MERS004528

_____ 10. A person that owns directly or indirectly 10% or more of a public reporting company that is a Covered Owner, other than a public company that is listed on a national securities exchange or traded on the NASDAQ national market;

_____ 11. A person that owns directly or indirectly 25% or more of a public reporting company that is a Covered Indirect Owner other than a public company that is listed on a national securities exchange or traded on the NASDAQ national market;

_____ 12. An immediate family member of a person listed in 8 through 11 above who receives from or provides to such person material support;

_____ 13. An account in which any of the persons referred to in 1 through 12 above has a beneficial interest.

     _____ Yes     _____ No

  (a) If you answered "yes" to question 13, do you employ "carve out" procedures in accordance with Rule 2790?

     _____ Yes     _____ No

  (b) If you answered "no" to question 13a, please provide the percentage of the account that is beneficially owned directly or indirectly by persons listed in 1 through 13 above. _____%

_____ 14. The Investor is eligible, but chooses not to participate in New Issues.

✓ 15. The Investor is none of 1 through 14 above

If any of items 1-13 in Section A were initialed or answered "yes," please complete the following:

B. The Investor is any of the following: (Please check all applicable)

_____ 1. An investment company registered under the Investment Company Act of 1940;

_____ 2. A common trust fund or similar fund described in Section 3(a)(12)(A)(iii) of the Securities Exchange Act of 1934 that has investments from 1,000 or more accounts and does not limit beneficial interests in such fund principally to trust accounts of persons enumerated in Part A above ("**restricted persons**");

_____ 3. An insurance company general, separate, or investment account, provided that the account is funded by premiums from 1,000 or more policyholders, or, if a general account, the insurance company has 1,000 or more policyholders and the insurance company does not limit the policyholders whose premiums are used to fund the account principally to restricted persons, or, if a general account, the insurance company does not limit its policyholders principally to restricted persons;

723508.12-New York Server 2A - MSW

Q-8

MERS004529

_____ 4.    An account (including an account of a joint back office broker dealer[1]) whose beneficial interests that are owned by restricted persons do not exceed in the aggregate 10% of such account;

_____ 5.    A publicly trading entity (other than a broker-dealer or an affiliate of a broker-dealer where such broker-dealer is authorized to engage in the public offering of new issues either as a selling group member or underwriter) that (i) is listed on a national securities exchange, (ii) is traded on the NASDAQ national market, or (iii) is a foreign issuer whose securities meet the quantitative designation for listing on a national securities exchange or trading on the NASDAQ national market;

_____ 6.    An investment company organized under the laws of a foreign jurisdiction provided that the investment company is listed on a foreign exchange or authorized for sale to the public by a foreign regulatory authority and no person owning more than 5% of the shares of the investment company is a restricted person;

_____ 7.    An ERISA benefits plan that is qualified under Section 401(a) of the Code, provided such plan is not sponsored solely by a broker-dealer;

_____ 8.    A state or municipal government benefits plan that is subject to state and/or municipal regulation;

_____ 9.    A tax-exempt charitable organization under Section 501(c)(3) of the Code;

_____ 10.    A church plan under Section 414(e) of the Code.

---

[1]    "Joint back office broker-dealer" means a broker-dealer that has entered into an arrangement with other broker-dealers to share a back office

Q-9

MERS004530

IV.   Supplemental Data for Entities

Please furnish the following supplemental data:

1.   Is the Investor either a tax-exempt foundation or endowment or a pension, profit-sharing, annuity or employee benefit plan which is both involuntary and non-contributory?

_____ Yes      ✓ No

2.   Is the Investor a registered investment company or a private investment fund which is not registered under the Investment Company Act in reliance on Section 3(c)(1) or 3(c)(7) thereof?

_____ Yes      ✓ No

3.   The fiscal year-end of the Investor is __*6/30*__.
(Month/Day)

4.   Please complete the Benefit Plan Investment Questionnaire, located in Annex D.

MERS004531

Annex A

## PRIVACY POLICY

Fletcher Asset Management, Inc. and affiliates (collectively "FAM") as the Investment Advisor to and in association with The FIA Leveraged Fund and any other affiliated entities.

Principles

The relationship between FAM and the investors in its funds is among FAM's most important assets. We strive to maintain your trust and confidence in us. We are committed to protecting your personal information to the best of our ability. We believe that you value your privacy, so we will not disclose your personal information unless it is required by law, is at your discretion, or is necessary to provide you with financial services. We have not and will not sell your personal information to anyone.

Information We Collect, Receive, Maintain and Communicate

In the course of doing business with you, we may collect nonpublic information about you from, among other things, the following sources:

•     Information we receive from you on subscriptions or other forms, such as your social security number, personal financial information, and birth date;

•     Information about your transactions with us and our affiliates, such as your account balance, assets, and past transactions with the funds we manage; and

•     Information we collect from you through your inquiries by mail, e-mail, or telephone as to your account with one or more of the funds we manage

Disclosure of Information to Nonaffiliated Third Parties

We do not disclose any nonpublic personal information about potential, current or former investors to any nonaffiliated third parties, except with prior consent or as permitted by law. Disclosures permitted by law include information to the funds' service providers, such as transfer agents, custodians, technology consultants, and clearing firms. As a rule, we only provide this information to those entities whose services are necessary for us to properly fulfill our investor services to you. We only share with these service providers the information they need to provide these services and they are required to use this information only to provide the services.

Disclosure of Information to FAM Affiliates

FAM and affiliated funds share information with each other about potential, current or former investors, and may use this information to market our products and services to you. Except as described herein, neither FAM nor its affiliates share any of this information with non-affiliates.

Security Standards

We maintain physical, electronic and procedural safeguards to ensure the integrity and confidentiality of your nonpublic personal information in the manner described above. These include:

•     Adopting policies and procedures that put in place physical, electronic and other safeguards to keep your personal information safe.

A-I

MERS004532

      •      Limiting access to personal information to those employees and service providers who need it to perform their job duties.

      •      Requiring third parties who perform services for us to agree to abide by contracts to keep your information strictly confidential.

If you have any questions regarding our privacy policies, please contact Jay Shows, Chief Compliance Officer, at Fletcher Asset Management, Inc. at (212) 284-4800.

.

A-2

MERS004533

Annex B

## INVESTMENTS

For determining whether the Investor is a "qualified purchaser," the term "investments" includes:

(1)     Securities, other than securities of an issuer that controls, is controlled by, or is under common control with the Investor that owns such securities, unless the issuer of such securities is a "public company," a "financial company" or has more than $50 million in equity, as reflected on such company's financial statements which present such equity information as of a date within 16 months preceding the date on which the Investor acquires Shares. The term "public company" includes all companies that file reports pursuant to Section 13 or 15(d) of the Exchange Act or have a class of securities that are listed on a Designated Offshore Securities Market, as defined by Regulation S of the Securities Act. The term "financial company" includes a commodity pool or an "investment company" (whether U.S. or offshore) or a company required to register as such under the Investment Company Act but for the exclusions or exemptions provided by Sections 3(c)(1) through 3(c)(9) of the Investment Company Act;

(2)     Real estate held for investment purposes so long as it is not used by the prospective Qualified Purchaser or a close relative (generally, a sibling, spouse, former spouse, direct ancestor or descendent or a spouse of such an ancestor or descendent) for personal or business purposes However, real estate owned by a prospective Qualified Purchaser who is primarily in the real estate business is includable as an "investment" even if it is held by the owner;

(3)     "Commodity interests" or "physical commodities" held for investment purposes by the Investor. "Commodity interests" includes commodity futures contracts, options on commodity futures contracts, and options on physical commodities traded on or subject to the rules of (i) any contract market designated for trading such transactions under the Commodity Exchange Act and the rules thereunder or (ii) any board of trade or exchange outside the United States, as contemplated in Part 30 of the rules under the Commodity Exchange Act "Physical commodities" includes any physical commodity with respect to which a "Commodity Interest" is traded on a market specified in the definition of commodity interests above;

(4)     To the extent not securities, "financial contracts" entered into for investment purposes or in connection with investments "Financial contracts" includes any arrangement that (i) takes the form of an individually negotiated contract, agreement, or option to buy, sell, lend, swap, or repurchase, or other similar individually negotiated transaction commonly entered into by participants in the financial markets; (ii) is in respect of securities, commodities, currencies, interest or other rates, other measures of value, or any other financial or economic interest similar in purpose or function to any of the foregoing; and (iii) is entered into in response to a request from a counterparty for a quotation, or is otherwise entered into and structured to accommodate the objectives of the counterparty to such arrangement;

(5)     In the case of an Investor that is a commodity pool or an investment company excepted from registration by Section 3(c)(1) or 3(c)(7) of the Investment Company Act, any amounts payable to such Investor pursuant to a firm agreement or similar binding commitment upon the demand of the Investor; and

MERS004534

(6)     Cash and cash equivalents held for investment purposes, such as bank deposits, foreign currencies, certificates of deposits, net cash surrender value of an insurance policy and cash held for defensive purposes.

