# Exhibit 6

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

FIREFIGHTERS' RETIREMENT SYSTEM, *et al.*,
Plaintiffs,
v.
CITCO GROUP LIMITED, *et al.,*
Defendants.

Civil Action No.
13-cv-00373-SDD-SCR

---

**Report of James C. Spindler**

**April 16, 2018**

1

**Table of Contents**

I.   Introduction and summary of opinions .................................................................3

  A.   Scope of report and expertise ...................................................................3

  B.   Summary of conclusions ...........................................................................3

    1.   Typical practices and investor expectations in private securities offerings .......3

    2.   Misleading statements and omissions in the period leading up to Plaintiffs' investment ......................................................................................4

    3.   Misleading statements and omissions in the continuing disclosures ..............5

    4.   Citco's role as a control person of the Fletcher System ....................................6

    5.   Citco's knowledge of the disclosures ................................................................7

  C.   Discovery documents reviewed ................................................................7

II.   Typical practices and disclosure mechanics .......................................................8

  A.   General disclosure practices in private offerings ..................................................8

  B.   Reasonable investor expectations of disclosure in the private fund investment context .......................................................................................9

III.   Material misstatements and omissions in the offering of securities to Plaintiffs 13

  A.   Representations made to investors ..............................................................13

    1.   Preferential return and subordination of non-Series N investors ...................15

    2.   Capital cushion and lock-in of the subordinated investments. .......................16

    3.   Valuation of the fund and calculations of NAVs .............................................17

    4.   Use of proceeds .............................................................................................19

    5.   Oversight, governance, and alignment of Citco's and Plaintiffs' interests as co-investors ..........................................................................................19

    6.   Investment strategy .......................................................................................21

  B.   Misstatements and omissions ..................................................................23

    1.   Preferential return and subordination on non-Series N ...................................26

    2.   Capital cushion and lock-in of subordinated investments .............................27

    3.   Valuation of the fund and calculation of NAVs .............................................28

    4.   Use of proceeds .............................................................................................28

    5.   Oversight, governance, and undisclosed conflicts of interest .........................29

    6.   Investment strategy .......................................................................................30

IV.   Continuing misstatements and omissions ......................................................30

V.   Citco's relationship with Fletcher System and aspects of control .....................34

VI.   Citco's knowledge of the disclosures and their falsity .......................................36

VII.   Conclusion .................................................................................................38

## I.    Introduction and summary of opinions

### A.  Scope of report and expertise

I have been asked to prepare this report for the litigation captioned as
*Firefighters' Retirement System, et al., v. Citco Group Limited et al.*, Civil Action No. 13-
cv-00373-SDD-SCR, currently pending in United States District Court, Middle District
of Louisiana.  In preparing this report, I have considered matters pertaining to typical
and customary practices in private securities offerings, the role of disclosure in private
fund investment, and the functions performed by various capital markets participants.

My expertise extends to the matters discussed in this report.  I am the Sylvan
Lang Professor of Business Associations at the University of Texas School of Law and a
Professor at the University of Texas McCombs School of Business.  My academic
research and teaching focus on areas relevant to this litigation, including securities
law, capital markets, disclosure, investment companies, and private equity.  I hold an
A.B. from Princeton, a J.D. from Harvard Law School, and a Ph.D. in economics from
UCLA, with concentrations in microeconomics and asset pricing.  Formerly, I practiced
in corporate law, credit, and securities regulation with Cravath, Swaine & Moore LLP
in New York and Hong Kong.  My full c.v. is attached as Exhibit A.

### B.  Summary of conclusions

My conclusions, in summary, are as follows:

### 1.  Typical practices and investor expectations in private securities offerings

It is typical in private offerings of securities that the issuer provides significant
disclosures, often resembling those in public offerings.  Investors have the general

understanding (and right to expect) that any disclosure made is accurate and not misleading. Omissions of information that render statements materially misleading are actionable. Examples of important information that reasonable investors in a securities offering by an investment fund expect to be told include use of proceeds; the fund's investment strategy; how assets are valued; the investors' preference and priority of payment, if any; the oversight to which the fund is subject, and by whom; and the fund's pending debt, obligations, or other factors' affecting its liquidity and solvency.

**2. Misleading statements and omissions in the period leading up to Plaintiffs' investment**

Plaintiffs were led to believe that they were investing in a reputable fund with a solid history and substantial assets; that the asset valuations supported the investment; that Plaintiffs' investment would be used to purchase assets in line with the funds' stated investment policies; and that Citco, as an administrator, control person of the fund, and subordinated investor, would provide oversight and had interests that were substantially aligned with those of the Plaintiffs. The specific representations made to Plaintiffs in this vein covered highly important issues such as the Plaintiffs' preference in return and liquidation, subordination and lock-in of the non-series N investors (which comprised Citco), automatic redemption upon the depletion of the subordinated capital cushion, the periodic valuation (NAV) process in which Citco was to participate, and the governance of the Leveraged fund.

In reality, Plaintiffs' investment was largely used to fund a secret scheme to unwind Citco's investments and to finance the sale of Citco-controlled assets to Fletcher. The representations made to Plaintiffs were materially misleading. In

4

particular, the offering documents that Plaintiffs received and other representations made to Plaintiffs failed to disclose that:

- Most of the offering proceeds were not used to purchase assets, but rather to pay fees, cash out Citco investments, repay Citco loans, and finance Fletcher's purchase of assets from Citco and Citco personnel;

- There were known problems with regard to the Fletcher Funds' valuations and valuation process, as noted by Citco at the time, and these valuations appeared to be inflated;

- Citco was in the process of unwinding its relationships with Fletcher after determining him and his funds to high risk and of dubious reliability;

- Citco and Fletcher were engaging in self-interested transactions;

- The Plaintiffs' investment preferences and equity cushion were illusory, and the protections Plaintiffs were to receive were not going to be observed; and

- Leveraged's investments violated its stated investment policies.

Had Plaintiffs received this information prior to investing in the non-Series N shares, it is highly probable that Plaintiffs would not have invested.

### 3. Misleading statements and omissions in the continuing disclosures

After the Plaintiffs' investments, Plaintiffs received reports from the Fletcher Funds and Citco but continued to be misled in several important and material ways that prevented them from exercising their right to redeem their investments or take other mitigating actions. In particular, neither the Fletcher System nor Citco ever disclosed:

- The redemption and depletion of the non-Series N shares, which Plaintiffs had been told would secure their preference and provide an equity cushion to reduce risk;

- The use of related-party promissory notes to prop up the valuations of the funds;

- Questionable methodologies used to calculate NAVs, and asset valuations that Citco did not believe were accurate;

- The use of Plaintiffs' investments to direct payments to Citco and other insiders, instead of purchasing actual assets for the Fletcher Funds;

- The growing risk of insolvency and illiquidity; and

- The failure to follow stated investment policies.

Had Plaintiffs received any of this information, which was all clearly material, it is highly probable that Plaintiffs would have chosen to redeem their investments.

### 4. Citco's role as a control person of the Fletcher System

Citco served in multiple important capacities with regard to the Fletcher System which afforded it significant control over Fletcher and his funds. In addition to its stated roles as the fund administrator, Citco was an important investor in the Fletcher System, held all of the voting shares and could appoint or remove directors of Leveraged, acted as banker to the Fletcher System (holding a loan on which the Fletcher System was in default), and sold assets to Fletcher. Importantly, Citco was instrumental in securing the non-Series N consents; these consents were necessary to consummate the sale of securities to Plaintiffs, since the non-Series N were to provide the Plaintiffs' preference and equity cushion, and Citco held the right to vote all of them. Citco held far-reaching control rights, and actual control, over the Fletcher System at the time of Plaintiffs' investment and until Citco subsequently wound down

its relationship with Fletcher.  This control was advantageous to Citco, as Citco benefitted significantly from the sale of securities to Plaintiffs, and also benefitted from the misleading statements and omissions discussed above.

### 5. Citco's knowledge of the disclosures

The record reflects that Citco personnel received the Fletcher Funds' disclosures prior to their being made, and had the opportunity to review and correct the disclosures.  As administrator of the Fletcher Funds, Citco knew that its role would be discussed in the disclosures, and had an obligation to understand the terms and conditions of Plaintiffs' investments.  Further, Citco had significant pecuniary incentives, as a subordinated investor and creditor, to be apprised of the terms and conditions of the Plaintiffs' investment.  Citco was directly involved in soliciting the non-Series N consents to be subordinated to Plaintiffs' preferred position, and would have needed to understand the terms of the Plaintiffs' investment to make such a decision.  Citco and Citco personnel were directly involved in the sale of assets to Fletcher, which Citco had reason to know were financed with Plaintiffs' funds.

### C. Discovery documents reviewed

In preparing this report, I have received from counsel to Plaintiffs and reviewed the documents listed in the attached Exhibit B.

In addition, I have reviewed the Trustee's Report and Disclosure Statement, ECF No. 327 (Nov. 25, 2013), in the case of In re Fletcher Intl., Ltd., No. 12-12796 (REG), United States Bankruptcy Court, Southern District of New York ("Trustee Report").

I have also reviewed the responses of the Louisiana Funds to the Contention Interrogatories of Citco dated April 15, 2018.  A summary of the Louisiana Funds'

Contentions in this case are set forth in Exhibit C.  For purposes of this report, I have assumed the accuracy of the facts set forth in Exhibit C.

## II.      Typical practices and disclosure mechanics

### A. General disclosure practices in private offerings

In a private offering of securities made solely to accredited investors, there is often no legal requirement that the issuer of securities disclose any information.  The rationale for such an exemption is that accredited investors are assumed to be adequately sophisticated so as to negotiate for the disclosure, if any, that they require. It is common that the purchase documentation specifies the disclosure, if any, that will be made, as well as the specific documents or information, if any, on which the buyer is relying.  In some cases, the investors may be as well or better informed than the sellers, and it is possible to have a private offering in which the seller makes no disclosure.

Even though disclosure may not be required under the law, the vast majority of private offerings (even those solely to accredited investors) do include disclosures from the issuer, and often significant amounts of disclosure.  In fact, the form and substance of these disclosures very often tracks what is found in public offerings under the U.S. securities laws.  The practical, economic reason that disclosure persists, despite the lack of legal requirement, is that the issuer is often the best or only source of information about the investment, and it is a common sentiment in the securities industry and academy that U.S. public securities disclosure is the gold standard, even where U.S. public disclosure requirements do not apply.  Further, standardization of disclosure terms helps in making comparisons between investments; this is why, for instance, GAAP accounting standards may be used in a

private deal, even though the parties would otherwise be free to utilize alternative accounting methodologies.

To the extent that the sellers of securities make disclosure, that disclosure must be accurate and not be misleading about the facts being asserted. Omissions as well as affirmative misstatements are actionable, if the omissions are required to make a statement not materially misleading. Thus, a seller of securities cannot make a statement that is technically true, but which is overall materially misleading and fails to include facts that would cast the statement in a materially different light. "Materiality" is generally interpreted to mean that which a reasonable investor would find important in making an investment decision; this includes the price at which to buy or sell, as well as the decision of whether to buy or sell at all.

One of the requirements of private offerings of securities in the U.S. is that the investors must generally be sophisticated, such that they are able to demand the information that they require and process it in a way so as to make an informed investment decision. One common way of being constructively sophisticated, which is accepted in U.S. law, is by representation: an otherwise unsophisticated investor can be made sophisticated by virtue of a sophisticated representative who either advises the investor or makes decisions on the investor's behalf. Even where the investing client is presumptively sophisticated, as with institutional investors or other accredited investors, it is common for the investor to delegate the responsibilities for information gathering, and even decision-making, to others.

**B. Reasonable investor expectations of disclosure in the private fund investment context**

In this case, the Plaintiffs invested into one particular Fletcher System fund, Leveraged. Leveraged was an open-end, exempt investment company that purported

to invest its offering proceeds into another Fletcher System fund, named Arbitrage.
From a presentation made to Plaintiffs and a term sheet circulated prior to Plaintiffs'
investment,[1] the basic terms of the Plaintiffs' investment included the following:

- The fund had a successful and profitable history, with a 9.2% return
  since launch, suffering no monthly return lower than -1.34%;

- Plaintiffs' investment would be protected by the subordination of an
  existing $50 million investment (held by Citco) to Plaintiffs' investment;

- Plaintiffs would receive a preferred return of 12% to 18% per year, with
  any income shortfall coming out of the subordinated investment;

- The subordinated investment was locked-in, with Plaintiffs receiving a
  prior redemption right and an automatic redemption in the event that
  the subordinated investment fell in value to less than 20% of Plaintiffs'
  investment;

- Plaintiffs would receive seniority in liquidation;

- The fund's investment strategy was to make liquid private investments in
  publicly-traded securities;[2]

---

[1] See Exhibit 8 (email from Denis Kiely to Magris and Unternaehrer of Citco attaching draft
term sheet); Investment Committee Meeting Fire Fighters Retirement System dated March 13,
2008 at FRS006895 – 6900, 6904.

[2] See Investors' Committee Meeting Fire Fighters Retirement System dated March 12, 2008 at
11 (Kiely: "Our main business is finding publicly-traded companies that need capital and
structure and [sic] direct investments."); at 17 (Kiely: "our main business has been... we find
good, solid, mid-sized publicly-traded companies that need capital and we structure direct
investment with them. We're not buying stock in the market, hoping to invest. We're looking
to buy preferred stock, convertible debt or common stock rights with all kind of options and

- The Plaintiffs' investment was subject to a two-year lock up period, during which the investment could not be freely redeemed;

- Monthly NAV calculations would be published by an independent administrator (Citco).[3]

Overall, Plaintiffs believed that they were entering into a relatively low risk situation, in which they were to receive a substantial preferred return. Risk mitigation was to be achieved through the subordination and lock-in of Citco's $50 million investment, as well as the liquid nature of the underlying investment assets. Further, Citco's role as administrator (which included pricing the NAVs), combined with its

---

protection…. That's the heart of this business. That's what we do every day."); at 18 - 19 (Kiely: "We're not looking to buy stock that we can't sell. We're buying convertible preferred stock generally – our initial position is no more than 5 percent of the company's market debt. And that very important 5 percent is no more than a couple of weeks' trading. What that means is, when we make an investment, unlike a debt holder or a real estate holder or a private equity investor, we can liquidate in a matter of weeks…. Everything that we're doing, even if we're buying preferred stock or debt, we want to be able to get our money back in short order…. We can convert every instrument we have into common stock and sell it in the market."); see also Presentation to Firefighters' Retirement System of Louisiana dated March 12, 2008 (Exhibit 40011) at 5 ("Constructive transactions that strengthen select public companies."); at 7 ("Quantitative Screening for Focused Research[:] 5% of issuer's shares, one week's volume"); at 8 ("Relationship-Oriented Approach that Strengthens Select Public Companies… initial investment at market or premium to market prices").

[3] See also Fire Fighters Retirement System Investment Committee Meeting dated March 12, 2008 at 2 – 3) ("Mr. Stockstill: … What information do you have to verify what the returns are?… "Mr. Kiely: Monthly [statements]. And you'll get that directly from the administrator, Citco, independent of us.")

position as absorbing the first loss on the assets, would have given the Plaintiffs comfort that Fletcher was subject to meaningful oversight; based on these terms, Plaintiffs would have believed Citco's interests were substantially aligned with theirs.

Given this background and investment objective, there are several areas of information that would be of material importance and which an investor in Plaintiffs' position would expect to be made aware of. Such typical and expected disclosures would include:

- Any manifest reason to believe future returns would differ from historical performance;

- A comprehensive statement of the fund's fee obligations, including outstanding or deferred fees, which directly diminish investor returns;

- Anything that would diminish the Plaintiffs' security, such as any reason to believe the subordinated equity investment was not, in fact, locked in for 10 years;

- Any conflicts of interest of the subordinated investor, Citco, that would tend to reduce the fidelity or reliability of the monitoring that they were to provide;

- Any deviations from the stated investment strategies of providing direct investment to publicly traded companies, which investments were to be highly liquid;

- An accurate and detailed description of the NAV calculation, and prompt notification of any discrepancies from those stated procedures; and

- Any concerns over the price at which the Plaintiffs were buying in, which was based upon Citco's calculation and publication of the NAV, and any suspected problems with asset valuations generally.

In sum, while the sale to Plaintiffs was a private transaction, and not subject to mandatory disclosure rules under U.S. law, Plaintiffs had received a great deal of information from the issuer which gave rise to certain reasonable expectations on their behalf. This information included substantial reassurance about the risks of failing to achieve expected returns or losing the investment of principal. These risk-mitigation measures included the Leveraged fund's liquid investment strategy as well as the existence of a substantial, locked-in, subordinated investment that stood to take the first losses. Finally, the role of Citco was trumpeted as a further safeguard; as the first-loss taker, Citco's responsibility for calculating asset values would reasonably be expected to keep Fletcher on the straight-and-narrow.

## III.    Material misstatements and omissions in the offering of securities to Plaintiffs

As is typical in private fund offerings, the Fletcher System made substantial disclosures relating to the Series N issuance as well as regarding the Fletcher System more generally. These disclosures covered a range of issues that are typically important to investors, such as the preferences and priority the Series N investors expected to receive, the process and methods of computing the fund's value from time to time (the NAV), the use of the investment proceeds, the services and oversight that the fund administrator (Citco) would provide, and the investment policies that would guide the Leveraged fund's behavior. However, as it turns out, many of these representations were materially misleading, and numerous facts were omitted that should have been disclosed in order to make these representations not misleading. I describe this in detail below.

### A. Representations made to investors

According to the FIA Leveraged Fund Subscription Agreement, Series N Shares dated March 31, 2008, the Plaintiffs were allowed to rely[4] upon information as set forth in the offering memorandum, as well as any supplements thereto.[5]  The primary offering document for the Plaintiffs, the Supplement,[6] incorporates by reference a number of other documents, and also provides for additional information to be provided to the investors by both Citco[7] and the Leveraged fund.[8]  Given the language of the Subscription Agreement and of the Supplement, the Plaintiffs had the reasonable expectation that they could rely upon the offering documents (which also incorporate by reference certain other documents) as well as supplemental information provided by either Citco or the Leveraged fund, whether written or oral, and without regard to the particular form that it takes.  So, for instance, while the Supplement

---

[4] See N0FF00484B_ATTACHMENT_001-5 (NOFF Subscription Agreement) at §2(f); see also FRS021095 (FRS Subscription Agreement), MERS004522 (MERS Subscription Agreement).

[5] The term "Memorandum" is defined as "the Confidential Memorandum dated March 2008 with respect to the offering of Series N Shares" along with the "Offering Memorandum of the Master Fund and any Supplements thereto delivered to the undersigned [investors]."  The term "Supplements" is not defined.

[6] See Supplement to the Confidential Memorandum of FIA LEVERAGED FUND Relating to Series N Shares, dated March 2008 (Exhibit 38).

[7] See Supplement at 2 (Citco Fund Services (Cayman Islands) Limited ("the Administrator") will make available to each prospective investor ... the opportunity to ask questions ... and to obtain any additional information....").

[8] See Supplement at 41 ("ADDITIONAL INFORMATION[:] The Fund will make available to any prospective shareholder any additional information which it possesses... necessary to verify or supplement the information set forth herein."  Section 3(f) of the Subscription Agreement also provides that the Fund has made such information available to the investors.

does not contain a calculation of the fund's value at the time (the NAV), an investor who received a NAV calculation from either the Fletcher System (which represented the Leveraged Fund) or Citco would have the right to rely upon that statement.[9]  In this case, with its broad and non-specific language, it appears that the parties intended for Plaintiffs to be able to rely upon a wide range of information.

My review of the record indicates that the Fletcher System made the following important representations to Plaintiffs, all of which were highly material:

### 1. Preferential return and subordination of non-Series N investors

Plaintiffs' investment was to earn a preferred 12% to 18% annual return.[10]  Any shortfalls of fund returns were to be funded from the subordinated, non-Series N (Citco's) accounts.[11]  So, for instance, even if the Leveraged fund earned zero dollars in the first year, the Plaintiffs would still earn their minimum 12% return (roughly $12

---

[9] In addition to general reliance on information for making an investment decision, the Subscription Agreement contains similar language with regard to the particular issue of "suitability."  In the securities industry, this is a more narrow issue about whether the investment's type (e.g., an illiquid security that cannot be readily sold) is suitable for the purchaser.  See Subscription Agreement §3(d) ("In evaluating the suitability of an investment in the Shares, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth in the Memorandum and independent investigations by the Investor."); see also Subscription Agreement §3(k) and §9.

[10] See Supplement at 11, 24, 27.

[11] See Supplement at 24 ("in the event that net profit is not sufficient to pay the Preferred Return or reallocation," the non-Series N Shares are to have their Net Asset Value "decreased by ... its pro rata share of the reallocation to the Series N Shares.").  See also Supplement at 27 - 28.

million); this amount would come out of the subordinated, non-Series N investor accounts.   Further, in the event of liquidation of the fund, Plaintiffs' were to be paid first their preferred return, and only after that would the subordinated, non-Series N investors receive anything.[12]

### 2. Capital cushion and lock-in of the subordinated investments.

In order to ensure that the Plaintiffs' preference and prior redemption rights were meaningful, the subordinated investors were required to remain invested in the Leveraged Fund, and not be redeemed prior to the redemption of Plaintiffs' investment. This is true of subordinated capital generally:  if it can be pulled out at will prior to the senior capital, then it is not really subordinated.  The non-Series N Shareholders – managed and controlled by Citco – consented to this subordination.[13]  The Plaintiffs were informed that the subordinated $50 million investment was locked in for 10 years,[14] whereas the term of Plaintiffs' investment was just two years.

Further, in order to ensure that the Plaintiffs could not be deprived of their capital cushion and preference rights via a redemption or impairment of the

---

[12] See Articles of Assocation §11(g).

[13] See Exhibit 88 (Global Hawk consent executed by CTC, dated March 28, 2008); Exhibit 589 (email to Citco executives attaching consent request and offering documentation, dated March 27, 2008); Exhibit 446 (consent from Richcourt, executed by Citco, dated March 28, 2008); Exhibit 537 (email chain dated March 21, 2008, with Gabriele Magris expressing consent on behalf of Series 3; Supplement and subscription book attached).

[14] See Investment Committee Meeting dated March 12, 2008 at 11 (Denis Kiely stating to Plaintiffs: "Citco Fund Services, which is the largest hedge fund administrator in the business... ha[s]... approximately $50 million in that fund, which is locked up for ten years."); 12 (Question:  "Are there any calls on this?"; Kiely's answer: "No. It's locked up.").

subordinated investment, the Plaintiffs were to receive automatic redemption rights in the event of either redemption or impairment of the subordinated investment. Regarding redemption of the non-Series N, the offering Supplement provided, accordingly, that "[n]otwithstanding anything to the contrary herein contained, Series N shares must be redeemed no later than the business day prior to the shares of Series 4, 5, and 6 of the Fund being redeemed."[15]  There was no exception to this provision.

