UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FIREFIGHTERS' RETIREMENT SYSTEM, ET AL | CIVIL ACTION |
| VERSUS | 13-373-SDD-EWD |
| CITCO GROUP LIMITED, ET AL | |

### RULING

This matter is before the Court on the *Motion for Default Judgment Against Defendants, Alphonse "Buddy" Fletcher, Jr. and Fletcher Asset Management, Inc.*[1] by Plaintiffs, Firefighters' Retirement System ("FRS"), Municipal Employees' Retirement System of Louisiana ("MERS"), and the New Orleans Firefighters' Pension & Relief Fund ("NOFF") (collectively "the Louisiana Funds" or "Plaintiffs"). Defendants, Alphonse "Buddy" Fletcher, Jr. and Fletcher Asset Management, Inc. (collectively "the Fletcher Defendants") have not filed an *Opposition* to this motion. For the following reasons, the Court finds that Plaintiffs' *Motion* should be granted.

**I.    BACKGROUND**

The Fletcher Defendants were made party to this action in connection with their role as the investment manager of a fund called Leveraged, in which Plaintiffs invested, and allegedly lost, $100 million.[2] The *Complaint,* accusing the Fletcher Defendants and

---

[1] Rec. Doc. No. 960.
[2] *See*, generally, Rec. Doc. No. 1-3.
50254

various other individuals and entities of violating various Louisiana securities laws, among other state law claims, was filed in the 19th Judicial District Court on March 1, 2013 and removed to this Court on June 11, 2013.[3] On July 9, 2013, the Fletcher Defendants filed a *Motion to Dismiss Pursuant to Rule 12(b)(2) For Lack of Personal Jurisdiction*.[4] This Court denied that *Motion* in a September 30, 2016 *Ruling*.[5] Since that *Ruling*, no answer, claim, or responsive pleadings have been filed by the Fletcher Defendants. So, on January 17, 2019, Plaintiffs requested that the Clerk of Court enter a preliminary default as to the Fletcher Defendants.[6] The Clerk did so on January 22, 2019.[7]

Now, Plaintiffs argue that they are entitled to three default judgments against the Fletcher Defendants – one for FRS in the amount of $45 million plus interest, one for MERS in the amount of $40 million plus interest, and one for NOFF in the amount of $15 million plus interest. Plaintiffs claim that they "have satisfied the procedural prerequisites to entering a default judgment"[8] and that the amount of their damages "is a sum certain or a sum that can be made certain by computation."[9] After considering the relevant factors, the Court concludes that executing a default judgment is appropriate under the circumstances.

---

[3] Rec. Doc. No. 1.
[4] Rec. Doc. No. 57.
[5] Rec. Doc. No. 324.
[6] Rec. Doc. No. 942.
[7] Rec. Doc. No. 946.
[8] Rec. Doc. No. 960-11, p. 4.
[9] Rec. Doc. No. 960-11, p. 1.
50254

## II. LAW AND ANALYSIS

### A. Default Judgment

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment: (1) a defendant's default; (2) a clerk's entry of default; and (3) a plaintiff's application for a default judgment.[10] The service of summons or lawful process triggers the duty to respond to a complaint.[11] A defendant's failure to timely plead or otherwise respond to the complaint triggers a default.[12] Accordingly, Rule 55 provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise...."[13]

After the Clerk of Court has found a defendant to be in default, the Court may, upon motion by a plaintiff, enter a default judgment against the defaulting defendant.[14] Default judgments are "generally disfavored in the law" in favor of a trial upon the merits.[15] Indeed, default judgments are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.... [T]hey are 'available only when the adversary process has been halted because of an essentially unresponsive

---

[10] *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996).
[11] *Fagan v. Lawrence Nathan Assocs.*, 957 F.Supp.2d 784, 795 (E.D.La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir.1999)).
[12] *N.Y. Life Ins. Co.*, 84 F.3d at 141.
[13] Fed.R.Civ.P. 55.
[14] *Id.*
[15] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger–Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir.1984)).
50254

party.'"[16] Even so, this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[17] In accordance with these guidelines, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[18] While "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," the Court retains the obligation to determine whether those facts state a claim upon which relief may be granted.[19]

Courts have developed a two-part analysis to determine whether a default judgment should be entered against a defendant.[20] First, a court must consider whether the entry of default judgment is appropriate under the circumstances.[21] The factors relevant to this inquiry include: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think