*"Investments" do not include other assets which do not reflect experience in the financial markets, such as jewelry, artwork, antiques and other collectibles*

For purposes of determining the amount of "investments" owned by a company, "investments" of a parent company and its majority-owned subsidiaries may be aggregated to meet the minimum "investment" amount requirements, regardless of which company is the prospective Qualified Purchaser.

For purposes of determining the amount of "investments" owned by a natural person, there may be included any "investment" held jointly or as community property with such person's spouse. In determining whether spouses who are making a joint investment in the Fund are Qualified Purchasers, there may be included in the amount of each spouse's "investments" any "investments" owned by the other spouse (whether or not such "investments" are held jointly)

In determining whether a natural person is a Qualified Purchaser, there may be included in the amount of such person's "investments" any "investments" held in an individual retirement account or similar account the investments of which are directed by and held for the benefit of such person.

## VALUATION OF INVESTMENTS

In determining the value of "investments" in order to ascertain Qualified Purchaser status, the aggregate amount of "investments" owned and invested on a discretionary basis by such person can be either their fair market value on the most recent practicable date or the cost of such "investments," provided that the same method must be used for all "investments." However,

(1)     In the case of "commodity interests," the amount of "investments" is the value of the initial margin or option premium deposited in connection with such "commodity interests" and

(2)     In each case, there must be deducted from the amount of such "investments" the following amounts:

    (a)     The amount of any outstanding indebtedness incurred by the prospective Qualified Purchaser to acquire such "investments" and

    (b)     In the Case of a Family Company (as defined in Part II of the Investor Questionnaire for Entities), in addition to the amounts specified in paragraph (2) (a) above, any outstanding indebtedness incurred by an owner of the Family Company to acquire the Family Company's "investments"

723508 12-New York Server 2A - MSW

Annex C

## ANTI-MONEY LAUNDERING SUPPLEMENT

To enable FAM to comply with applicable anti-money laundering and economic sanctions regulations, you are required to provide the following information:

I.    PAYMENT INFORMATION

     A     Name of the bank from which your payment to FAM is being wired (the **"Wiring Bank"**):

          *Regions Bank - Birmingham*

     B.    Is the Wiring Bank located in the U.S. or another **"Approved Jurisdiction"** (as recognized by the Administrator)[13]?

          ✓ Yes ____ No

If yes, please answer question (C) below.

If no, please provide the information described in Item II below.

     C    Are you a customer of the Wiring Bank?

          ✓ Yes ____ No

If yes, you may skip Item II below.

If no, please provide the information described in Item II below.

II.    ADDITIONAL INFORMATION

*Note  this section applies only to subscribers who responded "no" to question I(B) or I(C) above*

The following materials must be provided to Citco Fund Services (Cayman Islands), Windward 1, Regatta Office Park, West Bay Road, P O  Box 31106, Grand Cayman KY1-1205, Cayman Islands:

**For Individual Subscribers**

☐    A government issued form of picture identification (*e g* , passport or drivers license); and

---

[13]    As of the date hereof, "Approved Jurisdictions" are Argentina, Australia, Austria, Belgium, Brazil, Canada, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, Ireland, Italy, Japan, Luxembourg, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Singapore, South Africa, Spain, Sweden, Switzerland, Turkey, United Kingdom, and the United States.

C-1

MERS004536

☐   Proof of the individual's current address (*e.g.*, current utility bill), if not included in the form of picture identification.

## For Funds of Funds or Entities that Invest on Behalf of Third Parties Not Located in Approved Jurisdictions

*Note: this section applies only to subscribers who responded "no" to question I(B) or I(C) above.*

☐   A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing);

☐   An incumbency certificate attesting to the title of the individual executing the Subscription Documents on behalf of the prospective Investor (a sample Incumbency Certificate is attached hereto as Exhibit A);

☐   A completed copy of Exhibit B certifying that the entity has adequate anti-money laundering policies and procedures in place that are consistent with the USA PATRIOT Act, OFAC and other relevant federal, state or foreign anti-money laundering laws and regulations; and

☐   A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other Approved Jurisdiction certifying that the prospective Investor (i.e., the fund of funds or the entity investing on behalf of third parties) maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective Investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C)

## For All Other Entity Subscribers

*Note: this section applies only to subscribers who responded "no" to question I(B) or I(C) above*

☐   A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing);

☐   If the prospective investor is a trust, copies of the trust documents;

☐   An incumbency certificate attesting to the title of the individual executing the Subscription Documents on behalf of the prospective Investor (a sample Incumbency Certificate is attached hereto as Exhibit A);

☐   A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in the U.S. or other Approved Jurisdiction certifying that the prospective Investor maintains an account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective Investor's integrity (a sample Letter of Reference is attached hereto as Exhibit C);

☐   If the prospective Investor is a privately-held entity, a completed copy of Exhibit D listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the prospective Investor; and

C-2

MERS004537

☐    If the prospective Investor is a trust, a completed copy of <u>Exhibit E</u> listing the current beneficiaries of the trust that have, directly or indirectly, 25% or more of any interest in the trust, the settlor of the trust and the trustees.

**Note: Your Subscription Agreement will not be deemed complete until all of the required documentation listed above is delivered, together with the Subscription Agreement and other required deliverables, in accordance with the terms and instructions contained in the Subscription Agreement. Note that exceptions to any of the above requirements may only be made with the consent of the Fletcher Asset Management, Inc.**

**For additional information, please contact Investor Relations at 212-284-4800.**

C-3

MERS004538

EXHIBIT A

*Note: this form applies only to subscribers who responded "no" to question I(B) or I(C) of the Anti-Money Laundering Supplement.*

## FORM OF INCUMBENCY CERTIFICATE

The undersigned, being the _____ of
                                          *Insert Title*

_____, a _____ organized under the laws of
        *Insert Name of Entity*              *Insert Type of Entity*

_____ (the **"Company"**), does hereby certify on behalf of the
*Insert Jurisdiction of Organization*

Company that the persons named below are directors and/or officers of the Company and that the

signature at the right of such name, respectively, is the genuine signature of such person and that the

persons listed below are each an authorized signatory for the Company.

| Name | Title | Signature |
|------|-------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |


IN WITNESS WHEREOF, the undersigned has hereunto set his or her hand as of the ___ day of
_____, 200___.


_____
Name: *Print Name of Signatory #1*
Title: *Print Title of Signatory #1*


C-4

723508 12-New York Server 2A - MSW

MERS004539

THE UNDERSIGNED, _____, a duly authorized
    *Insert Name of Signatory #2*

_____ of the Company, does hereby certify that _____ is a
*Insert Title*                                        *Insert Name of Signatory #1*

duly authorized officer of _____ and that the signature set forth above
                           *Insert Name of Company*

is [his][her] true and correct signature.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the ___ day

of _____, 200___.


                                    _____
                                    Name: *Print Name of Signatory #2*
                                    Title: *Print Title of Signatory #2*

C-5

MERS004540

EXHIBIT B

*Note: this form applies only to subscribers who responded "no" to question I(B) or I(C) of the Anti-Money Laundering Supplement*

## AML CERTIFICATION FORM FOR FUNDS OF FUNDS
## OR ENTITIES THAT INVEST ON BEHALF OF THIRD PARTIES

The undersigned, being the _____ of _____,

                                *Insert Title*                                *Insert Name of Entity*

a _____ organized under the laws of _____

    *Insert Type of Entity*                           *Insert Jurisdiction of Organization*

(the **"Company"**), does hereby certify on behalf of the Company that it is aware of the requirements of

the USA PATRIOT Act of 2001, the regulations administered by the U.S. Department of Treasury's

Office of Foreign Assets Control, and other applicable U.S. Federal, state or non-U.S. anti-money

laundering laws and regulations (collectively, the **"anti-money laundering/OFAC laws"**). The Company

has anti-money laundering policies and procedures in place reasonably designed to verify the identity of

its beneficial holders or underlying investors and their sources of funds. Such policies and procedures are

properly enforced and are consistent with the anti-money laundering/OFAC laws such that Fletcher Asset

Management (**"FAM"**) may rely on this Certification.