As a second and distinct protective bulwark, the Plaintiffs also received protections in the event that the capital cushion should decline in value.  Regarding impairment of the non-Series N investment, the Supplement provided that, "[n]otwithstanding the foregoing, a redemption of the Series N Shares will automatically occur on any Valuation Date on which the aggregate value of the Investment Accounts of Series 1, Series 3, Series 4, Series 5 and Series 6 shareholders … falls below 20% of the aggregate value of the Investment Accounts of the Series N shareholders…."[16]   Thus, for instance, if the Plaintiffs' preferred return ate too deeply into the non-Series N accounts, Plaintiffs would be automatically redeemed out. Again, there was no exception to this provision.

### 3.  Valuation of the fund and calculations of NAVs

The Plaintiffs' investment was to be made at an issuance price determined by the calculation of the fund's value, or NAV, as of that time.[17]   The obvious implication of such a statement is that the price, determined by the valuation, was fairly

---

[15] Supplement at 10; see also Supplement at 25.

[16] Supplement at 10; see also Supplement at 27.

[17] See Supplement at 1 ("Series N Shares are offered at net asset value on each date of issuance.").

calculated and also, in fact, fair; this is a general fact of open-end investment companies.  According to the Articles of Association, the applicable offering memorandum generally controlled the valuation process.[18]  The Supplement provided that Citco, as Administrator, was charged with "preparing or procuring... monthly reports regarding the Fund's estimated performance and Net Asset Value per Share," as well as "computing and disseminating the Net Asset Value of the Fund's Shares in accordance with the Memorandum and Articles of Association of the Fund."[19]  The Supplement also elsewhere provides that hard-to-value assets "shall be assigned such fair value as the Investment Manager, in consultation with the Board of Directors and the Administrator, shall determine in good faith to reflect its fair value."[20]  In general, the Supplement provides that the "Net Asset Value calculation is made by the Board of Directors in consultation with the Administrator and Investment Manager, and year end Net Asset Value calculations will be reviewed by the Fund's independent auditors."[21]  Overall, these disclosures indicated to Plaintiffs that the valuation process would be overseen by Citco, as Administrator.  Further, these disclosures, along with the subordination of Citco's investment, would provide substantial confidence that Citco, in line to take the first loss, would keep a watchful eye on valuation issues.

---

[18] See Leveraged Articles of Association as amended (redlined) March 2008 §223(b), (c), and (d) ("unless otherwise provided by the terms of any applicable Offering Memorandum....").

[19] Supplement at 21.

[20] Supplement at 24.

[21] Supplement at 24 – 25; see also Arbitrage Memorandum at 32 (LPF-C-00015404).

### 4. Use of proceeds

According to the Supplement, "[a]ll assets of the Fund... will be invested in [Arbitrage]."[22]  Further, the Supplement indicated that the Plaintiffs' investment would be leveraged three-to-one by the borrowing of additional funds.[23]  Such statements would indicate to an investor that their investment will be used to buy assets for the fund (in conjunction with the stated investment policies), and that, moreover, the effect of the investment will be magnified through the use of borrowing.  In the Plaintiffs' case, having made a $100 million investment with the assurance that other investors in the fund were locked in and subordinated, they could have reasonably expected that the intention was that all of their principal of $100 million, plus as much as could be borrowed up to $300 million, would have been used by Leveraged to invest in Arbitrage, which would then buy other assets with those funds.

### 5. Oversight, governance, and alignment of Citco's and Plaintiffs' interests as co-investors

One level of assurance that Plaintiffs were to have in the performance and fidelity of the Fletcher System was Citco's oversight as administrator.  Citco's role, as described, was significant and bore directly on Plaintiffs' confidence that their negotiated terms would be honored, and that the disclosures (including the NAV

---

[22] Supplement at 1; see also Supplement at 7 ("the investment manager is required to invest all net proceeds into the Master Fund."), 27 ("USE OF PROCEEDS[:]  Proceeds received by the Fund from the sale of Series N Shares, after applicable offering and organizational expenses, will be used by the Fund in its investment program.").

[23] See Supplement at 1, 17 ("For every dollar of investor capital, the Fund will seek to borrow three dollars to invest in the Master Fund.").

reports) both pre- and post-investment were accurate.[24]   According to the Supplement and Arbitrage Memorandum, Citco's service as Administrator of the fund included "all actions related to the issuance and transfer" of shares; "performing all acts related to redemption" of shares; accounting, record keeping, and preparation of reports and monthly statements of fund performance and NAV; and "computing and disseminating the Net Asset Value of the Fund's Shares in accordance with the Memorandum and Articles of Association...."[25]   Citco was also designated as the investors' source of information.[26]

The disclosures also indicated an important governance role for Citco:  Citco was to provide "officers to Act as Secretary" for both Leveraged[27] and Arbitrage,[28] and to provide directors of Arbitrage.[29]   Finally, the Supplement indicates that Citco has voting control over Leveraged:  the Leveraged capital structure consisted of 4,999,900 shares "and 100 voting management shares... held by Millenium (Cayman Islands)

---

[24] See, e.g., Presentation to Firefighters' Retirement System of Louisiana, dated March 12, 2008 ("Rigorous Procedures[:] Multiple Parties External to FAM Monitor the Funds..." and stating that Citco provided weekly and monthly monitoring).

[25] Supplement at 21; see also Arbitrage Memorandum at 15378.

[26] See Supplement at 2 (""Citco Fund Services (Cayman Islands) Limited (the 'Administrator') will make available to each prospective investor or its authorized representative the opportunity to ask questions of, and receive answers from, the Administrator concerning the terms and conditions of this offering, including subscriptions, redemptions or net asset value, and to obtain any additional information, to the extent that the Administrator possesses such information or can acquire it...").

[27] Supplement at 21.

[28] See Arbitrage Memorandum at LPF-C-00015401.

[29] See Arbitrage Memorandum at LPF-C-00015401.

Foundation, an affiliate of the Adminstrator."[30]  This gave Citco the right to appoint or remove directors.[31]  This role was especially important since Citco was also the subordinated investor:[32]  as the investor first in line to take losses, Citco would have an incentive to encourage prudent behavior and oversight on the part of the Fletcher System.[33]

### 6. Investment strategy

Overall, the Fletcher System represented to Plaintiffs that Leveraged made private investments in public companies (known in the securities industry as PIPEs), and stressed the readily liquid nature of these investments.  In a meeting with Plaintiffs on March 12, 2008, Denis Kiely, of the Fletcher System, stated:

---

[30] Supplement at 22; see also Leveraged Articles of Association §§11(c), 12.

[31] See Articles of Association (Exhibit 1155) §§88 – 89 (appointment and removal of directors by Ordinary Resolution), §66 (allowing appointment or removal of directors as part of general meeting), §77 (providing for voting rights, subject to voting restrictions), and §2 (definitions of Management Shares and Participating Shares).

[32] See Fire Fighters Retirement System Investment Committee Meeting, dated March 12, 2008 at 10 – 12 (FRS007153).

[33] See Fire Fighters Retirement System Investment Committee Meeting, dated March 12, 2008 at 14 (Denis Kiely stating:  "Let's step back to why the other investor [Citco] is willing to do that [be subordinated and locked in].  They've been investing with us for the last, I think 11 years.  They've been with us since the beginning.  And if you look at the underlying returns, Page 16, so this fund has been around since 1997 and it's never had a losing month.  So they know that – they're the administrator of the fund.  They know what is in the fund, and they've worked with us for a decade.  So they're very comfortable taking that first loss piece because they see the environment we're in now. "

- "Our main business is finding publicly-traded companies that need capital and structure and [sic] direct investments.");[34]

- "[O]ur main business has been… we find good, solid, mid-sized publicly-traded companies that need capital and we structure direct investment with them.  We're not buying stock in the market, hoping to invest.  We're looking to buy preferred stock, convertible debt or common stock rights with all kind of options and protection….  That's the heart of this business.  That's what we do every day."[35]

- "We're not looking to buy stock that we can't sell.  We're buying convertible preferred stock generally – our initial position is no more than 5 percent of the company's market debt.  And that very important 5 percent is no more than a couple of weeks' trading.  What that means is, when we make an investment, unlike a debt holder or a real estate holder or a private equity investor, we can liquidate in a matter of weeks…. Everything that we're doing, even if we're buying preferred stock or debt, we want to be able to get our money back in short order…. We can convert every instrument we have into common stock and sell it in the market."[36]

The Fletcher System also presented Plaintiffs with a pitch book at the March 12, 2008 meeting, which again stressed the public and liquid nature of the subject companies in which the funds invested.  This pitch book characterized the fund's

---

[34] Investor meeting dated March 12, 2008, at 17.

[35] Investor meeting dated March 12, 2008, at 11.

[36] Investor meeting dated March 12, 2008, at 18 – 19.

investments as "[c]onstructive transactions that strengthen select public companies."[37]
These investments were also limited in size ("5% of issuer's shares, one week's
volume") to promote liquidity.[38]

### B. Misstatements and omissions

My review of the record indicates that many of the representations discussed
above were untrue at the time made (or, to the extent that they referred to actions to
be undertaken in the future, the Fletcher System and Citco had no intention of
undertaking those actions). Further, the Fletcher System and Citco each failed to
make any corrective disclosure. Instead, the record reflects that the Fletcher System
and Citco intended to use Plaintiffs' investment for purposes serving their own ends,
and this plan was facilitated by the misstatements and omissions.

First, the record reflects that Citco harbored suspicions about, and
dissatisfaction with, Fletcher and the Fletcher System.[39] These suspicions stemmed
from significant red flags regarding the soundness and credibility of the Fletcher

---

[37] Presentation to Firefighters' Retirement System of Louisiana dated March 12, 2008 at 5; see
also id. at 8 ("Relationship-Oriented Approach that Strengthens Select Public Companies…
initial investment at market or premium to market prices").

[38] Presentation to Firefighters' Retirement System of Louisiana dated March 12, 2008 at 7

[39] See Exhibit 576 (email from Albert van Nijen dated March 7, 2009, providing a "summary of
the main findings (risk indicators) reported through several memoranda during the years 2004
– 2008."); Exhibit 762 (Citco internal "Fletcher memorandum" dated May 2007, noting among
other things that asset valuations are "aggressive," the funds have liquidity issues, and
"insufficient collateral" for outstanding obligations); Exhibit 568 (Citco Fund Services Audit
Report July 2007); Exhibit 644 (email among Luckman and Unternaehrer dated September 28,
2007 expressing agreement to "not keep[]" Fletcher).

System's operations, as well as an inability to make good on its obligations to Citco.[40]
Citco's own documents, generated in the time leading up to the sale to Plaintiffs,
illustrate concerns about "aggressively priced" asset valuations,[41] "shenanigans"
within the Fletcher System,[42] and a general concern with risks associated with
Fletcher and the Fletcher System.[43]

Second, the record reflects that Citco had determined by this point to sever ties
with the Fletcher System and unwind its Fletcher related investments.[44] This decision
was based at least in part on distrust of and dissatisfaction with the Fletcher System,
as above.  One consequence of this is that Citco's interests were, secretly, antagonistic
to those of the Plaintiffs:  the Plaintiffs were buying into the fund, while Citco was
looking to sell out, and in particular Citco was allowing Fletcher to use the Plaintiffs'
investment to finance the unwinding of Citco's positions.  This included redemptions

_____

[40] See, e.g., Exhibit 50 (Email chain dated December 7, 2007 among Wiekert Weber (Citco) et al
regarding CBC blocking payments out of FIAL); Exhibit 568 (Citco audit designated Fletcher
"high risk" as of July 2007); Exhibit 338 (email from van Nijen (Citco) regarding blocking
Fletcher default and blocked accounts, dated December 6, 2007).

[41] Exhibit 569 (van Nijen email dated March 17, 2009); see also Exhibit 568 (Citco 2007 audit)
at  LPF-C-00020607.

[42] Exhibit 3 (Email from Smeets to Enternaerer dated August 9, 2007, regarding "shenanigans"
at the Fletcher System).

[43] See Exhibit Exhibit 762 (Citco internal "Fletcher memorandum" dated May 2007, noting
among other things that asset valuations are "aggressive," the funds have liquidity issues, and
"insufficient collateral" for outstanding obligations); Exhibit 568 (Citco Fund Services Audit
Report July 2007).

[44] See Exhibit 644 (email from Larry Luckman of Citco to Ermanno Unternaehrer of Citco
regarding plans to discontinue the Citco Bank funding of the Fletcher System).

of supposedly subordinated and locked-in equity,[45] as well as repayment of Citco loans.[46]  These unwindings were devised in the period leading up to the Plaintiffs' investment, and were consummated with Plaintiffs' invested funds.  Another major consequence is that the Citco investments, which were supposed to provide security and be subordinated to the Plaintiffs, were in reality not intended to last for very long, so far as Citco and Fletcher were concerned, and contrary to what Plaintiffs' had been led to believe.

Third, Citco did not exert disinterested oversight over the Fletcher Funds, contrary to what was represented to Plaintiffs.  Rather, Citco had significant conflicts of interest that led them to favor actions that disadvantaged Plaintiffs, and which allowed the Fletcher System to act in a self-interested way.  As described above, Citco was seeking to unwind all of its relationships with Fletcher, including its debt and equity investments as well as its commercial relationship as a fund administrator.  Because Fletcher's cooperation was required in order to disentangle itself, Citco was in a position where it was advantageous to them to turn a blind eye in return for facilitating transactions that benefitted Citco.  The record reflects that Citco did not

---

[45] On April 1, 2008, the day after Plaintiffs' investment closed, Citco submitted instructions for a $3 million redemption request of Series 3 shares.  See Exhibit 239 (email dated April 1, 2008 from Miklos Ujhelyi of Citco). This was in violation of the use of proceeds representations, and showed that representations about the lock-in of the subordinated investor were materially false.

[46] See Exhibit 580 (email from Unternaehrer to Ronald Irausquin and Larry Luckman dated March 1, 2008, stating "He's [Fletcher] telling me they have a $100MM new investment coming in April 1st.  This should allow them to repay the loan.  I've seen the paperwork related to this, let's wait for the money now....").

object when Fletcher proposed to use the Plaintiffs' investment to cash out Citco's position.  In fact, to take one example, Citco delivered the necessary consents to allow Plaintiffs' investment to occur.[47]

From an overall perspective, the purpose of soliciting Plaintiffs' investment was not to invest in additional assets (much less with added leverage), but rather to repay amounts owing to Citco, pay fees, and extend non-market credit to Fletcher.  Further, the valuations appear to have been materially overstated, judging by Citco's own assessment at the time, and it does not appear that Citco intended to remain invested in Leveraged as the subordinated, non-Series N investor.

This scheme eviscerated the protections that Plaintiffs believed they were obtaining, and rendered false many of the most important representations made to plaintiffs.  In particular, these materially misleading statements or omissions include:

### 1.  Preferential return and subordination on non-Series N

As described above in Section III.A.1, Plaintiffs were told that they would earn a preferred return, guaranteed by the ability to reallocate money from non-Series N investors.  In reality, the plan to cash out Citco's investments, which were kept secret from Plaintiffs, undermined this preference, as well as the priority in liquidation that Plaintiffs were to enjoy.  The representations made to Plaintiffs were thus materially false.

Further, the documentary record reflects that Citco harbored significant doubts about the Fletcher System's ability to make good on its obligations, including

---

[47] See Exhibit 88 (Consent of Global Hawk dated March 28, 2008, executed by CTC Corporation Ltd), Exhibit 615 (email from Denis  Kiely dated March 31, 2008, stating that "We have received the consent of 100% of the current FIA Leveraged Fund Shareholders….").

Plaintiffs' preferred returns.[48]  For instance, the fact that Citco's loan to the Fletcher System was in default[49] was never mentioned.  These and other doubtful circumstances were never disclosed.

### 2.  Capital cushion and lock-in of subordinated investments

As described above in Section III.A.2, Plaintiffs were to receive security in the form of a capital cushion of locked-in, subordinated capital  The actual plan on the part of Fletcher and Citco, however, was to redeem at least some of that cushion immediately, and more of it later on.  Citco redeemed $3 million of Series 3 equity right away, with the redemption funded by Plaintiffs' investment.  While a Series 3 redemption did not trigger the prior redemption rights, it was counter to what the Plaintiffs had been assured, which was that Citco's subordinated investment was locked in.[50]  Subsequently, Citco redeemed substantially more, in accord with its plans to cut ties to Fletcher and his funds; these redemptions did violate the Plaintiffs' prior redemption rights.  The right of the Plaintiffs to have automatic redemption of their investment, or at least the option of such redemption, was not honored, despite representations made in the Supplement and the corresponding provisions of the Articles of Association.  Moreover, given the existence of Citco's plan to unwind its Fletcher entanglements prior to the time of the Series N offering, the Plaintiffs' prior

---

[48] See Exhibit 576 ("Preference share interest rates are very (unrealistically) high.").

[49] See, e.g., Exhibit 342 (email from Wiekert Weber to van Nijen regarding "Fletcher is not in 'good standing' and owes Citco Bank $13.5 million); Exhibit 561 (Citco emails regarding Fletcher's non-compliance with Citco Bank loan, dated December 2007).

[50] See Fire Fighters Retirement System Investment Committee Meeting, dated March 12, 2008 at 14

redemption right does not appear to have been intended to be honored at the time those representations were made.

### 3.  Valuation of the fund and calculation of NAVs

As described above in Section III.A.3, the offering documents described in detail the valuation process, which was to significantly involve Citco; further, these valuations were supposed to be accurate and fair.  These representations were not true.  Citco did not participate materially in the valuation process, as reflected by Citco's own internal communications.[51]  Citco also harbored reservations about the Fletcher System's valuations, which constituted the NAVs that Citco published, wholesale, in its role as administrator.[52]  I have seen no indication that either the Fletcher System or Citco sought to remedy this problem, nor to inform the Plaintiffs of the actual valuation process and doubts about the valuations.

### 4.  Use of proceeds

As described above in Section III.A.4, the offering materials and presentations indicated that Plaintiffs' investment funds would be used to make investments in actual companies, and that these funds would be supported by a 3 to 1 leverage ratio. In reality, a significant portion of Plaintiffs' investment was immediately used to make payments to Citco.  Rather than leveraging Plaintiffs' investment, the Plaintiffs' investment was used to de-lever by paying off the Citco credit facility.  In addition, Plaintiffs' investment was also used to provide a non-market, unsecured, related party loan to Fletcher, in order to enable the purchase of Richcourt from Citco; Fletcher had

---

[51] See Exhibit 576 (internal Citco email), which notes that the description of Citco's role in valuation was misleading.

[52] See Exhibit 576; see also Exhibit 568 (Citco 2007 audit) at LPF-C-00020607.

already sent Citco a proposal to purchase Richcourt in January 2008.[53]  This was all contemplated by Citco and the Fletcher System in the period leading up to the Plaintiffs' investment.  None of Plaintiffs' funds were actually used to make new investments.[54]  Thus, the use of proceeds representations appear to have been materially misleading when made.

### 5.  Oversight, governance, and undisclosed conflicts of interest

As described above in Sections III.A.5, one source of reassurance for Plaintiffs' investment was the degree of oversight that Citco was represented to exert over the Fletcher System, particularly since Citco was also represented to be the locked-in, subordinated investor providing Plaintiffs' capital cushion.  This role was to include overseeing redemptions and related activities, the valuation process, and important aspects of the funds' governance.  While these control rights did exist, and while Citco did exert substantial control over the Fletcher System (as discussed below), the record reflects that Citco used its control rights to self-serving ends, at the expense of Plaintiffs.  At the time of Plaintiffs' purchase, Citco was using its influence to obtain redemptions of its equity, repayment of its loans, and the purchase of its assets, all funded with Plaintiffs' investment proceeds.  Later, Citco used this same influence to redeem the non-Series N Shares without notifying Plaintiffs, in 2010.  Indeed, rather than being an advocate and fellow investor along with Plaintiffs, Citco had significant conflicts of interest:  Citco was seeking to sell out, and the Plaintiffs provided the

---

[53] See Exhibit 138 (signed exclusivity letter for purchase of Richcourt by Fletcher Asset Management dated March 27, 2008); Exhibit 481 (Fletcher proposal to purchase Richcourt dated January 10, 2008).

[54] See Trustee Report at 70.

means to do so.  My review of the record indicates that these conflicts of interest were not disclosed to Plaintiffs.

### 6.   Investment strategy

As described above in Section III.A.6, the Fletcher System represented to Plaintiffs that the Plaintiffs' investment would be used to purchase assets in line with the fund's general investment strategy:  direct investments in public companies, with convertibility options and/or small amounts that enabled ready liquidation.  However, to the extent Leveraged acquired assets with Plaintiffs' funds, these assets were not at all in keeping with the stated investment strategy.  Examples include the unsecured, non-market note that Fletcher delivered to Leveraged in connection with the purchase of Richcourt; an investment in a film written and directed by Fletcher's brother; and the purchase of illiquid Citco affiliate securities from Ermanno Unternaehrer, a top Citco executive.  Such acquisitions were counter to Leveraged's stated investment strategies, and were not disclosed to Plaintiffs by either the Fletcher System or Citco.

## IV.    Continuing misstatements and omissions

The record reflects that, subsequent to Plaintiffs' investment, the Fletcher System and Citco engaged in actions that were not in accord with the representations made in the Series N offering documents.  Further, the record reflects that these actions were not disclosed at the time, nor were corrective disclosures made thereafter.

First, none of the misstatements or omissions described above in Section III.B were ever corrected.  The Plaintiffs did receive ongoing, additional disclosures or reports from Citco and the Fletcher System (as noted below); however, nothing in these communications addressed or corrected the problems identified above.

Second, additional transactions occurred that were in violation of the terms of Plaintiffs' investment.  Again, no appropriate disclosures were made.  These include:

- On June 20, 2008, Fletcher purchased 85% of Richcourt from Citco. Most or all of the funding for this purchase came from the Plaintiffs' investment in Leveraged.[55]  In return for funding Fletcher's purchase, Leveraged received a non-market, unsecured promissory note from a Fletcher-owned entity.[56]  The dubious value of this note was a "principal reason" why no 2009 audit report on Leveraged was ever issued.[57] Further, using the auditor's assessment of the fair market value of the note, the mandatory Series N redemption provisions would have been triggered due to an insufficient value of the non-Series N investments.[58] This was also a related party transaction between Citco and Fletcher. While the Richcourt transaction was mentioned belatedly in an August 13, 2009 letter to shareholders, it failed to describe the dubious note that Leveraged received, that Leveraged's cash was used to finance the purchase for Fletcher's benefit, or that Citco's dissatisfaction with and desire to separate from Fletcher precipitated the transaction.[59]

---

[55] See Trustee Report at 74.

[56] See Trustee Report at 74 - 75.