---

[16] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970)).
[17] *Rogers,* 167 F.3d at 936 (internal citations omitted).
[18] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir.1996); *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").
[19] *Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (affirming the district court's denial of a default judgment because, even if the plaintiff's factual allegations were found to be true, the defendants would not have been liable under the law).
[20] *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 813 (M.D.La. 2014); *United States v. Chauncey*, No. 14–CV–32, 2015 WL 403130, at *1 (M.D.La. Jan. 28, 2015); *see also Fidelity & Guaranty Life Ins. Co. v. Unknown Tr. of Revocable Trust–8407*, No. 13–CV–412–PRM, 2014 WL 2091257, at *2 (W.D.Tex. May 16, 2014) (citing cases).
[21] *See Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir.1998).
50254

itself obliged to set aside the default on the defendant's motion.[22] Second, a court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment.[23]

**B. Analysis**

1. <u>Jurisdiction to Enter Default Judgment</u>

"A district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties before granting a motion for a default judgment, because '[a] judgment entered without personal jurisdiction is void.'"[24] To that end, the Court notes that Plaintiffs' lawsuit was timely removed to this Court pursuant to 28 U.S.C. §1452(a), and that "related to" bankruptcy subject matter jurisdiction was maintained in this Court under 28 U.S.C. 1334(b). Indeed, the Fifth Circuit held that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal."[25] As to personal jurisdiction over the Fletcher Defendants, this Court previously held, in its *Ruling*[26] on the Fletcher Defendants' *Motion to Dismiss Pursuant to Rule 12(b)(2) for Lack of Personal Jurisdiction*,[27] that in the context of the Federal Rules of Bankruptcy Procedure, which authorizes nationwide service of process, the district court has personal jurisdiction over any party having minimum contacts with

---

[22] *Id.*
[23] *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.
[24] *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 791 (E.D. La. 2013), citing *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001).
[25] Rec. Doc. No. 222, p. 14.
[26] Rec. Doc. No. 324.
[27] Rec. Doc. No. 57.
50254

the United States. By that standard, this Court found that the Fletcher Defendants had the requisite contacts for this Court to assert personal jurisdiction over them. As such, this Court has jurisdiction to enter a default judgment in this matter.

2. Plaintiffs' Entitlement to Default Judgment

It is undisputed that the first two steps in the default judgment process outlined by the Fifth Circuit – the defendant's default and the clerk's entry of default – have occurred. Now, faced with Plaintiffs' application for a default judgment, the Court is bound to apply the factors set forth by the Fifth Circuit in *Lindsey* for analyzing whether an entry of default judgment is appropriate under the circumstances. The first factor looks to whether material issues of fact are at issue in the matter.

Plaintiffs' argument for a default judgment rests on the allegations in their *Complaint* pertaining to Section 712(A)(2) of the Louisiana Securities Act ("LSA"). Section 712(A)(2) prohibits the following conduct:

> To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact of any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

A review of the *Complaint* shows that every element of liability under Section 712(A)(2) can be found in the allegations therein. Plaintiffs assert that the Fletcher Defendants participated in activities that made them a "seller" of Leveraged; that they made inaccurate and misleading statements in connection with material facts about the

50254

sale; and that Plaintiffs relied upon those statements in deciding to invest in Leveraged.[28]

The Court's previous denial of the Fletcher Defendants' *Motion to Dismiss* was limited to the issue of personal jurisdiction and, as such, the issue of whether the allegations in the *Complaint* are sufficient to state a claim for LSA liability against the Fletcher Defendants was not before the Court. However, after reviewing the relevant portions of the *Complaint*,[29] the Court concludes that Plaintiffs did state an LSA claim sufficient to pass muster under Federal Rule of Civil Procedure 8, which the Fifth Circuit has held to be the applicable pleading standard for purposes of default judgment analysis.[30] By the allegations in their *Complaint*, Plaintiffs stated a claim as to each element of liability under Section 51:712(A)(2).

The law is clear that a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact."[31] So, because default results in admission of the well-pleaded allegations in the *Complaint*, there are no material issues of fact in play. Looking to the third and fourth *Lindsey* factors, the grounds for default are clearly established, and there is no suggestion that the Fletcher Defendants' default was caused by a good faith mistake or excusable neglect. Indeed, the fact that the Fletcher Defendants filed a Motion to Dismiss demonstrates that they were fully aware of the case. All of the above suggests that the execution of the default judgments could be appropriate.