        The Company hereby represents to FAM that, to the best of its knowledge, the

Company's beneficial holders or underlying investors are not individuals, entities or countries that may

subject the Fund to criminal or civil violations of any anti-money laundering/OFAC laws. The Company

has read the Investor Questionnaire, executed and delivered by the Company in connection with the

Company's purchase of Series N Shares of the FIA Leveraged Fund. The Company has taken all

reasonable steps to ensure that its beneficial holders or underlying investors are able to certify to such

representations. The Company agrees to promptly notify FAM should the Company have any questions

relating to any of the investors or become aware of any changes in the representations set forth in this

Certification.

Date: _____                By: _____

                                          Name:

                                          Title:

723508 12 New York Server 2A - MSW

MERS004541

EXHIBIT C

*Note: this form applies only to subscribers who responded "no" to question I(B) or I(C) of the Anti-Money Laundering Supplement.*

## FORM LETTER OF REFERENCE

[LETTERHEAD OF LOCAL OFFICE OF APPROVED JURISDICTION BANKING INSTITUTION
OR BROKERAGE FIRM]

Fletcher Asset Management
48 Wall Street, 5th Floor
New York, New York 10005
Attn: Investor Relations
Fax: 212-284-4800
Tel: 212-284-4801

To whom it may concern:

I, _____, the _____ of _____, do hereby
    *Name*       *Title*      *Name of Institution*

certify that _____ has maintained an account at our institution for
    *Name of Investor*

_____ years.

Our institution is subject to regulation by [name of regulator] and under the laws and

regulations applicable to us, we are required to maintain anti-money laundering procedures, including

procedures to ensure that we know the true identity of our customers.

We are subject to examination by our regulator for compliance with such AML requirements.

Do not hesitate to contact me at _____ if you have any further questions
              *Insert Telephone No*

Very truly yours,

_____
Name:
Title:

C-7

MERS004542

EXHIBIT D

*Note: this form applies only to subscribers who responded "no" to question I(B) or I(C) of the Anti-Money Laundering Supplement.*

**BENEFICIAL OWNERSHIP INFORMATION**

**To Be Completed By Entity Subscribers That Are Privately Held Entities**

**Instructions: Please complete and return this Exhibit D and provide the name of every person who is directly, or indirectly through intermediaries, the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the Investor. If the intermediary's shareholders or partners are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed. If there are no 25% beneficial owners, please write None.**

| Full Name | If Shareholder is an Individual, Insert Name and Address of Principal Employer and Position | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

C-8

MERS004543

EXHIBIT E

*Note: this form applies only to subscribers who responded "no" to question I(B) or I(C) of the Anti-Money Laundering Supplement*

### TRUST OWNERSHIP INFORMATION

#### To Be Completed By Entity Subscribers That Are Trusts

**Instructions: Please complete and return this Exhibit E and provide the name of: i) every current beneficiary that has, directly or indirectly, an interest of 25% or more in the trust; ii) every person who contributed assets to the trust (settlors or grantors); and iii) every trustee. If there are intermediaries that are not individuals, continue up the chain of ownership listing their 25% or more equity interest holders until individuals are listed.**

| Full Name and Address | Status (Beneficiary/Settlor/Trustee) | Citizenship (for Individuals) or Principal Place of Business (for Entities) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

C-9

MERS004544

Annex D

## BENEFIT PLAN INVESTOR QUESTIONNAIRE

I.    The Investor represents that it is (please check all applicable boxes):

A.    ☑    **not** a Benefit Plan Investor*(Code: NBPI); or

\* A "Benefit Plan Investor" is (i) any plan subject to Title I of ERISA (e.g., U.S. corporate plans), (ii) any plan subject to Section 4975 of the Code (e.g., IRAs) and (iii) any passive investment fund whose underlying assets include "plan assets" (generally because plans (described in (i) or (ii)) own 25% or more of a class of the investment fund's equity interests). Any entity that is a Benefit Plan Investor by virtue of (iii) above should check I-B 3 below.

B.    ☐    a Benefit Plan Investor that is:

1. ☐    An employee benefit plan or trust that is subject to the provisions of ERISA – this includes U.S. pension plans and U.S. profit-sharing and 401(k) plans, "Multiemployer Plans" and "Taft-Hartley Plans" but does not include U.S. governmental plans, certain church plans and non-U.S. employee pension and welfare benefit plans (**Code: ERISA**);

2. ☐    A U.S. individual retirement account, Keogh Plan and/or other plan subject to Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended ("IRC") (**Code: E-IRC**);

3. ☐    An entity (e.g. a fund of funds) whose underlying assets include "plan assets" by reason of a plan's investment in the entity and such plan investors include (1) one or more U.S. pension benefit plans, welfare benefit plans or similar plans subject to ERISA and/or (2) one or more individual retirement accounts, Keogh plans or other individual arrangement subject to Section 4975(e)(1) of the IRC (including by reason of 25% or more of any class of equity interests in the entity being held by Benefit Plan Investors that include any plan described above) (**Code: E-25%+**).

If the Investor is an entity whose underlying assets include "plan assets," indicate that the percentage of such assets that constitute "plan assets" within the meaning of ERISA or the IRC is not more than (please check an applicable box):

| ☐ | 10% ** | ☐ | 20% ** | ☐ | 30% | ☐ | 40% | ☐ | 50% |
|---|--------|---|--------|---|-----|---|-----|---|-----|
| ☐ | 60% | ☐ | 70% | ☐ | 80% | ☐ | 90% | ☐ | 100% |

\*\*Applicable to entities with multiple classes, one of which exceeds the 25% threshold for Benefit Plan Investors

The Investor agrees to promptly notify the Administrator in writing if there is a change in the percentage as set forth above and at such time or times as the General Partner/Investment Adviser and/or Administrator may request.

D-1

MERS004545

II.    Insurance Company

If the Investor is an insurance company, please certify to either 1 or 2 below:

1.  ☐ The Investor is an insurance company investing the assets of its general account (or the assets of a wholly owned subsidiary of its general account) in the Fund but none of the underlying assets of the Investor's general account constitute "plan assets" within the meaning of Section 401(c) of ERISA.

2.  ☐ The Investor is an insurance company investing the assets of its general account (or the assets of a wholly owned subsidiary of its general account) in the Fund and the percentage of the underlying assets of the Investor's general account deemed to be "plan assets" within the meaning of Section 401(c) of ERISA is not more than (please check an applicable box) (Code:  E-ICGA);

| ☐ | 10% | ☐ | 20% | ☐ | 30% | ☐ | 40% | ☐ | 50% |
| ☐ | 60% | ☐ | 70% | ☐ | 80% | ☐ | 90% | ☐ | 100% |

The Investor agrees to promptly notify the Administrator in writing if there is a change in the percentage as set forth above and at such time or times as the General Partner/Investment Adviser and/or Administrator may request.

**Person(s) or affiliate(s) with control over assets/providing investment advice**

If the Investor is not a Benefit Plan Investor, please indicate whether you are (i) a person (including an entity) who has discretionary authority or control with respect to the assets of the Fund or (ii) a person (including an entity) who provides investment advice for a fee (direct or indirect) with respect to such assets or an "affiliate" of any such person described in (i) and/or (ii). For purposes of this representation, an "affiliate" is any person controlling, controlled by or under common control with the Fund or any of its investment advisers (including the Investment Manager), including by reason of having the power to exercise a controlling influence over the management or policies of the Fund or its investment adviser(s)

Yes: _____   (Code: IM&A);                        No: _____

Registered Shareholder Name:_____

Authorized Signature:_____

Print Name:_____

Title:_____

Date:_____

Series #:_____

D-2

MERS004546

If any of the above circumstances apply, please contact the Investor Relations Department of Fletcher Asset Management, Inc. by telephone at 212-284-4800 or via facsimile at 212-284-4801. You will be required to complete an Investor Questionnaire, or other applicable documentation, for each beneficial owner of the entity.