[57] Trustee Report at 75.

[58] See Trustee Report at 75.

[59] See Exhibit 802 (Fletcher letter to Series N investors dated August 13, 2009) at FRS021741_ATTACHMENT_001-4.  Richcourt was an investor in Global Hawk, and hence represented a Citco investment in the Fletcher System.

31

- Around the same time, Fletcher purchased from Ermanno Unternaehrer (a high-ranking Citco executive) shares in a Citco affiliate for $4 million. This transaction was outside of the stated investment policies of Leveraged (far from being a liquid investment in a public company, the investment was in a private entity and not necessarily redeemable at all); provided dubious value to Plaintiffs; and constituted a related party transaction between the Fletcher System and Citco.[60]

- On March 31, 2010, Citco and Fletcher agreed upon a plan to redeem the non-Series N shares (Series 4, 5, and 6) in connection with the unwinding of Global Hawk.  This transaction resulted in the use of Leveraged funds pay out cash to Global Hawk in the amount of $12.4 million, and fees to Citco ($2.4 million).[61]  These redemptions should have triggered Plaintiffs' notice and prior redemption rights.  Fletcher received a "deferred incentive fee" of $12.3 million (which appears unlikely to have been actually earned).[62]  The deferred incentive fee was reinvested into Leveraged, propping up its purported value.  This was a conflicted transaction, and was not disclosed.

- The record reveals that there were several investments that were not in accordance with Leveraged's stated investment policies.  Among other things, this includes $7.7 million diverted to fund a movie written and directed by Fletcher's brother.[63]  This was also a related party

---

[60] See Trustee Report at 76 – 78.

[61] See Trustee Report at 65; Statement of the Case at 5.

[62] See Trustee Report at 164.

[63] See Trustee Report at 154.

transaction.  Violations of the stated investment policies were not disclosed.

- According to the Trustee's calculations, the Fletcher System was insolvent as of year-end 2008.[64]  The danger of insolvency was never disclosed.

- Citco notified the Fletcher System of its intention to resign as administrator on December 31, 2009.  A notice was sent out to Leveraged investors on May 14, 2010.[65]  This notice did not state Citco's reasons for resigning, nor Citco's plan to unwind and separate entirely from the Fletcher system.

Third, apart from the failures to correct the misleading statements made in the Supplement, Citco and Fletcher produced additional disclosures that were themselves materially misleading.  These include:

- On a monthly basis, the periodic NAV reports;

- On or about August 14, 2009, Citco circulated the 2008 audited financials for Leveraged,[66] as well as an investor letter from Fletcher;[67] and

- May 14, 2010, Citco circulated a letter and offering memorandum supplement.[68]

---

[64] See Trustee Report at 212 – 213.

[65] See Exhibit 535.

[66] See Exhibit 926.

[67] See Exhibit 802.

[68] See Exhibit 535.

None of these communications disclosed problems with the Fletcher System (such as Citco's increasing reservations about Fletcher's performance and operations), nor did any of those communications correct the misstatements and omissions of the March 2008 Supplement. Rather, these statements gave the misleading impression that Plaintiffs' investments were doing well and rising in value, and that Citco had no reservations about Fletcher's performance. Finally, these communications failed to disclose the problematic transactions noted above: the related party deals, investments outside of the stated investment policies, wrongful redemptions in violation of the Articles of Association and offering Supplement, the erosion of Plaintiffs' rights and protections, and the use of what were likely sham assets (related party notes and reinvestment of deferred management fees) to prop up the apparent assets under management and performance of the fund.

## V.    Citco's relationship with Fletcher System and aspects of control

The records reflects that Citco played numerous roles in conjunction with the Fletcher System. Further, Citco in fact possessed extensive control rights over the Leveraged fund and Fletcher System, and used those control rights to benefit itself.

As administrator, Citco was charged with responsibilities including "all actions related to the issuance and transfer" of shares; "performing all acts related to redemption" of shares; accounting, record keeping, and preparation of reports and monthly statements of fund performance and NAV; and "computing and disseminating the Net Asset Value of the Fund's Shares in accordance with the Memorandum and Articles of Association...."[69] Among other things, Citco could have refused to publish

---

[69] Supplement at 21; see also Arbitrage Memorandum at 15378.

NAVs it did not agree with, and could have refused to consummate redemptions it believed were not authorized.

Citco provided marketing and investor relations services for the Fletcher System.[70]

Citco played a significant role in the governance of the Fletcher System. Citco was to provide "officers to Act as Secretary" for both Leveraged[71] and Arbitrage,[72] and was to provide directors of Arbitrage.[73] Citco also had voting control over Leveraged: the Leveraged capital structure consisted of 4,999,900 shares "and 100 voting management shares... held by Millenium (Cayman Islands) Foundation, an affiliate of the Adminstrator."[74] Based on this, Citco had the right to choose the governing persons of the fund.

As an investor, Citco also held a veto right over the offering of the Series N Shares to Plaintiffs. Because Citco's investment interests in the non-Series N Shares were to be subordinated to Plaintiffs', an amendment to Leveraged's Articles of Association was required. This necessitated the consent of Citco, and Citco delivered this consent upon learning that some of these funds would be used to buy out Citco investments. Had Citco not wanted the Series N offering to occur, Citco could have prevented it entirely.

---

[70] Arbitrage Memorandum at LPF-C-00015402 ("Citco Trading will receive a fee for marketing and investor relations services equal to 0.50% per annum of the Net Asset Value of the [Arbitrage] Fund.").

[71] Supplement at 21.

[72] See Arbitrage Memorandum at LPF-C-00015401.

[73] See Arbitrage Memorandum at LPF-C-00015401.

[74] Supplement at 22; see also Leveraged Articles of Association (LPF-C-0001783) at §§11(c), 12.

Citco served as the Fletcher System's banker.  When a Fletcher System loan went into default, Citco blocked payments in the Fletcher accounts.[75]  Had Citco wanted to, they likely could have declared an event of default, putting the Fletcher System into bankruptcy if no other funding was forthcoming.

Citco sold assets to the Fletcher System.  This included the Richcourt fund, as well as Unternaehrer's sale of Citco-affiliate stock to Fletcher.

In addition to possessing substantial control rights, the record reflects that Citco made use of these control rights to benefit itself.  Most notably, as described above, even though the Series N deal required the non-Series N to remain locked into the fund, Citco was able to get out millions of dollars in cash.  Similarly, Citco was able to sell assets to Fletcher that were of questionable value, and permitted Fletcher to use Plaintiffs' investment dollars to do so.  According to the Trustee's investigation, Citco received $48 million out of the Plaintiffs' investment proceeds.[76]

## VI.  Citco's knowledge of the disclosures and their falsity

My review of the record indicates that Citco had the necessary information at its disposal to make corrective disclosures, and that it could have done so had it so chosen.  Citco had knowledge of the representations made to Plaintiffs, and had facts

---

[75] See, e.g., Exhibit 50 (Email chain dated December 7, 2007 among Wiekert Weber (Citco) et al regarding CBC blocking payments out of FIAL).

[76] "Approximately $48 million of the Louisiana Pension Funds' $95 million cash benefited Citco.  It was used ((i) to pay down $13.5 million in debt owed to Citco, (ii) to lend to an AF entity to purchase Richcourt Holding and its affiliates for $27 million from Citco Trading, (iii) to pay Citco $3.1 million on a long-outstanding Richcourt Fund redemption request, and (iv) to provide $4.1 million to one of Citco's top executives to provide him with needed liquidity." Trustee Report at 70.

in its possession that showed that those representations were materially misleading. The record also reflects that Citco never corrected these misleading statements and omissions, nor have I seen any evidence that Citco attempted to cause the Fletcher System to make such corrections.

With regard to all of the related party transactions involving Citco (viz., the Richcourt sale, the Global Hawk unwinding, and non-Series N redemption, and the Unternaehrer sale), clearly Citco had direct knowledge thereof.  Further, with regard to the wrongful redemptions, Citco had given the consents to provide for the Plaintiffs' prior redemption rights; Citco, as administrator, was in charge of all actions related to redemptions; and Citco was a direct beneficiary of the redemptions, receiving cash for its investments.

The record further reflects that Citco was aware of many of the omitted facts at the time of the original offering of Series N Shares to Plaintiffs in March 2008.  Citco already harbored reservations about the Fletcher System's valuations, ability to repay its debts, and its credibility.  Citco had already made the decision to unwind its banking relationship with Fletcher and redeem at least some of its equity, and knew that the Plaintiffs' investments would be used to fund these cash-outs.  Fletcher's proposition to purchase Richcourt also occurred before the Plaintiffs' purchase.

The record also reflects that Citco received, generated, or distributed the documents containing these misleading statements and omissions.  Citco received the Series N term sheet and Supplement prior to Plaintiffs' investment.  Citco also delivered the non-Series N consents; which would have given Citco a strong incentive (and duty to their investors) to read the documents.  Citco also published the NAVs and disseminated other reports, such as the annual audit and investor letter.  (The only representations that Citco, to my knowledge, did not necessarily have in its

possession were the those made in the in-person investor meetings conducted in February and March of 2008.)

Overall, not only did Citco possess information that demonstrated that the representations made to Plaintiffs were materially false, but they also participated in the actual transactions that deprived Plaintiffs of their protections and depleted the value of their investment.

## VII.   Conclusion

In summary, it is my opinion that the information provided to Plaintiffs in the Series N offering contained material misstatements and omissions.  While Plaintiffs were assured that they were buying into a relatively safe investment, guaranteed in part by subordinated equity and a watchful administrator, in fact the administrator, Citco, and the Fletcher System engaged in an undisclosed scheme to cash out Citco's investments.  This scheme, and the actions taken thereunder, rendered the Series N offering representations false when made.  In addition, the Fletcher System and Citco engaged in subsequent transactions that were self-interested and which abridged the Plaintiffs' rights and reasonable expectations.  No corrective disclosures were made to Plaintiffs.  The disclosures that did occur were also materially misleading, as they portrayed Plaintiffs' investments as performing well (which they were not).

Citco had extensive control rights, as well as actual control, over the Fletcher System:  Citco served as administrator, banker (with a Fletcher loan in default), marketer, investor (having a veto over the Series N issuance), and governing person (holding all of the voting shares).  Further, Citco received the representations made to Plaintiffs, and also had in its possession information that showed those representations were materially misleading.

I state under penalty of perjury that the foregoing is true and correct.  Executed on this 16th day of April, 2018.

James C. Spindler

Exhibit A

**JAMES C. SPINDLER**

University of Texas School of Law
727 E. Dean Keeton Street
Austin, TX 78705
jspindler@law.utexas.edu

## EMPLOYMENT

UNIVERSITY OF TEXAS SCHOOL OF LAW
   Sylvan Lang Professor of Law, September 2010 to present
   Courses: Federal Income Tax, Corporate Tax, Capital Markets and Financial Intermediation,
   Securities Regulation, Business Associations, Commercial Transactions, Corporate Finance
   Seminar

MCCOMBS SCHOOL OF BUSINESS, UNIVERSITY OF TEXAS AT AUSTIN
   Professor, September 2011 to present

UNIVERSITY OF SOUTHERN CALIFORNIA GOULD SCHOOL OF LAW
   Associate Professor of Law and Business, April 2008 to August 2010
   Assistant Professor of Law and Business, August 2005 to April 2008
   Appointment by courtesy, USC Marshall School of Business

UNIVERSITY OF CHICAGO LAW SCHOOL
   Visiting Professor of Law, Spring 2010
   Visiting Assistant Professor of Law, July 2004 to June 2005
   John M. Olin Fellow in Law and Economics and Lecturer in Law, July 2003 to June 2004

UNIVERSITY OF VIRGINIA SCHOOL OF LAW
   Visiting Professor, September 2004

CRAVATH, SWAINE & MOORE LLP
   Associate, New York and Hong Kong, 2000 - 2003
   Practice focused on securities law, syndicated debt, and international corporate finance

## EDUCATION

U.C.L.A. DEPARTMENT OF ECONOMICS, Ph.D. 2010, C.Phil. 2008, M.A. 2007
   National Science Foundation Graduate Fellowship

HARVARD LAW SCHOOL, J.D. 2000
   *Magna cum laude*
   John M. Olin Prize in Law and Economics

PRINCETON UNIVERSITY, A.B. 1997
   *Magna cum laude* in Politics, certificate in Political Economy

**PUBLICATIONS, PRESENTATIONS, AND GRANTS**

PUBLICATIONS

> 2017    Vicarious Liability for Managerial Myopia, 46 *Journal of Legal Studies* 161 – 185
>
> 2017    We Have a Consensus on Fraud on the Market – And It's Wrong, 7 *Harvard Business Law Review* 67 - 114
>
> 2017    Taking Systemic Risk Seriously in Financial Regulation, 92 Indiana Law Journal 1559
>
> 2012    Hidden Costs of Long Term Compensation, 13 *Journal of Theoretical Inquiries in Law* 623 – 642
>
> 2011    Vicarious Liability for Bad Corporate Governance:  Are We Wrong About 10b-5?, 13 *American Law & Economics Review* 359 – 401
>
> 2011    Integrity and Innovation in the Public Capital Markets:  A Survey of the Securities Law Literature, *Research Handbook of Law, Innovation and Growth*, Robert Litan (ed.), (Edward Elgar Press) 45-66
>
> 2011    Making the Next Financial Crisis Worse, One Regulation at a Time, Forbes.com
>
> 2011    Mandatory Long Term Compensation in the Banking System – and Beyond?, 34 *Regulation* 42 – 48
>
> 2009    How Private is Private Equity, and at What Cost?, 76 *University of Chicago Law Review* 311-334
>
> 2007    IPO Liability and Entrepreneurial Response, 155 *University of Pennsylvania Law Review* 1187-1228
>
> 2007    Why Shareholders Want Their CEOs to Lie More after Dura Pharmaceuticals, 95 *Georgetown Law Journal* 653-691 (reprinted in *Securities Law Review 2008*, Donald C. Langevoort (ed.))
>
> 2006    Conflict or Credibility:  Analyst Conflicts of Interest and the Market for Underwriting Business, 35 *Journal of Legal Studies* 303-325
>
> 2006    Is it Time to Wind Up the Securities Act of 1933?, 29 *Regulation* 48-55
>
> 2005    Corporate Heroin:  A Defense of Perks, Executive Loans, and Conspicuous Consumption (with M. Todd Henderson), 93 *Georgetown Law Journal* 1835-1883
>
> 2005    Communication by Other Means, 28 *Regulation* 48-53

WORKING PAPERS

- Optimal Deterrence When Shareholders Desire Fraud, forthcoming *Georgetown Law Journal* 2018

- Misreporting and Compensation under Incomplete Commitment, forthcoming *International Review of Law & Economics* 2018

- Insider Trading and the Coasian Firm, Revisited, forthcoming *SMU Law Review 2018*

- Do Salary History Bans Hurt High Performers? (with Jeffrey Meli)

- Long-term Incentives to Underperform in the Short Term, available at http://ssrn.com/abstract=2640172

- IPO Disclosure, Underpricing, and Litigation Risk, revise and resubmit, available at http://ssrn.com/abstract=1396818

GRANTS AND AWARDS

NASDAQ OMX Capital Markets Grant 2013-2014

Southern California Innovation Project, February 2009 – February 2010
    Principal Investigator, *The Securities Act and Entrepreneurs' Cost of Public Capital*

Southern California Innovation Project, February 2009 – February 2010
    Principal Investigator, *The Impact of Securities Law Reform on Entrepreneurial Effort*

McDermott, Will & Emery Research Award, June – August 2007

McDermott, Will & Emery Research Award, June – August 2006

James H. Zumberge Faculty Research and Innovation Fund, July 2006 – June 2008
    Principal Investigator, *Do Mandatory Disclosure Rules Result in Better Information for the Marketplace?*

SELECTED PRESENTATIONS

- Fifth International Conference in Law and Economics, *Optimal Deterrence When Shareholders Desire Fraud*, April 2018
- AALS Section on Law & Economics Annual Meeting, *Misreporting and Compensation under Incomplete Commitment*, January 2018
- USC Corporate Law and Social Science Workshop, *Optimal Deterrence When Shareholders Desire Fraud*, November 2017
- Fifth Annual Corporate and Securities Litigation Conference, *Optimal Deterrence When Shareholders Desire Fraud*, October 2017
- Fourth International Conference in Law and Economics, *We Have a Consensus on Fraud on the Market – and It's Wrong*, June 2017
- American Law and Economics Association Annual Meeting, *We Have a Consensus on Fraud on the Market – and It's Wrong*, May 2017
- Law & Economic Theory Annual Conference, *Long-Term Incentives to Underperform in the Short Term*, December 2016
- Harvard Law School Law & Economics Workshop, *We Have a Consensus on Fraud on the Market – and It's Wrong*, September 2016
- Canadian Law & Economics Association Annual Meeting, *We Have a Consensus on Fraud on the Market – and It's Wrong*, September 2016
- National Business Law Scholars Annual Meeting, *We Have a Consensus on Fraud on the Market – And It's Wrong*, June 2016
- Midwest Finance Association Annual Meeting, *Long-term Incentives to Underperform in the Short Term*, March 2016
- Federalist Society Academic Section, *Some Fallacies in the Securities Law Literature, and Why We Should Care About Them*, January 2016
- European Association of Law and Economics Annual Meeting, *Long-term Incentives to Underperform in the Short Term*, September 2015
- European Assocation of Law and Economics Annual Meeting, *Structural Implications of the European Banking Union*, September 2015
- Duke University School of Law, *Less Agency Cost, More Long Term Compensation… and More Fraud?*, November 2014
- European Association of Law and Economics Annual Meeting, *Reputation and Corporate Fraud*, September 2014
- National Business Law Scholars Conference, *Reputation and Corporate Fraud*, June 2014
- American Law and Economics Association Annual Meeting, *Why Bank Regulation Failed and Will Continue to Fail*, May 2014

- US Markets Texas Institutional Investor Forum, *What U.S. Funds Need to Know About Shareholder Actions in the United States and Beyond*, November 13, 2013
- European Association of Law and Economics Annual Meeting, *Why Bank Regulation Failed and Will Continue to Fail*, September 2013
- European Association of Law and Economics Annual Meeting, *More Long Term Compensation and... More Fraud?*, September 2013
- Austin Bar Association Section on Business, Corporate and Tax, *Recent Trends in Mergers and Acquisitions*, June 2013
- American Law and Economics Association Annual Meeting, *More Long Term Compensation and ... More Fraud?*, May 2013
- University of Texas Mergers and Acquisitions Institute, *Recent Trends in Mergers and Acquisitions*, October 2012
- National Business Law Scholars Conference, *More Long Term Compensation and... More Fraud?*, June 2012
- Global Finance Conference, *Hidden Costs of Long Term Compensation,* May 2012
- Section on Securities Regulation:  Annual Meeting of the American Association of Law Schools, *Hidden Costs of Mandatory Long Term Compensation*, January 2012
- Tel Aviv Law School and Journal of Theoretical Inquiries in Law Conference:  Back to the State, *Mandatory Long Term Compensation for Banks – and Beyond?*, June 2011
- Canadian Law and Economics Association, *Endogenous Compensation in a Firm with Disclosure and Moral Hazard*, October 2010
- University of Chicago Law School Faculty Workshop, *The Effects of Managerial Short-termism on Compensation, Effort, and Fraud*, May 2010
- Conference of Empirical Legal Studies, *IPO Underpricing, Disclosure, and Litigation Risk*, November 2009
- University of Virginia Law & Economics Workshop, *IPO Underpricing, Disclosure, and Litigation Risk,* October 2009
- Kauffman Foundation Summer Legal Institute, *The Future of Capital Markets Regulation,* July 2009
- Stanford/Yale Junior Faculty Forum, *Vicarious Liability for Securities Fraud*, May 2009
- USC Conference on Financial Law and Innovation, *IPO Underpricing and Prospectus Disclosure*, May 2009
- American Law and Economics Association Annual Meeting, *IPO Underpricing and Prospectus Disclosure*, May 2009
- European Financial Management Association Symposium on Corporate Governance, *Vicarious Liability for Securities Fraud*, April 2009
- 21st Annual Australasian Finance Association Meeting, *Vicarious Liability for Securities Fraud*, December 2008
- Stanford Law & Economics Workshop, *Vicarious Liability for Bad Corporate Governance: Are We Wrong About 10b-5?*, November 2008
- Canadian Law and Economics Association, *Vicarious Liability for Securities Fraud*, September 2008
- Kauffman Foundation Summer Legal Institute, *Innovation and Securities Law:  Vicarious Liability for Securities Fraud*, July 2008
- American Law and Economics Association Annual Meeting, *Vicarious Liability for Bad Corporate Governance:  Are We Wrong About 10b-5?*, May 2008
- University of Chicago Law & Economics Workshop, *Vicarious Liability for Bad Corporate Governance:  Are We Wrong About 10b-5?*, April 2008
- Financial Lawyers' Conference, *Securities Law Issues for Financial and Bankruptcy Lawyers*, April 10, 2008
- Berkeley Center for Law, Business, and the Economy, Corporate Roundtable, *Commentator on  Grundfest and Bochner, Fixing 404*, April 2007
- American Association of Law Schools Annual Meeting, *Why Shareholders Want Their CEOs to Lie More after Dura Pharmaceuticals*, January 2007

- <u>American Law and Economics Association Annual Meeting</u>, *Conflict or Credibility:  Analyst Conflicts of Interest and the Market for Underwriting Business*, May 2006
- <u>USC Summit on Corporate Governance</u>, *The Global View:  Convergence of International Corporate Governance Standards*, March 2006
- <u>USC Marshall School of Business Executive Education Program</u>, *State Fiduciary Duties and Recent Developments in Federal Law*, February 2006 (with Eric Talley)
- <u>American Law and Economics Association Annual Meeting</u>, *IPO Liability and Entrepreneurial Response*, May 2005
- <u>Harvard Law and Finance Workshop</u>, *IPO Liability and Entrepreneurial Response*, February 2005
- <u>Directors Roundtable</u>, *Panel on the Revolution in Investment Management*, April 28, 2004
- <u>Directors' Roundtable</u>, *Panel on SEC Enforcement and Disclosure*, December 3, 2003

## CONSULTING AND EXPERT WITNESS ENGAGEMENTS

Consultant and/or expert witness in approximately 40 matters involving corporate governance, corporate finance, fiduciary duties, agency, commercial transactions, executive compensation, securities trading, securities fraud, broker-dealers, investment advisers, banking, and damages.