As to the prejudice factor, Plaintiffs offer no argument on this point, and the Court

---

[28] *See* Rec. Doc. No. 1-3, p. 37, ¶ 162 *et. seq.*
[29] Rec. Doc. No. 1-3, ¶ 162 – 184.
[30] *See*, e.g. *Wooten v. McDonald Transit Assocs., Inc.,* 788 F.3d 490, 494 (5th Cir. 2015).
[31] *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)
50254

declines to speculate as to how this six-year litigation process and the bevy of substantive motions it generated would have been different if the Fletcher Defendants had not stopped participating in 2016. Nevertheless, the absence of the Fletcher Defendants, who were the "investment manager"[32] of the Leveraged fund in which Plaintiffs invested, and allegedly lost, $100 million, arguably frustrated Plaintiffs' ability to recover in this action.

Next, the Court considers the harshness of a default judgment. On one hand, the execution of three default judgments in the amount of $100 million does strike the Court as harsh, especially since it appears that Plaintiffs have cherrypicked as the legal basis for the default judgments the only claim against the Fletcher Defendants that is not called into question by this Court's previous *Rulings* on the issue of prescription. On the other hand, the Court finds the harshness of that result mitigated somewhat by the fact that the Fletcher Defendants were served with the *Complaint*, made an appearance, and even filed a *Motion to Dismiss* before abruptly ceasing to participate in this litigation.

The sixth *Lindsey* factor asks whether the Court would think itself obliged to set aside the default on the defendant's motion. The Fifth Circuit has held that "[i]n determining whether good cause exists to set aside a default judgment under Rule 60(b)(1) we examine the following factors: 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'"[33] It is an inherently speculative exercise for the Court to imagine how it would

---

[32] Rec. Doc. No. 1-3, p. 7.
[33] *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008), quoting *In re Dierschke*, 975 F.2d 181, 183 (5th Cir.1992).
50254

rule on a hypothetical motion by the Fletcher Defendants to set aside the three default judgments. In particular, it is difficult to assess, sight unseen, the merits of any defense they might assert. Nevertheless, the Court finds that there is a willful character to the default in this case,[34] and the Fifth Circuit has repeatedly held that "once a district court finds that default was willful, the inquiry ceases."[35]

The law is clear that default judgments are drastic and disfavored, in favor of a trial upon the merits. But the default at issue arguably deprived Plaintiffs of the opportunity for such a trial, at least with respect to the claims against the Fletcher Defendants. The Court finds that the *Lindsey* factors all satisfied and that Plaintiffs' pleadings provide a sufficient basis for the judgment. Accordingly, the Court finds that the *Motion for Default Judgment* shall be granted as to liability.

   3. Damages

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."[36] A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated "by detailed affidavits establishing the necessary facts."[37] If a court can

---

[34] See, e.g., *UnitedHealthcare Ins. Co. v. Holley*, 724 F. App'x 285, 288 (5th Cir. 2018) (affirming district court's finding of willful default where the plaintiff "received notice of the lawsuit [but] took no further action to respond or stay abreast of the status of the litigation against her"). This holding applies *a fortiori* to the Fletcher Defendants, who not only received notice of the lawsuit but filed substantive motions before their default.
[35] *Id.*; see also *Dierschke*, 975 F.2d at 184–85 ("Willful failure alone may constitute sufficient cause for the court to deny [the defendant's] motion"); *Lacy*, 227 F.3d at 292 ("A finding of willful default ends the inquiry"); *Rogers*, 167 F.3d at 939 (affirming the district court's denial of defendant's motion to set aside the judgment on the sole basis that the default was willful).
[36] *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011).
[37] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979).
50254

mathematically calculate the amount of damages based on the pleadings and supporting documents, a hearing is unnecessary.[38]

To meet their burden, Plaintiffs offer affidavits from the Director of each of the three Louisiana Funds and an affidavit from Plaintiffs' counsel. After reviewing those affidavits and the accompanying documentation, the Court finds that it cannot calculate the amount of damages without a hearing. Although the amount that each fund initially invested in Leveraged has been shown with precision, the Court will set a hearing for Plaintiffs to present detailed evidence as to how any amounts recovered via the bankruptcy settlement process, loan repayments, or other sources may have offset the amount of Plaintiffs' damages.

---

[38] *Joe Hand Promotions, Inc. v. Alima*, No. 3:13–CV–0889–B, 2014 WL 1632158, at *3 (N.D. Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993)).
50254

### III. CONCLUSION

For the reasons stated above, Plaintiffs' *Motion for Default Judgment Against Defendants, Alphonse "Buddy" Fletcher, Jr. and Fletcher Asset Management, Inc.*, is hereby granted as to liability. The Court will set a hearing for Plaintiffs to provide evidence regarding the amount of damages that are warranted in this case.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on February 22, 2019.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

50254