*Additional Required Documents*

*Anti-Money Laundering Supplement.* **Please complete the Anti-Money Laundering Supplement, attach the required documentation and complete the applicable exhibits referred to in the Anti-Money Laundering Supplement, on Annex C.**

FAM, the Administrator and their respective designees reserve the right, in their sole and absolute discretion, to request any additional documentation they believe necessary, advisable or appropriate to verify the identity of an Investor and/or to determine the Fund's compliance with applicable laws, rules, regulations, best practices and anti-money laundering matters.

3.    IRS Form W-9

Each Investor should provide the information requested on IRS Form W-9 and include such complete IRS Form when returning the Subscription Agreement. IRS forms and instructions are available on the Internet at www.irs.gov.

4    Delivery of Subscription Documents

Please return completed and signed documents by fax, email or courier to the following address:

Citco Fund Services (Cayman Islands) Limited

Windward 1, Regatta Office Park, West Bay Road

P O Box 31106, Grand Cayman KY1-1205

Cayman Islands

Telephone: (345) 949-3977

Facsimile: (345) 949-3877

Attention: Investor Relations Group

Email: caymanweb@citco.com

5.    Payment of Subscription

All payments should be made by wire transfer as instructed below.

Your bank should wire transfer only U S dollars via Fed wire to JP Morgan Chase Bank, 1 New York Plaza, New York, NY 10081, ABA #: 021-000-021, for credit to the account of Citco Banking Corporation NV, Account #: 00-11-627502, for further credit to FIA Leveraged Fund, Account # 0012-361796-200

723508 12-New York Server 2A - MSW

ii

MERS004547

Please request your bank to fully complete the "detail" section of the wire, including the Investor's name.

Please also have your bank send the following message (fax number (345) 949-3877) to FIA Leveraged Fund, Attn: Investor Relations.

"FIA Leveraged Fund – We have credited your account at JP Morgan Chase Bank for $ _40,000,000_ by order of _Municipal Employees'_ on ___3/3/2008___ ."
    (insert amount)       (insert name of subscriber)        (insert date)
                                Retirement System

## IMPORTANT:

1) Please have your bank identify on the wire transfer the name of the intended subscriber.

2) We recommend that your bank charge its wiring fees separately so that an even amount may be invested.

MERS004548

**FIA LEVERAGED FUND**

**SUBSCRIPTION AGREEMENT**

**SERIES N SHARES**

FIA Leveraged Fund

Ladies and Gentlemen:

Reference is made to the Confidential Memorandum dated March 2008 with respect to the offering of Series N Shares (the "**Shares**") of the FIA Leveraged Fund (the "**Fund**") (such Confidential Memorandum, together with the Offering Memorandum of the Master Fund and any Supplements thereto delivered to the undersigned, being herein called the "**Memorandum**"). By executing this Subscription Agreement, the undersigned investor (the "**Investor**") (a) agrees to be, and upon acceptance of this Subscription Agreement shall be, bound as an Investor in the Fund by the terms, provisions and requirements applicable to Investors as set forth herein and in the Memorandum and (b) acknowledges that it has read and understands the terms, provisions and requirements set forth herein and in the Memorandum. Capitalized terms used, but not defined, herein shall have the respective meanings given them in the Memorandum.

1    Subscription

(a)    The Investor agrees to become a holder of the Fund's Shares and in connection therewith subscribes for Shares of the Fund and agrees to make a subscription to the Fund in the amount set forth below, on the terms and conditions described herein and in the Memorandum.

(b)    The Investor acknowledges and agrees that it is not entitled to cancel, terminate or revoke this Subscription Agreement or any agreements of the Investor hereunder or the power of attorney granted hereby and that such Subscription Agreement and any other agreements and power of attorney shall survive (i) changes in the transaction, documents and instruments described in the Memorandum which in the aggregate are not material or which are contemplated by, or made in accordance with, the Memorandum, and (ii) the death, disability or termination of the Investor; provided, however, that if the Fund shall not have accepted this Subscription Agreement within 60 days from the date of this Subscription Agreement, then this Subscription Agreement, all agreements of the Investor hereunder and the power of attorney granted hereby shall be cancelled or revoked and this Subscription Agreement will be returned to the Investor.

(c)    The Investor hereby grants a revocable proxy to Fletcher Asset Management, Inc. (and any substitute or successor investment advisor(s) of the Fund) ("**FAM**") that allows FAM to vote in its discretion on behalf of the Investor on all matters brought before Investors unless the Investor revokes this proxy in person at a meeting of shareholders or in writing at least 10 days prior to the meeting at which the vote is scheduled to take place.

2    Certain Acknowledgments and Agreements of the Investor

The Investor understands and acknowledges that:

MERS004549

(a)      The subscription for the Shares contained herein may be accepted or rejected, in whole or in part, by the Board of Directors of the Fund (the "Board"), in consultation with FAM in its sole and absolute discretion.  No subscription shall be deemed accepted and the Investor shall not become a Shareholder until the subscription has been accepted in writing and, if necessary, any subsequent acts, including issuance of the Shares, have been taken, which shall be deemed an acceptance of this Subscription Agreement by the Fund for all purposes.

(b)      Except as provided under applicable state securities laws, this subscription is and shall be irrevocable, except that the Investor shall have no obligation hereunder if this Subscription Agreement is for any reason rejected or this offering is for any reason canceled.

(c)      All documents pertaining to this investment that are readily available to the Fund have been made available for inspection by the Investor, and the Fund documents will be available, upon reasonable notice, for inspection by the Investor for purposes reasonably related to the Investor's investment in the Fund during reasonable business hours at the office of the Administrator, the Fund's principal place of business.

(d)      No non-U.S. or U.S. federal or state authority has made any finding or determination as to the fairness for investment of the Shares and no non-U.S. or U.S. federal or state authority has recommended or endorsed or will recommend or endorse this offering.

(e)      The Investor agrees to provide any additional documents and information that the Fund, FAM or the Administrator reasonably requests, including, without limitation, information relevant to a determination of whether the Investor is an "accredited investor" within the meaning given to such term in Regulation D under the Securities Act.

(f)      Other than as set forth in the Memorandum, the Investor is not relying upon any other information, representation or warranty by the Fund  The Investor has consulted to the extent deemed appropriate by the Investor with the Investor's own advisors as to the financial, tax, legal and related matters concerning an investment in Shares and on that basis believes that an investment in the Shares is suitable and appropriate for the Investor

(g)      The Investor is aware of and understands each of the Certain Risk Factors and Conflicts of Interest set forth in the Memorandum.

(h)      The Investor understands and acknowledges that the Shares cannot be sold or transferred without the prior written consent of the Board, in consultation with FAM, which consent may be withheld in its sole discretion and will be withheld if a transfer would result in 25% or more of the outstanding Shares of the Master Fund being held by "benefit plan investors" within the meaning of the Department of Labor Regulation § 2510.3-101, 29 C.F.R. Section 2510.3-101 as modified by Section 3(42) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**").

(i)      The Investor understands and acknowledges that the Fund will invest all of its assets in the Master Fund and the Investor agrees that by investing in the Fund, the Investor is directing that the assets of the Fund be so invested

3      Representations and Warranties

The Investor understands that the Shares are being issued in reliance upon the exemptions provided in the Securities Act and/or Regulation D thereunder for transactions involving limited offers and sales  The Investor, for the Investor and for the Investor's heirs, personal representatives, successors

2

MERS004550

and assigns, makes the following representations, declarations and warranties with the intent that the same may be relied upon in determining the suitability of the undersigned as an investor in the Fund. The following representations and warranties shall survive the closing date applicable to the Investor and will be deemed to be reaffirmed by the Investor at any time the Investor makes an additional purchase of the Shares. The act of making such purchases will be evidence of such reaffirmation.

(a)    The Investor has received, read carefully and understands the Memorandum and has consulted its own attorney, accountant and/or investment advisor with respect to the investment contemplated hereby and its suitability for the Investor  The Investor understands that Skadden, Arps, Slate, Meagher & Flom LLP acts as U S. counsel for the Fund and FAM and its affiliates and Walkers, Attorneys-at-Law, acts as Cayman counsel only for the Fund and no attorney-client relationship exists between either such firm and any other person by reason of such person making an investment in the Fund.