Trial, deposition, or arbitration testimony provided in:
- *Ralph S. Janvey v. Daniel Bogar, Osvaldo Pi, and Bernerd Young*, Case No. 3:14-cv-3635, United States District Court, Northern District of Texas
- *Ralph S. Janvey v. Patricia Maldonado*, Case No. 3:14-cv-02826, United States District Court, Northern District of Texas
- *Fox v. Biomedical Enterprises et al.*, Cause No. 2010-CI-20399, Bexar County District Court, Texas
- *Italian Investors, LLC, et al. v. Michael McGehee, et al.*, Cause No. DC-13-07398, 68th Judicial District, Dallas, Texas
- *NEC Networks and Chris Hotchkiss v. AME & FE Investments Ltd. and Chris Erck,* Cause No. 2012-CI-11952, 73rd Judicial District Court, Bexar County, Texas
- *Seaman v. Wykidal*, JAMS binding arbitration
- *Tesoro Refining v. National Union Fire Insurance*, SA-13-00931-DAE, United States District Court, Western District of Texas
- *AerReach Aero Space Solutions, LLC and Robert V. Hogan v. Chad G. Stanford et al.*, Cause No. DC-16-07714, District Court, 298th Judicial District, Dallas County, Texas
- *Ralph S. Janvey v. Proskauer Rose, LLP, Chadbourne & Parke, LLP,  & Thomas V. Sjoblom*, Civil Action No. 3:13-cv-00477-N, United States District Court, Northern District of Texas, Dallas Division

**PROFESSIONAL AFFILIATIONS AND ACTIVITIES**

Member of the Bar of the State of New York, admitted December 11, 2000

Member, American Law & Economics Association

Referee or Section Reviewer:
- Journal of Law, Economics, and Organizations
- Journal of Legal Studies
- American Law & Economics Review
- Society of Empirical Legal Studies
- International Review of Law and Economics
- European Journal of Law and Economics
- European Association of Law & Economics
- American Association of Law & Economics