Moreover, notwithstanding anything expressed or implied to the contrary in this Subscription Agreement, the Memorandum and any other Fund documents, each Investor and prospective Investor (and each employee, representative or other agent of each such Investor and prospective Investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and any facts that may be relevant to the tax structure of the transactions contemplated by this Subscription Agreement, the Memorandum and the agreements referred to therein, and all materials of any kind (including opinions or other tax analyses) that are provided to any such persons relating to such tax treatment and tax structure, provided, however, that no Investor or prospective Investor (and no employee, representative, or other agent thereof) shall take any action that would violate any applicable federal or state securities laws.

(b)    The Investor is an "accredited investor," within the meaning given to such term in Regulation D under the Securities Act.

(c)    The Investor understands and acknowledges that (i) the Investor must bear the economic risk of its investment in the Shares until the termination of the Fund, until the Investor redeems from the Fund or otherwise ceases to be an Investor in the Fund; (ii) the Shares have not been registered under the Securities Act or any state securities laws and are being offered and sold in reliance upon exemptions provided in the Securities Act and state securities laws for transactions not involving any public offering and, therefore, cannot be resold or transferred unless they are subsequently registered under the Securities Act and applicable state laws or unless an exemption from such registration is available; (iii) the Investor is purchasing the Shares for investment purposes only for the account of the Investor and not with any view toward a distribution thereof; (iv) the Investor is investing in the Fund as a common investment vehicle rather than as a means to facilitate the individual or separate investment decisions of holders of interests in the Investor; (v) the Investor has no contract, undertaking, agreement or arrangement with any person to sell, transfer or pledge to such person or anyone else any of the Shares which the Investor hereby subscribes to purchase or any part thereof, and the Investor has no present plans to enter into any such contract, undertaking, agreement or arrangement; (vi) the Investor understands and agrees that the Shares cannot be sold or transferred without the prior written consent of the Board, which may be withheld in its sole discretion and will be withheld if transfer could cause the Fund to become subject to regulation under federal law as an investment company or could subject the Fund to adverse tax consequences; (vii) there will be no public market for the Shares; (viii) any disposition of the Shares may result in unfavorable tax consequences to the Investor; (ix) the Fund does not have any obligation or intention to register the Shares for sale under the Securities Act or any state securities laws or of supplying the information which may be necessary to enable the Investor to sell Shares; (x) the Investor has no right to require the registration of the Shares under the Securities Act or state securities laws or other applicable securities regulations; and (xi) no transfer of the Shares by the Investor will be permitted if it would result in 25% or more of any of the outstanding classes of equity in the Master Fund being held

MERS004551

by "benefit plan investors" within the meaning of DOL Regulation 2510.3-101, 29 C.F.R. Section 2510.3-101 as modified by Section 3(42) of ERISA.

(d)     The Investor is knowledgeable and experienced in evaluating investments and experienced in financial and business matters and is capable of evaluating the merits and risks of investing in the Shares. The Investor has evaluated the risks of investing in the Shares, and has determined that the Shares are a suitable investment for the Investor. In evaluating the suitability of an investment in the Shares, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth in the Memorandum and independent investigations made by the Investor or representative(s) of the Investor.

(e)     The Investor can bear the economic risk of this investment and can afford a complete loss of its investment. The aggregate amount of the investments of the Investor in, and its commitments to, all similar investments that are illiquid is reasonable in relation to its net worth.

(f)     The Fund has made available to the Investor, during the course of this transaction and prior to the purchase of any of the Shares, the opportunity to ask questions of and receive answers from the Fund concerning the terms and conditions of the offering described in the Memorandum, and to obtain any additional information necessary to verify the information contained in the Memorandum or otherwise relative to the financial data and business of the Fund, to the extent that the Fund possesses such information or can acquire it without unreasonable effort or expense, and all such questions, if asked, have been answered satisfactorily and all such documents, if examined, have been found to be fully satisfactory.

(g)     The Investor is aware and acknowledges that (i) the Fund has a limited operating history; (ii) the Shares involve a substantial degree of risk of loss of the Investor's entire investment and there is no assurance of any income from such investment; (iii) any federal and/or state income tax benefits which may be available to the Investor may be lost through the adoption of new laws or regulations or changes to existing laws and regulations or differing interpretations of existing laws and regulations, in certain circumstances with retroactive effect; (iv) the Investor, in making this investment, is relying, if at all, solely upon the advice of such Investor's personal tax advisor with respect to the tax aspects of an investment in the Fund; and (v) because there are substantial restrictions on the transferability of the Shares it may not be possible for the Investor to liquidate such Investor's investment readily in any event, including in case of an emergency.

(h)     If the Investor is an individual, he or she is at least 21 years of age, has adequate means of providing for all of his or her current and foreseeable needs and personal contingencies and has no need for liquidity in this investment. The Investor has all requisite legal capacity to acquire and hold the Shares and to execute, deliver and comply with the terms of each of the documents required to be executed and delivered by the Investor in connection with this subscription for Shares. Such execution, delivery and compliance by the Investor does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor is bound.

(i)     If the Investor is not an individual, the Investor has the power and authority to enter into this Subscription Agreement and each other document required to be executed and delivered by the Investor in connection with this subscription for Shares, and to perform its obligations hereunder and thereunder and consummate the transactions contemplated hereby and thereby and the person signing this Subscription Agreement on behalf of the Investor has been duly authorized to execute and deliver this Subscription Agreement and each other document required to be executed and delivered by the Investor in connection with this subscription for Shares. Such execution, delivery and compliance by the Investor

4

MERS004552

does not conflict with, or constitute a default under, any instruments governing the Investor, any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor is bound. This Subscription Agreement has been duly authorized and executed by the Investor and constitutes a valid and legally binding agreement of the Investor.

(j)    Any information which the Investor has heretofore furnished to the Fund or any agent of the Fund with respect to the Investor, including the information in the attached Investor Questionnaire, is correct and complete as of the date of this Subscription Agreement and if there should be any material change in such information prior to its purchase of Shares the Investor will immediately furnish such revised or corrected information to the Fund.

(k)    The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Subscription Agreement are made with the intent that they be relied upon by the Fund and the Administrator in determining the Investor's suitability as a purchaser of the Shares, and shall survive its purchase. In addition, the Investor undertakes to notify the Fund immediately of any change in any representation, warranty or other information relating to the Investor set forth herein.

(l)    The Investor is not (i) identified on the U.S. Department of Treasury Office of Foreign Assets Control ("OFAC") list of Specially Designated Nationals and Blocked Persons (the "SDN List") codified at 31 CFR Ch. V Annex A as amended from time to time[1]; (ii) owned or controlled by or acting on behalf of any person or entity listed on the SDN List; (iii) the target of any sanction, regulation, or law promulgated by OFAC or any other U.S. governmental entity (such sanctions, regulations and laws, together with any supplement or amendment thereto, the "U.S. Sanctions Laws") such that the entry into this Subscription Agreement or the performance of any of the transactions contemplated hereby would contravene such U.S. Sanctions Laws; or (iv) owned or controlled by or acting on behalf of any person or entity that is the target of any U.S. Sanctions Laws such that the entry into this Subscription Agreement or the performance of any of the transactions contemplated hereby would contravene such U.S. Sanctions Laws.

(m)    The Investor has reviewed the OFAC website and conducted such other investigation as the Investor deems necessary or prudent prior to making the representations and warranties contained in this Section 3. The Investor acknowledges that U.S. federal regulations and executive orders administered by OFAC prohibit, among other things, engaging in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals, and if the Investor qualifies as a Prohibited Investor (as defined below), the Fund, Administrator or FAM may, among other things, freeze the Investor's assets in the Fund and notify appropriate legal authorities pursuant to applicable law.

(n)    No funds tendered for the acquisition of Shares of the Funds are, and no funds tendered to satisfy the Investor's obligation to make capital contributions thereto will be, directly or indirectly derived from activities that may contravene U.S. federal, state or international laws and regulations, including anti-money laundering laws. Specifically, no contribution or payment by the Investor shall (to the extent that such matters are within the Investor's control) cause the Fund or FAM to be in violation of the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986 or the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001.