Austin Rugby Club

# Exhibit B

# Category 1: Deposition Exhibits

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 1 | 03/09/2007 | 100226 | 100226 |
| 1 | 07/15/2007 | 20591 | 20612 |
| 2 | 06/19/2008 | 00020000 | 00020000 |
| 3 | 08/09/2007 | 00022870 | 00022870 |
| 4 | 09/26/2007 | 00023392 | 00023392 |
| 5 | 09/28/2007 | 00023435 | 00023436 |
| 6 | 10/08/2007 | 00023473 | 00023473 |
| 7 | 10/29/2007 | 00023587 | 00023587 |
| 8 | 02/27/2008 | 00015338 | 00015339 |
| 9 | 02/27/2008 | 00025975 | 00025976 |
| 10 | 02/26/2008 | 00025976 | 00025978 |
| 11 | 03/01/2008 | 00060258 | 00060267 |
| 12 | 03/01/2008 | 00066892 | 00066898 |
| 13 | 03/03/2008 | 00088251 | 00088251 |
| 14 | 03/12/2008 | 00026285 | 00026285 |
| 15 | 03/16/2008 | 00047564 | 00047564 |
| 16 | 03/18/2008 | 00047787 | 00047788 |
| 17 | 03/28/2008 | 00077605 | 00077605 |
| 18 | 03/27/2008 | 00018009 | 18012 |
| 19 | 03/28/2008 | 00077979 | 00077986 |
| 20 | 03/31/2008 | 00074876 | 74880 |
| 21 | 03/28/2008 | 00015440 | 00015440 |
| 22 | 03/01/2008 | 00021944 | 00021953 |
| 23 | 03/31/2008 | 00015441 | 00015441 |
| 24 | 03/28/2008 | 00021953 | 00021953 |
| 25 | 03/31/2008 | 00078734 | 00078734 |
| 26 | 04/01/2008 | 00107386 | 00107388 |
| 27 | 04/01/2008 | 00003427 | 00003428 |
| 28 | 04/01/2008 | 00003295 | 00003295 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 29 | 04/01/2008 | 00074875 | 00074875 |
| 30 | 03/31/2008 | 00078200 | 00078203 |
| 31 | 03/31/2008 | 00003222 | 00003226 |
| 32 | 04/01/2008 | 00107177 | 00107118 |
| 33 | 04/09/2008 | 00079158 | 00079168 |
| 34 | 03/31/2008 | 00078941 | 00078941 |
| 35 | 03/31/2008 | 00074498 | 00074498 |
| 36 | 03/31/2008 | 00054048 | 00054091 |
| 37 | 03/26/2008 | N/A | N/A |
| 38 | 03/31/2008 | 00021734 | 00021781 |
| 39 | 04/08/2008 | 66096 | 66096 |
| 40 | 01/30/2008 | 87031 | 87031 |
| 41 | 09/18/2007 | 22904 | 00022906 |
| 42 | 10/31/2007 | 23646 | 23646 |
| 43 | 10/31/2007 | 23646 | 23646 |
| 44 | 11/01/2007 | 68827 | 68829 |
| 45 | 11/01/2007 | 20723 | 20723 |
| 46 | 04/01/2008 | 202253 | 202255 |
| 47 | 11/27/2007 | 23901 | 23901 |
| 48 | 12/01/2007 | 24057 | 24058 |
| 49 | 12/06/2007 | 146773 | 146773 |
| 50 | 12/07/2007 | 110886 | 110886 |
| 51 | 12/07/2007 | 146805 | 146805 |
| 52 | 12/27/2007 | 24755 | 24757 |
| 53 | 01/05/2008 | 24788 | 24788 |
| 54 | 03/03/2008 | 62861 | 62861 |
| 55 | 02/12/2008 | 57206 | 57206 |
| 56 | 02/29/2008 | 77981 | 77981 |
| 57 | 02/29/2008 | 60268 | 60268 |
| 58 | 03/03/2008 | 67001 | 67002 |
| 59 | 03/03/2008 | 88232 | 88232 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 60 | 01/30/2008 | 87071 | 87072 |
| 61 | 03/31/2008 | 74464 | 74478 |
| 62 | 04/08/2008 | 79121 | 79135 |
| 63 | 04/09/2008 | 79254 | 79264 |
| 64 | 02/28/2008 | 15426 | 15428 |
| 65 | 04/01/2008 | 186460 | 186460 |
| 66 | 03/05/2008 | 67162 | 67162 |
| 67 | 04/01/2008 | 26552 | 26553 |
| 68 | 04/01/2008 | 107360 | 107360 |
| 69 | 04/02/2008 | 176706 | 176706 |
| 70 | 03/05/2008 | 64305 | 64306 |
| 71 | 03/31/2008 | 107176 | 107176 |
| 72 | 04/01/2008 | 176071 | 176071 |
| 73 | 04/01/2008 | 176383 | 176383 |
| 74 | 04/02/2008 | 181936 | 181936 |
| 75 | 03/31/2008 | 195261 | 195264 |
| 76 | 01/18/2008 | 15665 | 15666 |
| 77 | 01/18/2008 | 15665 | 15666 |
| 78 | 03/27/2008 | 18009 | 18012 |
| 79 | 07/14/2008 | 83883 | 83894 |
| 80 | 07/08/2008 | 5744 | 5744 |
| 81 | 06/30/2008 | 84587 | 84587 |
| 82 | 07/01/2008 | 161524 | 195137 |
| 83 | 06/24/2009 | 52630 | 52630 |
| 84 | 10/12/2007 | 221953 | 221953 |
| 85 | 04/16/2009 | 63195 | 63195 |
| 86 | 03/31/2008 | 21530 | 21530 |
| 87 | 11/09/2006 | 183423 | 183423 |
| 88 | 03/28/2008 | 21953 | 21953 |
| 89 | 05/01/2007 | 52332 | 52340 |
| 90 | 10/09/2008 | 20107 | 20110 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 91 | 04/07/2009 | 60357 | 60357 |
| 92 | 04/08/2009 | 58748 | 58751 |
| 93 | 06/24/2009 | 47854 | 47855 |
| 94 | 07/02/2009 | 15719 | 15722 |
| 95 | 05/26/2006 | 64690 | 64694 |
| 96 | 05/26/2006 | 64737 | 64740 |
| 97 | 06/29/2009 | 31787 | 31788 |
| 98 | 10/05/2009 | 15904 | 15904 |
| 99 | 06/01/2006 | 70589 | 70610 |
| 100 | 08/13/2009 | 107440 | 107440 |
| 101 | 04/21/2010 | 164913 | 164913 |
| 102 | 06/08/2010 | 39054 | 39054 |
| 103 | 07/26/2010 | 673 | 674 |
| 104 | 05/26/2010 | 192879 | 192885 |
| 105 | 03/31/2010 | 2711 | 2713 |
| 106 | 03/06/2009 | 102448 | 102448 |
| 107 | 03/09/2009 | 30842 | 30842 |
| 108 | 04/08/2009 | 58799 | 58799 |
| 109 | 04/13/2009 | 62176 | 62178 |
| 110 | 03/08/2009 | 107875 | 107875 |
| 111 | 06/05/2009 | 84766 | 84766 |
| 112 | 08/28/2009 | 133251 | 133251 |
| 113 | 08/18/2009 | 44202 | 44209 |
| 114 | 08/01/1998 | KIELY 1580 | KIELY 158 |
| 115 | 10/22/2009 | 168354 | 168402 |
| 116 | 12/23/2009 | 16319 | 16319 |
| 117 | 12/31/2009 | 21933 | 21934 |
| 118 | 05/07/2003 | N/A | N/A |
| 119 | 04/25/2013 | 39940 | 39940 |
| 120 | 03/20/2009 | N/A | N/A |
| 121 | 03/20/2009 | N/A | N/A |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 122 | 03/26/2010 | 114433 | 114435 |
| 123 | 03/26/2010 | 113370 | 113373 |
| 124 | 01/07/2004 | 37348 | 37348 |
| 125 | 02/01/2005 | 54818 | 54818 |
| 126 | 05/07/2009 | 54792 | 54792 |
| 127 | 05/12/2009 | 108373 | 108373 |
| 128 | 08/20/1998 | 114209 | 114214 |
| 129 | 05/01/2006 | 168579 | 168580 |
| 130 | 10/13/2008 | 212151 | 212155 |
| 131 | 01/01/2008 | 24776 | 24782 |
| 132 | 03/07/2008 | 17563 | 17563 |
| 133 | 07/13/2008 | 28581 | 28582 |
| 134 | 12/31/2009 | 16353 | 16355 |
| 135 | 06/25/2008 | 129872 | 129872 |
| 136 | 07/13/2008 | 20086 | 20086 |
| 137 | 03/27/2008 | 18009 | 18012 |
| 138 | 03/28/2008 | 18009 | 18012 |
| 139 | 08/31/2008 | 3712 | 3712 |
| 140 | 12/31/2009 | 2949 | 2949 |
| 141 | 11/30/2009 | 2983 | 2989 |
| 142 | 01/30/2007 | 2575 | 2575 |
| 143 | 01/01/2008 | 365 | 365 |
| 144 | 02/29/2008 | 3528 | 3528 |
| 145 | 12/29/2008 | 2638 | 2644 |
| 146 | 01/31/2008 | 42155 | 42155 |
| 147 | 01/31/2008 | 21491 | 21495 |
| 148 | 01/31/2009 | 150040 | 150040 |
| 149 | 12/31/2008 | 169506 | 169515 |
| 150 | 02/29/2008 | 3528 | 3528 |
| 151 | 06/30/2008 | 3666 | 3666 |
| 152 | 03/31/2008 | 3218 | 3220 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 153 | 12/16/2008 | 14932 | 14932 |
| 154 | 11/01/2008 | 2640 | 2644 |
| 155 | 04/01/2008 | 3295 | 3295 |
| 156 | 04/01/2008 | 107178 | 107178 |
| 157 | 02/29/2008 | 182542 | 182544 |
| 158 | 04/10/2008 | 182552 | 182555 |
| 159 | 04/01/2008 | 3227 | 3227 |
| 160 | 04/02/2008 | 107358 | 107359 |
| 161 | 04/15/2010 | 16345 | 16345 |
| 162 | 10/03/2007 | 23466 | 23466 |
| 163 | 11/02/2007 | 23673 | 23673 |
| 164 | 05/01/2007 | 22735 | 22859 |
| 165 | 03/03/2007 | 8197 | 8217 |
| 166 | 04/01/2008 | 3427 | 3428 |
| 167 | 06/06/2007 | 1 | 6 |
| 168 | 03/31/2008 | 78879 | 78884 |
| 169 | 01/31/2008 | 42155 | 42155 |
| 170 | 08/31/2008 | 15066 | 15066 |
| 171 | 04/28/2010 | 2898 | 2898 |
| 172 | 01/27/2009 | 2990 | 2990 |
| 173 | 09/08/2008 | 15123 | 15123 |
| 174 | 03/12/2008 | 51999 | 52017 |
| 175 | 05/01/2007 | 20488 | 20492 |
| 176 | 07/31/2007 | 456 | 456 |
| 177 | 06/30/2007 | 2525 | 2525 |
| 178 | 07/03/2009 | 53095 | 53096 |
| 179 | 03/08/2010 | 42047 | 42047 |
| 180 | 02/05/2007 | 3521 | 3521 |
| 181 | 01/31/2008 | 14879 | 14879 |
| 182 | 08/31/2008 | 15252 | 15253 |
| 183 | 12/27/2007 | 15676 | 15679 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 184 | 11/30/2008 | 2547 | 2547 |
| 185 | 09/30/2009 | 42434 | 42434 |
| 186 | 03/31/2008 | N/A | N/A |
| 187 | 03/31/2008 | N/A | N/A |
| 188 | 03/31/2008 | N/A | N/A |
| 189 | 03/31/2008 | N/A | N/A |
| 190 | 03/31/2008 | N/A | N/A |
| 191 | 03/31/2008 | N/A | N/A |
| 192 | 03/31/2008 | N/A | N/A |
| 193 | 03/31/2008 | N/A | N/A |
| 194 | 04/04/2008 | 108105 | 171035 |
| 195 | 12/18/2007 | 263 | 60357 |
| 196 | 10/10/2007 | 169601 | 169603 |
| 197 | 11/06/2000 | 254320 | 254335 |
| 198 | 11/01/2000 | 254273 | 254319 |
| 199 | 12/31/2007 | 142 | 142 |
| 200 | 02/29/2008 | 3528 | 3528 |
| 201 | 04/07/2008 | 3525 | 3526 |
| 202 | 01/19/2007 | 2575 | 2575 |
| 203 | 03/07/2008 | 3534 | 3535 |
| 204 | 04/07/2008 | 3525 | 3525 |
| 205 | 01/08/2008 | 2584 | 2584 |
| 206 | 01/08/2008 | 2584 | 2585 |
| 207 | 03/16/2007 | 2701 | 2702 |
| 208 | 06/12/2007 | 2706 | 2707 |
| 209 | 08/31/2007 | 2524 | 2524 |
| 210 | 10/11/2007 | 3724 | 3724 |
| 211 | 12/12/2007 | 2505 | 2506 |
| 212 | 12/16/2007 | 3732 | 3732 |
| 213 | 10/09/2008 | 3712 | 3712 |
| 214 | 01/20/2009 | 240522 | 240523 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 215 | 04/04/2008 | 3528 | 3528 |
| 216 | 02/15/2008 | 141 | 141 |
| 217 | 07/14/2008 | 84410 | 166258 |
| 218 | 06/17/2010 | 11120 | 11120 |
| 219 | 08/08/2008 | 3227 | 3227 |
| 220 | 04/09/2008 | 108892 | 108893 |
| 221 | 04/04/2008 | 80139 | 80139 |
| 222 | 04/03/2008 | 108102 | 108102 |
| 223 | 04/09/2008 | 108911 | 84332 |
| 224 | 04/09/2008 | 108917 | 108918 |
| 225 | 04/04/2008 | 78116 | 181288 |
| 226 | 04/04/2008 | 109039 | 109039 |
| 227 | 03/31/2008 | 106750 | 106755 |
| 228 | 04/30/2008 | 15310 | 15310 |
| 229 | 04/01/2008 | 3242 | 3243 |
| 230 | 03/31/2008 | 3438 | 3441 |
| 231 | 02/20/2008 | 60332 | 60332 |
| 232 | 04/02/2008 | 176600 | 176600 |
| 233 | 04/02/2008 | 176706 | 176706 |
| 234 | 03/31/2008 | 107176 | 107176 |
| 235 | 04/01/2008 | 107172 | 107175 |
| 236 | 04/01/2008 | 107172 | 107175 |
| 237 | 04/01/2008 | 176348 | 176348 |
| 238 | 04/01/2008 | 176071 | 176071 |
| 239 | 04/01/2008 | 176383 | 176383 |
| 240 | 04/01/2008 | 106809 | 106810 |
| 241 | 04/01/2008 | 176416 | 176416 |
| 242 | 04/01/2008 | 74890 | 74890 |
| 243 | 04/01/2008 | 14987 | 14991 |
| 244 | 03/31/2008 | 14992 | 14992 |
| 245 | 04/01/2008 | 107360 | 107360 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 246 | 07/01/2008 | 161524 | 161524 |
| 247 | 07/15/2008 | 84338 | 84338 |
| 248 | 06/12/2009 | 21037 | 21037 |
| 249 | 07/14/2008 | 84433 | 84433 |
| 250 | 07/14/2008 | 84154 | 84154 |
| 251 | 07/15/2008 | 84336 | 84336 |
| 252 | 07/16/2008 | 84337 | 84337 |
| 253 | 07/16/2008 | 84346 | 84349 |
| 254 | 07/18/2008 | 84641 | 84641 |
| 255 | 07/18/2008 | 54607 | 84613 |
| 256 | 08/01/2008 | 85266 | 85266 |
| 257 | 08/01/2008 | 15228 | 15228 |
| 258 | 08/04/2008 | 85231 | 85232 |
| 259 | 12/24/2009 | 3823 | 3823 |
| 260 | 12/16/2008 | 14969 | 14969 |
| 261 | 10/30/2008 | 15044 | 15048 |
| 262 | 09/08/2008 | 15163 | 15163 |
| 263 | 01/22/2010 | 3040 | 3040 |
| 264 | 04/06/2010 | 2942 | 2947 |
| 265 | 12/16/2008 | 14935 | 14935 |
| 266 | 06/30/2008 | 3666 | 3666 |
| 267 | 08/01/2008 | 15229 | 15233 |
| 268 | 02/10/2009 | 91659 | 91659 |
| 269 | 06/20/2008 | 91660 | 91663 |
| 270 | 07/01/2008 | 5744 | 5744 |
| 271 | 06/01/2008 | 212525 | 212525 |
| 272 | 08/28/2009 | 84171 | 84171 |
| 273 | 08/28/2009 | 84171 | 84171 |
| 274 | 05/01/2006 | N/A | N/A |
| 275 | 04/21/2010 | 163896 | 163898 |
| 276 | 04/28/2010 | 16382 | 16382 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 277 | 04/21/2010 | 170300 | 170302 |
| 278 | 04/19/2010 | 160897 | 160917 |
| 279 | 04/19/2010 | N/A | N/A |
| 280 | 04/01/2010 | N/A | N/A |
| 281 | 03/31/2010 | 8468 | 8468 |
| 282 | 07/02/2009 | 15719 | 15722 |
| 283 | 02/02/2009 | 89337 | 89339 |
| 284 | 02/22/2009 | 130148 | 130151 |
| 285 | 08/31/2009 | 148717 | 148718 |
| 286 | 05/01/2009 | 58502 | 58506 |
| 287 | 03/19/2009 | 170019 | 170019 |
| 288 | 03/19/2009 | 111984 | 111986 |
| 289 | 06/10/2010 | 179578 | 179578 |
| 290 | 06/24/2010 | 16392 | 16401 |
| 291 | 05/07/2009 | 54792 | 54792 |
| 292 | 03/26/2010 | 113370 | 113373 |
| 293 | 05/03/2010 | 171716 | 171716 |
| 294 | 03/12/2008 | 182527 | 182532 |
| 295 | 03/31/2008 | 106743 | 106743 |
| 296 | 04/02/2008 | 107358 | 107359 |
| 297 | 05/05/2008 | 182552 | 182574 |
| 298 | 06/23/2008 | 182574 | 182574 |
| 299 | 07/22/2008 | 182584 | 182587 |
| 300 | 08/20/2008 | 182595 | 182595 |
| 301 | 08/20/2008 | 182605 | 182607 |
| 302 | 10/27/2008 | 182613 | 182613 |
| 303 | 12/13/2008 | 182624 | 182627 |
| 304 | 12/31/2008 | 182638 | 182640 |
| 305 | 03/10/2009 | 182648 | 182650 |
| 306 | 04/07/2009 | 182685 | 182686 |
| 307 | 07/30/2009 | 182697 | 182699 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 308 | 08/23/2009 | 182710 | 182712 |
| 309 | 08/21/2009 | 182723 | 182725 |
| 310 | 09/10/2009 | 182731 | 182733 |
| 311 | 09/30/2009 | 182762 | 182764 |
| 312 | 01/08/2010 | 182770 | 182771 |
| 313 | 02/24/2010 | 182777 | 182779 |
| 314 | 02/23/2010 | 182806 | 182808 |
| 315 | 05/27/2010 | 182819 | 182821 |
| 316 | 06/10/2008 | 182832 | 182834 |
| 317 | 12/31/2008 | 87341 | 87341 |
| 318 | 06/30/2008 | 86071 | 86074 |
| 319 | 12/31/2007 | 156 | 156 |
| 320 | 07/31/2008 | 3698 | 3700 |
| 321 | 08/31/2008 | 15083 | 15084 |
| 322 | 08/31/2008 | 3719 | 3721 |
| 323 | 03/31/2010 | 2711 | 2713 |
| 324 | 06/17/2008 | 3564 | 3564 |
| 325 | 03/31/2008 | 107156 | 89974 |
| 326 | 05/31/2008 | 15250 | 15250 |
| 327 | 06/08/2010 | 503 | 2742 |
| 328 | 02/20/2009 | 76758 | 76758 |
| 329 | 10/31/2008 | 4406 | 4421 |
| 330 | 08/31/2008 | 15090 | 15091 |
| 331 | 10/11/2007 | 402 | 403 |
| 332 | 04/16/2008 | 110561 | 110565 |
| 333 | 01/11/2010 | 115320 | 179682 |
| 334 | 04/30/2008 | 115319 | 179677 |
| 335 | 01/11/2010 | 115318 | 179676 |
| 336 | 02/23/2007 | 00051932 | 00051932 |
| 337 | 10/27/2007 | 23582 | 23582 |
| 338 | 12/06/2007 | 146773 | 146773 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 339 | 12/31/2007 | 88726 | 88760 |
| 340 | 01/03/2008 | 109151 | 109151 |
| 341 | 01/09/2008 | 24877 | 24881 |
| 342 | 02/11/2008 | 57245 | 57245 |
| 343 | 02/12/2008 | 58732 | 58734 |
| 344 | 02/12/2008 | 57206 | 57207 |
| 345 | 02/29/2008 | 66839 | 66839 |
| 346 | 03/01/2008 | 62405 | 62405 |
| 347 | 03/01/2008 | 66892 | 66898 |
| 348 | 03/02/2008 | 62577 | 62585 |
| 349 | 03/03/2008 | 62861 | 62861 |
| 350 | 03/03/2008 | 66997 | 66997 |
| 351 | 03/03/2008 | 62867 | 62867 |
| 352 | 03/05/2008 | 67162 | 67162 |
| 353 | 03/28/2008 | 73572 | 73579 |
| 354 | 03/31/2008 | 74464 | 74498 |
| 355 | 04/07/2008 | 78710 | 78715 |
| 356 | 04/08/2008 | 79121 | 79135 |
| 357 | 06/19/2008 | 20000 | 20000 |
| 358 | 01/22/2009 | 240686 | 240687 |
| 359 | 02/24/2009 | 86635 | 86635 |
| 360 | 02/24/2009 | 86669 | 86669 |
| 361 | 02/24/2009 | 86673 | 86675 |
| 362 | 02/25/2009 | 87364 | 87367 |
| 363 | 03/04/2009 | 95568 | 95568 |
| 364 | 03/04/2009 | 95925 | 95960 |
| 365 | 03/06/2009 | 102448 | 102448 |
| 366 | 03/08/2009 | 102953 | 102954 |
| 367 | 03/10/2009 | 58721 | 58727 |
| 368 | 03/11/2009 | 104763 | 104768 |
| 369 | 03/13/2009 | 107425 | 107428 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 370 | 03/13/2009 | 107873 | 107877 |
| 371 | 03/16/2009 | 31036 | 31039 |
| 372 | 03/17/2009 | 110718 | 110720 |
| 373 | 03/17/2009 | 31066 | 31067 |
| 374 | 03/18/2009 | 110928 | 110929 |
| 375 | 03/18/2009 | 111496 | 111497 |
| 376 | 03/31/2009 | 31118 | 31118 |
| 377 | 04/08/2009 | 58748 | 58751 |
| 378 | 04/09/2008 | 79158 | 79168 |
| 379 | 04/13/2009 | 62176 | 62178 |
| 380 | 04/28/2009 | 71137 | 71139 |
| 381 | 04/29/2009 | 72698 | 72710 |
| 382 | 04/30/2009 | 31296 | 31296 |
| 383 | 04/30/2009 | 73315 | 73317 |
| 384 | 05/01/2009 | 76876 | 76880 |
| 385 | 05/07/2009 | 54792 | 54792 |
| 386 | 05/08/2009 | 79087 | 79088 |
| 387 | 08/28/2009 | 84171 | 84171 |
| 388 | 08/31/2009 | 148717 | 148718 |
| 389 | 12/23/2009 | 16319 | 16319 |
| 390 | 12/24/2009 | 16193 | 16194 |
| 391 | 12/30/2009 | 16340 | 16340 |
| 392 | 12/30/2009 | 16348 | 16349 |
| 393 | 12/31/2009 | 21933 | 21934 |
| 394 | 01/04/2010 | 130769 | 130769 |
| 395 | 03/17/2010 | 20369 | 20372 |
| 396 | 03/24/2010 | 16070 | 16073 |
| 397 | 03/25/2010 | 16240 | 16246 |
| 398 | 03/28/2010 | 16133 | 16133 |
| 399 | 03/30/2010 | 135410 | 135412 |
| 400 | 03/30/2010 | 37331 | 37332 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 401 | 03/30/2010 | 135326 | 135326 |
| 402 | 03/31/2010 | 169434 | 169434 |
| 403 | 03/31/2010 | 37366 | 37368 |
| 404 | 04/01/2010 | 21553 | 21555 |
| 405 | 04/13/2010 | 170283 | 170284 |
| 406 | 04/14/2010 | 156585 | 156587 |
| 407 | 04/19/2010 | 160897 | 160917 |
| 408 | 04/19/2010 | 162158 | 162160 |
| 409 | 04/20/2010 | 162445 | 162445 |
| 410 | 04/21/2010 | 163853 | 163853 |
| 411 | 04/23/2010 | 166227 | 166227 |
| 412 | 04/27/2010 | 168573 | 168573 |
| 413 | 04/27/2010 | 168783 | 168783 |
| 414 | 04/27/2010 | 168859 | 168859 |
| 415 | 04/27/2010 | 169041 | 169045 |
| 416 | 04/27/2010 | 169074 | 169074 |
| 417 | 04/28/2010 | 38486 | 38487 |
| 418 | 05/05/2010 | 125593 | 125594 |
| 419 | 05/05/2010 | 125763 | 125764 |
| 420 | 05/10/2010 | 129919 | 129919 |
| 421 | 05/12/2010 | 130395 | 130401 |
| 422 | 05/24/2010 | 169111 | 169111 |
| 423 | 05/24/2010 | 169112 | 169112 |
| 424 | 05/28/2010 | 176060 | 176061 |
| 425 | 05/12/2010 | 178846 | 178850 |
| 426 | 06/08/2010 | 39054 | 39054 |
| 427 | 06/08/2010 | 112505 | 112512 |
| 428 | 06/10/2010 | 39384 | 39384 |
| 429 | 06/24/2010 | 16392 | 16401 |
| 430 | 07/30/2000 | 206 | 206 |
| 431 | 09/22/2015 | 125 | 125 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 432 | 09/10/2015 | N/A | N/A |
| 434 | 03/31/2008 | 3427 | 3428 |
| 435 | 03/31/2008 | 3237 | 3237 |
| 436 | [Blank] | FPR0070065 | FPR007006 |
| 437 | 04/01/2010 | N/A | N/A |
| 438 | 07/09/2010 | 189933 | 189933 |
| 439 | 05/14/2008 | 18329 | 18329 |
| 440 | 09/26/2007 | 23392 | 23393 |
| 441 | 10/08/2007 | 23473 | 23473 |
| 442 | [Blank] | 22853 | 22853 |
| 443 | 09/11/2007 | 22876 | 22876 |
| 444 | 06/04/2009 | 58653 | 58657 |
| 445 | 03/27/2008 | 26370 | 26375 |
| 446 | 03/28/2008 | 182381 | 182381 |
| 447 | 06/23/2008 | N/A | N/A |
| 448 | 04/27/2010 | 169025 | 169025 |
| 449 | 04/19/2010 | 160687 | 160687 |
| 450 | 01/01/2000 | 22852 | 22852 |
| 451 | 06/09/2010 | 145347 | 145347 |
| 453 | [Blank] | N/A | N/A |
| 455 | 06/15/2010 | 125175 | 125175 |
| 456 | 05/07/2010 | 129895 | 129895 |
| 457 | 05/10/2010 | 129919 | 129919 |
| 458 | 05/06/2010 | 129100 | 129102 |
| 459 | 04/28/2010 | 146199 | 146199 |
| 460 | 06/10/2010 | 145674 | 145674 |
| 461 | 03/31/2010 | 135543 | 135543 |
| 462 | 03/31/2010 | 135508 | 135508 |
| 463 | 03/30/2010 | 134996 | 134996 |
| 465 | 06/09/2010 | 113514 | 113514 |
| 466 | 05/05/2010 | 38543 | 38570 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 469 | 05/27/2010 | 38982 | 38985 |
| 470 | 04/29/2010 | 38485 | 38489 |
| 471 | 10/06/2009 | 129139 | 129140 |
| 472 | 04/30/2010 | 38575 | 38576 |
| 473 | 03/27/2008 | 15431 | 15431 |
| 474 | 03/20/2009 | 13104 | 13106 |
| 475 | 12/11/2003 | 2087 | 2088 |
| 476 | 03/27/2008 | N/A | N/A |
| 477 | 03/31/2008 | N/A | N/A |
| 478 | 09/07/2016 | N/A | N/A |
| 479 | 06/26/2008 | N/A | N/A |
| 480 | 03/07/2008 | N/A | N/A |
| 481 | 01/10/2008 | N/A | N/A |
| 482 | 09/10/2010 | N/A | N/A |
| 483 | 08/25/2010 | N/A | N/A |
| 484 | 10/26/2007 | 23580 | 23580 |
| 485 | 08/23/2010 | 224681 | 224684 |
| 486 | 08/23/2010 | 228477 | 228492 |
| 487 | 04/09/2008 | 79264 | 79273 |
| 488 | 08/18/2009 | 44202 | 44209 |
| 489 | 06/12/2008 | N/A | N/A |
| 490 | 03/03/2008 | 19 | 26 |
| 492 | 01/05/2008 | 38 | 38 |
| 493 | 03/27/2008 | 15430 | 15430 |
| 494 | 09/26/2007 | 15683 | 15683 |
| 496 | 03/31/2008 | 15441 | 15441 |
| 497 | 02/27/2008 | 15426 | 15427 |
| 498 | 12/27/2007 | 15676 | 15679 |
| 499 | 02/27/2008 | 15338 | 15341 |
| 500 | 05/27/2008 | 18963 | 18965 |
| 501 | 01/18/2008 | 15665 | 15666 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 502 | 06/16/2008 | 19939 | 19940 |
| 503 | 07/04/2008 | 20052 | 20053 |
| 504 | 04/01/2009 | 33113 | 33113 |
| 505 | 05/21/2008 | 18629 | 18632 |
| 506 | 10/30/2007 | 23611 | 23611 |
| 508 | 04/01/2008 | 26552 | 26553 |
| 509 | 06/16/2008 | 19964 | 19966 |
| 510 | 03/27/2008 | 17716 | 17717 |
| 511 | 02/23/2009 | 30562 | 30564 |
| 512 | 10/29/2007 | 23587 | 23592 |
| 513 | 04/07/2008 | 78710 | 78901 |
| 514 | 04/29/2010 | 38576 | 38576 |
| 515 | 07/03/2009 | 52360 | 52360 |
| 516 | 06/08/2010 | 112556 | 112556 |
| 517 | 03/27/2008 | 30201 | 30201 |
| 518 | 06/09/2010 | 39101 | 39103 |
| 519 | 06/08/2010 | 39063 | 39063 |
| 520 | 06/10/2010 | 121637 | 121637 |
| 521 | 03/12/2008 | 15340 | 15341 |
| 522 | 09/29/2009 | 35941 | 35945 |
| 523 | 03/01/2008 | 60258 | 60267 |
| 524 | 07/06/2009 | 52476 | 52495 |
| 525 | 04/22/2010 | 165237 | 165243 |
| 526 | 04/13/2010 | 155817 | 155817 |
| 527 | 03/31/2008 | 195125 | 195137 |
| 528 | 05/08/2008 | 230146 | 230146 |
| 529 | 03/10/2008 | 216666 | 216667 |
| 530 | 05/24/2010 | 169111 | 169111 |
| 531 | 12/01/2007 | 161066 | 161067 |
| 532 | 09/07/2016 | N/A | N/A |
| 533 | 05/06/2010 | 129100 | 129102 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 534 | 03/31/2008 | 195261 | 195264 |
| 535 | 05/14/2010 | NOFF004790 | NOFF00479 |
| 536 | 05/06/2010 | FAM-199630 | FAM-19963 |
| 537 | 03/21/2008 | N/A | N/A |
| 538 | 10/26/2017 | N/A | N/A |
| 539 | 10/31/2017 | N/A | N/A |
| 540 | 02/10/2017 | N/A | N/A |
| 541 | 03/21/2017 | N/A | N/A |
| 542 | 02/10/2017 | N/A | N/A |
| 543 | 03/01/2017 | N/A | N/A |
| 544 | 02/10/2017 | N/A | N/A |
| 545 | 03/21/2017 | N/A | N/A |
| 546 | 03/24/2017 | N/A | N/A |
| 547 | 04/19/2017 | N/A | N/A |
| 548 | 10/31/2017 | N/A | N/A |
| 549 | 02/06/2017 | N/A | N/A |
| 550 | 03/09/2017 | N/A | N/A |
| 551 | 06/16/2017 | N/A | N/A |
| 552 | 07/17/2017 | N/A | N/A |
| 553 | 08/15/2017 | N/A | N/A |
| 554 | 09/14/2017 | N/A | N/A |
| 555 | 10/31/2017 | N/A | N/A |
| 556 | 09/28/2017 | N/A | N/A |
| 557 | 04/12/2017 | N/A | N/A |
| 558 | [Blank] | N/A | N/A |
| 559 | 04/07/2017 | N/A | N/A |
| 560 | 09/11/2007 | 22876 | 22876 |
| 561 | 12/27/2007 | 15676 | 15679 |
| 562 | 03/03/2008 | 19 | 26 |
| 563 | 05/30/2007 | 20738 | 20738 |
| 564 | 11/27/2007 | 23901 | 23901 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 565 | 10/31/2007 | 23646 | 23646 |
| 566 | 11/27/2008 | 20274 | 20275 |
| 567 | 03/20/2007 | 20468 | 20474 |
| 568 | 07/15/2007 | 20591 | 20612 |
| 569 | 03/17/2009 | 31066 | 31067 |
| 570 | 01/21/2009 | 63020 | 63021 |
| 571 | 01/30/2008 | 57071 | 87072 |
| 572 | 01/05/2008 | 24788 | 24790 |
| 573 | 04/08/2008 | 71470 | 71470 |
| 574 | 03/10/2009 | 107572 | 107572 |
| 575 | 05/27/2010 | 38987 | 38988 |
| 576 | 03/09/2009 | 30842 | 30844 |
| 577 | 12/01/2007 | 161066 | 161067 |
| 578 | 02/20/2008 | 68566 | 68567 |
| 579 | 01/30/2008 | 87032 | 87034 |
| 580 | 03/01/2008 | 60258 | 60267 |
| 581 | 05/01/2007 | 22735 | 22859 |
| 582 | 03/31/2008 | 195125 | 195137 |
| 583 | 09/01/2008 | 254336 | 254346 |
| 584 | 10/01/2006 | 83713 | 83746 |
| 585 | 01/03/2008 | 62920 | 62982 |
| 586 | 06/08/2010 | 110793 | 110793 |
| 587 | 03/31/2008 | 78716 | 78721 |
| 588 | 11/01/2007 | 15547 | 15591 |
| 589 | 03/27/2008 | 15431 | 15431 |
| 590 | 03/31/2008 | 15441 | 15441 |
| 591 | 03/27/2008 | 15430 | 15430 |
| 592 | 02/27/2008 | 15338 | 15339 |
| 593 | 11/12/2010 | KIELY 00004 | KIELY 000 |
| 594 | 09/14/2010 | KIELY 00003 | KIELY 000 |
| 595 | 06/28/2010 | KIELY 00002 | KIELY 000 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 596 | 09/14/2010 | KIELY 00003 | KIELY 000 |
| 597 | 06/28/2010 | KIELY 00002 | KIELY 000 |
| 598 | 04/23/2010 | 166229 | 166229 |
| 599 | 04/20/2010 | 161886 | 161891 |
| 600 | 04/19/2010 | 160729 | 160731 |
| 601 | 07/02/2009 | 31789 | 31790 |
| 602 | 06/26/2009 | 31766 | 31766 |
| 603 | 05/04/2009 | 39983 | 39983 |
| 604 | 10/26/2007 | 23580 | 229402 |
| 605 | 10/01/2007 | N/A | N/A |
| 606 | 03/27/2008 | 15430 | 15434 |
| 607 | 03/31/2008 | 78888 | 78893 |
| 608 | 03/31/2008 | 78879 | 78884 |
| 609 | 03/31/2008 | 78765 | 78769 |
| 610 | 03/31/2008 | 78722 | 78727 |
| 611 | 03/31/2008 | 78813 | 78818 |
| 612 | 04/07/2008 | 78894 | 78901 |
| 613 | 05/12/2009 | 108373 | 108374 |
| 614 | 03/31/2008 | 78735 | 78741 |
| 615 | 03/31/2008 | 48300 | 78734 |
| 616 | 01/25/2008 | 15592 | 15631 |
| 617 | 06/20/2008 | N/A | N/A |
| 618 | 03/31/2008 | 78808 | 78812 |
| 619 | 03/31/2008 | 78888 | 78893 |
| 620 | 03/31/2008 | 78873 | 78878 |
| 621 | 03/31/2008 | 78879 | 78884 |
| 622 | 06/20/2008 | N/A | N/A |
| 623 | 05/07/2009 | N/A | N/A |
| 624 | 03/27/2008 | N/A | N/A |
| 625 | 07/07/2006 | 2443 | 2445 |
| 626 | 02/28/2006 | 1687 | 1690 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 626 | 03/27/2006 | 1687 | 1690 |
| 627 | 12/27/2007 | 24755 | 24757 |
| 629 | 12/16/2004 | 2191 | 2193 |
| 632 | 06/28/2007 | 274447 | 274450 |
| 639 | 03/27/2008 | 17867 | 17870 |
| 641 | [Blank] | N/A | N/A |
| 642 | [Blank] | N/A | N/A |
| 643 | 07/13/2008 | 20086 | 20087 |
| 644 | 09/28/2007 | 23435 | 23436 |
| 646 | 06/11/2010 | 39399 | 39401 |
| 647 | 01/22/2009 | 30387 | 30390 |
| 648 | 05/05/2009 | 53174 | 53179 |
| 649 | 04/06/2010 | 16044 | 16048 |
| 650 | 03/03/2008 | 15941 | 15950 |
| 651 | 12/01/2006 | 20573 | 20590 |
| 652 | 06/09/2010 | 39096 | 39096 |
| 653 | 03/10/2009 | 50904 | 50904 |
| 654 | 04/27/2010 | 38220 | 38220 |
| 655 | 06/29/2009 | 47993 | 47993 |
| 656 | 02/03/2009 | 51863 | 51863 |
| 657 | 01/09/2009 | 53110 | 53110 |
| 658 | 03/03/2008 | 16024 | 16025 |
| 659 | 01/13/2009 | 53200 | 53201 |
| 660 | 01/27/2009 | 15951 | 15952 |
| 661 | 10/31/2008 | 54942 | 54942 |
| 662 | 05/12/2009 | 55052 | 55063 |
| 663 | 07/09/2009 | 59062 | 59062 |
| 664 | 11/29/2007 | 62191 | 62193 |
| 665 | 06/30/2007 | 60188 | 60188 |
| 666 | 02/12/2008 | 56612 | 56685 |
| 667 | 02/03/2009 | 55047 | 55047 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 668 | 08/12/2009 | 56023 | 56023 |
| 669 | 02/20/2008 | 62157 | 62157 |
| 670 | 12/07/2007 | 62288 | 62288 |
| 671 | 08/12/2009 | 56068 | 56069 |
| 672 | 07/25/2009 | 59239 | 59246 |
| 673 | 01/09/2008 | 63121 | 63131 |
| 674 | 08/03/2009 | 64287 | 64298 |
| 675 | 05/07/2009 | 54768 | 54816 |
| 676 | 03/31/2008 | 74429 | 74436 |
| 677 | 02/03/2009 | 83495 | 83495 |
| 678 | 04/07/2008 | 78940 | 78941 |
| 679 | 04/30/2009 | 73315 | 73317 |
| 680 | 05/05/2009 | 76115 | 76115 |
| 681 | 01/08/2009 | 82522 | 82523 |
| 682 | 02/05/2009 | 86938 | 86938 |
| 683 | 04/07/2008 | 78311 | 78311 |
| 684 | 03/02/2009 | 81406 | 81406 |
| 685 | 08/13/2009 | 85411 | 85414 |
| 686 | 05/22/2009 | 82669 | 82673 |
| 687 | 02/28/2009 | 90050 | 90055 |
| 688 | 04/01/2008 | 74615 | 74621 |
| 689 | 07/16/2008 | 84323 | 84323 |
| 690 | 06/04/2009 | 89983 | 90033 |
| 691 | 03/03/2009 | 94512 | 94513 |
| 692 | 03/09/2009 | 103778 | 103778 |
| 693 | 06/07/2010 | 112175 | 112181 |
| 694 | 08/06/2010 | 119928 | 119928 |
| 695 | 03/08/2009 | 109269 | 109269 |
| 696 | [Blank] | N/A | N/A |
| 697 | 06/10/2010 | 122263 | 122263 |
| 698 | 03/04/2009 | 96428 | 96430 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 699 | [Blank] | N/A | N/A |
| 700 | 08/14/2009 | 108403 | 108403 |
| 701 | 03/16/2009 | 109267 | 109271 |
| 702 | 03/28/2008 | 106720 | 106725 |
| 703 | 06/10/2010 | 121759 | 121767 |
| 704 | 08/13/2009 | 107209 | 107223 |
| 705 | 03/03/2009 | 95166 | 95197 |
| 706 | 04/08/2008 | 108928 | 108977 |
| 707 | 08/14/2009 | 108403 | 108403 |
| 708 | 06/07/2010 | 112175 | 112181 |
| 709 | 03/08/2009 | 109269 | 109269 |
| 710 | 08/06/2010 | 119928 | 119928 |
| 711 | 06/11/2010 | 123457 | 123457 |
| 712 | 05/05/2010 | 126419 | 126419 |
| 713 | 10/20/2009 | 130108 | 130108 |
| 714 | 05/06/2010 | 128301 | 128301 |
| 715 | 03/30/2010 | 134995 | 134995 |
| 716 | 05/07/2010 | 129135 | 129135 |
| 717 | 05/06/2010 | 129091 | 129093 |
| 718 | 06/09/2010 | 122939 | 122939 |
| 719 | 06/02/2008 | 153824 | 153824 |
| 720 | 11/09/2007 | 147514 | 147517 |
| 721 | 06/14/2010 | 124560 | 124564 |
| 722 | 06/14/2010 | 124245 | 124249 |
| 723 | 05/05/2010 | 126355 | 126365 |
| 724 | 09/01/2009 | 127869 | 127881 |
| 725 | 05/05/2010 | 127347 | 127359 |
| 726 | 01/01/2009 | 95096 | 95297 |
| 727 | 11/10/2009 | 170417 | 170417 |
| 728 | 06/25/2008 | 158931 | 158932 |
| 729 | 04/19/2010 | 161038 | 161038 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 730 | 05/04/2010 | 172012 | 172012 |
| 731 | 03/31/2010 | 159318 | 159318 |
| 732 | 04/19/2010 | 160687 | 160687 |
| 733 | 03/30/2010 | 155762 | 155762 |
| 734 | 04/27/2010 | 168553 | 168558 |
| 735 | 04/27/2010 | 169010 | 169023 |
| 736 | 04/11/2010 | 263325 | 263325 |
| 737 | 07/28/2010 | 265059 | 265059 |
| 738 | 12/31/2008 | 264659 | 264959 |
| 739 | 12/31/2008 | 264660 | 264660 |
| 740 | 07/28/2010 | 265282 | 265282 |
| 741 | 02/28/2010 | 264687 | 264687 |
| 742 | 07/30/2010 | 265330 | 265330 |
| 743 | 02/28/2010 | 264199 | 264199 |
| 744 | 07/26/2010 | 264658 | 264658 |
| 745 | 07/28/2010 | 265037 | 265037 |
| 746 | 08/04/2010 | 265420 | 265420 |
| 747 | 08/04/2010 | 265411 | 265411 |
| 748 | 07/28/2010 | 265046 | 265046 |
| 749 | 07/27/2010 | 264793 | 264793 |
| 750 | 07/30/2010 | 265343 | 265343 |
| 751 | 07/29/2010 | 268293 | 268293 |
| 752 | 08/01/2010 | 268188 | 268188 |
| 753 | 07/28/2010 | 268189 | 268189 |
| 754 | 08/09/2010 | 268663 | 268663 |
| 755 | 06/10/2010 | 266195 | 266195 |
| 756 | 07/31/2010 | 265493 | 265493 |
| 757 | 07/28/2010 | 268176 | 268176 |
| 758 | 08/05/2010 | 268130 | 268130 |
| 759 | 08/09/2010 | 265492 | 265496 |
| 759 | 08/06/2010 | 265492 | 265492 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 760 | 08/05/2010 | 265434 | 265434 |
| 761 | 07/29/2010 | 268300 | 268300 |
| 762 | 05/17/2007 | 260168 | 260184 |
| 763 | 10/31/2008 | 260187 | 260202 |
| 764 | 02/13/2009 | 260220 | 260237 |
| 765 | 03/27/2009 | 262326 | 262347 |
| 766 | 08/27/2010 | 272108 | 272121 |
| 767 | 05/14/2010 | N/A | N/A |
| 768 | 08/18/2010 | 270285 | 270287 |
| 769 | 08/17/2010 | 269990 | 269995 |
| 770 | 08/27/2010 | 263255 | 263261 |
| 771 | 08/19/2010 | 266371 | 266374 |
| 772 | 07/26/2010 | 264657 | 264665 |
| 773 | 07/09/2010 | 264893 | 264896 |
| 774 | 03/26/2008 | 21146 | 21147 |
| 775 | 04/07/2010 | 2983 | 2983 |
| 776 | 04/02/2008 | 181936 | 181936 |
| 777 | 07/14/2008 | 84433 | 84434 |
| 778 | 07/25/2008 | 21433 | 21434 |
| 779 | 01/18/2008 | 15665 | 15666 |
| 780 | 04/01/2010 | 145959 | 145961 |
| 781 | 07/25/2008 | 21435 | 21437 |
| 782 | 11/01/2007 | 23660 | 23662 |
| 783 | 02/20/2008 | 60352 | 60355 |
| 784 | 05/24/2010 | 170003 | 170007 |
| 785 | 09/07/2010 | N/A | N/A |
| 786 | 03/22/2010 | 151712 | 151717 |
| 787 | 03/31/2008 | 74429 | 74436 |
| 788 | 03/28/2008 | 77979 | 77986 |
| 789 | 02/13/2017 | N/A | N/A |
| 790 | 02/13/2017 | N/A | N/A |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 791 | 02/13/2017 | N/A | N/A |
| 792 | 04/10/2017 | N/A | N/A |
| 793 | 04/10/2017 | N/A | N/A |
| 794 | 04/10/2017 | N/A | N/A |
| 795 | 06/06/2017 | N/A | N/A |
| 796 | 03/31/2008 | 87579 | 87582 |
| 797 | 03/07/2008 | 17565 | 17568 |
| 798 | 01/06/2011 | N/A | N/A |
| 799 | [Blank] | N/A | N/A |
| 800 | 03/01/2008 | 21761 | 21761 |