(o)    Neither the Investor, nor any person controlling, controlled by, or under common control with the Investor, or for whom the Investor is acting as agent or nominee in connection with the

---

[1]    The OFAC SDN list may be found at <http://www.ustreas.gov/offices/enforcement/ofac/sdn/index.html>

MERS004553

acquisition of the Transferred Interest, or if the Investor is a privately held entity, any person having a beneficial interest in the Investor is any of the following (a "Prohibited Investor"):

    (A)    A country, territory, organization, person or entity named on an OFAC list;

    (B)    A person or entity that resides or has a place of business in a country or territory named on such lists or which is designated as a Non-Cooperative Jurisdiction by the Financial Action Task Force on Money Laundering or whose subscription funds are transferred from or through such a jurisdiction;

    (C)    A "Foreign Shell Bank" within the meaning of the USA PATRIOT Act (i.e., a foreign bank that does not have a physical presence in any country and that is not affiliated with a bank that has a physical presence and an acceptable level of regulation and supervision);

    (D)    A person or entity that resides in or is organized under the laws of a jurisdiction designated by the Secretary of the Treasury under Section 311 or 312 of the USA PATRIOT Act as warranting special measures due to money laundering concerns; or

    (E)    Any other person with whom a transaction is prohibited by the USA PATRIOT ACT, Executive Order 13224, the Trading With the Enemy Act, or the foreign assets control regulation of the U.S. Treasury Department.

    (p)    Neither the Investor, nor any person controlling, controlled by, or under common control with the Investor, or for whom the Investor is acting as agent or nominee in connection with the acquisition of the Transferred Interest, or if the Investor is a privately held entity, any person having a beneficial interest in the Investor is (i) a senior foreign political figure, (ii) the immediate family of a senior foreign political figure, or (iii) a close associate of a senior foreign political figure.[2]

    (q)    If the Investor is an individual, the Investor has received and read carefully and understands the Privacy Policy attached hereto as Annex A.

    (r)    The statement as to net worth and annual income or assets of the Investor and the other information provided in this Subscription Agreement are true, correct and complete in all material respects.

    (s)    The Investor maintains its domicile, and is not merely a transient or temporary resident, at the residence address shown in the Investor Questionnaire

---

[2]   A "senior foreign political figure" is a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation  In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure  The "immediate family" of a senior foreign political figure typically includes that person's parent's, siblings, spouse, children, and in-laws  A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure

723508 12-New York Server 2A - MSW

MERS004554

(t)    The Investor is a United States citizen if an individual, and if an entity is organized under the laws of the United States or a state thereof, or is otherwise a U.S. Person[3] as defined below.

(u)    The Investor (if an entity) was not formed and is not being utilized primarily for the purpose of making an investment in the Fund.

(v)    With respect to the transfer of a Share to the Investor or to a subsequent transferee, as applicable, the Investor hereby represents and warrants and each such transferee will be required to represent and warrant that either (i) it is not (and is not acting on behalf or using the assets of) (A) an "employee benefit plan" described in Section 3(3) of ERISA that is subject to ERISA, (B) a "plan" described in Section 4975(e)(1) of the Internal Revenue Code of 1988, as amended (the "Code") that is subject to the prohibited transaction provisions of Section 4975 of the Code, (C) an entity whose underlying assets include "plan assets" by reason of investment by a plan described in (A) or (B) in the entity (including an insurance company general account) or (D) a governmental plan, church plan or foreign plan that is subject to any federal, state or local law that is substantially similar to the prohibited transaction provisions of Section 406 of ERISA or Section 4975 of the Code or (ii) it is an entity described in (i) and the purchase of the Shares will not constitute or result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental plan, church plan or foreign plan, any substantially similar federal, state or local law). Any purported transfer of a Share to an Investor or subsequent transferee, as applicable, that does not comply with the requirements of this clause 3(v) shall be null and void *ab initio*.

4    Prevention of Money Laundering

(a)    The Investor understands, acknowledges, represents and agrees (i) that the acceptance of this Subscription Agreement, together with the appropriate remittance, will not breach any applicable money laundering or related rules or regulations (including, without limitation, any statutes, rules or regulations in effect under the laws of the Cayman Islands and the United States pertaining to prohibitions on money laundering or to transacting business or dealing in property that may be blocked or may belong to Specially Designated Nationals as those terms are used by the OFAC), (ii) to promptly provide to FAM or any other party designated for receipt of such information documentation verifying its identity, as well as the identity of any of its legal or beneficial owners or related parties or affiliates, (iii) that due to money laundering requirements within their respective jurisdictions (which requirements are in effect at the time this Subscription Agreement and Investor Questionnaire are submitted to the Fund or which become effective at any future time), the Fund, Administrator or FAM may require further evidence of the Investor's identity, such as a form of picture identification for individuals or a certificate of organization

---

[3]    For purposes of this representation, a U S Person is (i) a natural person who is a citizen of or resident in the United States; (ii) a partnership or corporation organized or incorporated under the laws of the United States; (iii) an estate of which any executor or administrator is a U S person; (iv) a trust if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more United States persons have the authority to control all substantial decisions of the trust; (v) an agency or branch of a foreign entity located in the United States; (vi) a non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U S person; (vii) a discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States or (viii) a partnership or corporation if (A) organized or incorporated under the laws of any foreign jurisdiction and (B) formed by one or more of the persons or entities described in (i) through (vii) above principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by "accredited investors" (as defined in Rule 501(a) under the Securities Act) who are not natural persons, estates or trusts

MERS004555

for entities, before this Subscription Agreement can be processed, and the Fund, Administrator or FAM may be required to take such other actions as may be necessary for the Fund, Administrator or FAM to comply with such money laundering regulations, (iv) that it hereby consents to disclosure to third parties of information provided pursuant to this Section 4, and (v) to hold harmless and indemnify the Fund, Administrator or FAM and its respective designees against any losses arising from the failure to process such Investor's application if such Investor does not provide such requested information.

(b)    The Investor understands, acknowledges, represents and agrees that many jurisdictions are in the process of changing or creating anti-money laundering, embargo and trade sanctions, or similar laws, regulations, requirements (whether or not with force of law) or regulatory policies and many financial intermediaries are in the process of changing or creating responsive disclosure and compliance policies (collectively "**Requirements**") and the Fund could be requested or required to obtain certain assurances from Investors subscribing for Shares, disclose information pertaining to them to governmental, regulatory or other authorities or to financial intermediaries or engage in due diligence or take other related actions in the future. The Investor understands, acknowledges, represents and agrees that it is the Fund's policy to comply with Requirements to which it is or may become subject and to interpret them broadly in favor of disclosure. The Investor hereby agrees, and by reason of owning any Shares will be deemed to have agreed, to provide additional information or take such other actions as may be necessary or advisable for the Fund (in the Board or FAM's opinion) to comply with any Requirements, related legal process or appropriate requests (whether formal or informal) or otherwise. The Investor hereby consents, and by reason of owning any Shares will be deemed to have consented, to disclosure by the Fund, FAM and their respective agents to relevant third parties of information pertaining to such Investor in respect of Requirements or information requests related thereto. The Investor understands, acknowledges, represents and agrees that failure to honor any such request may result in redemption by the Fund or a forced sale to another person or entity of such Investor's Shares.

(c)    If the Investor is a non-U.S. banking institution (a "**Non-U.S. Bank**") or if the Investor receives deposits from, makes payments on behalf of, or handles other financial transactions related to a Non-U.S. Bank, the Investor understands, acknowledges, represents and agrees to FAM that: (i) the Non-U.S. Bank has a fixed address, other than solely an electronic address, in a country in which the Non-U.S. Bank is authorized to conduct banking activities; (ii) the Non-U.S. Bank employs one or more individuals on a full-time basis; (iii) the Non-U.S. Bank maintains operating records related to its banking activities; (iv) the Non-U.S. Bank is subject to inspection by the banking authority that licensed the Non-U.S. Bank to conduct banking activities; and (v) the Non-U.S. Bank does not provide banking services to any other Non-U.S. Bank that does not have a physical presence in any country and that is not a regulated affiliate