| 801 | 05/14/2010 | 3954 | 3957 |
| 802 | 08/14/2009 | 21741 | 21741 |
| 803 | 01/07/2004 | 37348 | 37362 |
| 804 | 09/20/2007 | 22907 | 22907 |
| 805 | 09/30/2007 | 221929 | 221934 |
| 806 | 09/30/2007 | 23437 | 23437 |
| 807 | 10/02/2007 | 23458 | 23463 |
| 808 | 10/04/2007 | 221955 | 221956 |
| 809 | 11/01/2007 | 15547 | 15591 |
| 810 | 11/05/2007 | 23669 | 23672 |
| 811 | 11/05/2007 | 23676 | 23677 |
| 812 | 11/27/2007 | 231016 | 231019 |
| 813 | 12/11/2007 | 15544 | 15546 |
| 814 | 01/07/2008 | 16517 | 16523 |
| 815 | 01/10/2008 | 25575 | 25640 |
| 816 | 01/14/2008 | 15632 | 15646 |
| 817 | 01/14/2018 | 25623 | 25637 |
| 818 | 01/15/2008 | 17159 | 17160 |
| 819 | 01/15/2008 | 25638 | 25640 |
| 820 | 01/25/2008 | 15592 | 15631 |
| 821 | 02/08/2008 | 17374 | 17377 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 822 | 03/05/2008 | 17382 | 17401 |
| 823 | 03/05/2008 | 15509 | 15529 |
| 824 | 03/17/2008 | 227196 | 227196 |
| 825 | 03/27/2008 | 17716 | 17717 |
| 826 | 05/08/2008 | 230146 | 230146 |
| 827 | 05/14/2008 | 27005 | 27009 |
| 828 | 05/15/2008 | 18334 | 18340 |
| 829 | 09/07/2016 | N/A | N/A |
| 830 | 05/27/2008 | 18966 | 18966 |
| 831 | 06/11/2008 | 19607 | 19664 |
| 832 | 03/21/2016 | N/A | N/A |
| 833 | 06/11/2008 | 19479 | 19509 |
| 834 | 06/11/2008 | 19510 | 19599 |
| 835 | 06/02/2008 | 19671 | 19732 |
| 836 | 06/16/2008 | 19939 | 19939 |
| 837 | 06/16/2008 | 19971 | 19971 |
| 838 | 06/17/2008 | 233217 | 233217 |
| 839 | 06/19/2008 | 20000 | 20000 |
| 840 | 06/24/2008 | 20026 | 20028 |
| 841 | 10/30/2009 | 36202 | 36205 |
| 842 | 07/18/2008 | 20091 | 20096 |
| 843 | 05/08/2009 | 31477 | 31480 |
| 844 | 10/12/2009 | 247219 | 247220 |
| 845 | 11/24/2009 | 36252 | 36257 |
| 846 | 04/20/2010 | 161612 | 161612 |
| 847 | 05/19/2010 | 38766 | 38767 |
| 848 | 05/26/2010 | 252166 | 252167 |
| 849 | 04/25/2013 | 39940 | 39950 |
| 850 | 09/07/2016 | N/A | N/A |
| 851 | 01/06/2011 | N/A | N/A |
| 852 | 07/17/2001 | 00185922 | 00185942 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 853 | 02/07/2018 | N/A | N/A |
| 854 | 02/29/2008 | 14833 | 14833 |
| 855 | 09/10/2009 | 00004087 | 00004091 |
| 856 | 12/31/2007 | 145 | 146 |
| 857 | 01/19/2007 | 2575 | 2575 |
| 858 | 01/01/2008 | 14888 | 14888 |
| 859 | 07/21/2008 | N/A | N/A |
| 860 | 10/29/2008 | 15006 | 2990 |
| 861 | 01/01/2008 | N/A | N/A |
| 862 | 03/31/2008 | 3295 | 3406 |
| 863 | 10/07/2009 | 42434 | 42434 |
| 864 | 04/27/2009 | 57353 | 57353 |
| 865 | 02/24/2009 | 94203 | 94203 |
| 866 | 01/02/2004 | 229633 | 229646 |
| 867 | 02/10/2017 | N/A | N/A |
| 868 | 02/06/2017 | N/A | N/A |
| 869 | 01/15/2018 | N/A | N/A |
| 870 | 08/15/2017 | N/A | N/A |
| 871 | 11/27/2017 | N/A | N/A |
| 872 | 01/31/2007 | 2702 | 2702 |
| 873 | 09/10/2009 | 33115 | 33267 |
| 874 | 02/05/2007 | 3521 | 3521 |
| 875 | 11/01/2000 | 254273 | 254319 |
| 876 | 03/12/2007 | 1949 | 1949 |
| 877 | 06/26/2007 | 3642 | 3647 |
| 878 | 10/23/2007 | 2618 | 2623 |
| 879 | 09/28/2007 | 3743 | 3762 |
| 880 | 01/02/2008 | 2616 | 2616 |
| 881 | 02/10/2017 | N/A | N/A |
| 882 | 12/31/2008 | N/A | N/A |
| 883 | 04/06/2010 | 21170 | 21170 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 884 | [Blank] | 254320 | 254335 |
| 885 | 12/31/2007 | 44468 | 44468 |
| 886 | 03/31/2008 | 107156 | 107159 |
| 887 | 10/31/2008 | 14937 | 14937 |
| 888 | 03/26/2009 | 13277 | 13279 |
| 889 | 04/08/2008 | 181448 | 181448 |
| 890 | 04/04/2008 | 3528 | 3528 |
| 891 | 04/01/2008 | KIELY 3103 | KIELY 310 |
| 892 | 08/08/2008 | 3227 | 3227 |
| 893 | 04/08/2008 | 3405 | 3405 |
| 894 | 03/13/2008 | 104858 | 104865 |
| 895 | 12/31/2008 | 169490 | 169501 |
| 896 | 07/19/2007 | 7650 | 7651 |
| 897 | 01/14/2008 | 7935 | 11596 |
| 898 | 02/17/2009 | 12871 | 12872 |
| 899 | 07/31/2008 | 11616 | 11620 |
| 900 | 01/25/2005 | 5429 | 115033 |
| 901 | 02/15/2008 | 8194 | 8196 |
| 902 | 02/01/2008 | 8158 | 8187 |
| 903 | 02/19/2008 | 8317 | 8368 |
| 904 | 03/13/2008 | 8454 | 8456 |
| 905 | 03/18/2008 | 8622 | 8717 |
| 906 | 03/26/2008 | 9261 | 9262 |
| 907 | 03/26/2008 | 9263 | 9264 |
| 908 | 02/05/2008 | 8014 | 8014 |
| 909 | 02/06/2008 | 8015 | 8260 |
| 910 | 02/19/2008 | 8372 | 8373 |
| 911 | 09/15/2008 | 11960 | 11960 |
| 912 | 07/08/2008 | 10634 | 10634 |
| 913 | 10/14/2008 | 12061 | 12062 |
| 914 | 11/26/2008 | 12265 | 12266 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 915 | 01/21/2011 | 1841 | 1841 |
| 916 | 05/29/2009 | 13846 | 13848 |
| 917 | 02/01/2008 | 5556 | 5559 |
| 918 | 03/31/2008 | 214997 | 215022 |
| 919 | 01/01/2008 | 274728 | 274742 |
| 920 | 05/07/2009 | 107972 | 107981 |
| 921 | 05/15/2009 | 21540 | 21540 |
| 922 | 08/24/2009 | 56578 | 56578 |
| 923 | 05/04/2009 | 21562 | 21563 |
| 924 | 12/31/2007 | 34378.001 | 34378.029 |
| 925 | 12/31/2007 | 34378.030 | 34378.56 |
| 926 | 08/14/2009 | 21755 | 21755 |
| 927 | 12/07/2007 | 146795 | 146797 |
| 928 | 12/07/2007 | 146801 | 146802 |
| 929 | 12/05/2007 | 110844 | 110848 |
| 930 | 01/11/2008 | 64303 | 64304 |
| 931 | 02/05/2008 | 66409 | 66409 |
| 932 | 02/12/2008 | 47808 | 47808 |
| 933 | 02/12/2008 | 62166 | 62167 |
| 934 | 02/20/2008 | 60344 | 60344 |
| 935 | 03/03/2008 | 15881 | 15888 |
| 936 | 03/03/2008 | 15932 | 15933 |
| 937 | 03/13/2008 | 104160 | 104176 |
| 938 | 03/14/2008 | 104337 | 104342 |
| 939 | 03/16/2008 | 47564 | 47849 |
| 940 | 03/18/2008 | 47789 | 47792 |
| 941 | 03/18/2008 | 47787 | 47788 |
| 942 | 03/18/2008 | 106322 | 106323 |
| 943 | 03/20/2008 | 77887 | 77887 |
| 944 | 03/25/2008 | 48165 | 48165 |
| 945 | 03/28/2008 | 73385 | 73386 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 946 | 03/28/2008 | 77605 | 77791 |
| 947 | 03/31/2008 | 182386 | 182386 |
| 948 | 03/31/2008 | 106740 | 106740 |
| 949 | 03/31/2008 | 106750 | 106755 |
| 950 | 04/01/2008 | 107271 | 107271 |
| 951 | 04/01/2008 | 107168 | 107168 |
| 952 | 04/01/2008 | 74861 | 74861 |
| 953 | 04/01/2008 | 107025 | 107031 |
| 954 | 06/03/2008 | 123582 | 169432 |
| 955 | 10/09/2009 | 143830 | 143830 |
| 956 | 10/22/2009 | 3842 | 3842 |
| 957 | 12/30/2009 | 3775 | 3775 |
| 958 | 01/11/2010 | 130999 | 131003 |
| 959 | 01/15/2010 | 21556 | 21556 |
| 960 | 02/18/2010 | 166983 | 166984 |
| 961 | 02/18/2010 | 135748 | 135771 |
| 962 | 02/26/2010 | 130490 | 130490 |
| 963 | 04/26/2010 | 155559 | 155559 |
| 964 | 04/27/2010 | 169054 | 169058 |
| 965 | 05/03/2010 | 156246 | 156248 |
| 966 | 05/04/2010 | 172069 | 172069 |
| 967 | 05/11/2010 | 172566 | 172569 |
| 968 | 05/11/2010 | 130236 | 130239 |
| 969 | 05/28/2010 | 142028 | 142029 |
| 970 | 05/28/2010 | 142028 | 142029 |
| 971 | 06/10/2010 | 147233 | 147233 |
| 972 | 06/10/2010 | 145732 | 145736 |
| 973 | 06/10/2010 | 145755 | 145755 |
| 974 | 06/15/2010 | 127668 | 127669 |
| 975 | 12/31/2008 | 4494 | 4511 |
| 976 | 03/14/2018 | N/A | N/A |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 977 | 03/15/2018 | N/A | N/A |
| 978 | 03/14/2018 | N/A | N/A |
| 979 | 07/26/2010 | 4789 | 4789 |
| 980 | 03/31/2008 | N/A | N/A |
| 981 | 03/31/2008 | N/A | N/A |
| 982 | 03/31/2008 | N/A | N/A |
| 983 | 03/31/2008 | N/A | N/A |
| 984 | 03/31/2008 | N/A | N/A |
| 985 | 03/31/2008 | N/A | N/A |
| 986 | 03/31/2008 | N/A | N/A |
| 987 | 03/31/2008 | N/A | N/A |
| 988 | 03/31/2008 | N/A | N/A |
| 989 | 03/31/2008 | N/A | N/A |
| 990 | 03/31/2008 | N/A | N/A |
| 991 | 03/31/2008 | N/A | N/A |
| 992 | 03/31/2008 | N/A | N/A |
| 993 | 09/01/2009 | N/A | N/A |
| 994 | 09/01/2004 | N/A | N/A |
| 995 | [Blank] | 274686 | 274710 |
| 996 | 09/27/2011 | 17061 | 17063 |
| 997 | 04/01/2008 | 3406 | 3406 |
| 998 | [Blank] | 14833 | 3220 |
| 998 | 02/29/2008 | 14833 | 14833 |
| 998 | 02/29/2008 | 14833 | 4091 |
| 999 | 04/30/2009 | 4087 | 4091 |
| 1000 | 12/31/2007 | 145 | 146 |
| 1001 | 01/30/2007 | 2575 | 2575 |
| 1002 | 01/31/2007 | 2702 | 2702 |
| 1003 | [Blank] | 14888 | 14888 |
| 1004 | 06/30/2005 | 183879 | 183882 |
| 1005 | 01/27/2009 | 15006 | 2990 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 1006 | 01/01/2008 | 3218 | 3220 |
| 1007 | 05/28/2013 | 261564 | 261576 |
| 1008 | 03/31/2008 | 00021228 | 00021231 |
| 1009 | 03/31/2008 | 00003244 | 00003287 |
| 1010 | 03/31/2008 | 00068532 | 00068533 |
| 1011 | 03/31/2008 | 00048300 | 00048301 |
| 1012 | 03/31/2008 | 00107176 | 00107176 |
| 1013 | 04/01/2008 | 00107271 | 00107271 |
| 1014 | 04/01/2008 | 00003407 | 00003408 |
| 1015 | 04/01/2008 | N/A | N/A |
| 1016 | 03/26/2008 | 00107178 | 00107178 |
| 1017 | 04/01/2008 | 00003242 | 00003243 |
| 1018 | 04/01/2008 | 003103 | 003103 |
| 1019 | 04/07/2008 | 0004372 | 0004373 |
| 1020 | 08/08/2008 | 00003227 | 00003227 |
| 1021 | 04/01/2008 | 00075143 | 00075143 |
| 1022 | 04/01/2008 | 00053906 | 00053908 |
| 1023 | 04/01/2008 | 00107386 | 00107388 |
| 1024 | 04/01/2008 | 00107177 | 00107178 |
| 1025 | 04/01/2008 | 00176298 | 00176298 |
| 1026 | 04/01/2008 | 00107168 | 00107178 |
| 1027 | 04/01/2008 | 00014987 | 00014991 |
| 1028 | 04/01/2008 | 00186460 | 00186460 |
| 1029 | 04/01/2008 | 00186462 | 00186466 |
| 1030 | 04/01/2008 | 00106809 | 00106810 |
| 1031 | 04/01/2008 | 00107163 | 00107167 |
| 1032 | 04/01/2008 | 00074890 | 00074890 |
| 1033 | 04/01/2008 | 00107172 | 00107175 |
| 1034 | 04/01/2008 | N/A | N/A |
| 1035 | 08/02/2008 | 00107358 | 00107359 |
| 1036 | 08/02/2008 | 00107358 | 00107359 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 1037 | 04/02/2008 | 00176600 | 00176600 |
| 1038 | 04/02/2008 | 00176442 | 00176442 |
| 1039 | 04/04/2008 | 78116 | 78196 |
| 1040 | 04/04/2008 | 00108066 | 00108066 |
| 1041 | 04/04/2008 | 00054783 | 00054785 |
| 1042 | 04/04/2008 | 00080139 | 00080139 |
| 1043 | 04/07/2008 | 00079041 | 00079041 |
| 1044 | 04/09/2008 | 00181352 | 00181352 |
| 1045 | 10/31/2008 | 0004406 | 0004421 |
| 1046 | 11/30/2008 | 00079804 | 00079806 |
| 1047 | 08/14/2009 | 00150040 | 00150040 |
| 1048 | 09/18/2009 | 00151000 | 00151000 |
| 1049 | 09/21/2009 | 00151359 | 00151373 |
| 1050 | 09/21/2009 | 00151374 | 00151382 |
| 1051 | 09/21/2009 | 00151405 | 00151419 |
| 1052 | 02/10/2010 | 00166635 | 00166637 |
| 1053 | 11/15/2007 | 00187668 | 00173350 |
| 1054 | 12/31/2008 | 192715 | 10364 |
| 1055 | 09/01/2004 | 00000503 | 00000771 |
| 1056 | [Blank] | 00000315 | 00001106 |
| 1057 | 02/28/2007 | 00003509 | 00002535 |
| 1058 | 05/31/2007 | 00001598 | 00002721 |
| 1059 | 01/19/2007 | 00002575 | 00003526 |
| 1060 | 02/28/2007 | 1740 | 10277 |
| 1061 | 02/28/2010 | 8517 | 2953 |
| 1062 | 01/01/2008 | 94298 | 170844 |
| 1063 | 08/12/2008 | 85851 | 8853 |
| 1064 | 03/21/2008 | 6246 | 134359 |
| 1065 | 01/01/2007 | 1789 | 164 |
| 1066 | [Blank] | [Blank] | [Blank] |
| 1067 | 01/01/2007 | 109852 | 109852 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 1068 | 01/01/2007 | 104893 | 104893 |
| 1069 | 01/01/2008 | 21967 | 22153 |
| 1070 | 01/01/2008 | 21967 | 22153 |
| 1071 | 12/31/2007 | 4436 | 4451 |
| 1072 | 12/31/2007 | N/A | N/A |
| 1073 | 04/30/2009 | 53114 | 53114 |
| 1074 | 05/06/2010 | 38625 | 38629 |
| 1075 | 12/31/2010 | 274673 | 274674 |
| 1076 | 12/31/2009 | 274670 | 274672 |
| 1077 | 06/23/2008 | 274675 | 274684 |
| 1078 | 03/06/2018 | N/A | N/A |
| 1079 | 07/28/2011 | FRS010246 | FRS010246 |
| 1080 | 07/21/2011 | MERS000720 | MERS0007 |
| 1081 | 07/22/2011 | FFRS 000383 | FFRS00038 |
| 1082 | 07/22/2011 | FFRS000255 | FFRS00025 |
| 1083 | 07/22/2011 | N/A | N/A |
| 1084 | 07/25/2011 | N/A | N/A |
| 1085 | 07/28/2011 | N/A | N/A |
| 1086 | 03/27/2012 | FFRS000699 | FFRS00070 |
| 1087 | 06/06/2012 | N/A | N/A |
| 1088 | 05/28/2012 | N/A | N/A |
| 1089 | 04/18/2012 | N/A | N/A |
| 1090 | [Blank] | N/A | N/A |
| 1091 | 03/31/2008 | N/A | N/A |
| 1092 | 05/01/2010 | N/A | N/A |
| 1093 | 05/04/2010 | 130232 | 130233 |
| 1094 | 06/25/2010 | 192893 | 192897 |
| 1095 | 04/15/2010 | 169527 | 169527 |
| 1096 | 04/27/2010 | 168891 | 168891 |
| 1097 | 05/31/2010 | 2827 | 2828 |
| 1098 | 05/31/2010 | 176589 | 176591 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 1099 | 06/02/2010 | 177006 | 177009 |
| 1100 | 06/08/2010 | 2760 | 2760 |
| 1101 | 11/19/2010 | 4398 | 4405 |
| 1102 | 05/28/2010 | N/A | N/A |
| 1103 | 05/04/2010 | 172012 | 172012 |
| 1104 | 06/05/2010 | 178265 | 178266 |
| 1105 | 05/24/2010 | 170003 | 170007 |
| 1106 | 06/03/2010 | 177219 | 177224 |
| 1107 | 06/10/2010 | 179547 | 179551 |
| 1108 | 05/03/2010 | 172013 | 172013 |
| 1109 | 05/07/2010 | 157021 | 157027 |
| 1110 | 05/05/2010 | 157306 | 157307 |
| 1111 | 05/05/2010 | 156966 | 156968 |
| 1112 | 08/18/2010 | 2566 | 2581 |
| 1113 | 06/17/2010 | N/A | N/A |
| 1114 | 12/31/2007 | 00000519 | 00000519 |
| 1115 | [Blank] | 00274999 | 00275129 |
| 1116 | 05/01/2007 | 00022735 | 00022853 |
| 1117 | 12/31/2008 | 00274667 | 00274669 |
| 1118 | 06/17/2009 | 274685 | 274685 |
| 1119 | [Blank] | 274676 | 274676 |
| 1120 | 01/01/2010 | N/A | N/A |
| 1121 | 06/30/2008 | N/A | N/A |
| 1122 | [Blank] | N/A | N/A |
| 1122 | [Blank] | N/A | N/A |
| 1123 | 07/01/2008 | N/A | N/A |
| 1124 | 03/01/2014 | N/A | N/A |
| 1125 | 06/07/2007 | FPR0244105 | FPR244108 |
| 1126 | 04/01/2008 | N/A | N/A |
| 1127 | 06/27/2007 | FAM 199563 | FAM 19956 |
| 1128 | 04/02/2008 | FAM 199564 | FAM 19956 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 1129 | 08/31/2010 | SSC0071705 | SSC007170 |
| 1130 | [Blank] | FL0177174 | FL0177178 |
| 1131 | [Blank] | FL0042612 | FL0042615 |
| 1132 | [Blank] | N/A | N/A |
| 1133 | [Blank] | N/A | N/A |
| 1134 | [Blank] | N/A | N/A |
| 1135 | [Blank] | N/A | N/A |
| 1136 | [Blank] | N/A | N/A |
| 1137 | [Blank] | N/A | N/A |
| 1138 | [Blank] | N/A | N/A |
| 1139 | [Blank] | N/A | N/A |
| 1140 | [Blank] | N/A | N/A |
| 1141 | [Blank] | N/A | N/A |
| 1142 | [Blank] | N/A | N/A |
| 1143 | [Blank] | N/A | N/A |
| 1144 | [Blank] | N/A | N/A |
| 1145 | [Blank] | N/A | N/A |
| 1146 | [Blank] | N/A | N/A |
| 1147 | [Blank] | N/A | N/A |
| 1148 | [Blank] | N/A | N/A |
| 1149 | [Blank] | N/A | N/A |
| 1150 | [Blank] | FL0315544 | FL0315546 |
| 1151 | 09/30/2008 | 00275806 | 00275949 |
| 1152 | [Blank] | 229415 | 229578 |
| 1153 | [Blank] | MERS004522 | MERS0045 |
| 1154 | [Blank] | FRS021095 | FRS021095 |
| 1155 | 3/31/2008 | 21458 | 21489 |
| 5000 | [Blank] | N/A | N/A |
| 5001 | [Blank] | N/A | N/A |
| 5002 | [Blank] | N/A | N/A |
| 5003 | [Blank] | N/A | N/A |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 5004 | [Blank] | N/A | N/A |
| 5005 | [Blank] | 15342 | 15425 |
| 5007 | [Blank] | NOFF004790 | NOFF00479 |
| 5008 | [Blank] | FRS021755 | FRS021755 |
| 5009 | [Blank] | FRS021741 | FRS021741 |
| 5010 | [Blank] | N/A | N/A |
| 5011 | [Blank] | N/A | N/A |
| 5012 | [Blank] | N/A | N/A |
| 5013 | [Blank] | N/A | N/A |
| 5014 | [Blank] | FAM1996304 | FAM19963 |
| 5015 | [Blank] | N/A | N/A |
| 5016 | [Blank] | N/A | N/A |
| 5017 | [Blank] | 273229 | 273234 |
| 5018 | [Blank] | 229415 | 229578 |
| 5019 | [Blank] | 273170 | 273175 |
| 5020 | [Blank] | 209285 | 209288 |
| 5021 | [Blank] | 64970 | 65000 |
| 5022 | [Blank] | 229498 | 229524 |
| 5023 | [Blank] | 229525 | 229551 |
| 5024 | [Blank] | 47854 | 273234 |
| 5025 | [Blank] | N/A | N/A |
| 5026 | [Blank] | 21734 | 21781 |
| 5027 | [Blank] | 21530 | 21530 |
| 5028 | [Blank] | N/A | N/A |
| 5029 | [Blank] | 182381 | 182381 |
| 5030 | [Blank] | FAM-10.28.3 | FAM-10.28. |
| 5031 | [Blank] | N/A | N/A |
| 5032 | [Blank] | N/A | N/A |
| 5033 | [Blank] | N/A | N/A |
| 5034 | [Blank] | N/A | N/A |
| 5035 | [Blank] | N/A | N/A |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 5036 | [Blank] | 275806 | 275949 |
| 5037 | [Blank] | 275281 | 275422 |
| 5038 | [Blank] | 274872 | 274998 |
| 5039 | [Blank] | 274743 | 274871 |
| 5040 | [Blank] | 275620 | 275805 |
| 5041 | [Blank] | 275130 | 275280 |
| 5042 | [Blank] | 275423 | 275619 |
| 5043 | [Blank] | 274999 | 275129 |
| 5044 | [Blank] | N/A | N/A |
| 10001 | [Blank] | 11420 | 11422 |
| 10002 | 12/21/2012 | CITCO EX | CITCO EX |
| 10003 | 06/14/2013 | CITCO EX | CITCO EX |
| 10004 | 10/18/2002 | 22996 | 22999 |
| 10005 | 03/20/2009 | 6471 | 6481 |
| 10006 | 03/10/2003 | 1187 | 1187 |
| 10007 | 10/02/2007 | 7752 | 7761 |
| 10008 | 09/12/2007 | 19233 | 19235 |
| 10009 | 11/22/2008 | 12252 | 12252 |
| 10010 | 02/06/2008 | 8016 | 8016 |
| 10011 | 01/16/2008 | 1672 | 1676 |
| 10012 | 02/14/2008 | 130 | 142 |
| 10013 | 03/01/2008 | 00021333 | 00021380 |
| 10014 | 03/19/2008 | 001677 | 001680 |
| 10015 | 04/01/2008 | 004848 | 004848 |
| 10016 | 04/14/2008 | 001681 | 001683 |
| 10017 | 09/10/2008 | 001684 | 001687 |
| 10018 | 01/12/2011 | 000734 | 000740 |
| 10019 | 06/07/2011 | 000757 | 000763 |
| 10020 | 10/31/2008 | 010834 | 010840 |
| 10021 | 07/31/2011 | 010784 | 010785 |
| 10022 | 09/21/2009 | 0015351 | 0015353 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 10023 | 08/14/2009 | 00080709 | 00080716 |
| 10024 | 09/29/2009 | 00158374 | 00158411 |
| 10025 | 09/29/2009 | 00021924 | 00021925 |
| 10026 | 06/27/2011 | 000070 | 000072 |
| 10027 | 07/11/2011 | 001516 | 001517 |
| 10028 | 07/13/2011 | 020451 | 020452 |
| 10029 | 07/15/2011 | 000764 | 000772 |
| 10030 | 07/18/2011 | 003722 | 003724 |
| 10031 | 07/29/2011 | 021980 | 021980 |
| 10032 | 01/18/2013 | 002893 | 002941 |
| 10033 | 08/08/2011 | 04548 | 04550 |
| 10034 | 08/22/2011 | 04226 | 04227 |
| 10035 | 08/30/2011 | 04483 | 04485 |
| 10036 | 08/31/2011 | 04482 | 04482 |
| 10037 | 09/02/2011 | 007481 | 007481 |
| 10038 | 10/05/2011 | 04355 | 04355 |
| 10039 | 10/13/2011 | 04375 | 04379 |
| 10040 | 09/02/2011 | 021441 | 021441 |
| 10041 | 06/28/2012 | 006119 | 006119 |
| 10042 | 07/10/2008 | CITCO EX | CITCO EX |
| 10043 | 07/19/2017 | CITCO EX | CITCO EX |
| 10044 | 05/14/2010 | 004790 | 004790 |
| 10045 | 07/26/2010 | 004789 | 004789 |
| 10046 | 06/09/2010 | 000702 | 000707 |
| 10047 | 11/10/2010 | 000725 | 000728 |
| 10048 | 02/14/2011 | CITCO EX | CITCO EX |
| 10049 | 07/29/2008 | CITCO EX | CITCO EX |
| 10050 | 07/25/2011 | 04527 | 04533 |
| 10051 | 07/26/2011 | 04520 | 04523 |
| 10052 | 07/29/2011 | 04558 | 04561 |
| 10053 | 08/12/2011 | 04223 | 04222 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 10054 | 08/22/2011 | 04210 | 04210 |
| 10055 | 09/07/2011 | 04428 | 04434 |
| 10056 | 09/25/2011 | 04524 | 04526 |
| 10057 | 12/13/2011 | 04328 | 04328 |
| 10058 | 12/22/2011 | 04582 | 04583 |
| 10059 | 03/15/2012 | 03149 | 03150 |
| 10060 | 07/06/2012 | 04463 | 04464 |
| 10061 | 02/05/2013 | 00139 | 00139 |
| 11001 | 06/06/2017 | N/A | N/A |
| 11002 | 06/05/2015 | 000693 | 000696 |
| 11003 | 06/17/2015 | CITCO EX | CITCO EX |
| 11004 | 12/02/2015 | CITCO EX | CITCO EX |
| 11005 | 05/25/2017 | CITCO EX | CITCO EX |
| 11006 | 07/01/2017 | 022988 | 022995 |
| 11007 | 02/06/2008 | 025739 | 025759 |
| 11008 | 02/01/2008 | 022747 | 022776 |
| 11009 | 02/21/2008 | N/A | N/A |
| 11010 | 03/01/2008 | 000126 | 000173 |
| 11011 | 02/21/2007 | 00015342 | 00015364 |
| 11012 | 08/16/2007 | 00015365 | 00015425 |
| 11013 | 03/20/2008 | CITCO EX | CITCO EX |
| 11014 | 03/31/2008 | 004522 | 004567 |
| 11015 | 08/14/2009 | 00080709 | 00080716 |
| 11016 | 08/26/2009 | 000420 | 000424 |
| 11017 | 10/27/2009 | 004346 | 004346 |
| 11018 | 12/31/2009 | 026556 | 026565 |
| 11019 | 11/30/2010 | 026634 | 026641 |
| 11020 | 12/18/2009 | CITCO EX | CITCO EX |
| 11021 | 06/01/2010 | 026132 | 026159 |
| 11022 | 07/09/2010 | 016529 | 016529 |
| 11023 | 11/30/2009 | 001905 | 001905 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 11024 | 04/01/2010 | 000708 | 000708 |
| 11025 | 04/27/2011 | CITCO EX | CITCO EX |
| 11026 | 07/26/2010 | 000702 | 000704 |
| 11027 | 10/01/2010 | 000177 | 000209 |
| 11028 | 01/20/2011 | 00563 | 00574 |
| 11029 | 01/26/2011 | 026075 | 026077 |
| 11030 | 08/08/2011 | 025581 | 025589 |
| 11031 | 01/26/2011 | 15518 | 15521 |
| 11032 | 03/03/2011 | 212 | 215 |
| 11033 | 04/27/2011 | 15704 | 15707 |
| 11034 | 05/05/2011 | 4571 | 4573 |
| 11035 | 06/11/2011 | 25860 | 25861 |
| 11036 | 07/18/2011 | 3722 | 3724 |
| 11037 | 07/20/2011 | 21409 | 21409 |
| 11038 | 07/28/2011 | 21996 | 21996.001 |
| 11039 | 07/21/2011 | 720 | 732 |
| 11040 | 09/02/2011 | 21611 | 21611.001.2 |
| 11041 | 09/09/2011 | 6890 | 6890 |
| 11042 | 09/27/2011 | 17061 | 17063 |
| 11043 | 01/18/2013 | 18167 | 18214 |
| 11044 | 09/07/2011 | 501 | 502 |
| 11045 | 09/28/2011 | 503` | 506 |
| 11046 | 09/28/2011 | N/A | N/A |
| 11047 | 10/20/2011 | 507 | 510 |
| 11048 | 11/17/2011 | 511 | 515 |
| 11049 | 12/15/2011 | 516 | 522 |
| 11050 | 01/19/2012 | 523 | 526 |
| 11051 | 05/23/2012 | 541 | 543 |
| 11052 | 09/02/2011 | 21441 | 21441.001 |
| 11053 | 06/28/2012 | 4107 | 4107.003 |
| 11054 | 08/01/2004 | 26469 | 26479 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 11055 | 06/05/2017 | N/A | N/A |
| 11056 | 08/31/2011 | 3704 | 3706 |
| 11057 | 09/09/2011 | 17206 | 17206 |
| 11058 | 12/01/2011 | 3906 | 3906 |
| 11059 | 09/27/2012 | 4113 | 4113 |
| 11060 | 02/16/2006 | 13213 | 13222 |
| 20000 | 07/21/2017 | N/A | N/A |
| 20001 | 08/08/2017 | N/A | N/A |
| 20002 | [Blank] | 001526 | 001527 |
| 20003 | 10/21/2004 | 001120 | 001120 |
| 20004 | 07/01/2007 | 327 | 360 |
| 20005 | 01/16/2006 | 2024 | 2024 |
| 20006 | 09/12/2007 | 1442 | 1445 |
| 20007 | 10/02/2007 | 7752 | 7761 |
| 20008 | 10/10/2007 | 1446 | 1448 |
| 20009 | 02/13/2008 | 1672 | 1676 |
| 20010 | 03/01/2008 | 5242 | 5242 |
| 20011 | 03/31/2008 | 4848 | 4848 |
| 20012 | 10/08/2008 | 1688 | 1690 |
| 20013 | 11/12/2008 | 1691 | 1694 |
| 20014 | 11/19/2017 | 6605 | 6605 |
| 20015 | 11/22/2008 | 5791 | 5791 |
| 20016 | 03/20/2009 | 6471 | 6481 |
| 20017 | 04/08/2009 | 619 | 621 |
| 20018 | 06/10/2009 | 13877 | 13877 |
| 20019 | 08/14/2009 | 4696 | 4696 |
| 20021 | 05/14/2010 | 4790 | 4790 |
| 20022 | 06/09/2010 | 702 | 707 |
| 20023 | 07/26/2010 | 4789 | 4789 |
| 20024 | 05/14/2010 | 3954 | 3957 |
| 20024 | 06/27/2011 | 70 | 72 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 20025 | 11/10/2010 | 725 | 728 |
| 20026 | 01/12/2011 | 734 | 740 |
| 20027 | 02/10/2011 | 741 | 747 |
| 20028 | 09/29/2009 | 158007 | 158009 |
| 20028 | 02/16/2011 | CITCO EX | CITCO EX |
| 20029 | 02/16/2011 | CITCO EX | CITCO EX |
| 20030 | 06/07/2011 | 757 | 763 |
| 20031 | 06/24/2011 | CITCO EX | CITCO EX |
| 20032 | 07/02/2011 | 1032 | 1032 |
| 20033 | 07/07/2011 | CITCO EX | CITCO EX |
| 20034 | 07/07/2011 | 006732 | 006734 |
| 20035 | 07/15/2011 | 000764 | 000772 |
| 20036 | 07/27/2011 | 000216 | 000217 |
| 20037 | 07/28/2011 | 021996 | 021996 |
| 20038 | 09/02/2011 | 007481 | 007481 |
| 20039 | 05/15/2017 | N/A | N/A |
| 20041 | 08/16/2017 | N/A | N/A |
| 20042 | 08/08/2001 | CITCO EX | CITCO EX |
| 20043 | 10/01/2002 | CITCO EX | CITCO EX |
| 20044 | 02/14/2011 | CITCO EX | CITCO EX |
| 20045 | 03/17/2017 | N/A | N/A |
| 30001 | 10/01/2002 | 22996 | 22999 |
| 30002 | 07/01/2007 | 1431 | 1464 |
| 30003 | 02/13/2008 | 1672 | 1676 |
| 30004 | 03/01/2008 | 21333 | 21380 |
| 30004 | 06/24/2009 | 2429 | 2429 |
| 30005 | 06/19/2009 | 4848 | 4848 |
| 30006 | 08/14/2009 | 80709 | 80716 |
| 30007 | 03/21/2014 | CITCO EX | CITCO EX |
| 30008 | 09/11/2009 | 13620 | 13620 |
| 30009 | 06/17/2009 | 2712 | 2712 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 30010 | 06/19/2009 | 2649 | 2649 |
| 30012 | 05/22/2009 | 3304 | 3304 |
| 30013 | 09/29/2009 | 21924 | 21925 |
| 30013 | 10/14/2011 | 12444 | 12444 |
| 30014 | 09/29/2009 | 158374 | 158411 |
| 30015 | 05/14/2010 | 4790 | 4790 |
| 30016 | 07/15/2011 | 764 | 772 |
| 30017 | 07/25/2011 | 15605 | 15605 |
| 40001 | 10/19/2008 | CITCO EX | CITCO EX |
| 40002 | 05/10/2017 | N/A | N/A |
| 40003 | 04/07/2017 | N/A | N/A |
| 40004 | 06/15/2015 | N/A | N/A |
| 40005 | 01/01/2008 | CITCO EX | CITCO EX |
| 40006 | 02/06/2008 | 8016 | 8016 |
| 40007 | 02/14/2008 | 1718 | 1736 |
| 40008 | 02/14/2008 | 6924 | 6996 |
| 40009 | 03/06/2008 | 5229 | 5329 |
| 40010 | 03/12/2008 | 7167 | 7050 |
| 40011 | 03/12/2008 | 213 | 249 |
| 40012 | 03/13/2008 | 1737 | 1752 |
| 40013 | 03/31/2008 | 21165 | 21169 |
| 40014 | 04/01/2008 | 21095 | 21095.001- |
| 40015 | 03/26/2008 | 21146 | 21146.006- |
| 40016 | 07/13/2011 | N/A | N/A |
| 40017 | 04/30/2008 | 25676 | 25680 |
| 40018 | 10/31/2011 | 22222 | 22228 |
| 40019 | 06/27/2008 | 21207 | 21207.001- |
| 40020 | 08/13/2009 | 80574 | 80659 |
| 40021 | 08/14/2009 | 21741 | 21741.001- |
| 40022 | 02/10/2011 | 936 | 946 |
| 40023 | 03/10/2011 | 947 | 955 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 40024 | 03/15/2011 | 21842 | 21842 |
| 40025 | 06/15/2011 | 21349 | 21349.001- |
| 40026 | 02/01/2012 | 20333 | 20333.002- |
| 40027 | 07/13/2011 | 983 | 991 |
| 40028 | 07/18/2011 | 3722 | 3724 |
| 40029 | 07/22/2011 | 21535 | 21535 |
| 40030 | 07/27/2011 | 21597 | 21597.001- |
| 40031 | 07/28/2011 | 21996 | 21996.001- |
| 40032 | 09/01/2011 | 23287 | 23287.001- |
| 40033 | 09/07/2011 | 1006 | 1007 |
| 40035 | 09/09/2011 | 6890 | 17142.001- |
| 40036 | 09/23/2011 | 22964 | 22964.001- |
| 40037 | 12/19/2011 | 22549 | 22554 |
| 40037 | 03/01/2008 | 1182 | 1186 |
| 40038 | 08/11/2011 | 993 | 1001 |
| 50001 | 02/06/2008 | 8016 | 8016 |
| 50002 | 02/01/2008 | 22747 | 22776 |
| 50004 | 02/14/2008 | 1718 | 1736 |
| 50005 | 03/06/2008 | 5229 | 5329 |
| 50006 | 03/12/2008 | 7167 | 7013 |
| 50007 | 03/12/2008 | 7013 | 7050 |
| 50008 | 03/13/2008 | 1737 | 1752 |
| 50009 | 03/01/2008 | 1182 | 1229 |
| 50010 | 03/12/2008 | 213 | 249 |
| 50011 | 04/30/2008 | 25676 | 25681 |
| 50012 | 06/27/2008 | 21207 | 21207 |
| 50013 | 11/13/2008 | 1834 | 1853 |
| 50014 | 08/13/2009 | 127 | 133 |
| 50015 | 08/13/2009 | 774 | 782 |
| 50016 | 09/10/2009 | 785 | 793 |
| 50017 | 05/14/2010 | 3954 | 3957 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---------|---------------|-----------------|--------------|
| 50018 | 05/19/2010 | 865 | 871 |
| 50019 | 07/27/2010 | 21775 | 21775 |
| 50020 | 02/16/2011 | CITCO EX | CITCO EX |
| 50021 | 02/10/2011 | 936 | 946 |
| 50022 | 03/10/2011 | 947 | 955 |
| 50023 | 06/15/2011 | 21349 | 21349 |
| 50024 | 06/16/2011 | 21847 | 21847 |
| 50025 | 06/24/2011 | CITCO EX | CITCO EX |
| 50026 | 07/08/2011 | 21891 | 21891 |
| 50027 | 07/13/2011 | 983 | 992 |
| 50028 | 07/18/2011 | 21871 | 21871 |
| 50029 | 07/22/2011 | 21535 | 21535 |
| 50030 | 07/26/2011 | 21557 | 21557.001 |
| 50031 | 07/27/2011 | 3731 | 3731.001 |
| 50032 | 08/11/2011 | 993 | 1001 |
| 50033 | 09/01/2011 | 23287 | 23287.001- |
| 50034 | 09/07/2011 | 1006 | 1007 |
| 50035 | 09/09/2011 | 6890 | 6890 |
| 50036 | 09/20/2011 | 17142 | 17142 |
| 50037 | 09/23/2011 | 22964 | 22964 |
| 50038 | 11/30/2011 | 2146 | 2163 |
| 50039 | 06/14/2012 | 7543 | 7560 |
| 50040 | 07/27/2011 | 21067 | 21070 |
| 60001 | 05/16/2017 | CITCO EX | CITCO EX |
| 60002 | 06/15/2015 | N/A | N/A |
| 60003 | [Blank] | 27474 | 27476 |
| 60004 | 01/01/2008 | CITCO EX | CITCO EX |
| 60005 | 03/19/2009 | 26769 | 26837 |
| 60006 | 07/08/2009 | 26974 | 26976 |
| 60007 | 03/01/2012 | 26365 | 26366 |
| 60008 | 02/06/2008 | 8016 | 8016 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 60009 | 02/14/2008 | 1718 | 1736 |
| 60010 | 03/13/2008 | 5229 | 5329 |
| 60011 | 03/12/2008 | 7150 | 7166 |
| 60012 | 03/12/2008 | 7100 | 7114 |
| 60013 | 03/12/2008 | 213 | 249 |
| 60014 | 03/13/2008 | 1737 | 1752 |
| 60015 | 03/13/2008 | 26329 | 26331 |
| 60016 | 03/01/2008 | 1182 | 1229 |
| 60017 | 06/15/2015 | N/A | N/A |
| 60018 | 04/30/2008 | 25676 | 25681 |
| 60019 | 02/28/2010 | 25840 | 25845 |
| 60020 | 10/31/2011 | 22222 | 22228 |
| 60021 | 06/27/2008 | 21207 | 21207 |
| 60022 | 08/14/2009 | 21741 | 21741 |
| 60023 | 03/14/2011 | 1006 | 1006 |
| 60024 | 03/14/2011 | 10340 | 10341 |
| 60025 | 06/15/2011 | 21349 | 21349 |
| 60026 | 08/11/2011 | 993 | 1001 |
| 60027 | 08/11/2011 | 26344 | 26344 |
| 60028 | 09/07/2011 | 26336 | 26336 |
| 60029 | 01/29/2013 | 26337 | 26337 |
| 60030 | 11/26/2013 | 26360 | 26360 |
| 60031 | 05/14/2010 | 3954 | 3957 |
| 60032 | 07/27/2010 | 21775 | 21775 |
| 60033 | 02/16/2011 | CITCO EX | CITCO EX |
| 60034 | 12/02/2015 | CITCO EX | CITCO EX |
| 70001 | 06/06/2017 | BERTHELOT | BERTHEL |
| 70002 | 05/15/2017 | N/A | N/A |
| 70003 | 08/10/2012 | 4892 | 4896 |
| 70004 | 01/08/2008 | 22988 | 22995 |
| 70005 | 08/01/2004 | 26469 | 26479 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 70006 | 06/01/2009 | 26494 | 26500 |
| 70007 | 02/06/2008 | 25739 | 25759 |
| 70008 | 02/21/2008 | 356 | 359 |
| 70009 | 02/21/2008 | 1108 | 1126 |
| 70010 | 02/01/2008 | 22747 | 22776 |
| 70011 | 03/20/2008 | 360 | 362 |
| 70012 | 04/01/2008 | 4522 | 4567 |
| 70013 | 03/01/2008 | 126 | 173 |
| 70014 | 07/01/2009 | 5478 | 5512 |
| 70015 | 07/03/2009 | 14015 | 14045 |
| 70016 | 12/18/2009 | 436 | 439 |
| 70017 | 12/31/2009 | 26556 | 26565 |
| 70018 | 12/27/2009 | 4346 | 4346 |
| 70019 | 01/26/2011 | 474 | 477 |
| 70020 | 03/03/2011 | 212 | 215 |
| 70021 | 04/14/2011 | 705 | 705 |
| 70022 | 12/02/2015 | CITCO EX | CITCO EX |
| 80002 | 01/24/2018 | 26084 | 26088 |
| 80003 | 01/01/2008 | N/A | N/A |
| 80004 | 03/13/2008 | 6891 | 6923 |
| 80005 | 02/06/2008 | 8016 | 8016 |
| 80006 | 02/14/2008 | 6924 | 6996 |
| 80007 | 02/14/2008 | 1718 | 1736 |
| 80008 | 02/19/2008 | 21123.001 | 21123.02.03 |
| 80009 | 03/12/2008 | 7150 | 7166 |
| 80010 | 03/12/2008 | 7100 | 7114 |
| 80011 | 03/12/2008 | 9564 | 9600 |
| 80012 | 03/18/2008 | 21136 | 21136.004.0 |
| 80013 | 03/26/2008 | 21146 | 21146.006.4 |
| 80014 | 03/01/2008 | 1182 | 1229 |
| 80015 | 01/31/2004 | 1117 | 1181 |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 80016 | 10/09/1998 | 1355 | 1378 |
| 80017 | 04/01/2008 | 21095 | 21100 |
| 80018 | 12/31/2007 | 34378.001 | 34378.056 |
| 80019 | 08/14/2009 | 21755 | 21755.081 |
| 80020 | 08/14/2009 | 21741 | 21741.007 |
| 80021 | 09/27/2011 | 17061 | 17063 |
| 80022 | 08/12/2011 | 4222 | 4223 |
| 80023 | 09/29/2008 | 21118 | 21118 |
| 80025 | 07/27/2010 | 21775 | 21775.002.0 |
| 80026 | 09/02/2011 | 21441 | 21441.001 |
| 80027 | 04/30/2008 | 25676 | 25681 |
| 80028 | 09/21/2009 | 21760 | 21760.002.0 |
| 80029 | 06/10/2010 | 21798 | 21798.001 |
| 80030 | 04/30/2010 | 890 | 897 |
| 80031 | 01/08/2009 | 21761 | 21761 |
| 80032 | 07/11/2011 | 382914 | 382914 |
| 80033 | 07/13/2011 | 983 | 992 |
| 80034 | 07/18/2011 | 5535 | 5538 |
| 80035 | 07/27/2011 | 21597 | 21597.002 |
| 80036 | 07/28/2011 | 21996 | 21996.001 |
| 80037 | 09/07/2011 | 4428 | 4434 |
| 80038 | 09/09/2011 | 6890 | 6890 |
| 80039 | 09/06/2011 | 17142 | 17142.001.2 |
| 80040 | 09/23/2011 | 22964 | 22964.001.0 |
| 80041 | 02/01/2013 | 23243 | 23243 |
| 80042 | 09/28/2017 | N/A | N/A |
| 80043 | 10/12/2006 | 22958 | 22967 |
| 80044 | 07/09/2009 | 11914 | 11922 |
| 80045 | 12/20/2013 | N/A | N/A |
| 80046 | 08/29/2011 | 1292 | 1293 |
| 90001 | 06/06/2017 | CITCO EX | CITCO EX |