5    Indemnity

The Investor understands that the information provided herein will be relied upon by the Fund for the purpose of determining the eligibility of the Investor to purchase Shares. The Investor agrees to provide, if requested, any additional information that may reasonably be required to determine the eligibility of the Investor to purchase Shares. The Investor agrees to indemnify and hold harmless the Fund, its agents (including but not limited to the Administrator) or controlling persons, FAM and their respective officers, employees, directors, partners, agents, legal representatives and controlling persons ("**Indemnitees**"), from and against any losses, expenses, judgments, settlement costs, fees and related expenses (including attorneys' fees and expenses) due to or arising out of a breach of any representation, warranty or agreement of the Investor contained in this Subscription Agreement or in any other document provided by the Investor to the Fund in connection with the Investor's investment in Shares. The Investor hereby agrees to indemnify the Indemnitees, and to hold them harmless against all liabilities, costs or expenses (including reasonable attorneys' fees) arising as a result of the sale or distribution of the Shares by the Investor in violation of the Securities Act or other applicable law or any misrepresentation or

MERS004556

breach by the Investor with respect to the matters set forth herein. In addition, the Investor agrees to indemnify the Indemnitees and to hold such persons and firms harmless from and against, any and all losses, damages, liabilities or expenses, including costs and reasonable attorneys' fees, to which they may be put or which they may incur or sustain by reason of or in connection with any misrepresentation made by the Investor with respect to the matters about which representations and warranties are required by the terms of this Subscription Agreement, or any breach of any such warranties or any failure to fulfill any covenants or agreements set forth herein or included in and as defined in the Memorandum Notwithstanding any provision of this Subscription Agreement, the Investor does not waive any rights granted to it under applicable securities laws

## 6    Payment of Subscription

(a)    The Investor shall pay the total subscription, as set forth on the signature page (subject to any adjustment), by wire transfer in immediately available funds to the account set forth below on or before the Business Day immediately preceding the applicable Closing Date of the Investor's subscription. If the Investor's subscription is rejected in whole or in part, the amount rejected shall be promptly returned, without interest, by wire transfer to the account designated by the Investor

(b)    Wire transfer payments shall be made only in U S dollars via Fed wire to:

JP Morgan Chase Bank, 1 New York Plaza, New York, NY 10081, ABA #: 021-000-021, for credit to the account of Citco Banking Corporation NV, Account #: 00-11-627502, for further credit to FIA Leveraged Fund, Account # 0012-361796-200.

(c)    IMPORTANT:

(1)    Please have your bank identify field at the end of the wire transfer.

(2)    We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

## 7.    General

This Subscription Agreement shall be binding upon the Investor and the heirs, personal representatives, successors and assigns of the Investor. The Investor agrees that neither this Subscription Agreement nor any rights which may accrue to the Investor hereunder may be transferred or assigned without the consent of the Board, which may be granted or withheld in its sole discretion. Notwithstanding the place where this Subscription Agreement may be executed by any of the parties, the parties expressly agree that all terms and provisions hereof shall be governed, construed and enforced solely under the laws of the Cayman Islands, without reference to any principles of conflicts of law (except insofar as affected by the state securities or "blue sky" laws of the jurisdiction in which the offering described herein has been made to the Investor). This Agreement shall survive the admission of the Investor to the Fund and shall, if the Investor consists of more than one person, be the joint and several obligations of all such persons.

## 8.    Jurisdiction

The courts of the Cayman Islands shall have exclusive jurisdiction over any action, suit or proceeding with respect to this Subscription Agreement and the Investor hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may have, whether now or in the future, to the laying of venue in, or to the jurisdiction of, any and each of such courts for the purposes of any such suit, action,

9

MERS004557

proceeding or judgment and further waives any claim that any such suit, action, proceeding or judgment has been brought in an inconvenient forum, and the Investor hereby submits to such jurisdiction. The parties hereby agree that no punitive or consequential damages shall be awarded in any such action, suit or proceeding.

9    Suitability

The truth, correctness and completeness of the information supplied by the Investor (including information on the schedules attached which are incorporated as a part of this Subscription Agreement) in the attached Investor Questionnaire is warranted pursuant to Section 3(n) hereof.

10.    Disclosure Authorization

By executing this Subscription Agreement, the Investor (a) authorizes the Fund and FAM (or its delegate) to utilize and to provide information regarding the Investor's account, including information for reporting of tax withholding, to intermediaries, such as the Fund's legal counsel and withholding agents, until said authorization is revoked by the Investor in writing delivered to FAM (or its delegate), and (b) agrees to allow each of the Fund, FAM, the Administrator and their agents to divulge the name of such Investor and any information pertaining to the Investor if so required by application of law, regulation, judicial process or at the request of a regulator.

11.    Cayman Islands Requirements Pertaining to Transfers of Funds

If you transfer/wire funds to the Fund from any country **OTHER THAN ON THE FOLLOWING "Approved Country List,"** you should provide the following documentation in order to satisfy the requirements of The Money Laundering Regulations of the Cayman Islands:

**For Individuals:**

- evidence of name, signature, date of birth and photographic identification by way of certified government issued identification (e.g. passport or driving license)

- evidence of permanent address (e.g. original or certified utility bill)

- where possible, a reference from a bank with whom the individual maintains a current relationship and has maintained such relationship for at least two years

**For Companies:**

- a copy of its certificate of incorporation and any change of name certificate

- a certificate of good standing

- a register or other acceptable list of directors and officers

- a properly authorized mandate authorizing the company to subscribe, e.g., a certified resolution which includes the names of the authorized signatories

- a description of the nature of the business of the company

- identification, as described above for individuals, of at least two directors and authorized signatories

10

723508 12-New York Server 2A - MSW

MERS004558

- a register of members or list of shareholders holding a controlling interest

- identification, as described above for individuals, of beneficial owners of corporate shareholders which hold 10% or more of the capital shares of the company

- proof of business address

- an authorized signatory list

**For Partnerships and Unincorporated Businesses:**

- a copy of any certificate of registration or a certificate of good standing, if registered

- identification, as described above for individuals or companies (as the case may be), in respect of the general partner (unless it is exempted, in which case confirmation of the reason for exemption would be required) and at least two partners

- a properly authorized mandate authorizing the partnership or business to subscribe, e.g., a certified resolution which includes the names of the authorized signatories

- a copy of any constitutional documents, e.g., formation and/or partnership agreements

- proof of business address

- an authorized signatory list

**For Trustees:**

- identification, as described above for individuals or companies (as the case may be), in respect of the trustee

- identification, as described above for individuals or companies (as the case may be), in respect of the beneficiaries, the settlor, and any person on whose instructions or in accordance with whose wishes the trustee/nominee is prepared or accustomed to act

- evidence of the nature of the duties or capacity of the trustee

- proof of business address

- an authorized signatory list

The Fund, the Administrator and FAM reserve the right to request any additional documentation necessary to verify the identity of the Investor and the source of the Investor's payment in order to comply with Cayman Islands law. Please be aware that your failure to provide such documentation may delay acceptance of your subscription or cause your subscription to be rejected entirely. The Fund, the Administrator and FAM shall each be held harmless by any potential investor against any loss arising as a result of a failure to provide any requested documentation.

All copies should be in English and certified as being "true and correct copies of the original" by the jurisdiction in which the Investor is resident.

11

723508 12-New York Server 2A - MSW

MERS004559

**Approved Country List (as recognized by the Administrator)**

| | | | |
|---|---|---|---|
| Australia | France | Italy | Singapore |
| Austria | Germany | Japan | Spain |
| Belgium | Greece | Jersey | Sweden |
| Canada | Guernsey | Luxembourg | Switzerland |
| Cayman Islands | Hong Kong | Netherlands | United Kingdom |
| Channel Islands | Iceland | New Zealand | United States |
| Denmark | Ireland | Norway | |
| Finland | Isle of Man | Portugal | |

12

MERS004560

## PAYMENT ORIGINATION CERTIFICATION FORM

The undersigned Investor hereby certifies that the funds with respect to its investment in the Fund have been or will be transferred/wired from the following financial institution:

Name of Financial Institution — *Regions Bank*

Branch Location — *Birmingham AL*

Contact Name at Branch — *Dawn Blaeuer*

Contact Phone Number — *(501) 371- 6710*

Dollar Amount of Transfer — *$40,000,000*

Account Name — *MERS-Hedge Fund*

Account Number — *924001142*

Investor Name — *Municipal Employees' Retirement System of LA*

Signature — *[signature]*

## Source of Funds

Please summarize the sources of funds used to make this investment (for example, subscription funds were business profits (if so, state type of business), investment income, savings, etc ):

*Employer and Employee Contributions to Defined Benefit Plan*

## Distributions

The Fund and the Administrator will only transfer/wire funds distributed to an investor named in its register and reserves the right to refuse to transfer/wire funds to other third parties. The Fund reserves the right to request additional documentation if the Investor requests the Fund and the Administrator to transfer/wire funds to a bank not located in a country on the Approved Country List

13

723508 12-New York Server 2A - MSW

MERS004561

**IN WITNESS WHEREOF,** the undersigned Investor has executed this Subscription Agreement as a deed on the date set forth below.