| Exhibit | Document Date | Beginning Bates | Ending Bates |
|---|---|---|---|
| 90002 | 01/01/2008 | CITCO EX | CITCO EX |
| 90003 | 02/06/2008 | 8016 | 8016 |
| 90004 | 03/13/2008 | 6891 | 6923 |
| 90005 | 02/14/2008 | 6924 | 6996 |
| 90006 | 02/14/2008 | 1718 | 1736 |
| 90007 | 03/13/2008 | 26329 | 26331 |
| 90008 | 03/12/2008 | CITCO EX | CITCO EX |
| 90009 | 04/30/2008 | 25676 | 25681 |
| 90010 | 05/21/2009 | 734 | 752 |
| 90011 | 05/21/2009 | 26026 | 26039 |
| 90012 | 08/14/2009 | 21741 | 21741 |
| 90013 | 05/14/2010 | 3945 | 3957 |
| 90014 | 07/27/2010 | 21775 | 21775 |
| 90015 | 02/10/2011 | 936 | 946 |
| 90016 | 02/16/2011 | CITCO EX | CITCO EX |
| 90017 | 02/16/2011 | CITCO EX | CITCO EX |
| 90018 | 03/01/2011 | 947 | 955 |
| 90019 | 03/14/2011 | 1006 | 1006 |
| 90020 | 03/14/2011 | 10340 | 10341 |
| 90021 | 06/15/2011 | 21349 | 21349 |
| 90022 | 06/16/2011 | 21220 | 21220 |
| 90023 | 06/30/2011 | 26953 | 26955 |
| 90024 | 07/07/2011 | 21226 | 21226 |
| 90025 | 07/12/2011 | 21862 | 21863 |
| 90026 | 08/11/2011 | 26344 | 26344 |
| 90027 | 08/15/2011 | 26367 | 26372 |
| 90028 | 07/28/2011 | 10246 | 10246 |
| 90029 | 09/07/2011 | 1006 | 1007 |
| 90030 | 09/07/2011 | 26336 | 26336 |
| 90031 | 02/09/2012 | 26339 | 26341 |
| 90032 | 04/27/2012 | 17345 | 17345 |