Subscription – FIA Leveraged Fund (Series N Shares): U.S.$ _40,000,000_

ENTITY INVESTOR:                    INDIVIDUAL INVESTOR:
_Municipal Employees' Retirement System of LA_

(Print Name of Entity)                (Print Name)

By _[signature]_
(Signature)                          (Signature)

_Robert Rust, Administrative DIRECTOR_
(Print Name and Title)                (Date)

_MARCH 31, 2008_
(Date)

Witness 1 _[signature] Janet C Stevens_
Witness 2 _[signature] Jocelyn M. Gunby_

Country in which this Agreement was signed: _USA_

Date of Execution: _3/31/2008_

*    Must be over 18 years of age and of full mental capacity

14

MERS004562

INVESTOR NAME: _Municipal Employees' Retirement System of LA_

Following the Fund's acceptance of the subscription, the Administrator shall acknowledge the
subscription by way of a trade confirmation issued on behalf of the Fund.

15

MERS004563

## INVESTOR QUESTIONNAIRE FOR ENTITIES

**ENTITIES (non-individuals):  Please complete Parts I, II, III and IV of this Questionnaire.**

I.    General Information and Verification of Status as "Accredited Investor" under Regulation D

1.  Print Full Name of Investor:  *Municipal Employees' Retirement System of LA*

2.  If an Entity, Legal Form (corporation, partnership, trust, etc.):  *Govt Defined Benefit Plan*

3.  Primary Contact for All Correspondence:  *Bob Rust*

    Address:  *7937 Office Park Blvd.  Baton Rouge, LA  70809*

4.  Telephone Number:  *(225) 925- 4810*

5.  Facsimile Number:  *(225) 925- 4816*

6.  E-mail Address:  *brust @ mersla, com*

7.  Permanent Address: _____
    (if different from above)

8.  Social Security or Taxpayer I.D. No. (must be completed):  *72 - 0567355*

9.  Jurisdiction of Organization:  *LA*

10.  Date of Formation:  *1/1/1955*

11.  Nature of Business:  *Defined Benefit Plan*

12.  Jurisdictions of Operations:  *LA*

13.  Name of Authorized Person Completing Questionnaire:  *Robert Rust*

14.  Title of Authorized Person Completing Questionnaire:  *Administrative Director*

15.  Telephone Number of Authorized Person:  *(225) 925 - 4810*

16.  Facsimile of Authorized Person: _____

17.  E-mail Address of Authorized Person: _____

In addition to the Primary Contact listed above, correspondence from the Fund should also be sent to the following interested parties (e.g. Investor's financial advisor, accountant, attorney, etc.) (complete only if applicable):

1.  Name of Interested Party:  *Dawn Bloever*
    *Regions Morgan Kreegan*
    Address:  *400 W. Capitol  Ste 700*
    *Little Rock, AR  72203 -1471*

Q-1

MERS004564

2.  Telephone Number: _____ *(501) 371- 6710* _____

3.  Facsimile Number: _____ *(501) 371- 8821* _____

4.  E-mail Address: _____ *dawn, blaeuer @ regions, com* _____

1.  Name of Interested Party: _____ *CONSULTING SERVICES GROUP LLC* _____
    *ATTN' JOE MEALS*
    Address: _____ *6075 Poplar Ave. Ste 700 Memphis, TN 38119* _____

2.  Telephone Number: _____ *(901) 761-8080* _____

3.  Facsimile Number: _____ *(901) 682 -4090* _____

4.  E-mail Address: _____ *JOE, MEALS @ CSGLLC. com* _____

1   Name of Interested Party: _____

    Address: _____

2.  Telephone Number: _____

3.  Facsimile Number: _____

4   E-mail Address: _____

The Investor represents and warrants that it is an "accredited investor" within the meaning of Regulation D under the Securities Act and has initialed the applicable statements below pursuant to which the Investor so qualifies.

PLEASE INITIAL ALL APPLICABLE STATEMENTS BELOW

1   *Hv*  The Investor has total assets in excess of $5,000,000 AND was not formed for the specific purpose of acquiring the securities offered, AND is any of the following:
    *   a corporation;
    *   a partnership;
    *   a Massachusetts or similar business trust; OR
    *   an organization described in Section 501(c)(3) of the Code

2   _____  The Investor is any of the following:

    *   a trust, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000 and whose purchase is directed by a sophisticated person;
    *   a bank, or any savings and loan association or other institution acting in its individual or fiduciary capacity;
    *   a broker or dealer;
    *   an insurance company;
    *   an investment company or a business development company under the Investment Company Act of 1940, as amended;
    *   a private business development company under the Investment Advisers Act of 1940;

723508 12-New York Server 2A - MSW

Q-2



 Emailed

## Confirmation of Order Received

MUNICIPAL EMPLOYEES RETIREMENT SYSTEM
7937 OFFICE PARK BLVD
BATON ROUGE LA 70809
USA

| | |
|---|---|
| Date | : Apr-07-2008 |
| Fund ID | : 111N05 |
| Holder ID | : 00316916 |
| Account ID | : 00316916 |
| Order No. | : 10121705 |
| FAX Number | : 1 225 925 4816 |

ROBERT L. RUST
Account: MUNICIPAL EMPLOYEES RETIREMENT SYSTEM OF LOUISIANA

### FIA LEVERAGED FUND SERIES N

We confirm receipt of your instruction to SUBSCRIBE to
FIA LEVERAGED FUND SERIES N at the next dealing date

| | |
|---|---|
| Trade Date | Apr-01-2008 |
| | |
| Valuation/NAV Date | Apr-01-2008 |
| Type of transaction | Subscription |
| | |
| Amount | USD    40,000,000.00 |

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (345) 949 3977 Fax: (345) 949 3877 E-mail: caymanweb@citco com

*Windward I, 2nd Floor*
*Regatta Office Park*
*West Bay Road*
*P.O. Box 31106*
*Grand Cayman KY1-1205*
*CAYMAN ISLANDS*

*caymanweb@citco.com*
*www citco com*

*Phone: +1 345 949 3977*
*Fax: +1 345 949 3877*

MERS004566

**Emailed**

4|8|08



CITCO

*Citco Fund Services
(Cayman Islands) Limited*

MUNICIPAL EMPLOYEES RETIREMENT SYSTEM
7937 OFFICE PARK BLVD
BATON ROUGE LA 70809
USA

ROBERT L RUST
Account name: MUNICIPAL EMPLOYEES RETIREMENT SYSTEM OF LOUISIANA

| | |
|---|---|
| Fund ID | : 111N05 |
| Holder ID | : 00316916 |
| Account ID | : 00316916 |
| Contract No. | : 31057905 |
| Date | : Apr-09-2008 |
| Order No. | : 10121705 |
| FAX Number | : 1 225 925 4816 |
| Email | : BRUST@MERSLA.COM |

### FIA LEVERAGED FUND SERIES N

In accordance with your instructions we confirm having ISSUED the following shares in FIA LEVERAGED FUND SERIES N

| | | |
|---|---|---|
| Valuation/NAV Date | | Apr-01-2008 |
| Trade Date | | Apr-01-2008 |
| Total Consideration | USD | 40,000,000.00 |
| Net Proceeds | USD | 40,000,000.00 |
| Subscription Price | | 1,000.00 |
| No. of shares Issued | | 40,000.00 |
| Total Consideration Received to Date | USD | 40,000,000.00 |

Your balance following this transaction will be 40,000.00 shares.

For more information or any inquiries, please contact Citco Investor Relations Group
Tel: (345) 949 3977 Fax: (345) 949 3877 E-mail: caymanweb@citco.com

Windward I, 2nd Floor
Regatta Office Park
West Bay Road
P O Box 31106
Grand Cayman KY1-1205
CAYMAN ISLANDS

caymanweb@citco.com
www.citco.com

Phone: +1 345 949 3977
Fax: +1 345 949 3877



MERS004567