| Expert | Date Sent | PG Other ID | Description of Materials | Bates Beg | Bates End |
|---|---|---|---|---|---|
| Spindler | | | | | |
| | 2/8/18 | 38 | Subscription Agreement | NOFF004848 | |
| | 2/8/18 | 31 | 2/14/18 FRS Committee Meeting | FRS006924 | FRS006996 |
| | 2/8/18 | 32 | 3/12/08 FRS Investment Committee Meeting | FRS007150 | FRS007114 |
| | 2/8/18 | 33 | 3/13/08 FRS Committee Meeting | FRS006891 | FRS006923 |
| | 2/8/18 | 34 | Admin Service Agreement | KIELY001580 | KIELY001586 |
| | 2/8/18 | 35 | Confidential Information Memorandum - MAY 2007 | LPF-C-00022735 | LPF-C-00022859 |
| | 2/8/18 | 37 | Stockstill Testimony by Subject | n/a | |
| | 2/8/18 | 36 | Offering memo | LPF-C-00021734 | LPF-C-00021761 |
| | 2/9/18 | 46 | 107-NOFF Response to INT (Citco Group) 3/10/17 | n/a | |
| | 2/9/18 | 49 | 216-NOFF Sup Resp INT Citco Group Ltd7/19/17 | n/a | |
| | 2/9/18 | 48 | 215-MERS Sup Resp INT Citco Group Ltd 7/19/17 | n/a | |
| | 2/9/18 | 47 | 214-FRS Sup Resp INT Citco Group Ltd 7/19/17 | n/a | |
| | 2/9/18 | 44 | 105-FRS Response to INT (Citco Group) 3/10/17 | n/a | |
| | 2/9/18 | 45 | 106-MERS Response to INT (Citco Group) 3/10/17 | n/a | |
| | 4/10/18 | 271 | Offering Memorandum for Global Hawk Note III | LPF-C-00229552 | LPF-C-00229578 |
| | 4/10/18 | 269 | Offering Memo for Note II Global Hawk | LPF-C-00229498 | LPF-C-00229524 |
| | 4/10/18 | 270 | Offering Memo relating to Swap Agreement | LPF-C-00229415 | LPF-C-00229578 |
| | 4/10/18 | 278 | Tab 14 - Intercreditor Agreement (Citco) | n/a | |
| | 4/10/18 | 276 | Tab 10 - ISDA Master Agreement | n/a | |
| | 4/10/18 | 275 | Spindler PDF - compilation of documents | LPF-C-00047854 | LPF-C-00273234 |
| | 4/10/18 | 272 | Original Offering Memo of Leveraged 2007 | LPF-C-00015342 | LPF-C-00015425 |
| | 4/10/18 | 273 | Owing Money to Amathea | LPF-C-00209285 | LPF-C-00209288 |
| | 4/10/18 | 268 | Offering Memo for Global Hawk | LPF-C-00229525 | LPF-C-00229551 |
| | 4/10/18 | 274 | Richcourt Funds have enough Money to pay the RBS Def - emails between Aracelis Martinez, Scott Case, Rupert Walle, Glenda Lalljee | LPF-C-00273229 | LPF-C-00273234 |
| | 4/10/18 | 261 | Amended Articles of Leveraged (Ex 1091) | n/a | |

| Expert | Date Sent | Pg Other ID | Description of Materials | Bates Beg | Bates End |
|---|---|---|---|---|---|
| | 4/10/18 | 277 | Tab 12 - ISDA Confirmation | n/a | |
| | 4/10/18 | 267 | Note Agreement relating to $91,250,000 Medium Term Notes due 2014 (dated 5/26/06) | n/a | |
| | 4/10/18 | 285 | E&Y CITCO REPORT for 2008 (excerpt) (PDF and Word) | LPF-C-00275816 | LPF-C-00275833 |
| | 4/10/18 | 265 | Diagram on Global Hawk | LPF-C-00052630 | LPF-C-00052630 |
| | 4/10/18 | 264 | Collateral Agreements (Dated 5/26/06) | LPF-C-00064970 | LPF-C-00065000 |
| | 4/10/18 | 252 | #1 - Term sheet summarizing transaction 2004 | n/a | |
| | 4/10/18 | 262 | Arbitrage Offering memo | n/a | |
| | 4/10/18 | 253 | #8 - RBS Termination Agreement 5/6/2010 | n/a | |
| | 4/10/18 | 260 | Delivery of 2008 Audited Statements on 8/14/09 (Ex 926) | FRS021755 | FRS021755_ATTACHMENT_001 |
| | 4/10/18 | 259 | Second Supplemental Offering Memorandum (Ex 535) | NOFF004790 | NOFF004790_ATTACHMENT_0 |
| | 4/10/18 | 258 | Form of Subordination Consent (Ex 446) | LPF-C-00182381 | LPF-C-00182381 |
| | 4/10/18 | 257 | Approval of Millenium, affiliate of Citco (Ex 86) | LPF-C-00021530 | LPF-C-00021530 |
| | 4/10/18 | 256 | Leveraged Supplemental Offering Memo | LPF-C-00021734 | LPF-C-00021781 |
| | 4/10/18 | 255 | 8/13/09 Investor Letter page 4 (Ex 804) | FRS021741 | FRS021741_ATT |
| | 4/10/18 | 254 | #12 - Settlement Agreement 8/23/2010 | n/a | |
| | 4/10/18 | 263 | Citco May Have Lien ahead of RBS | LPF-C-00273170 | LPF-C-00273175 |

Monday, April 16, 2018

# Category Three: Deposition Transcripts

| Deponent | Date | Beder | Monteleone | Perryman | Spindler |
|---|---|---|---|---|---|
| Berthelot, Johnny | 11/9/2017 | X | X | X | X |
| Birdwell, Stacy | 11/16/2017 | X | X | X | X |
| Bloch, Yves | 2/13/2018 | X | X | X | X |
| Broussard, John | 2/6/2018 | X | X | X | X |
| Carrouche, William | 11/8/2017 | X | X | X | X |
| Chandler, Kelli | 11/10/2017 | X | X | X | X |
| Hampton, Richard | 10/25/2017 | X | X | X | X |
| Keunen, William | 10/19/2017 | X | X | X | X |
| Kiely, Denis | 12/20/2017 | X | X | X | X |
| Luckman, Larry | 12/7/2017 | X | X | X | X |
| Magris, Gabriele | 12/6/2017 | X | X | X | X |
| Mathews, Amy | 11/29/2017 | X | X | X | X |
| Mitchell, Paul | 11/7/2017 | X | X | X | X |
| Ponder, Warren | 1/10/2018 | X | X | X | X |
| Smeets, Christopher | 10/11/2017 | X | X | X | X |
| Stockstill, Steven | 1/23/2018 | X | X | X | X |
| Stockstill, Steven | 1/24/2018 | X | X | X | X |
| Ujhelyi, Miklos | 10/18/2017 | X | X | X | X |
| Unternaehrer, Ermanno | 11/3/2017 | X | X | X | X |
| Unternaehrer, Ermanno: 30(B)(6) Citco Group | 3/20/2018 | X | X | X | X |
| van Nijen, Albert | 12/14/2017 | X | X | X | X |
| Weber, Weikert: (individually and as 30(B)(6) of Citco Fund Services (Cayman Islands), Limited) | 3/14/2018 | X | X | X | X |

## APPENDIX C: STATEMENT OF FACTS[1]

Global Hawk was organized as a joint venture between Fletcher and Citco in 2004. Its sole purpose was to invest in FIA Leveraged Fund ("Leveraged") and Leveraged's sole purpose was to invest in Arbitrage. Global Hawk owned all the Leveraged Series 4, 5, and 6 shares and the Richcourt entities owned all the equity of Global Hawk. (Ex. 147, 146). Citco's internal records show that Leveraged and Global Hawk were experiencing negative returns in 2007 and 2008, and financial reports were not timely being provided to RBS. In fact, Citco's evaluation of the investments as of January 5, 2008 was that "since this has been going since last year, and the credit squeeze is still playing in the market, I don't see that FIA [Fletcher] will be successful." (Ex. 492).

At the same time in 2007 that RBS was owed $100 million in connection with Global Hawk, Leveraged owed Citco $20 million dollars ("Citco Loan"). This loan was the largest loan in the Citco loan portfolio (Ex. 45), was designated as "classified" by the banking regulators (Ex. 5), and listed as "high risk" based upon the internal risk reports of Citco's own risk analysis staff. (Ex. 1). In May of 2007, Citco classified Fletcher's investment valuations as "aggressive", with the company having severe "liquidity" problems with asset not having "sufficient value" to repay the various loans. (Ex. 762). In September of 2007, Ermanno Unternaehrer and Larry Luckmann agreed that Citco is "not keeping" Fletcher. (Ex. 5). At this point in time, Citco called the $20 million Citco Loan to Leveraged.

In October of 2007, Citco hired UBS to sell Richcourt, which was Citco's wholly owned subsidiary that raised and invested money. (Ex. 804, 809, 810). All Richcourt's shares were directly owned by Citco. Even though Fletcher was in default on the $20 million Citco Loan, Ermanno Unternaehrer, one of the four members of the Citco Executive Committee, commenced negotiations with Fletcher to purchase Richcourt in December 2007 (Ex. 131). At the same time, Citco blocked the Leveraged account in December of 2008 because of the default on the $20 million Citco Loan and the failure of Fletcher to sign a loan agreement. In addition to the default on the $20 million Leveraged Loan, Leveraged had not honored a $3 million redemption request by one of the Richcourt Funds, controlled by Citco ("Citco Redemption"), as of December 31, 2007. The cash position of Leveraged as of February 2008 was approximately $7,000.00 and it did not have the money to pay either the $20 million Citco Loan or the Citco Redemption.

In February of 2008, Fletcher prepared and distributed to the Louisiana Funds a summary of the terms of the Series N Offering but advised Citco that all the Non-Series N Shareholders would be required to consent in writing to the issuance of the Series N Shares because the 12% priority return was being guaranteed by the accounts of the Non-Series N Shareholders and that the Series N Shares ranked senior to the Non-Series N Shares. Further, the parties agreed that the Non-Series N Shares could not be redeemed without first redeeming the Series N Shares. As of March 1,

---

[1] Source: Louisiana Funds' Response to the Contention Interrogatories of Citco.

2008, Fletcher advised Citco that the $100 million Series N offering to the Louisiana Funds is going forward and that the proceeds will be used to pay the remaining Citco Loan and the un-honored Citco Redemption request. (Ex. 353). At the same time, Skadden, on behalf of Fletcher, sent Citco Fletcher's purchase agreement to acquire Richcourt. The documents contained an "exclusivity agreement" dated March 7, 2008. (Ex. 138). This is the same time that Skadden was preparing the Offering Memorandum for the Series N Shares. The Exclusivity Agreement to purchase Richcourt was executed by Citco on March 28, 2008, two days before the closing of the Series N Shares. (Ex. 138).

A meeting was held on March 12, 2008 in Baton Rouge, Louisiana with FRS. At this meeting, Denis Kiely, a representative of Fletcher, attended the meeting and assured FRS that $50 million of collateral would remain in Leveraged for the duration of the investment by the Series N Shareholders as redemption restrictions prevented the collateral from being redeemed. (Ex. 50006). In accordance with this agreement, a new draft of the Series N Offering Memorandum was prepared by Skadden and delivered to the Louisiana Funds and Citco. (Ex. 15, 905, 537). The Offering Memorandum was amended to include the following language:

> "Notwithstanding anything to the contrary herein contained, Series N shares must be redeemed no later than the business day prior to the shares of Series 4, 5 and 6 of the Fund being redeemed."

The final Series N Offering Memorandum was prepared and distributed on March 31, 2008. (Ex. 38). The Offering Memorandum states that the Series 4, 5, and 6 shares cannot be redeemed prior to the Series N Shares. Further, the Offering Memorandum made no mention of the default on the Citco Loan, the un-honored Citco Redemption, the limited liquidity of Leveraged, or the fact that millions of the offering proceeds were to be paid to entities affiliated with Citco rather than invested by Leveraged as stated in the Offering Memorandum (Ex. 38). Citco was listed as the independent administrator in the Offering Memorandum and an affiliate of Citco, Millennium (Cayman Island) Foundation was listed as owning all the shares of Leveraged.

Prior to closing the Series N Offering, Citco required that the consent of the Leveraged Series 4, 5, 6 shares be obtained. Copies of the Offering Memorandum were sent to the representatives of the Series 4, 5, 6 shares, who were represented by Citco (Mr. Gabriele Magris and Mr. Ermanno Unternäehrer). (Ex. 537). The Citco representatives of the Series 4, 5, 6 shares consented to the issuance of the Series N shares, which contained the following language ("Redemption Restriction").:

> "Notwithstanding anything to the contrary herein contained, Series N shares must be redeemed no later than the business day prior to the shares of Series 4, 5 and 6 of the Fund being redeemed."

No exception to the Redemption Restriction was disclosed in the Offering Memorandum or that Fletcher or Citco has the right to redeem the Non-Series N Shares prior to giving notice to the Series N Shares under any circumstance.

From April 1, 2008 to March 31, 2010. ("Period Two"), Citco served as the administrator of Leveraged and Arbitrage, and so prepared all the financial statements, NAVs and managed all subscriptions, redemptions and cash disbursements among other duties for both funds (Ex. 114). Citco calculated all NAVs on at least a monthly basis using a multitude of sophisticated computer programs, highly-trained staff, checklists, and formal procedures with multiple levels of oversight to perform their services as administrator. While Citco lauded its independence and integrity in the public arena, Citco made no disclosures of the many conflicts of interest or adverse financial results of Leveraged, Arbitrage, and FILB.

On June 20, 2008, two months after the closing of the Series N Offering, Fletcher purchased 85% of Richcourt from Citco for $27 million. Substantially all the proceeds of the sale were paid to Citco (Ex. 1077). In addition, Ermanno Unternaehrer remained as a director of Richcourt after Fletcher's acquisition of Richcourt while he continued to serve as one of the four directors on the Executive Committee of Citco. At the same time, Fletcher also acquired from Ermanno Unternaehrer direct ownership in $6 million of shares in Citco III (Exhibit 447), the holding company for the entire Citco organization via the Friends and Family of Citco ("FFC").

On March 31, 2010, Citco and Fletcher agreed that the Non-Series N Shares would be redeemed and paid to Global Hawk so that the $100 million RBS loan could be paid in full. This was never disclosed to the Series N Shareholders as required by the Series N Offering Memorandum. On May 14, 2010, a Second Supplemental Offering Memorandum ("Second Supplemental Offering Memorandum") was sent out by Citco to the Louisiana Funds. (Ex. 535). This was 45 days after the decision to redeem the Non-Series N Shares was made by Citco with Fletcher and no disclosure was made to the Series N Shareholders. Citco notified Leveraged on December 31, 2009 that it was resigning as administrator but never notified the holders of the Series N Shares of the resignation or the reason for the resignation. The Second Supplemental Offering Memorandum does not disclose to the Series N Shareholders, the Louisiana Funds, why Citco "retired" or that Leveraged has approved the redemption of the Series 4, 5, and 6 shares without first notifying the Series N Shareholders. Further, the accompanying letter states that Fletcher "terminated" the administrative agreement with Citco effective April 30, 2010 with SS&C assuming full administration responsibilities by June 15th, 2010. (Ex. 425, 535). Between April 1, 2010 and September 1, 2010, Citco continued to provide administration services and multiple high-level Citco executives assumed control of the Leveraged redemption process for the Non-Series N Shares which resulted in the payment of approximately $10 million dollars to RBS and $2.4 million to Citco as fees for the optional termination (Ex. 768).